# In The United States Court of Federal Claims

| | | |
|---|---|---|
| CNG TRANSMISSION MANAGEMENT VEBA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-541-T |
| v. | ) | |
| | ) | The Honorable Lynn J. Bush |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, plaintiff moves the Court to grant summary judgment in favor of plaintiff because there are no genuine issues of material fact and, as a matter of law, CNG Transmission Management VEBA earned no unrelated business taxable income in calendar year 2000, and is therefore entitled to a refund of income tax for 2000 in the amount of $1,065,684. In support of this Motion, plaintiff relies on the attached Proposed Findings of Uncontroverted Fact and the attached Brief.

Plaintiff requests that this Motion be set for oral argument.

Respectfully submitted,

ERIC R. FOX,
Attorney for Plaintiff
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No. — 202-662-3406
Facsimile No. — 202-393-7601
E-Mail Address — ericfox@ipbtax.com

Kevin P. O'Brien
Of Counsel
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No. — 202-662-3411
Facsimile No. — 202-393-7601
E-Mail Address — kpobrien@ipbtax.com

May 7, 2008

# In The United States Court of Federal Claims

| | | |
|---|---|---|
| CNG TRANSMISSION MANAGEMENT VEBA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-541-T |
| v. | ) | |
| | ) | The Honorable Lynn J. Bush |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## PROPOSED FINDINGS OF UNCONTROVERTED FACT

1. Plaintiff is a voluntary employees benefit association ("VEBA") under the terms of section 501(c)(9) of the Internal Revenue Code of 1986. A copy of plaintiff's exemption letter from the Internal Revenue Service ("IRS") is attached as Exhibit A.

2. Plaintiff's address is c/o Mellon Bank, N.A., Trustee, P.O. Box 185, Pittsburgh, Pa. 15230-9897

3. Plaintiff was established on March 31, 1994, by Consolidated Natural Gas Company ("CNG") "for the purpose of funding medical benefits and certain other benefits" for eligible employees. A copy of the Welfare Trust Agreement establishing plaintiff as a VEBA is attached as Exhibit B.

4. CNG was acquired by Dominion Resources, Inc. ("DRI") on January 28, 2000.

5. On December 20, 2001, DRI replaced CNG as plaintiff's sponsor. A copy of the Retiree Medical Welfare Trust Agreement reflecting this change is attached as Exhibit C.

6. Plaintiff timely filed a Form 990-T for 2000 on November 13, 2001, with the IRS Service Center at Ogden, Utah, on which it reported $2,693,592 of unrelated business taxable income and, pursuant to which, it paid income tax on this income in the amount of $1,065,684. A copy of this return is attached as Exhibit D.

7. On January 4, 2005, plaintiff timely filed an amended Form 990-T for 2000, claiming a refund of $1,065,684 on the grounds that the $2,693,592 it had

previously reported as unrelated business taxable income was in reality non-taxable exempt function income. A copy of this return is attached as Exhibit E.

8. On April 4, 2006, the IRS sent a letter to the plaintiff denying its claim for refund for 2000. A copy of this letter is attached as Exhibit F.

9. During 2000, plaintiff had investment income of $2,798,002. See affidavit of Donald W. Borneman attached as Exhibit G.

10. During 2000, plaintiff expended $7,556,757 for the payment of life, sick, accident, or other benefits, to its members or their beneficiaries. See Exhibit G.

11. During 2000, plaintiff set aside and expended all of its investment income of $2,798,002 for the payment of life, sick, accident or other benefits for its members.

12. During 2000, plaintiff had no income other than $2,798,002 of investment income.

Respectfully submitted,

ERIC R. FOX,
Attorney for Plaintiff
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No. — 202-662-3406
Facsimile No. — 202-393-7601
E-Mail Address — ericfox@ipbtax.com

Kevin P. O'Brien
Of Counsel
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No. — 202-662-3411
Facsimile No. — 202-393-7601
E-MailAddress — kpobrien@ipbtax.com

May 7, 2008

# In The United States Court of Federal Claims

| | | |
|---|---|---|
| CNG TRANSMISSION MANAGEMENT VEBA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-541-T |
| v. | ) | |
| | ) | The Honorable Lynn J. Bush |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................ ii

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT ........................................................ 1

PLAINTIFF HAD NO UNRELATED BUSINESS
TAXABLE INCOME IN 2000 ........................................................ 1

CONCLUSION ........................................................ 9

CERTIFICATE OF SERVICE ........................................................ 11

# TABLE OF AUTHORITIES

Page

## CASES

Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner, 330 F.3d 449 (6th Cir. 2003), rev'g 115 T.C. 440 (2000) .................................................. 1-2, 6-7, 8

## STATUTES

Internal Revenue Code of 1986 (26 U.S.C.)

Sec. 170(c)(4) .......................................................................... 4
Sec. 419A .............................................................................. 5, 8
Sec. 501(a) ............................................................................... 2
Sec. 501(c) ............................................................................... 3
Sec. 501(c)(9) ........................................................................ 2, 3
Sec. 502 .................................................................................. 2
Sec. 503 .................................................................................. 2
Sec. 511(a) ............................................................................ 2, 3
Sec. 511(a)(2) ........................................................................... 3
Sec. 512 ............................................................................... 2, 8
Sec. 512(a)(1) ........................................................................... 3
Sec. 512(a)(3) ........................................................................... 3
Sec. 512(a)(3)(A) ....................................................................... 4
Sec. 512(a)(3)(B) ....................................................................... 4
Sec. 512(a)(3)(E) .................................................................... 5, 6
Sec. 513 .................................................................................. 3

## MISCELLANEOUS

Compact Oxford English Dictionary, Second Edition ......................... 6

# In The United States Court of Federal Claims

| | | |
|---|---|---|
| CNG TRANSMISSION MANAGEMENT VEBA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-541-T |
| v. | ) | |
| | ) | The Honorable Lynn J. Bush |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

---

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

## PLAINTIFF HAD NO UNRELATED BUSINESS TAXABLE INCOME IN 2000

At the end of the day, the outcome of this case turns on the interpretation of a single word in the Internal Revenue Code of 1986 ("the Code"). That word was interpreted in the taxpayer's favor in the only case to have considered this issue previously, *Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner*, 330 F.3d 449 (6th Cir. 2003), *rev'g* 115

T.C. 440 (2000). Before addressing this word, however, the Court first needs to understand the background leading up to it.

Section 501(a) of the Code provides that:

> An organization described in subsection (c) or (d) ... shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

One such organization, the type involved in this case, is described in section 501(c)(9) as follows:

> Voluntary employees' beneficiary associations providing for the payment of life, sick, accident, or other benefits to the members of such association or their dependents or designated beneficiaries, if no part of the net earnings of such association inures (other than through such payments) to the benefit of any private shareholder or individual.

Organizations described in section 501(c)(9) of the Code are typically referred to by the acronym VEBA. As can be confirmed by reference to Exhibit A to plaintiff's Proposed Findings of Uncontroverted Fact, plaintiff is an organization described in section 501(c)(9) of the Code. As such, plaintiff falls directly within the provision of section 501(a) which states that it is exempt from taxation unless such exemption is denied under section 502 or section 503, neither of which has any application in this case.

Notwithstanding the fact that section 501(a) makes no reference to it, section 511(a) of the Code nonetheless imposes an income tax on the "unrelated business taxable income (as defined in section 512) of every

organization described in paragraph [511(a)] (2). Subject to exceptions that are not relevant here, paragraph 2 includes all organizations described in section 501(c). Inasmuch as plaintiff is described in section 501(c)(9), it is subject to taxation under section 511(a), to the extent of its unrelated business taxable income.

Section 512(a)(1) describes "unrelated business taxable income" generally as:

> the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business....

Section 513 goes on at some length to describe an unrelated trade or business which is essentially defined as the carrying on of active business activity. As stated in plaintiff's Proposed Findings of Uncontroverted Fact, Numbers 9 and 12, in 2000, plaintiff's only income consisted of $2,798,002 of investment income, and it had no income of the type described in section 512(a)(1).

Section 512(a)(3), however, goes on to provide "special rules" applicable to four different types of organizations described in section 501(c). One of such organizations is a VEBA described in section 501(c)(9).

The first rule is found in section 512(a)(3)(A):

> (A) General rule. In the case of an organization described in paragraph ...(9) ...of section 501(c), the term "unrelated business taxable income" means the gross income (excluding any exempt function income)....

In the case of a VEBA, investment income is unrelated business taxable income subject to income tax, except to the extent it is exempt function income, which is described in section 512(a)(3)(B). The first part of section 512(a)(3)(B) defines exempt function income to include such items as dues and fees paid by members of a VEBA in consideration for VEBA benefits. This type of exempt function income is not in issue.

512(a)(3)(B) goes on to provide:

> Such term [*i.e.*, "exempt function income"] also means all income (other than an amount equal to the gross income derived from any unrelated trade or business regularly carried on by such organization computed as if such organization were subject to paragraph (1)), which is set aside-
> (i) for a purpose specified in section 170(c)(4), or
> (ii) in the case of an organization described in paragraph (9) ... of section 501(c), to provide for the payment of life, sick, accident, or other benefits, ....

Section 170(c)(4) describes a certain type of charitable gift which is not relevant in this case. As stated in plaintiff's Proposed Findings of Uncontroverted Fact No. 11, plaintiff's 2000 investment income of $2,798,002 was all set aside to provide for the payment of life, sick,

accident, or other benefits, to plaintiff's members or their beneficiaries and therefore qualified as exempt function income.

One further rule remains. Section 512(a)(3)(E) provides:

> (E) Limitation on amount of set aside in the case of organizations described in paragraph (9) … of section 501(c).
>
> (i) In general. In the case of an organization described in paragraph (9) … of section 501(c)(3), a set-aside for any purpose specified in clause (ii) of subparagraph (B) may be taken into account under subparagraph (B) only to the extent that such set-aside does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A (without regard to subsection (f)(6) thereof) for the taxable year (not taking into account any reserve described in section 419A(c)(2)(A) for post-retirement medical benefits).

Finally, we have arrived at the heart of the case. Notwithstanding the fact that plaintiff's 2000 investment income of $2,798,002 was all set aside to provide for the payment of life, sick, accident, or other benefits, to plaintiff's members or their beneficiaries, such set-aside may not be taken into account as exempt function income if it "results" in an amount of assets in excess of a certain limit. This case is all about defining the term "results".

Before proceeding to addressing this issue, it must be noted that plaintiff has not computed the account limit under section 419A because, as will be seen, this account limit is irrelevant. It may be assumed to be any hypothetical number which will hereinafter be referred to as "the account limit".

The Second Edition of the Compact Oxford English Dictionary defines "result" first as an intransitive verb meaning "to arise as a consequence, effect or conclusion *from* some action, process, etc.; to end or conclude in a specified manner." Applying this definition to the statutory language in issue, the only reasonable conclusion can be that, in order for plaintiff's 2000 set-aside income not to qualify as exempt function income, there must be at the end of 2000 an excess of assets over the account limit that arose as a consequence of the set-aside income. Inasmuch as all of the set-aside income was expended during 2000 (Plaintiff's Proposed Findings of Uncontroverted Fact No. 11), the existence of the set-aside income had absolutely no effect on the amount of assets held by plaintiff at the end of 2000, and therefore could not have "resulted" in any excess of assets over the account limit. Accordingly, inasmuch as the limitation found in section 512(a)(3)(E), although admittedly a limitation that must be taken into consideration as a matter of law, did not apply in fact to plaintiff's exempt function income in the amount of $2,798,002, none of that income was unrelated business taxable income in 2000.

This result is so patently clear that plaintiff could quite legitimately terminate its brief at this point. Fortunately for plaintiff, however, the precise issue involved in this case was adjudicated in the manner urged by

plaintiff in this case in *Sherwin Williams Co. Employee Health Plan Trust v. Commissioner*, 330 F.3d 449 (6th Cir. 2003). As the only precedent, this case is worth quoting from at some length.

> Beginning with the statute's text, the language of § 512(a)(3)(E) suggests that its limit does not apply to funds set aside and spent on appropriate administrative costs during the taxable year. That is, the limit is not on the total amount that the VEBA may set aside, tax-free, over the course of a year, but on the amount that the VEBA may accumulate at year's end. The statute's operative clause states that a set-aside qualifies as exempt function income only to the extent it "does not result in an amount of assets set aside" that would exceed the account limit for the taxable year. *Id.* § 512(a)(3)(E)(i). The inquiry into whether set-aside income "result[s] in an amount" in excess of the account limit suggests a focus not on the aggregate quantity of money that has passed through the account over the relevant window of time, but on the sum that exists in the account at the relevant moment. [Footnote omitted.]
>
> . . .
>
> If, …the § 512(a)(3)(E)(i) limit is interpreted as applying only to the funds in the set-aside account at the close of the taxable year, then the statute's reference to §419A makes sense. Section 419A is clear that to determine the limit on set-asides, one determines how much set-aside income must be on hand, or accumulated, in order for the VEBA to fulfill its purpose of supplying benefits. Interpreting the limit to apply only to those funds that are set aside and on hand — that is, accumulated — makes § 512(a)(3)(E)(i)'s reference to §419A internally coherent. It permits the VEBA to set aside income sufficient to pay and administer its claims on a tax-exempt basis. However, it prohibits a VEBA from accumulating more income than actuarially necessary to pay its claims for that year.

330 F.3d at 454-455.

In further support of the quoted conclusion, the Sixth Circuit Court of Appeals went on to note that this conclusion was buttressed by § 512's legislative history and the even more explicit IRS regulations

> stating that the § 512(a)(3)(E)(i) cap on exempt function income applies to "the amounts set aside in a VEBA…as of the *close of the taxable year*." Prop. Treas. Reg. 1.512-5T, A-3(a), 51 Fed. Reg. 4332 (Feb. 4 1986) (emphasis added); *see also id.* At A-3(b) (stating that exempt function income includes income set aside for payment of benefits as long as "the total amount set aside in the VEBA … as of the close of the taxable year" does not exceed the §419A limit). The reference to the amounts set aside "as of" the year's end suggests an inquiry into the amount in the fund on that date, not an inquiry into what has passed through the fund over the past year.

330 F.3d 456.

The Court then set forth its holding:

> We hold that § 512(a)(3)(E)(i)'s limit on accumulating set-aside income does not apply to income that was set aside and spent on the reasonable costs of administering health care benefits under § 512(a)(3)(A).

330 F.3d 456.

Lastly, the Court added a conclusion to the effect that there was no need to determine the account limit under §419A "because the income at issue was set aside and spent on the reasonable costs of administration and is not subject to that limit." 330 F.3d 456.

## CONCLUSION

Inasmuch as plaintiff spent all of its 2000 income in the amount of $2,798,002 during 2000 on VEBA benefits, all of that income qualifies as exempt function income, and is not subject to tax as unrelated business taxable income. Accordingly, defendant has erroneously refused to refund to plaintiff the $1,065,684 of income tax plaintiff erroneously paid with respect to its passive income in 2000, and this Court is respectfully requested to order the defendant to refund such amount to plaintiff with interest according to law.

Respectfully submitted,

ERIC R. FOX,
Attorney for Plaintiff
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No.-202-662-3406
Facsimile No.-202-393-7601
E-Mail Address-ericfox@ipbtax.com

Kevin P. O'Brien
Of Counsel
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No.-202-662-3411
Facsimile No.-202-393-7601
E-Mail Address-kpobrien@ipbtax.com

May 7, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Brief in Support of Its Motion for Summary Judgment, together with the Proposed Findings of Uncontroverted Fact and the Motion for Summary Judgment (all of which was electronically filed) was hand delivered this 7th day of May, 2008, to:

Jason Bergmann, Esquire
Attorney for Defendant
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
555 4th Street, N.W., Room 8804
Washington, D.C. 20001

ERIC R. FOX
Attorney for Plaintiff
1700 Pennsylvania Avenue, N.W.,
Suite 600
Washington, D.C. 20006
202-662-3406

# Exhibit A

SEP 1997

INTERNAL REVENUE SERVICE
DISTRICT DIRECTOR
P. O. BOX 2508
CINCINNATI, OH 45201

DEPARTMENT OF THE TREASURY

Date: SEP 17 1997

CNG RETIREE WELFARE BENEFITS
C/O CONSOLIDATED NATURAL GAS
COMPANY
625 LIBERTY AVE CNG TOWER
PITTSBURGH, PA 15222-3199

Employer Identification Number:
25-1755735
DLN:
17053093105007
Contact Person:
D. A. DOWNING
Contact Telephone Number:
(513) 241-5199

Internal Revenue Code
Section 501(c)(9)
Accounting Period Ending:
December 31
Form 990 Required:
Yes
Addendum Applies:
Yes

Dear Applicant:

Based on information supplied, and assuming your operations will be as stated in your application for recognition of exemption, we have determined you are exempt from federal income tax under section 501(a) of the Internal Revenue Code as an organization described in the section indicated above.

Unless specifically excepted, you are liable for taxes under the Federal Insurance Contributions Act (social security taxes) for each employee to whom you pay $100 or more during a calendar year. And, unless excepted, you are also liable for tax under the Federal Unemployment Tax Act for each employee to whom you pay $50 or more during a calendar quarter if, during the current or preceding calendar year, you had one or more employees at any time in each of 20 calendar weeks or you paid wages of $1,500 or more in any calendar quarter. If you have any questions about excise, employment, or other Federal taxes, please address them to this office.

If your sources of support, or your purposes, character, or method of operation change, please let us know so we can consider the effect of the change on your exempt status. In the case of an amendment to your organizational document or bylaws, please send us a copy of the amended document or bylaws. Also, you should inform us of all changes in your name or address.

In the heading of this letter we have indicated whether you must file Form 990, Return of Organization Exempt From Income Tax. If Yes is indicated, you are required to file Form 990 only if your gross receipts each year are normally more than $25,000. However, if you receive a Form 990 package in the mail, please file the return even if you do not exceed the gross receipts test. If you are not required to file, simply attach the label provided, check the box in the heading to indicate that your annual gross receipts are normally $25,000 or less, and sign the return.

If a return is required, it must be filed by the 15th day of the fifth month after the end of your annual accounting period. A penalty of $10 a day is charged when a return is filed late, unless there is reasonable cause for

the delay. However, the maximum penalty charged cannot exceed $5,000 or 5 percent of your gross receipts for the year, whichever is less. This penalty may also be charged if a return is not complete, so please be sure your return is complete before you file it.

You are not required to file Federal income tax returns unless you are subject to the tax on unrelated business income under section 511 of the Code. If you are subject to this tax, you must file an income tax return on Form 990-T, Exempt Organization Business Income Tax Return. In this letter we are not determining whether any of your present or proposed activities are unrelated trade or business as defined in section 513 of the Code.

You need an employer identification number even if you have no employees. If an employer identification number was not entered on your application, a number will be assigned to you and you will be advised of it. Please use that number on all returns you file and in all correspondence with the Internal Revenue Service.

Cash and noncash benefits realized by a person on account of your activities must be included in gross income to the extent provided in the Code. No opinion is expressed or implied as to whether there is any provision available under the Code to exclude from gross income contributions to you or payments made by you. Further, no opinion is expressed or implied as to whether you are liable for taxes under the Federal Insurance Contributions Act (social security taxes) or the Federal Unemployment Tax Act on the payment of benefits. If you have any questions about these matters, please contact your key district office.

No opinion is expressed or implied as to whether employer contributions to you are deductible under the Code.

If we have indicated in the heading of this letter that an addendum applies, the enclosed addendum is an integral part of this letter.

Because this letter could help resolve any questions about your exempt status, you should keep it in your permanent records.

CNG RETIREE WELFARE BENEFITS

If you have any questions, please contact the person whose name and telephone number are shown in the heading of this letter.

Sincerely yours,

District Director

Enclosure:
Addendum

CNG RETIREE WELFARE BENEFITS

You may also be required to file one of the 5500 series, Annual Return / Report of Employee Benefit Plan. If a return is required, it must be filed by the last day of the seventh month following the end of the plan year. Failure to do so may result in the imposition of a penalty, unless there is reasonable cause.

# Exhibit B

EIN: 25-1755735

# WELFARE TRUST AGREEMENT

THIS TRUST AGREEMENT entered into on the 31st day of March, 1994, by and between CONSOLIDATED NATURAL GAS COMPANY, hereinafter referred to as the "Company", and MELLON BANK, N.A., hereinafter referred to as the "Trustee".

## WITNESSETH:

WHEREAS, Company is desirous of entering into this Trust Agreement (the "Agreement") to establish with Trustee a trust fund for the purpose of funding medical benefits and certain other welfare benefits as Company may hereinafter designate at any time and from time to time for Company's eligible employees who are retired from Company and its subsidiaries pursuant to the terms and provisions of their various pension plans (the "Trust"); and

WHEREAS, Company is self-insured with respect these welfare benefits under the terms and conditions of the various welfare plans which it maintains; and

WHEREAS, it is the intent of Company that the Trust established by this agreement be in the form and be in operation at all times so as to comply with the requirements of Section 501(c)(9) of the Internal Revenue Code of 1986, as amended (the "Code") and those provisions of the Employee Retirement Income Security Act of 1974, as amended (the "Act") which have application to trusts of the nature established by this Agreement; and

WHEREAS, this Trust, either in whole or in part, shall not be used for, nor shall any of the income or other assets held under the terms of this agreement be used for, purposes other than the payment of welfare benefits or the expenses incident thereto or expenses of the Trust.

NOW, THEREFORE, intending to be legally bound, Company and Trustee covenant and agree as follows:

## SECTION 1

1.1 Company has established or will establish, during the duration of this Trust, various welfare benefit plans (the "Plan" or "Plans") for the benefit of those retired salaried/management employees who are eligible for coverage under the provisions of each Plan. The form and nature of such Plans shall be established exclusively by Company, provided, however, such Plans shall provide for the payment of life, sickness, accident or other benefits to the employees or their beneficiaries. The phrase "other benefits" shall not, however, include any benefit which is due solely to attainment of age

or service and are considered retirement benefits. It is understood that the purpose of this Agreement is to fund medical benefits and such of the foregoing or other qualifying welfare benefits as defined by the Act and the Code which Company may, in its sole discretion, designate at any time and from time to time for Company's eligible retired salaried/management employees or their qualified beneficiaries who are recognized by the Plans as qualified dependents of such eligible retired employees.

1.2 No provision of this Agreement shall, either directly or indirectly, require or empower Trustee to exercise any power, authority or discretion, nor shall any interpretation or implication be drawn from this Agreement so as to authorize or empower Trustee to take any action which would cause this Trust or Trustee to violate the applicable provisions of either the Code or the Act.

1.3 The terms "Investment Manager","Party in Interest", "Ancillary Services" "Disqualified Person" and "Fiduciary" used herein shall have the same meanings ascribed to them by the Act or Code unless the context clearly indicates an intended different meaning.

1.4 Notwithstanding anything else in this Agreement to the contrary: (1) Trustee is not a party to, and has no duties or responsibilities under, the Plans; (2) the Plan Administrator of such Plans shall certify in writing to Trustee the identity of any other fiduciary which is named in the Plans and which has the power to manage and control assets of the Plans, and Trustee shall be entitled to rely upon such certification until notified otherwise in writing by Plan Administrator; (3) in any and all cases where Trustee is required by this Agreement to act with reference to Plan terms, Plan Administrator shall have the responsibility to certify the relevant provisions to Trustee in writing, and Trustee shall be entitled to rely upon such certification until notified otherwise in writing by Plan Administrator; (4) absent written certification to Trustee pursuant to this paragraph, Trustee shall be chargeable with no knowledge of any Plan terms and shall be deemed to be in compliance with Plans and, (5) in any case in which a provision of this Agreement conflicts with any provision in Plans, this Agreement shall control with respect to Trustee's duties, obligations and responsibilities. Notwithstanding the preceding sentence, Trustee reserves the right to seek a judicial and/or administrative determination as to its proper course of action under this Agreement.

## SECTION 2

2.1 Company hereby establishes with Trustee this Trust consisting of such sums of money and such property acceptable to Trustee as shall from time to time be paid or delivered to Trustee.

2.2 Trustee shall have no duty to determine or collect any Company contributions and shall be solely accountable for monies or properties actually received by it. Company shall have the sole duty and responsibility for the determination of the accuracy or sufficiency of the contributions to be made under each Plan the transmittal of the same to Trustee and

compliance with any statute, regulation or rule applicable to contributions, except that Trustee shall provide such information as may be reasonably requested by Plan Administrator, Committee, Company or other Plan fiduciary to comply with any such statute, regulation or rule applicable to the Plans.

2.3 All monies and properties which become subject to this Agreement, all investments and reinvestments made therewith and proceeds thereof and all earnings and profits thereon, less the payments which at the time of reference shall have been made by Trustee as authorized herein and any losses hereto, are referred to herein as the "Fund."

2.4 The Fund shall be held by Trustee in trust and dealt with in accordance with the provisions of this Agreement, the Act and the Code.

2.5 To the extent permitted by law, should the Trust hereby established ultimately fail to qualify as an entity exempt from federal income taxation under Section 501(c)(9) of the Code, as certified in writing to Trustee by Company, this Trust shall terminate and all assets of the Trust then held shall, to the extent not then currently used to pay benefits then due, be returned to Company, or to another trust or other entity designated by Company. Company, at its sole discretion, may provide for the continued payment of benefits through another qualifying trust, entity or other arrangement, including the purchase of insurance. In such event, Company may direct Trustee to pay the assets of the Trust or any account maintained under this Trust to such other trust, entity or insurance company.

2.6 Trustee may commingle the assets of this Trust attributable to the Plans for which contributions are made under this Agreement and may commingle the Fund with funds of other trusts of similar nature created by Company for the providing of welfare benefits for eligible retired salaried/management employees and their qualified beneficiaries. Where commingling is effected with other trusts maintained by Company and its subsidiaries, the combined trust, to the extent that assets are attributable to contributions made under this Agreement, shall be the Fund referred to herein. By agreement, Trustee may maintain such records as Trustee deems necessary in order to separate the Fund from the monies or property of the other trusts maintained by Company and its subsidiaries and, if applicable, to separate the assets attributable to each of the Plans for which contributions are made under this Agreement. Should separation be required, either of the Fund from other trusts maintained by Company and its subsidiaries or of any Plan for which contributions are made under this Agreement from the Fund, Trustee shall make such separation in accordance with generally accepted accounting principles and upon the certification of an actuary retained by Company.

2.7 The Fund herein created shall be known as the "CNG RETIREE WELFARE BENEFITS FUND".

## SECTION 3

3.1 The Plans shall be administered by the person, board, committee or other entity designated by the terms of the Plans or by the action of Company from time to time to administer the Plans or, in the absence of such designation, the Plans shall be administered by Company (herein referred to as the "Plan Administrator") and said Plan Administrator shall have the sole fiduciary duty as to such Plans' administration and Trustee shall not be responsible in any respect for such administration.

3.2 Company shall notify Trustee in writing of all persons or entities who will perform functions or duties as fiduciaries under the terms of this Agreement. The Annuities and Benefits Committee of Company (the "Committee") or other person or entity designated by Company shall be responsible for performing duties with respect to the arrangement and control of monies and property comprising the Fund. Such designated fiduciaries shall have such rights, powers and duties, with respect to this Agreement as are appropriate and necessary to fulfill the purposes of this Agreement. Trustee shall be entitled to rely solely upon Committee's general authority to conduct business related to the Fund, unless Company notifies Trustee in writing of the lack of authority.

3.3 Trustee shall Plan Administrator of the Plans and Committee until notified otherwise by Company, in writing.

3.4 Company shall fully indemnify and save harmless Trustee from liability and expense incident to any act or failure to act by reason of Trustee's reliance upon or compliance with instructions issued by Plan Administrator, Committee or Company.

3.5 Company or its designate shall have the right to audit Trustee's books and records annually and as more often as Company deems necessary or as required by the Act, upon giving written notice to Trustee which shall grant access to the books and records of the Trust. Company will pay such expenses incurred by Trustee due to any audit as Company and Trustee may mutually agree upon. Notwithstanding the performance of such audit, Trustee shall not be required or have any duty to perform any service or furnish any reports other than those required by the Act and any regulation or ruling thereunder.

## SECTION 4

4.1 Trustee shall make such payments out of the Fund as Plan Administrator or Committee may from time to time in writing direct, including payment of any expenses of the Fund. In the discretion of Plan Administrator or Committee, such payments may either be made directly to the person or entity specified by Plan Administrator or Committee or deposited in a account maintained by Plan Administrator or Committee for the purpose of making payments to the person or persons entitled to such under the Plans. Should Plan Administrator or Committee appoint any person or entity to make payments from any checking account established under this subsection, Plan Administrator or

Committee shall certify to Trustee that such person or entity is bonded in the manner and amount provided under the Act.

4.2 To the extent monies are held in the account designated by Plan Administrator or Committee, Plan Administrator or Committee shall have the duty and the responsibility to hold such monies in trust and in such a manner that the same shall be secure from the claims of all creditors of Company, Company's subsidiaries, or any retired employee or their qualified beneficiary covered by any Plan.

4.3 Any direction given to Trustee in accordance with this Section need not specify the specific application of the payment to be made, but shall specify that the payment is for the purposes of the Plans or the payment of Plans' expenses. Except as may otherwise be provided herein, Trustee shall be protected in making such payments from time to time and shall be charged with no responsibility whatsoever respecting the application of such monies.

4.4 Trustee is specifically authorized to appoint other Fiduciaries as to part or all of the Fund and functions incident thereto where, in the sole discretion of Trustee, such delegation is necessary in order to facilitate the operations of the Trust and such delegation is not inconsistent with the purposes of the Trust or in contravention of any law. In the delegation of such Fiduciary duties, Trustee may appoint as Fiduciary any person or entity including but not limited to Plan Administrator or Committee, notwithstanding the fact that such person or entity is then considered a Fiduciary, a Party in Interest or a Disqualified Person. Upon such delegation, Trustee may require such reports, bonds or written agreements it deems necessary to properly monitor the actions of its delegate.

## SECTION 5

5.1 The express purpose of this Agreement is to establish a Trust for the payment of medical benefits and other welfare benefits as set forth in Section 1.1 hereof. In order to fulfill the purposes of this Trust, Plan Administrator and Committee are is expressly authorized to direct Trustee to establish on its books and records accounts which shall be applicable to reserves incident to certain Plans.

5.2 Should Plan Administrator or Committee exercise the power granted in Section 5.1, he or it shall, upon the establishment of such accounts, notify Trustee of Plans of the welfare benefit that is be funded by such account. Thereafter, Plan Administrator and/or Committee shall have the duty to inform Trustee as to the allocation of any Company contribution that is to be placed in such account and any withdrawal or benefit which is to be paid therefrom. Trustee shall have no duty or responsibility as to the allocation of any contribution or determination as to any withdrawal or benefit payment unless it has received prior or concurrent written instructions from Plan Administrator or Committee.

5.3 The establishment of each account and its maintenance on the books and records of Trustee shall not establish any duty or responsibility on the part of Trustee to be in any manner liable or accountable for any administrative duties with regard to the Plans or welfare benefit for which the account was established.

5.4 Notwithstanding the establishment of such separate account, such account shall be maintained in accordance with the terms and conditions and to the extent necessary to carry out the administrative and investment policies established by Plan Administrator and Committee, respectively, as to each Plan may be considered as a separate Trust maintained under the terms and conditions of an agreement of trust identical to the one herein contained.

## SECTION 6

6.1 The Plans of which this Trust forms a part have therein designated Committee as a Fiduciary. Committee has been granted the power to manage and control contributions made to and in respect of the Plans. Such power includes the authority of Committee at its sole discretion, to appoint one or more Investment Managers. To the extent that Committee shall exercise the power to manage or control Plans' assets held as part of the Fund, Trustee, as to those assets, shall be released and relieved of all investment duties, responsibilities and liabilities normally or statutorily incident to a trustee and thereafter act in the capacity of custodian of such assets. Trustee, in its capacity of custodian, shall retain only those powers and duties set forth in Section 7 hereof as are necessary to its functions as custodian. The other powers shall only be exercised upon the written directions of the Committee. Should the Committee at any time direct Trustee to utilize the services of any broker, dealer, employee or representative of either, or any other person to render service to the Fund, the Committee shall be solely responsible for the acts of such persons. Trustee shall fully comply with the written instructions, if of a continuing nature, until revoked, unless Trustee has actual knowledge that the instructions of the Committee are in contravention of the Act.

6.2 Should the Committee appoint an Investment Manager, the Committee shall so notify Trustee and instruct Trustee in writing to separate into a separate account those assets as to which an Investment Manager has discretion and control. The Committee shall designate in writing the person or persons who are to represent an Investment Manager in dealings with Trustee. Upon the separation of the assets in accordance with the instructions of the Committee, Trustee shall thereupon be relieved and released of all investment duties, responsibilities and liabilities normally and statutorily incident to a trustee as to such separate account, and, as to such separate account, Trustee shall act as custodian. Trustee shall take no action with respect to the duties or powers provided in Section 7 without receipt of written directions of an Investment Manager. Unless specifically denied in writing, Trustee, as custodian, may hold the assets of such separate account in the name of its nominee or nominees.

Should the Investment Manager at any time elect to place security transactions directly with a broker or dealer, Trustee shall not recognize such transaction unless and until it has received instructions or confirmation of such fact from the Investment Manager. Should the Investment Manager direct Trustee to utilize the services of any person with regard to the assets under its management or control, such instructions shall be in writing and shall specifically set forth the actions to be taken by Trustee as to such services.

In the event that an Investment Manager places security transactions directly or directs the utilization of service, the Investment Manager shall be solely responsible for the acts of such persons. The sole duty of Trustee as to such transactions shall be incident to its practices as custodian.

6.3 Unless Committee or an Investment Manager appointed by Committee has exercised the powers contained in subsections 6.1 or 6.2, Trustee shall have the duties of investment of the Fund and shall discharge all its investment duties as provided under Sections 6 and 7 hereof in a manner consistent with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims and by diversifying the investments held hereunder so as to minimize the risk of large losses, unless under the circumstances it would be clearly not prudent to diversify.

6.4 Subject to the foregoing, Trustee shall from time to time invest and reinvest the Fund and keep it invested, without distinction between principal and income, as Trustee in its sole discretion deems advisable.

6.5 Such investments and reinvestments shall not be restricted to securities or property of the character authorized for investments by trustees under any federal statute or other laws of any state, district or territory.

6.6 In addition to any power granted to trustees under any federal statute or other laws, which such laws and statutes, if necessary to effect the purposes of the Trust and this Agreement, are incorporated herein by reference, Trustee's investment powers shall include, but shall not be limited to, investment in the following:

a) publicly traded domestic or foreign common and preferred stock, including warrants, rights and preferred stocks convertible into common stock;

(b) publicly traded corporate bonds and debentures and any such securities which are convertible into common stock, domestic or foreign;

(c) publicly traded bonds or other obligations of the United States of America or any foreign nation, and any agencies thereof, or any bonds or other obligation which are directly or indirectly guaranteed by the United States or any foreign nation or any agency thereof;

(d) obligations of the states and of municipalities or of any agencies thereof;

(e) notes of any nature;

(f) savings accounts, certificates of deposit and other types of time deposits with any financial institution or quasi-financial institution, either domestic or foreign, under the supervision of the United States or any state thereof, including any such financial institution operated or maintained by Trustee in its corporate capacity;

(g) any collective or common trust fund operated and maintained by Trustee, including, but not limited to, demand notes, short-term notes and cash equivalent funds;

(h) any collective, common or pooled trust fund operated or maintained exclusively for the commingling and collective investment of monies or other assets including any such fund operated or maintained by Trustee. Notwithstanding the provisions of this Agreement which place restrictions upon the actions of Trustee or such Investment Manager, to the extent monies or other assets are utilized to acquire units of any collective trust, the terms of the collective trust indenture shall solely govern the investment duties, responsibilities and powers of Trustee of such collective trust and, to the extent required by law, such terms, responsibilities and powers shall be incorporated herein by reference and shall be part of this Agreement. For purposes of valuation, the value of the interest maintained by the Fund in such collective trust shall be the fair market value of the collective fund units held, determined in accordance with generally recognized valuation procedures. Company expressly understands and agrees that any such collective fund may provide for the lending of its securities by the collective fund trustee and that such collective fund's trustee will receive compensation from such collective fund for the lending of securities that is separate from any compensation of Trustee hereunder, or any compensation of the collective fund trustee for the management of such collective fund;

(i) open-end and closed-end investment companies, the purposes for which such fund or funds were created, and any partnership, limited or unlimited, joint venture and other forms of joint enterprise created for any lawful purpose;

(j) individual or group insurance policies and contracts including, but not limited to, life insurance, health, or medical policies and contracts and contracts of reinsurance, but only if directed by Committee or Company to purchase or retain such policies and contracts.

Where used herein "publicly traded" shall mean securities listed on a national securities exchange.

Trustee shall exercise its investment powers in this Section 6 and Section 7 hereof in a manner consistent with Committee's general investment policy and guidelines as exist from time to time and as are communicated in writing to Trustee.

6.7 Trustee may, in its discretion, keep such portion of the Fund in cash or cash balances as deemed advisable from time to time, and shall keep such portion of the Fund in cash or cash balances as may be specified from time to time in a written request of Plan Administrator, Committee, or Company to meet contemplated payments from the Fund. Trustee shall hold such cash or cash balances in a short term investment fund until such time as they are transferred to a payment account on the day on which payment is to be made.

6.8 Should Trustee exercise the powers granted under subsections 6.6 (i) and (j) above, Trustee shall be liable for the actions of the investment company or the insurance company only if:

(a) it participates knowingly in or knowingly undertakes to conceal, an act or omission of such party knowing that such act or omission is a breach of fiduciary duty established by the Act;

(b) by its failure to exercise prudence in the selection of or continued association with either the investment company or insurance company, it has enabled either to commit a breach of fiduciary duty;

(c) having knowledge of a breach of fiduciary duty, it fails to make reasonable efforts under the circumstances to remedy such breach of fiduciary duty.

6.9 Trustee may retain for a reasonable time, for the purpose of evaluation, any property contributed to the Fund in the same form in which contributed. Trustee shall determine the fair value of such property and such value shall be at times binding on Trustee.

6.10 The investments enumerated in this Section shall not be deemed to include any real property, stocks, securities, obligations or other evidences of indebtedness of Company or any subsidiary of Company as determined under any applicable laws regulating the acquisition and holding of such property by plans such as the Plans.

6.11 In addition, Trustee may not invest in any of the investments enumerated above, where Company or any subsidiary of Company is either the seller or the buyer or is a party incident to the transaction.

SECTION 7

7.1 Trustee is authorized and empowered, in addition to powers granted under the Decedents, Estates and Fiduciaries Code of the Commonwealth of Pennsylvania, as

amended, which statute, to the extent of its granting of powers applicable to trusts of a similar nature to this Trust, is incorporated herein by reference:

(a) to sell, exchange, convey, transfer or otherwise dispose of any property held in the Fund and to make any sale by private contract or public auction; and no person dealing with Trustee shall be bound to see to the application of the purchase money or to inquire into the validity, expediency or propriety of any such sale or other disposition;

(b) to vote in person or by proxy any stocks, bonds or other securities held in the Fund, without any obligation to inquire as to or follow the wishes of Company with respect to the voting of any such stocks, bonds or securities;

(c) to exercise any rights appurtenant to any such stocks, bonds or other securities for the conversion thereof into other stocks, bonds or securities, or to exercise rights or options to subscribe for or purchase additional stocks, bonds or other securities, and to make any and all necessary payments with respect to any such conversion or exercise;

(d) to join in, dissent from or oppose the reorganization, recapitalization, consolidation, sale or merger of corporations, or properties of which the Fund may hold stocks, bonds or other securities or in which it may be interested, upon such terms conditions as deemed wise, to pay any expenses, assessments or subscriptions in connection therewith, and to accept any securities or property, whether or not trustees would be authorized to invest in such securities or property, which may be issued upon any such reorganization, recapitalization, consolidation, sale or merger and thereafter to hold the same, without any duty to sell;

(e) to make, execute, acknowledge and deliver any and all deeds, leases, mortgages, assignments, documents of transfer and conveyance and any and all other instruments that may be necessary or appropriate to carry out the powers herein granted;

(f) to borrow or raise monies from any lender, including Trustee in its corporate capacity, if permitted by law, for the benefit of the Fund and in conjunction with its duties under this Agreement of Trust in such amount and upon such terms and conditions as in Trustee's absolute discretion may be advisable; and for any sums borrowed to issue promissory notes as Trustee and to secure the repayments thereof by mortgaging or pledging all or any part of the Fund except any common, collective or pooled trust units which are held in the Fund, the pledge of which shall be forbidden; and no person lending money to Trustee shall be bound to see to the application of the money loaned or to inquire into the validity, expediency or propriety of any such borrowing;

(g) to cause any investment in the Fund to be registered in, or transferred into, Trustee's name or the names of a nominee or nominees or to retain any such investment unregistered or in a form permitting transfer by delivery, provided that the books and records of Trustee shall at all times show that all such investments are part of the Fund;

(h) to hold title to any security or other property as herein provided or to enter into agreements creating partnerships or joint ventures as the Committee may authorize;

(i) to insure against any contingency in any property held in the Fund for any amount and to pay any premiums required for such coverage;

(j) to purchase or otherwise acquire and make payment therefor from the Fund any bond or other form of guarantee or surety required by any authority having jurisdiction over this Trust and its operations, or believed by Trustee to be in the best interests of the Fund, except Trustee may not obtain any insurance whose premium obligation extends to the Fund which would protect Trustee against its liability for breach of fiduciary duty;

(k) to defend against or participate in any legal actions involving the Fund or Trustee in the manner and to the extent requested by Company, the costs of any such defense or participation to be borne by Company, as provided for below;

(l) to enter into any type of contract with any insurance company or companies, either for the purpose of investment or otherwise; provided that no insurance company dealing with Trustee shall be considered to be a party to this Agreement and shall only be bound by and held accountable to the extent of its contract with Trustee. The insurance company need only look to Trustee with regard to any instructions issued and shall make disbursements or payments to any person, including Trustee, as shall be directed by Trustee. Where applicable, Trustee shall be the sole owner of any and all insurance policies or contracts issued. Such contracts or policies, unless otherwise determined, shall be held as an asset of the Fund for safekeeping or custodian purposes only;

(m) to establish and maintain such separate accounts in accordance with the instructions of Committee or Plan Administrator as Committee or Plan Administrator deems necessary for the proper administration of Plans or as determined to be necessary by Trustee. Such accounts shall be subject to the general terms of this Agreement unless Trustee is notified of a contrary intent by Plan Administrator or Committee in writing;

(n) to appoint or designate paying agents, either within or without the Commonwealth of Pennsylvania but not outside territorial limits of the United States of America, and to authorize and empower such paying agents to make

individual payments of benefits under Plans, to control and to account for the same to Trustee and to prepare and file all federal and state forms and reports with respect to such payments, if so requested by Plan Administrator or Committee or if required by applicable law.

(o) to appoint agents, custodians, depositories or counsel, domestic or foreign, as to part or all of the Fund and functions incident thereto where, in the sole discretion of Trustee, such delegation is necessary in order to facilitate the operations of the Fund and such delegation is not inconsistent with the purposes of the Fund or in contravention of any applicable law. To the extent that the appointment of any such person or entity may be deemed to be the appointment of a Fiduciary, Trustee may exercise the powers granted hereby, appoint as such a Fiduciary any person or entity, including, but not limited to, the Plan Administrator, Committee or any Company, notwithstanding the fact that such person or entity is considered a Fiduciary, a Party in Interest or a Disqualified Person. Upon such delegation, Trustee may require such reports, bonds or written agreements as it deems necessary to properly monitor the actions of its delegate.

7.2 In addition, and not by way of limitation, Trustee shall have any and all powers and duties concerning the investment, retention or sale of property held in trust as if it were absolute owner of the property, and no restrictions with regard to the property so held shall be implied, warranted or sustained by reason of this Agreement.

## SECTION 8

8.1 Trustee is hereby granted any and all discretionary powers not explicitly or implicitly conferred by this Agreement which it may deem necessary or proper for the protection of the property held hereunder, including, but not limited to, the power to amend this Agreement, retroactively if necessary, in order to conform it to any applicable statute, regulation or rule.

## SECTION 9

9.1 Trustee shall not engage in or cause the Trust to engage in any transaction if it knows or should know, through normal business sources excepting information received by any department other than the Trust Department of Trustee, which shall not be imputed to Trustee, that such transaction constitutes a direct or indirect:

(a) sale or exchange or leasing of any property between the Trust and a Party in Interest;

(b) lending of money or extension of credit between the Trust and a Party in Interest;

(c) furnishing of goods, services or facilities between the Trust and a Party in Interest;

(d) transfer to or use by or for the benefit of a Party in Interest of any assets of the Trust.

9.2 Notwithstanding the foregoing, Trustee may, in addition to the services rendered in conjunction with its duties and responsibilities as Trustee under the terms of this Agreement, provide such Ancillary Services as meet the following standards:

(a) there have been adopted by Trustee internal safeguards which assure that such Ancillary Services are consistent with sound banking and financial practices as determined by the appropriate banking authority;

(b) the Ancillary Services are provided in accordance with guidelines which are intended to meet the standards established by the appropriate banking authority;

(c) the compensation received by Trustee for such services is reasonable and established in an arm's-length manner.

SECTION 10

10.1 Trustee shall be entitled to compensation for services rendered by it in accordance with the schedule of fees attached hereto as Exhibit A, except that Trustee grants to Company an offset against such total fees for all trusts maintained by Company and its subsidiaries as may be payable the sums of $2,500 and $1,000 in the first year and the second year, respectively, during which this Agreement remains in effect. In addition to such fees, Trustee shall be entitled to all reasonable expenses incurred by Trustee as a result of the execution of its duties hereunder, including, but not limited to, legal and accounting expenses, expenses incurred as a result of disbursements and payments made by Trustee, and reasonable compensation for agents, counsel or other services rendered to Trustee by third parties and expenses incident thereto. Expenses for which Company may reimburse Trustee also include taxes of any kind whatsoever that may be levied or assessed under existing or future laws of any jurisdiction upon or in respect of the Fund. Said schedule of fees is guaranteed for a period of three (3) years from the date Company first contributes monies or property to the Fund. After expiration of said three (3) year period, Trustee shall be entitled to change said schedule of fees upon giving Company sixty (60) days' prior written notice of the effective date of such change in fees.

10.2 Company shall receive notice of all compensation, expenses, taxes and assessments specified herein, and to the extent that they are not paid by Company or unless written objection is filed by Company within thirty (30) days, they shall constitute a charge upon the Fund and be paid to Trustee from the Fund upon written notice from Trustee to Company.

10.3 Trustee shall notify Company with regard to any tax assessments which it receives on any income or property maintained in the Fund and, unless notified to the contrary by Company within ninety (90) days, shall pay any such assessments. If Company notifies Trustee within said period that it is Company's opinion or the opinion of Company's counsel that such assessments are invalid or that they should be contested, then Trustee shall take whatever action is indicated in the notice received from Company or Company's counsel, including contesting the assessment or litigating any claims.

SECTION 11

11.1 Trustee shall keep accurate and detailed accounts of all investments, receipts and disbursements and other transactions hereunder, and all accounts, books and records relating thereto shall be open at all reasonable times to inspection and audit by any person designated by Plan Administrator or Committee.

11.2 Within one hundred twenty (120) days following the close of each fiscal year of the Fund, or following the close of such other period as may be agreed upon between Trustee and Plan Administrator, Committee or Company, and within one hundred twenty (120) days, or such other agreed upon period, unless such period is waived, after the removal of or resignation of Trustee as provided for in this Agreement, Trustee shall file with Plan Administrator, Committee and/or Company a certified written report setting forth all investments, receipts and disbursements, and other transactions effected during such fiscal year or other preceding period to the date of such removal or resignation, including a description of all securities and investment purchases and sales with the cost or net proceeds of such purchases or sales and showing all cash, securities and other property held at the close of such fiscal year or other period, valued currently, and such other information as may be required of Trustee under any applicable law.

11.3 Upon the expiration of one hundred eighty (180) days from the date of filing such annual or other account or financial report, Trustee shall, to the extent permitted by law, be forever released and discharged from any liability or accountability to anyone as respects the propriety of all matters and transactions which are apparent on the account, and would or should be known to Plan Administrator, Committee or Company. Such matters and transactions shall include, but shall not be limited to, clerical errors and miscalculations, inaccurate crediting or changing of any underlying account; provided, however, such matters and transactions shall not include matters of investment selection, retention or fraud. To the extent that Trustee is not permitted by operation of law to be released and discharged, excepting, however, those matters to which Plan Administrator, Committee and/or Company, within such one hundred eighty (180) day period, has filed written objections with Trustee, Company shall indemnify and save harmless Trustee from any and all actions arising by reason of such matters and transactions.

11.4 Committee, Plan Administrator and Company shall not have the right to demand or be entitled to any further or different accounting by Trustee and no eligible retired

salaried/management employee or their qualified beneficiaries or any other person shall have the right to demand or be entitled to any accounting by Trustee, other than those to which they may be entitled under the law.

11.5 Nothing contained herein will be construed or interpreted to deny Trustee the right to have its account judicially determined.

11.6 Notwithstanding any other provision of Plans or this Agreement, Trustee shall not be subject to any liability for any act or omission, regardless of its nature, after the expiration of six (6) years from the date of such act or omission or if earlier, three (3) years after the earliest date on which a plaintiff had knowledge of such act or omission.

11.7 For the purposes of this Section, Trustee shall conclusively presume that Plan Administrator and/or Committee has made all federal filings as of the date required. Should Trustee incur any liability by reason of Plan Administrator's or Committee's failure to timely file, Company shall fully reimburse Trustee for any and all obligations, including penalties, interest or expenses, so incurred by Trustee.

11.8 Trustee shall determine the fair market value of the Fund at such times as may be required to carry out the provisions of this Agreement but shall do so at least annually.

11.9 All records and accounts maintained by Trustee with respect to the Fund shall be preserved for such period as may be required under any applicable law. Upon the expiration of any such required retention period, Trustee shall have the right to destroy such records and accounts after first notifying Plan Administrator, Committee and Company in writing of its intention and transferring to Plan Administrator, Committee or Company any such records and accounts requested. Trustee shall have the right to preserve all records and accounts in original form, or on microfilm, magnetic tape, or any other similar process.

## SECTION 12

12.1 Trustee acknowledges that it assumes the fiduciary duties established by this Agreement.

12.2 Trustee shall not, however, be liable for any loss to or diminution of the Fund except to the extent that any such loss or diminution results from action or inaction on the part of Trustee which is judicially determined to be a breach of its fiduciary duties.

SECTION 13

13.1 Trustee may be removed by Company, upon written notice to Trustee to that effect. Trustee may resign as Trustee hereunder, upon written notice to that effect delivered to Company.

13.2 Such removal or resignation shall become effective as of the last day of the month which coincides with or next follows the expiration of thirty (30) days from the date of the delivery of such written notice, unless an earlier or later date is agreed upon by Company and Trustee.

13.3 In the event of such removal or resignation, a successor trustee shall be appointed by Company to become trustee as of the time such removal or resignation becomes effective, unless all of the Plans have been terminated. Such successor trustee shall accept such appointment by an instrument in writing delivered to Company and Trustee and upon becoming successor trustee shall be vested with all the rights, powers, duties, privileges and immunities as successor Trustee hereunder as if originally designated as trustee in this Agreement.

13.4 Upon such appointment and acceptance, the retiring Trustee shall endorse, transfer, assign, convey and deliver to the successor trustee all of the funds, securities and other property then held by it in the Fund, except such amount as it may consider necessary to cover its compensation and its expenses in connection with the settlement of its accounts and balance remaining of any amount so reserved shall be transferred and paid over to the successor trustee promptly upon settlement of its accounts, subject to the right of the retiring Trustee to retain any property deemed unsuitable by it for transfer until such time as transfer can be made.

13.5 If Trustee holds any property unsuitable for transfer, it shall retain such property, and as to such property alone it shall be a co-trustee with the successor trustee , its duties and obligations being solely limited to any such property. Should the successor trustee accept fiduciary responsibility as to such property, Trustee shall retain only custodian duties as to such property.

13.6 In the event of the removal or resignation of Trustee hereunder, Trustee shall file with Company a statement and report of its accounts and proceedings covering the period from its last annual statement and report, and its liability and accountability to anyone with respect to the propriety of its acts and transactions shown in such written statement and report shall be governed by the terms of this Agreement.

SECTION 14

14.1 Any action by Company pursuant to this Agreement shall be evidenced or empowered in a written manner acceptable to Trustee, and Trustee shall be fully protected in acting in accordance with such writing.

14.2 Any action by Plan Administrator, Committee or Company with respect to any right, power or duty specified in this Agreement shall be in writing, signed by such person or by the person designated by such entity and Trustee shall act and shall be fully protected in acting in accordance with such writing.

14.3 Plan Administrator, Committee and/or Company shall furnish Trustee from time to time with certified copies of resolutions of Company's or its subsidiaries' Board of Directors evidencing the appointment, identity and termination of office of any persons acting as or constituting Plan Administrator or Committee with respect to any right, power or duty specified in this Agreement.

SECTION 15

15.1 Company reserves the right at any time and from time to time by appropriate action acceptable to Trustee:

(a) to modify or amend in whole or in part any or all of this Agreement upon sixty (60) days' prior notice in writing to Trustee; provided, however, that no modification or amendment which affects the rights, duties or responsibility of Trustee may be made without Trustee's consent, or

(b) to terminate Plans or any of them and this Agreement upon sixty (60) days' prior notice in writing delivered to Trustee; provided, further, that no termination, modification or amendment prior to the satisfaction of all liabilities with respect to eligible retired salaried/management employees and their qualified beneficiaries under all Plans shall permit any part of the corpus or income of the Fund to be used for or diverted to purposes other than for the exclusive benefit of such eligible retired salaried/managment employees and their qualified beneficiaries unless prior to or concurrent with such termination Company has insured such benefits.

15.2 Trustee reserves the right to retain such property as it determines, in the exercise of its Fiduciary discretion, is not suitable for distribution at the time of termination of this Agreement. It shall thereafter hold such property as custodian for those persons or other entities entitled to such property until such time as Trustee is able to make distribution. Trustee's duties and obligations with respect to any property while it is being held in accordance with the above shall be purely custodial, in safekeeping of such property prior

to its distribution. Upon completion of distribution of all property constituting the Fund, this Agreement shall be deemed terminated.

15.3 In the event no direction is provided by Plan Administrator, Committee and/or Company with respect to the distribution of the Fund upon termination of this Agreement, Trustee shall obtain a copy of Plans and make such distributions as are specified by Plans. In the event Plans are silent as to the distributions to be made upon termination of Plans, the terms of Plan are inconsistent with the then applicable law or Trustee is unable to obtain a copy of the most recent Plan, Trustee shall distribute the Fund to eligible retired salaried/management employees and their qualified beneficiaries under Plans or other person, class of persons or entity as may be permitted by law in an equitable manner that will not adversely affect the qualified status of any Plan under Section 501(c)(9) of the Code and that will comply with any applicable provisions of the Act. Trustee reserves the right to seek a judicial and administrative determination as to the proper method of distribution of the Fund upon termination of this Agreement.

15.4 If Company ceases to exist as a result of liquidation, dissolution or acquisition in some manner, the Fund shall be distributed as provided above upon termination ofPlans unless a successor company elects to continue Plans and this Agreement as provided in this Agreement.

## SECTION 16

16.1 Any corporation into which Trustee may be merged or with which it may be consolidated, or any corporation resulting from any merger or consolidation to which Trustee is a party, or any corporation succeeding to the trust business of Trustee, shall become the successor of Trustee hereunder, without the execution or filing of any instrument of the performance of any further act on the part of the parties hereto.

16.2 Any corporation into which Company may be merged or with which it may be consolidated, or any corporation succeeding to all or a substantial part of the business interests of Company may become Company hereunder if it elects to continue the Plans and this Agreement and files a notice in writing to that effect with Trustee.

## SECTION 17

17.1 Trustee accepts the Trust created hereunder and agrees to be bound by all the terms of this Agreement.

SECTION 18

18.1 Except as heretofore provided, no company, eligible retired salaried/management employee or their qualified beneficiaries of the Plans or other person, class of persons or entity shall have any interest in or right to the assets of this Trust, and to the full extent of all applicable laws, the assets of this Trust shall not be subject to any form of attachment, garnishment, sequestration or other actions afforded creditors of Company, eligible retired salaried/management employee or their qualified beneficiaries, or other person, class of persons or entity. Trustee shall take cognizance of no assignment or alienation of benefits unless, and then only to the extent required by and if written notice to that effect is received from Plan Administrator, Committee or Company.

SECTION 19

19.1 This Agreement shall be construed and enforced, to the extent possible, according to the laws of the Commonwealth of Pennsylvania, and all provisions hereof shall be administered according to the laws of said Commonwealth and any federal laws, regulations or rules which may from time to time be applicable.

SECTION 20

20.1 To the extent permitted by law, Trustee, Plan Administrator, Committee and Company shall all be necessary parties in any application to the courts for an interpretation of this Agreement or for an accounting by Trustee, and no eligible retired salaried/management employee or their qualified beneficiaries under Plans or other person, class of persons or entity having an interest in the Fund shall be entitled to any notice or service of process. Any final judgment entered in such an action or proceeding shall, to the extent permitted by law, be conclusive upon all persons claiming under this Agreement or Plan.

SECTION 21

21.1 Any company or entity which is a subsidiary of Company or which may be affiliated with Company in any way and which is now or may hereafter be organized under the laws of the United States of America, or of any State or Territory thereof may, with the approval of the Board of Directors of Company, by resolution of its own Board of Directors, adopt this Agreement if such subsidiary or affiliate shall have adopted any plan to which this Trust applies; provided that a separate trust shall be deemed to have been created with respect to each plan of such subsidiary or affiliate.

21.2 Any such subsidiary or affiliate may at any time segregate its trust from further participation in this Agreement. In such event, such subsidiary or affiliate shall file with

Trustee a document evidencing its segregation from the Fund and its continuance of a separate trust in accordance with the provisions of this Agreement as though such subsidiary or affiliate were the sole creator thereof. In such event, Trustee shall deliver to itself as Trustee of such separate trust such share of the Fund as may be determined by Trustee to constitute the appropriate share of the Fund then held in respect of the eligible retired employees and their qualified beneficiary of such subsidiary or affiliate. Such subsidiary or affiliate may thereafter exercise, in respect of such separate trust, all of the rights and powers reserved to Company under the provisions of this Agreement.

SECTION 22

22.1 Upon this Trust's being issued a favorable determination by the Internal Revenue Service that the Plans and the Trust meet the requirements of Section 501(c)(9), neither the income nor other assets of the Trust will inure to any person other than by payment of the benefits provided by the Plans, except as may otherwise be permitted by law.

SECTION 23

23.1 This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and said counterparts shall constitute but one and the same instrument and may be sufficiently evidenced by any one counterpart.

SECTION 24

24.1 This Agreement shall not constitute or be interpreted or construed as creating any restriction upon the right of Company or any subsidiary of Company in its or their sole discretion to amend, modify, terminate in part or in whole, or terminate and replace with other plans, the Plans or any of them which are funded under this Agreement as such right is hereby expressly reserved.

24.2 The board of directors of Company or Company's subsidiaries may exercise such right set forth in Section 24.1 hereof by a formally approved resolution in accordance with the established process of such board of directors.

24.3 Company reserves the right at any time and from time to time to terminate or amend, in whole or in part, any or all of the provisions of this Agreement by notice thereof in writing delivered to Trustee; provided that no such amendment which affects the rights, duties or responsibilities of Trustee may be made without its consent, and provided further that, except as may be otherwise provided under Section 403(d) of the Act, as the same may be amended from time to time, no instrument of termination or amendment shall authorize or permit any part of the Fund to be used for or diverted to purposes other than for the exclusive benefit of eligible retired salaried/management employees and their qualified beneficiaries as provided in the Plans, or such other person, class of persons or entity as may be permitted by law.

**EXHIBIT A**
**SCHEDULE OF FEES**
**AGREEMENT BETWEEN**
**CONSOLIDATED NATURAL GAS COMPANY**
**AND**
**MELLON BANK, N.A.**
**DATED MARCH 31, 1994**

I. Account Manager Fee:
$3,000 per account per annum for the first 5 managers
$2,000 per account per annum thereafter

II. Sub-Account Fee:
$500 per account per annum

III. Actively Managed Asset Fee:
.02 of 1% (.00020) per annum on the first $50,000,00
.01 of 1% (.00010) per annum thereafter

IV. Commingled Fund Asset Fee:
.01 of 1% (.00010) per annum

V. Security Transaction Fee:
$18 per transaction
N/C Income & Dividend Collection

VI. Cash Sweep Fee:
.12 of 1% (.00120) per annum based on daily balances

VII. Wire Transfer/ACH:
$10 per outgoing wire transfer (Waived)
$2 per incoming wire transfer (Waived)
$1 per ACH

VIII. Non-Periodic Disbursement:
$8.00 per payee plus postage

IX. Performance Measurement Fee:
Subject to negotiation based on the service level and complexity of the requirements.

X. Tax Reporting Fee:
$165 per hour

IN WITNESS OF, this Agreement is executed as of the 31st day of March, 1994

ATTEST:

Laura J. McKeown
Corporate Secretary

CONSOLIDATED NATURAL GAS COMPANY

By G. D. Johnson
Name: L. D. Johnson
Title: Executive Vice President
and Chief Financial Officer

ATTEST:

James Shull
~~Secretary~~
ASSISTANT VICE PRESIDENT

MELLON BANK, N.A.

By E. Kleckner
Name: EARL KLECKNER
Title: VICE PRESIDENT

EXAMINED AND APPROVED AS TO FORM
WKN
LEGAL DEPARTMENT

# Exhibit C

11/2001
VEBA

# RETIREE MEDICAL

# WELFARE TRUST AGREEMENT

by and among

DOMINION RESOURCES, INC.

DOMINION RESOURCES SERVICES, INC.

and

MELLON BANK, N.A.

# RETIREE MEDICAL WELFARE TRUST AGREEMENT

## TABLE OF CONTENTS

SECTION PAGE


**SECTION 1 GENERAL.......... 2**

1.1 Definitions.......... 2
1.2 Compliance With Law.......... 2
1.3 Plan Establishment.......... 3

**SECTION 2 ESTABLISHMENT OF TRUST.......... 3**

2.1 Appointment and Acceptance of Trustee.......... 3
2.2 Trustee Responsibilities.......... 3
2.3 Contributions.......... 3
2.4 Exclusive Benefit.......... 4
2.5 Distributions.......... 4

**SECTION 3 AUTHORITIES.......... 4**

3.1 Authorized Parties.......... 4
3.2 Authorized Instructions.......... 5

**SECTION 4 POWERS AND DUTIES.......... 5**

4.1 General Powers and Duties of Trustee.......... 5
4.2 Power of Attorney.......... 7
4.3 Contractual Income and Settlement; Market Practice Settlement.......... 7

**SECTION 5 INVESTMENT OF THE FUND.......... 8**

5.1 Appointment of Investment Managers.......... 8
5.2 Directed Powers of Trustee.......... 8
5.3 Standard of Care.......... 9
5.4 Force Majeure.......... 10

**SECTION 6 REPORTING AND RECORDKEEPING.......... 10**

6.1 Review of Reports.......... 10
6.2 Non-Fund Assets.......... 10

**SECTION 7 COMPENSATION, EXPENSES, TAXES, INDEMNIFICATION... 10**

7.1 Compensation and Expenses.......... 10
7.2 Tax Obligations.......... 11
7.3 Indemnification.......... 12
7.4 Damages.......... 12

**SECTION 8 AMENDMENT, TERMINATION, RESIGNATION, REMOVAL... 12**

8.1 Amendment.......... 12
8.2 Removal or Resignation of Trustee.......... 12

8.3 Plan Termination .......... 13
8.4 Property Not Transferred .......... 13

**SECTION 9 ADDITIONAL PROVISIONS .......... 13**

9.1 Assignment or Alienation .......... 13
9.2 Successors and Assigns .......... 13
9.3 Governing Law .......... 13
9.4 Necessary Parties .......... 14
9.5 No Third Party Beneficiaries .......... 14
9.6 Representations .......... 14
9.7 Execution in Counterparts .......... 14

**EXHIBIT A CROSS-TRADING INFORMATION .......... 16**

**EXHIBIT B LIST OF COVERED PLANS .......... 18**

# RETIREE MEDICAL WELFARE TRUST AGREEMENT

**THIS TRUST AGREEMENT**, effective as of the 20th day of December, 2001 is by and between **DOMINION RESOURCES, INC.** (the "Company"), in its corporate capacity, **DOMINION RESOURCES SERVICES, INC.**, as the Named Fiduciary (as defined below) of each Plan (as defined below) covered hereunder, and **MELLON BANK, N.A.** (the "Trustee").

**WITNESSETH:**

**WHEREAS**, the Company has established or will establish one or more welfare benefit plans to provide retiree medical and other benefits for the benefit of those retired employees who are eligible for coverage thereunder; and

**WHEREAS**, the Company has provided that it shall self-insure these welfare benefits under the terms and conditions of the various welfare plans which it maintains; and

**WHEREAS**, the Company is desirous of establishing with the Trustee a trust for the purpose of funding certain welfare benefits provided under certain of its welfare benefit plans (each such welfare benefit plan which is funded in whole or in part hereunder is referred to as a "Plan", and all such welfare benefit plans are collectively referred to as the "Plans"); and

**WHEREAS**, it is the intent of the Company that the Trust established by this agreement be in the form and be in operation at all times so as to comply with the requirements of Section 501(c)(9) of the Internal Revenue Code of 1986, as amended (the "Code"), and applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and

**WHEREAS**, this Trust, either in whole or in part, shall not be used for nor shall any of the income or other assets held under the terms of this agreement be used for purposes other than the payment of welfare benefits or the expenses incident thereto or expenses of the Trust; and

**WHEREAS**, each Plan of which this Trust forms a part provides for one or more fiduciaries named in the Plan, or identified as a fiduciary pursuant to procedures specified in the Plan, which has been allocated the power to manage and control the assets of such Plan (the "Named Fiduciary").

**WHEREAS**, the Company intends that this Trust be the recipient of certain assets currently held under a Welfare Trust Agreement dated March 31, 1994 between the Trustee and Consolidated Natural Gas Company ("CNG"), a wholly-owned subsidiary of the Company.

**NOW, THEREFORE,** intending to be legally bound, the Company, in its corporate capacity, the Named Fiduciary, and the Trustee covenant and agree as follows:

**SECTION 1 - GENERAL**

**1.1 Definitions**. The terms used herein shall have the following meanings:

a. **"Agreement"** means this instrument, including all amendments thereto.

b. **"Authorized Instructions"** means all directions and instructions to the Trustee from an Authorized Party provided in accordance with Section 3.2 of this Agreement.

c. **"Authorized Party"** means any person or entity properly identified by the Company, the Named Fiduciary, or the Investment Manager to the Trustee in accordance with Section 3.1 of this Agreement.

d. **"Code"** means the Internal Revenue Code of 1986, as amended.

e. **"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended.

f. **"Fund"** means the assets held pursuant to this Agreement as such assets shall exist from time to time. Notwithstanding anything else in this Agreement to the contrary, including, without limitation, any specific or general power granted to the Trustee, including the power to invest in real property, no portion of the Fund shall be directly invested in real estate.

g. **"Insurance Contract"** shall mean any contract or policy of any kind issued by an insurance company, whether or not providing for the allocation of amounts received by the insurance company thereunder solely to the general account or solely to one or more separate accounts, or a combination thereof, and whether or not any such allocation may be made in the discretion of the insurance company or the Named Fiduciary.

h. **"Investment Manager"** means an investment manager, within the meaning of Section 3(38) of ERISA, with respect to the Fund which has been appointed by the Named Fiduciary pursuant to Section 5.1.

i. **"Tax Obligations"** means taxes, withholding, certification and reporting requirements, claims for exemptions or refund, interest, penalties, additions to tax and other related expenses.

j. **"Trust"** means the trust created by this Trust Agreement.

**1.2 Compliance With Law**. The Trust is intended to comply with ERISA and to be tax-exempt under Section 501(c)(9) of the Code. The Company has taken such action and has filed such documents, or will in a timely manner take such action and file such

documents, as are required under Section 505(c) of the Code to notify the Internal Revenue Service that the Trust is applying for recognition as an organization which is exempt from tax under Code Section 501(c)(9). Moreover, the Company shall be responsible for taking such action and filing such documents with respect to each Plan as may be required by the Code or ERISA, and the Company agrees to notify the Trustee promptly of any notification or determination by the Internal Revenue Service which adversely affects the Trust's status as a tax-exempt organization.

1.3 **Plan Establishment**. The form and nature of each Plan shall be established exclusively by the Company; provided, however, that each Plan or portion of a Plan covered by this Trust shall provide for the payment of sickness, accident, or other benefits to employees or their beneficiaries. The phrase "other benefits" shall not, however, include any benefit which is due solely to attainment of age or service and is considered to be a retirement benefit, nor shall such phrase include life insurance benefits for retirees. The Company shall be solely responsible for each Plan's compliance with the Code and ERISA, including (but not limited to) the nondiscrimination requirements of Code Section 505(b).

The current list of Plans is set forth in Exhibit B. Exhibit B may be updated from time to time by the Company without the necessity of a formal amendment to the Agreement.

## SECTION 2 - ESTABLISHMENT OF TRUST

2.1 **Appointment and Acceptance of Trustee**. The Company and the Named Fiduciary hereby appoint **MELLON BANK, N.A.** as Trustee of the Trust with respect to the Fund. The Fund shall be held by the Trustee in trust and dealt with in accordance with the provisions of this Agreement. The Trustee hereby accepts its appointment as trustee, acknowledges that it assumes the duties established by this Agreement, and agrees to be bound by the terms contained herein.

2.2 **Trustee Responsibilities**. The Trustee is not a party to, and has no duties or responsibilities under, any Plan other than those that may be expressly contained in this Agreement. In any case in which a provision of this Agreement conflicts with any provision in any Plan, this Agreement shall control. The Trustee shall have no duties, responsibilities, or liability with respect to the acts or omissions of any prior trustee.

2.3 **Contributions**. The Trustee agrees to accept contributions that are paid to it by the Company in accordance with the terms of this Agreement. Such contributions shall be in cash or in such other form that may be acceptable to the Trustee. The Trustee shall have no duty to determine or collect contributions under the Plan, shall have no responsibility for any property until it is received and accepted by the Trustee, and shall not be responsible for the adequacy of the Fund to meet and discharge any liabilities under any Plan. The Company shall have the sole duty and responsibility for the determination of the accuracy or sufficiency of the contributions to be made under each Plan, the transmittal of the same to the Trustee, and compliance with any statute,

regulation, or rule applicable to contributions. The initial funding for the Trust will be from a transfer of assets from the Welfare Trust Agreement dated March 31, 1994 between the Trustee and CNG. The Named Fiduciary will determine the amount of the transfer.

2.4 **Exclusive Benefit**. This Trust is established for the exclusive benefit of the participants and their beneficiaries. This Agreement shall be interpreted in a manner consistent with that intent and with the intention of the Company that the Trust hereunder satisfy those provisions of the Code relating to voluntary employee beneficiary associations. The assets of the Trust allocable to any Plan shall be held for the exclusive purposes of (i) providing benefits to employees participating in the Plan and their beneficiaries, and (ii) defraying the reasonable expenses of administering the Plan and the Trust. Notwithstanding the foregoing provisions of this Section 2.4, if a contribution is made by a Company because of a mistake of fact, then the contribution, decreased by any losses thereon, may be returned to the Company within one year after it is contributed to the Trust.

2.5 **Distributions**. The Trustee shall make distributions or transfers out of the Fund pursuant to Authorized Instructions. To the extent that assets are held in checking accounts outside of the Fund pursuant to Authorized Instructions, the Named Fiduciary shall cause such assets to be held in trust and in accordance with the bonding requirements of Section 412 of ERISA, secure from the claims of all creditors of the Company (or the Named Fiduciary or any participant or beneficiary covered by any Plan). The Company hereby agrees that the Authorized Party shall have the exclusive responsibility, and the Trustee shall not have any responsibility or duty under this Agreement, for determining that the Authorized Instructions are in accordance with Plan terms and applicable law, including without limitation, the amount, timing, or method of payment and the identity of each person to whom such payments shall be made. The Trustee shall have no responsibility or duty to determine the tax effect of any payment or to see to the application of any payment. In making payments to service providers pursuant to Authorized Instructions, the Company acknowledges that the Trustee is acting as a paying agent, and not as the payor, for tax information reporting and withholding purposes.

## SECTION 3 - AUTHORITIES

3.1 **Authorized Parties**. The Company shall furnish the Trustee with a written list of the names, signatures, and extent of authority of all persons authorized to direct the Trustee and otherwise act on behalf of the Company and each Plan under the terms of this Agreement. The Named Fiduciary will provide the Trustee with a written list of the names, signatures, and extent of authority of all persons authorized to act on behalf of the Named Fiduciary. The Named Fiduciary shall cause each Investment Manager appointed in accordance with Section 5.1 to furnish the Trustee with a written list of the names and signatures of the person or persons who are authorized to represent the Investment Manager. The Trustee shall be entitled to rely on and shall be fully protected in acting upon direction from an Authorized Party until notified in writing by the Company,

Investment Manager, or Named Fiduciary, as appropriate, of a change in the identity of an Authorized Party, and the Trustee shall not be responsible or liable for any diminution of value of any securities or other property held by the Trustee (or its subcustodians).

3.2 <u>Authorized Instructions</u>. All directions and instructions to the Trustee from an Authorized Party shall be in writing, transmitted by mail or by facsimile or electronic transmission; provided, however, that the Trustee may, in its discretion, accept oral directions and instructions and may require confirmation in writing. The Trustee shall be entitled to rely on and shall be fully protected in acting in accordance with all such directions and instructions which it reasonably believes to have been given by an Authorized Party and in failing to act in the absence thereof.

## SECTION 4 - POWERS AND DUTIES

4.1 <u>General Powers and Duties of Trustee</u>. In administering the Trust, the Trustee shall be specifically authorized to:

a. Appoint custodians, subcustodians, or subtrustees, domestic or foreign (including affiliates of the Trustee), as to part or all of the Fund, except that the indicia of ownership of any asset of the Fund shall not be held outside the jurisdiction of the District Courts of the United States unless in compliance with Section 404(b) of ERISA and regulations thereunder; provided, however, that the Trustee shall not be liable for the acts or omissions of any custodian, subcustodian or subtrustee appointed under this Section 4.1 pursuant to Authorized Instructions;

b. Hold property in nominee name, in bearer form, or in book entry form, in a clearinghouse corporation or in a depository (including an affiliate of the Trustee), so long as the Trustee's records clearly indicate that the assets held are a part of the Fund; provided, however, that the Trustee shall not be responsible for any losses resulting from the deposit or maintenance of securities or other property (in accordance with market practice, custom, or regulation) with any recognized foreign or domestic clearing facility, book-entry system, centralized custodial depository, or similar organization;

c. Collect income payable to and distributions due to the Fund and sign on behalf of the Trust any declarations, affidavits, certificates of ownership, and other documents required to collect income and principal payments, including but not limited to, tax reclamations, rebates, and other withheld amounts; provided that the Trustee shall not be responsible for the failure to receive payment of (or late payment of) distributions with respect to securities or other property of the Fund;

d. Subject to the timely receipt of notice from an issuer or an Authorized Party, collect proceeds from securities, certificates of deposit, or other investments which may mature or be called;

e. Submit or cause to be submitted to the Named Fiduciary or the Investment Manager, as designated by the Named Fiduciary, on a best efforts basis all information

actually received by the Trustee regarding ownership rights pertaining to property held in the Fund;

f. Attend to involuntary corporate actions;

g. Determine the fair market value of the Fund monthly, or for such other period as may be mutually agreed upon, in accordance with methods consistently followed and uniformly applied. In determining fair market value of the Fund, the Trustee shall be entitled to rely on and shall be protected in relying on values provided by an Authorized Party;

h. Render periodic statements for property held hereunder;

i. Commence or defend suits or legal proceedings and represent the Fund in all suits or legal proceedings in any court or before any other body or tribunal as the Trustee shall deem necessary to protect the Fund;

j. Employ suitable agents and legal counsel, who may be counsel for the Company, and, as a part of its reimbursable expenses under this Agreement, pay their reasonable compensation and expenses. The Trustee shall be entitled to rely on and may act upon advice of counsel on all matters, and shall be without liability for any action reasonably taken or omitted pursuant to such advice;

k. Deposit cash in interest bearing accounts in the banking department of the Trustee or an affiliated banking organization;

l. Take all action necessary to pay for authorized transactions or make authorized distributions, including exercising the power to borrow or raise monies from any lender, which may be the Trustee in its corporate capacity or any affiliate or agent of the Trustee, upon such terms and conditions as are necessary to settle such transactions or distributions;

m. Take any and all actions, including the appointment of agents to settle transactions in futures and/or options contracts, short-selling programs, foreign exchange or foreign exchange contracts, swaps, synthetic GICs, BICs, and similar instruments and other derivative investments;

n. Make, execute, and deliver any and all documents, agreements, or other instruments in writing as is necessary or desirable for the accomplishment of any of the powers and duties in this Agreement;

o. To establish and maintain such separate accounts in accordance with Authorized Instructions, or as determined to be necessary by the Trustee. Such accounts shall be subject to the general terms of this Agreement unless the Trustee is notified of a contrary intent by Authorized Instructions; and

p. Generally take all action, whether or not expressly authorized, which the Trustee may deem necessary or desirable for the fulfillment of its duties hereunder.

The powers described in this Section 4.1 may be exercised by the Trustee with or without Authorized Instructions, but where the Trustee acts on Authorized Instructions, the Trustee shall be fully protected as described in Section 3.2. Without limiting the generality of the foregoing, the Trustee shall not be liable for the acts or omissions of any subcustodian appointed under paragraph (a) of this Section 4.1 pursuant to Authorized Instructions including, but not limited to, any broker-dealer or other entity designated by the Client or Investment Manager to hold any property of the Account as collateral or otherwise pursuant to investment strategy.

**4.2 Power of Attorney**. The Named Fiduciary appoints the Trustee as the Trust's true and lawful attorney-in-fact and authorizes the Trustee to delegate the power of attorney to its global subcustodians with full powers of substitution to:

a. Sign, file, and deliver all requests or claims for refund or reduction of, or exemption from, any withholding or similar taxes, collect the refund of the tax, and transfer the amounts collected as directed;

b. Vote securities or execute proxies held in the Trust, as directed, and exercise rights, as directed, related to the securities as a result of corporate actions; and

c. Safekeep securities in the name of the Trust, receive dividends, interest, other payments, and sale proceeds on behalf of the Trust, sign on behalf of the Trust any and all forms pertaining to instructions for sale or purchase of securities, and give specific instructions regarding securities, cash, and related transactions that are registered in the name of the Trust.

The global subcustodian is authorized to perform any other actions necessary to carry out the intent of this Section. Any charges or expenses incurred in connection with acts permitted under this Section shall be paid by the Trust.

**4.3 Contractual Income and Settlement; Market Practice Settlement**.

a. Contractual Income. In accordance with the Trustee's standard operating procedure, the Trustee shall credit the Fund with income and maturity proceeds on securities on contractual payment date net of any taxes or upon actual receipt. To the extent that the Trustee credits income on contractual payment date, the Trustee may reverse such accounting entries to the contractual payment date if the Trustee reasonably believes that such amount will not be received.

b. Contractual Settlement. In accordance with the Trustee's standard operating procedure, the Trustee will attend to the settlement of securities transactions on the basis of either contractual settlement date accounting or actual settlement date accounting. To the extent that the Trustee settles certain securities transactions on the basis of contractual settlement date accounting, the Trustee may reverse to the contractual settlement date any

entry relating to such contractual settlement if the Trustee reasonably believes that such amount will not be received.

c. Market Practice Settlement. Settlements of transactions may be effected in trading and processing practices customary in the jurisdiction or market where the transaction occurs. The Named Fiduciary acknowledges that this may, in certain circumstances, require the delivery of cash or securities (or other property) without the concurrent receipt of securities (or other property) or cash. In such circumstances, the Trustee shall have no responsibility for nonreceipt of payment (or late payment) or nondelivery of securities or other property (or late delivery) by the counterparty.

## SECTION 5 - INVESTMENT OF THE FUND

5.1 **Appointment of Investment Managers**. The Named Fiduciary shall have the power to appoint and remove one or more Investment Managers, which may be the Trustee or an affiliate of the Trustee. Except as may be provided in a separate investment management agreement, the Trustee shall not be responsible, directly or indirectly, for the investment or reinvestment of the assets of the Fund, which investment and reinvestment shall be the sole responsibility of the Named Fiduciary unless otherwise delegated by the Named Fiduciary. The Trustee shall be entitled to rely entirely on an Investment Manager's directions, shall be under no duty to determine or make inquiry whether an Investment Manager's directions received by it are in accordance with the provisions of any Plan or applicable law, and shall have no duty to review or recommend the sale, retention, or other disposition of any assets purchased or retained in accordance with an Investment Manager's directions. The Trustee shall have no liability for any loss to the Fund resulting from the purchase, sale, or retention of any assets in accordance with an Investment Manager's directions, or resulting from not having sold such assets so purchased or retained in the absence of an Investment Manager's directions, to make such sale or take any other action. The Trustee shall be fully indemnified by the Company for any action taken in accordance with, or any failure to act in the absence of, an Investment Manager's directions.

5.2 **Directed Powers of Trustee**. In addition to the powers enumerated in Section 4.1, the Trustee shall have and exercise the following powers and authority in the administration of the Fund upon the direction of the Named Fiduciary or an Investment Manager:

a. Settle purchases and sales and engage in other transactions, including free receipts and deliveries, exchanges, and other voluntary corporate actions, with respect to securities or other property received by the Trustee;

b. Execute proxies for any securities held in the Fund;

c. Lend the assets on behalf of the Fund in accordance with the terms and conditions of a separate securities lending agreement;

d. Purchase, sell, write, or issue puts, calls, or other options, covered or uncovered, enter into financial futures contracts, forward placement contracts, and standby contracts, and in connection therewith, deposit, hold (or direct the Trustee or an affiliate of the Trustee, in its individual capacity to deposit or hold), or pledge assets of the Fund;

e. Settle investments in any collective investment fund, including a collective investment fund maintained by the Trustee or an affiliate and appoint agents and sub-trustees. To the extent that any investment is made in any such collective investment fund, the terms of the collective trust indenture shall solely govern the investment duties, responsibilities, and powers of the trustee of such collective investment fund and, to the extent required by law, such terms, responsibilities, and powers shall be incorporated herein by reference and shall be a part of this Agreement. For purposes of valuation, the value of the interest maintained by the Fund in such collective investment fund shall be the fair market value of the collective investment fund units held, determined in accordance with generally recognized valuation procedures. The Named Fiduciary expressly understands and agrees that any such collective investment fund may provide for the lending of its securities by the collective investment fund trustee and that such collective investment fund trustee will receive compensation for the lending of securities that is separate from any compensation of the Trustee hereunder, or any compensation of the collective investment fund trustee for the management of such fund. The Trustee is authorized to invest in a collective fund which invests in Mellon Financial Corporation stock in accordance with the terms and conditions of the Department of Labor Prohibited Transaction Exemption 95-56 (the "Exemption") granted to Mellon Bank, N.A. and its affiliates and to use a cross-trading program in accordance with the Exemption. The Named Fiduciary acknowledges receipt of the notice entitled "Cross-Trading Information", a copy of which is attached to this Agreement as Exhibit A; and

f. Enter into any Insurance Contract with any insurance company or companies, either for the purposes of investment or otherwise. The Trustee shall not be responsible in any way for the form, terms, payment provisions, or issuer of any Insurance Contract which it is directed to purchase and hold to provide for the payment of benefits, or for performing any functions under any such Insurance Contract which it may be directed to purchase and hold as contract holder thereunder (other than the execution of any documents incidental thereto and transfer or receipt of funds thereunder in accordance with the Named Fiduciary's directions).

**5.3 Standard of Care.** The Trustee shall discharge its duties under this Agreement with the care and skill required under ERISA with respect to such duties. The Trustee shall not be responsible for the title, validity, or genuineness of any property or evidence of title thereto received by it or delivered by it pursuant to this Agreement and shall be held harmless in acting upon any notice, request, direction, instruction, consent, certification, or other instrument believed by it to be genuine and delivered by the proper party or parties. The Trustee shall not be responsible or liable for any losses or damages suffered by the Fund arising as a result of the insolvency of any custodian, subtrustee, or

subcustodian, except to the extent that the Trustee was negligent in its selection or continued retention of such entity.

5.4 <u>Force Majeure</u>. Notwithstanding anything contained in this Agreement to the contrary, the Trustee shall not be responsible or liable for its failure to perform under this Agreement or for any losses to the Fund resulting from any event beyond the reasonable control of the Trustee, its agents, or its subcustodians, including but not limited to nationalization, strikes, expropriation, devaluation, seizure, or similar action by any governmental authority, de facto or de jure; or enactment, promulgation, imposition, or enforcement by any such governmental authority of currency restrictions, exchange controls, levies, or other charges affecting the Fund's property; or the breakdown, failure, or malfunction of any utilities or telecommunications systems; or any order or regulation of any banking or securities industry including changes in market rules and market conditions affecting the execution or settlement of transactions; or acts of war, terrorism, insurrection, or revolution; or acts of God; or any other similar event. This Section shall survive the termination of this Agreement.

## SECTION 6 - REPORTING AND RECORDKEEPING

6.1 <u>Review of Reports</u>. If, within ninety (90) days after the Trustee mails to the Named Fiduciary a statement with respect to the Fund, the Named Fiduciary has not given the Trustee written notice of any exception or objection thereto, the statement shall be deemed to have been approved, and, in such case, the Trustee shall not be liable for any matters in such statements. The Company or its agent shall have the right, at its own expense and with prior written notice to the Trustee, to inspect the Trustee's books and records directly relating to the Fund during normal business hours.

6.2 <u>Non-Fund Assets</u>. The duties of the Trustee shall be limited to the assets held in the Fund, and the Trustee shall have no duties with respect to assets held by any other person including, without limitation, any other trustee for the Plan. The Company hereby agrees that the Trustee shall not serve as, and shall not be deemed to be, a co-trustee under any circumstances. The Named Fiduciary may request the Trustee to perform a recordkeeping service with respect to property held by others and not otherwise subject to the terms of this Agreement. To the extent that the Trustee shall agree to perform this service, its sole responsibility shall be to accurately reflect information on its books which it has received from an Authorized Party.

## SECTION 7 - COMPENSATION, EXPENSES, TAXES, INDEMNIFICATION

7.1 <u>Compensation and Expenses</u>. The Trustee shall be entitled to compensation for services under this Agreement as mutually agreed. The Named Fiduciary acknowledges that, as part of the Trustee's compensation, the Trustee may earn interest on balances, including without limitation, disbursement balances and balances arising from purchase and sale transactions. The Trustee shall also be entitled to reimbursement for reasonable expenses incurred by it in the discharge of its duties under this Agreement.

All such fees and expenses shall be charged to and collected from the Fund unless paid by the Company.

If the Trustee advances cash or securities for any purpose, including the purchase or sale of foreign exchange or of contracts for foreign exchange, or in the event that the Trustee shall incur or be assessed taxes, interest, charges, expenses, assessments, or other liabilities in connection with the performance of this Agreement, except such as may arise from its own negligent action, negligent failure to act, or willful misconduct, any property at any time held for the Fund shall be security therefor and the Trustee shall be entitled to collect from the Fund sufficient cash for reimbursement, and if such cash is insufficient, dispose of the assets of the Fund to the extent necessary to obtain reimbursement. To the extent that the Trustee advances funds to the Fund for disbursements or to effect the settlement of purchase transactions, the Trustee shall be entitled to collect from the Fund either (i) with respect to domestic assets, an amount equal to what would have been earned on the sums advanced (an amount approximating the "federal funds" interest rate), or (ii) with respect to nondomestic assets, the rate applicable to the appropriate foreign market.

**7.2 Tax Obligations.**

a. General Responsibilities.

(1) The Trustee shall prepare and file any U.S. tax return or report and pay any amounts due (based on information in the Trustee's possession and to the extent funded) as required by law for a trustee, unless the Company otherwise directs in writing. In addition to the foregoing, the Trustee shall provide such other services with respect to Tax Obligations (as defined below) as requested by the Company and agreed to by the Trustee in writing. Except as otherwise provided in this Section, the Trustee shall have no obligation or liability with respect to Tax Obligations, including, without limitation, any obligation to file or submit returns or reports with any taxing authorities.

(2) The Trustee may consult with and rely upon the Company in all matters pertaining to Tax Obligations. The Company shall provide and/or shall cause any party it designates ("Designated Party") to provide information necessary for the Trustee to fulfill its obligations with respect to Tax Obligations in a timely manner. The Trustee shall be fully protected in relying upon its consultations with the Company and on any information provided by the Company or a Designated Party.

(3) To the extent the Company desires a Designated Party to undertake responsibilities with respect to Tax Obligations, including those Tax Obligations imposed on the Trustee under any law, the Company shall inform the Trustee in writing as to which Designated Party or Parties have been delegated such responsibilities and should receive information from the Trustee. The Trustee shall provide to the Company or a Designated Party on a timely basis any information in the Trustee's possession requested by the Company or a Designated Party to fulfill its responsibilities with respect to a Tax Obligation. The Company shall be solely responsible to cause the Designated Party to

fulfill such responsibilities. The Company shall indemnify the Trustee with respect to any liability concerning Tax Obligations resulting from the actions or failures to act of the Company or the Designated Party.

b. Specific Responsibilities.

(1) The Trustee shall make reasonable efforts to file claims for exemptions or refunds with respect to withheld foreign (non-U.S.) taxes where such claims may be appropriate.

(2) If The Trustee makes payments to service providers pursuant to Authorized Instructions, the Company acknowledges that the Trustee is acting as a paying agent, and not as the payor, for tax information reporting and withholding purposes.

The Trustee shall provide the Company, or a Designated Party any data or materials received by the Trustee concerning potential unrelated business taxable income. However, the Trustee shall have no responsibility to independently collect data or informational materials with respect to unrelated business taxable income received by the Trust or to prepare and file any forms to report unrelated business taxable income to the Trust. Pursuant to Authorized Instructions, the Trustee shall pay from the Trust the amount of any unrelated business income tax due, as determined by the Company, or a Designated Party.

7.3 **Indemnification**. The Company shall indemnify and hold harmless the Trustee from all claims, liabilities, losses, damages, and expenses, including reasonable attorneys' fees and expenses incurred by the Trustee in connection with this Agreement, except as a result of the Trustee's own negligence or willful misconduct. This indemnification shall survive the termination of this Agreement.

7.4 **Damages**. The Trustee shall not be liable for any act or omission of any other person in carrying out any responsibility imposed upon such person and under no circumstances shall the Trustee be liable for any indirect, consequential, or special damages with respect to its role as Trustee.

## SECTION 8 - AMENDMENT, TERMINATION, RESIGNATION, REMOVAL

8.1 **Amendment**. This Agreement may be amended by written agreement signed by the parties hereto.

8.2 **Removal or Resignation of Trustee**. The Trustee may be removed with respect to all or part of the Fund upon receipt of sixty (60) days' written notice (unless a shorter or longer period is agreed upon) from the Named Fiduciary. The Trustee may resign as Trustee hereunder upon sixty (60) days' written notice (unless a shorter or longer period is agreed upon) delivered to the Named Fiduciary. In the event of such removal or resignation, a successor trustee will be appointed and the retiring Trustee shall transfer the Fund, less such amounts as may be reasonable and necessary to cover its compensation and expenses. In the event that the Named Fiduciary fails to appoint a

successor trustee within sixty (60) days of receipt of written notice of resignation, the Trustee reserves the right to seek the appointment of a successor trustee from a court of competent jurisdiction. The Trustee shall have no duties, responsibilities, or liability with respect to the acts or omissions of any successor trustee.

8.3 __Plan Termination__. Should any Plan be terminated, and should the Trustee receive written notice of the Plan's termination, the Trustee shall distribute all assets then constituting the Plan's allocable portion of the Fund, less any fees and expenses payable from the Fund, pursuant to Authorized Instructions. Such assets shall be used, in accordance with the Authorized Instructions, to provide benefits described in Code Section 501(c)(9) to Plan participants and their beneficiaries (or used as provided in 26 C.F.R. Section 1.501(c)(9)-4(d)), except as otherwise provided in regulations of the Department of Labor promulgated under Section 403(d)(2) of ERISA. The Trustee shall be entitled to assume that such distributions are in full compliance with and not in violation of the terms of the terminating Plan or any applicable law. Until all assets of the Trust are distributed, the Trust shall continue, and this Agreement shall remain in effect.

8.4 __Property Not Transferred__. The Trustee reserves the right to retain such property as is not suitable for distribution or transfer at the time of the termination of the Plan or this Agreement and shall hold such property for the benefit of those persons or other entities entitled to such property until such time as the Trustee is able to make distribution. Upon the appointment and acceptance of a successor trustee, the Trustee's sole duties shall be those of a custodian with respect to the property not transferred.

## SECTION 9 - ADDITIONAL PROVISIONS

9.1 __Assignment or Alienation__. Except as may be provided by law, the Fund shall not be subject to any form of attachment, garnishment, sequestration, or other actions of collection afforded creditors of the Company, participants, or beneficiaries under the Plan. The Trustee shall not recognize any assignment or alienation of benefits unless an Authorized Instruction is received from the Named Fiduciary.

9.2 __Successors and Assigns__. Neither the Company nor the Trustee may assign this Agreement without the prior written consent of the other, except that the Trustee may assign its rights and delegate its duties hereunder to any corporation or entity which directly or indirectly is controlled by, or is under common control with, the Trustee. This Agreement shall be binding upon, and inure to the benefit of, the Company and the Trustee and their respective successors and permitted assigns. Any entity which shall by merger, consolidation, purchase, or otherwise, succeed to substantially all of the trust business of the Trustee shall, upon such succession and without any appointment or other action by the Company, be and become successor trustee hereunder, upon notification to the Company.

9.3 __Governing Law__. This Agreement shall be construed in accordance with and governed by the laws of the Commonwealth of Pennsylvania to the extent not preempted by Federal law. The parties hereby expressly waive, to the fullest extent permitted by

applicable law, any right to trial by jury with respect to any judicial proceeding arising from or related to this Agreement. The parties hereby also irrevocably submit to the exclusive jurisdiction of the state or federal courts in the Commonwealth of Pennsylvania.

9.4 **Necessary Parties**. The Trustee reserves the right to seek a judicial or administrative determination as to its proper course of action under this Agreement. Nothing contained herein will be construed or interpreted to deny the Trustee, the Named Fiduciary, or the Company the right to have the Trustee's account judicially determined. To the extent permitted by law, only the Trustee, the Named Fiduciary, and the Company shall be necessary parties in any application to the courts for an interpretation of this Agreement or for an accounting by the Trustee, and no participant under any Plan or other person having an interest in the Fund shall be entitled to any notice or service of process. Any final judgment entered in such an action or proceeding shall, to the extent permitted by law, be conclusive upon all persons.

9.5 **No Third Party Beneficiaries**. The provisions of this Agreement are intended to benefit only the parties hereto, their respective successors and assigns, and participants and their beneficiaries under each Plan. There are no other third party beneficiaries.

9.6 **Representations**. The Company, the Named Fiduciary and the Trustee hereby each represent and warrant to the other that it has full authority to enter into this Agreement upon the terms and conditions hereof and that the individual executing this Agreement on its behalf has the requisite authority to bind the Company, the Named Fiduciary, or the Trustee to this Agreement.

9.7 **Execution in Counterparts**. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and said counterparts shall constitute but one and the same instrument and may be sufficiently evidenced by one counterpart.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the effective date set forth above.

Authorized Signer of:

**DOMINION RESOURCES, INC.**

**By:** [signature]

**Name:** G. Scott Hetzer

**Title:** Sr. V. P. & Treasurer

**Date:** December 19, 2001

Authorized Officer of:

**MELLON BANK, N.A.**

**By:** [signature] Paul R. Kraus

**Name:** ~~Paul R. Kraus, Vice President~~

**Mellon Bank, N.A.**

**Title:** ______

**Date:** 12/21/01

Authorized Signer of:

______

DOMINION RESOURCES SERVICES, INC.

By: [signature]

Name: G. Scott Hetzer

Title: Sr. V. P. & Treasurer

Date: December 19, 2001

January 1 to December 31

Fiscal Year of Trust

## EXHIBIT A

## CROSS-TRADING INFORMATION

As part of the cross-trading program covered by the Exemption for Mellon Bank, N. A. and its affiliates, Mellon Bank, N. A. is to provide to each affected employee benefit plan the following information:

I. The existence of the cross-trading program

Mellon Bank, N. A. has developed and intends to utilize, wherever practicable, a cross-trading program for Indexed Accounts and Large Accounts as those terms are defined in the Exemption.

II. The "triggering events" creating cross-trade opportunities

In accordance with the exemption three "triggering events" may create opportunities for cross-trading transactions. They are generally the following (see the Exemption for more information):

1) A change in the composition or weighting of the index by the independent organization creating and maintaining the index;

2) A change in the overall level of investment in an Indexed Account as a result of investments and withdrawals on the account's opening date, where the Account is a bank collective fund, or on any relevant date for non-bank collective funds; provided, however, a change in an Indexed Account resulting from investments or withdrawals of assets of Mellon Bank, N. A.'s own plans (other than Mellon Bank, N. A.'s defined contribution plans under which participants may direct among various investment options, including Indexed Accounts) are excluded as a "triggering event"; or

3) A recorded declaration by the Trustee that an accumulation of cash in an Indexed Account attributable to interest or dividends on, and/or tender offers for, portfolio securities equal to not more than 0.5% of the Account's total value has occurred.

III. The pricing mechanism utilized for securities purchased or sold

Securities will be valued at the current market value for the securities on the date of the crossing transaction.

Equity securities - the current market value for the equity security will be the closing price on the day of trading as determined by an independent pricing service; unless the security was added to or deleted from an index after the close of trading, in which case the price will be the opening price for that security on the next business day after the announcement of the addition or deletion.

Debt securities - the current market value of the debt security will be the price determined by Mellon Bank, N. A. as of the close of the day of trading according to the Securities and Exchange Commission's Rule 17a-7(b)(4) under the Investment Company Act of 1940. Debt securities that are not reported securities or traded on an exchange will be valued based on an average of the highest current independent bids and the lowest current independent offers on the day of cross trading. Mellon Bank, N. A. will use reasonable inquiry to obtain such prices from at least three independent sources that are brokers or market makers. If there are fewer than three independent sources to price a certain debt security, the closing price quotations will be obtained from all available sources.

IV. The allocation methods

Direct cross-trade opportunities will be allocated among potential buyers or sellers of debt or equity securities on a prorata basis. With respect to equity securities, please note Mellon Bank, N. A. imposes a trivial share constraint to reduce excessive custody ticket charges to participating accounts.

V. Other procedures implemented by Mellon Bank, N. A. for its cross-trading practices

Mellon Bank, N. A. has developed certain internal operational procedures for cross-trading debt and equity securities. These procedures are available upon request.

# EXHIBIT B

## LIST OF COVERED PLANS

System Retiree Medical Plan of Consolidated Natural Gas Company and Its Participating Subsidiaries for Employees Who Are Not Represented by a Recognized Union

System Medical Insurance Plan of Consolidated Natural Gas Company and Its Participating Subsidiaries for Employees Who Are Not Represented by a Recognized Union

Blue Cross and Blue Shield Program of The Peoples Natural Gas Company for Employees Who Are Not Represented by a Recognized Union

\\TAX\85971.2

# Exhibit D

Form **990-T** Department of the Treasury Internal Revenue Service

# Exempt Organization Business Income Tax Return
## (and proxy tax under section 6033(e))

For calendar year 2000 or other tax year beginning ________, 2000, and ending ________, 20 ___

▶ See separate instructions.

OMB No. 1545-0687

**2000**

A ☐ Check box if address changed

B Exempt under section ☒ 501(C)(9) ☐ 408(e) ☐ 220(e) ☐ 408A ☐ 530(a) ☐ 529(a)

C Book value of all assets at end of year

Please Print or Type

Name of organization (☐ check box if name changed and see instructions): CNG TRANSMISSION MANAGEMENT VEBA

Number, street, and room or suite no. (If a P.O. box, see page 7 of instructions.): MELLON BANK N.A. PO BOX 185

City or town, state, and ZIP code: PITTSBURGH, PA 15230

D Employer identification number (Employees' trust, see instructions for Block D on page 7.): 25-1755735

E New unrelated bus. activity codes (See instructions for Block E on page 7.): 900001

F Group exemption number (see instructions for Block F on page 7) ▶

G Check organization type ▶ ☐ 501(c) corporation ☒ 501(c) trust ☐ 401(a) trust ☐ Other trust

H Describe the organization's primary unrelated business activity. ▶ INVESTMENT INCOME

I During the tax year, was the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? ▶ ☐ Yes ☒ No
If "Yes," enter the name and identifying number of the parent corporation. ▶

J The books are in care of ▶ MELLON BANK N.A. Telephone number ▶ (412)234-0127

**Part I Unrelated Trade or Business Income**

| | | | (A) Income | (B) Expenses | (C) Net |
|---|---|---|---|---|---|
| 1a | Gross receipts or sales | | | | |
| b | Less returns and allowances ____ c Balance ▶ | 1c | | | |
| 2 | Cost of goods sold (Schedule A, line 7) | 2 | | | |
| 3 | Gross profit (subtract line 2 from line 1c) | 3 | | | |
| 4a | Capital gain net income (attach Schedule D) | 4a | | | |
| b | Net gain (loss) (Form 4797, Part II, line 18) (attach Form 4797) | 4b | | | |
| c | Capital loss deduction for trusts | 4c | (3,000) | | (3,000) |
| 5 | Income (loss) from partnerships and S corporations (attach statement) | 5 | | | |
| 6 | Rent income (Schedule C) | 6 | | | |
| 7 | Unrelated debt-financed income (Schedule E) | 7 | | | |
| 8 | Interest, annuities, royalties, and rents from controlled organizations (Schedule F) | 8 | | | |
| 9 | Investment income of a section 501(c)(7), (9), or (17) organization (Schedule G) | 9 | 2,798,002 | | 2,798,002 |
| 10 | Exploited exempt activity income (Schedule I) | 10 | | | |
| 11 | Advertising income (Schedule J) | 11 | | | |
| 12 | Other income (see page 8 of the instructions — attach schedule) | 12 | | | |
| 13 | TOTAL (combine lines 3 through 12) | 13 | 2,795,002 | | 2,795,002 |

**Part II Deductions Not Taken Elsewhere** (See page 9 of the instructions for limitations on deductions.) (Except for contributions, deductions must be directly connected with the unrelated business income.)

| | | | |
|---|---|---|---|
| 14 | Compensation of officers, directors, and trustees (Schedule K) | 14 | 18,885 |
| 15 | Salaries and wages | 15 | |
| 16 | Repairs and maintenance | 16 | |
| 17 | Bad debts | 17 | |
| 18 | Interest (attach schedule) | 18 | 6,151 |
| 19 | Taxes and licenses | 19 | |
| 20 | Charitable contributions (see page 11 of the instructions for limitation rules) | 20 | |
| 21 | Depreciation (attach Form 4562) — 21 | | |
| 22 | Less depreciation claimed on Schedule A and elsewhere on return — 22a | 22b | |
| 23 | Depletion | 23 | |
| 24 | Contributions to deferred compensation plans | 24 | |
| 25 | Employee benefit programs | 25 | |
| 26 | Excess exempt expenses (Schedule I) | 26 | |
| 27 | Excess readership costs (Schedule J) | 27 | |
| 28 | Other deductions (attach schedule) INVESTMENT MANAGER FEES | 28 | 75,374 |
| 29 | Total deductions (add lines 14 through 28) | 29 | 100,410 |
| 30 | Unrelated business taxable income before net operating loss deduction (subtract line 29 from line 13) | 30 | 2,694,592 |
| 31 | Net operating loss deduction | 31 | |
| 32 | Unrelated business taxable income before specific deduction (subtract line 31 from line 30) | 32 | 2,694,592 |
| 33 | Specific deduction (Generally $1,000, but see line 33 instructions for exceptions) | 33 | 1,000 |
| 34 | Unrelated business taxable income (subtract line 33 from line 32). If line 33 is greater than line 32, enter the smaller of zero or line 32 | 34 | 2,693,592 |

RECEIVED NOV 13 2001 OGDEN, UT IRS-OSC 344

For Paperwork Reduction Act Notice, see instructions.

ISA STF FED2085F 1

Form **8868**
(December 2000)
Department of the Treasury
Internal Revenue Service

# Application for Extension of Time To File an Exempt Organization Return

▶ File a separate application for each return.

OMB No. 1545-1709

- If you are filing for an Automatic 3-Month Extension, complete only Part I and check this box . . . ▶ [X]
- If you are filing for an Additional (not automatic) 3-Month Extension, complete only Part II (on page 2 of this form).

Note: *Do not complete Part II unless you have already been granted an automatic 3-month extension on a previously filed Form 8868.*

**Part I** Automatic 3-Month Extension of Time — Only submit original (no copies needed)

Note: *Form 990-T corporations requesting an automatic 6-month extension — check this box and complete Part I only* . . . ▶ [ ]

*All other corporations (including Form 990-C filers) must use Form 7004 to request an extension of time to file income tax returns. Partnerships, REMICs and trusts must use Form 8736 to request an extension of time to file Form 1065, 1066, or 1041.*

| Type or print<br>File by the due date for filing your return. See instructions. | Name of Exempt Organization<br>CNG TRANSMISSION MANAGEMENT VEBA | Employer identification number<br>25-1755735 |
|---|---|---|
| | Number, street, and room or suite no. If a P.O. box, see instructions.<br>MELLON BANK N.A. PO BOX 185 | |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions.<br>PITTSBURGH, PA 15230 | |

Check type of return to be filed (file a separate application for each return):

| | | |
|---|---|---|
| [ ] Form 990 | [ ] Form 990-T (corporation) | [ ] Form 4720 |
| [ ] Form 990-BL | [ ] Form 990-T (sec. 401(a) or 408(a) trust) | [ ] Form 5227 |
| [ ] Form 990-EZ | [X] Form 990-T (trust other than above) | [ ] Form 6069 |
| [ ] Form 990-PF | [ ] Form 1041-A | [ ] Form 8870 |

- If the organization does not have an office or place of business in the United States, check this box . . . ▶ [ ]
- If this is for a Group Return, enter the organization's four digit Group Exemption Number (GEN) ______ . If this is for the whole group, check this box ▶ [ ]. If it is for part of the group, check this box ▶ [ ] and attach a list with the names and EINs of all members the extension will cover.

1 I request an automatic 3-month (6-month, for 990-T corporation) extension of time until AUGUST 15 , 20 01 , to file the exempt organization return for the organization named above. The extension is for the organization's return for:
▶ [X] calendar year 20 00 or
▶ [ ] tax year beginning ______ , 20 __ , and ending ______ , 20 __ .

2 If this tax year is for less than 12 months, check reason: [ ] Initial return [ ] Final return [ ] Change in accounting period

3a If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions . . . $ 1,069,264

b If this application is for Form 990-PF or 990-T, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit . . . $ 1,069,264

c Balance Due. Subtract line 3b from line 3a. Include your payment with this form, or, if required, deposit with FTD coupon or, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions . . . $ 0.00

## Signature and Verification

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

MELLON BANK, N.A.

Signature ▶ BY: [signature] Title ▶ VICE-PRESIDENT Date ▶ 05/14/01

For Paperwork Reduction Act Notice, see Instruction

Form 8868 (12-2000) Page 2

- If you are filing for an Additional (not automatic) 3-Month Extension, complete only Part II and check this box ........ ▶ [X]

Note: *Only complete Part II if you have already been granted an automatic 3-month extension on a previously filed Form 8868.*

- If you are filing for an Automatic 3-Month Extension, complete only Part I (on page 1).

**Part II — Additional (not automatic) 3-Month Extension of Time — Must File Original and One Copy.**

| Type or print<br>File by the extended due date for filing the return. See instructions. | Name of Exempt Organization<br>CNG TRANSMISSION MANAGEMENT VEBA | Employer identification number<br>25-1755735 |
|---|---|---|
| | Number, street, and room or suite no. If a P.O. box, see instructions.<br>MELLON BANK N.A. PO BOX 185 | For IRS use only |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions.<br>PITTSBURGH, PA 15230 | |

**Check type of return to be filed** (File a separate application for each return):

[ ] Form 990 [ ] Form 990-EZ [ ] Form 990-T (sec. 401(a) or 408(a) trust) [ ] Form 1041-A [ ] Form 5227 [ ] Form 8870
[ ] Form 990-BL [ ] Form 990-PF [X] Form 990-T (trust other than above) [ ] Form 4720 [ ] Form 6069

**STOP: Do not complete Part II if you were not already granted an automatic 3-month extension on a previously filed Form 8868.**

- If the organization does **not** have an office or place of business in the United States, check this box .................. ▶ [ ]
- If this is for a **Group Return,** enter the organization's four digit Group Exemption Number (GEN) ______________ . If this is for the **whole** group, check this box ▶ [ ]. If it is for **part** of the group, check this box ▶ [ ] and attach a list with the names and EINs of all members the extension is for.

4 I request an additional 3-month extension of time until NOVEMBER 15, 20 01.

5 For calendar year 2000, or other tax year beginning ______________, 20 ___ and ending ______________, 20 ___.

6 If this tax year is for less than 12 months, check reason: [ ] Initial return [ ] Final return [ ] Change in accounting period

7 State in detail why you need the extension ADDITIONAL TIME IS NEEDED IN ORDER TO GATHER INFORMATION TO PREPARE A COMPLETE AND ACCURATE RETURN.

RECEIVED

8a If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions ........ $1,069,264

b If this application is for Form 990-PF, 990-T, 4720, or 6069, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit and any amount paid previously with Form 8868 ........ $1,069,264

c **Balance Due.** Subtract line 8b from line 8a. Include your payment with this form, or, if required, deposit with FTD coupon or, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions ........ $ 0.00

## Signature and Verification

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

Signature ▶ *[signature]* Title ▶ VICE PRESIDENT Date ▶ 08/15/01

## Notice to Applicant — To Be Completed by the IRS

[✓] We have approved this application. Please attach this form to the organization's return.

[ ] We have not approved this application. However, we have granted a 10-day grace period from the later of the date shown below or the due date of the organization's return (including any prior extensions). This grace period is considered to be a valid extension of time for elections otherwise required to be made on a timely return. Please attach this form to the organization's return.

[ ] We have not approved this application. After considering the reasons stated in item 7, we cannot grant your request for an extension of time to file. We are not granting a 10-day grace period.

[ ] We cannot consider this application because it was filed after the due date of the return for which an extension was requested.

[ ] Other ______________________________

______________________ By: ______________________ ______________
Director Date

**Alternate Mailing Address** — Enter the address if you want the copy of this application for an additional 3-month extension returned to an address different than the one entered above.

| Type or print | Name |
|---|---|
| | Number and street (include suite, room, or apt. no.) Or a P.O. box number |
| | City or town, province or state, and country (including postal or ZIP code) |

## Part III Tax Computation

35 **Organizations Taxable as Corporations** (see instructions for tax computation on page 12). Controlled group members (sections 1561 and 1563) — check here ☐. **See instructions** and:

a Enter your share of the $50,000, $25,000, and $9,925,000 taxable income brackets (in that order): (1) $ (2) $ (3) $

b Enter organization's share of: (1) additional 5% tax (not more than $11,750) . $
(2) additional 3% tax (not more than $100,000) . $

| | | |
|---|---|---|
| c Income tax on the amount on line 34 ▶ | 35c | |
| 36 **Trusts Taxable at Trust Rates** (see instructions for tax computation on page 12) Income tax on the amount on line 34 from: ☐ Tax rate schedule or ☒ Schedule D (Form 1041) ▶ | 36 | 1,065,684 |
| 37 **Proxy tax** (see page 13 of the instructions) ▶ | 37 | |
| 38 Alternative minimum tax | 38 | |
| 39 **Total** (add lines 37 and 38 to line 35c or 36, whichever applies) | 39 | 1,065,684 |

## Part IV Tax and Payments

| | | | | |
|---|---|---|---|---|
| 40a Foreign tax credit (corporations attach Form 1118; trusts attach Form 1116) | 40a | | | |
| b Other credits (see page 13 of the instructions) | 40b | | | |
| c General business credit — Check if from: ☐ Form 3800 or ☐ Form (specify) ▶ | 40c | | | |
| d Credit for prior year minimum tax (attach Form 8801 or 8827) | 40d | | | |
| e **Total credits** (add lines 40a through 40d) | | | 40e | |
| 41 Subtract line 40e from line 39 | | | 41 | 1,065,684 |
| 42 Recapture taxes. Check if from: ☐ Form 4255 ☐ Form 8611 | | | 42 | |
| 43 **Total tax** (add lines 41 and 42) | | | 43 | 1,065,684 |
| 44 **Payments: a** 1999 overpayment credited to 2000 | 44a | 28,264 | | |
| b 2000 estimated tax payments | 44b | 1,041,000 | | |
| c Tax deposited with Form 8868 | 44c | | | |
| d Foreign organizations — Tax paid or withheld at source (see instructions) | 44d | | | |
| e Backup withholding (see instructions) | 44e | | | |
| f Other credits and payments (see instructions) | 44f | | | |
| 45 **Total payments** (add lines 44a through 44f) | | | 45 | 1,069,264 |
| 46 Estimated tax penalty (see page 4 of the instructions). Check ▶ ☐ if Form 2220 is attached | | | 46 | |
| 47 **Tax due** — If line 45 is less than the total of lines 43 and 46, enter amount owed ▶ | | | 47 | 0.00 |
| 48 **Overpayment** — If line 45 is larger than the total of lines 43 and 46, enter amount overpaid ▶ | | | 48 | 3,580 |
| 49 Enter the amount of line 48 you want: **Credited to 2001 estimated tax** ▶ 3,580 **Refunded** ▶ | | | 49 | 0.00 |

## Part V Statements Regarding Certain Activities and Other Information (See instructions on page 14.)

| | Yes | No |
|---|---|---|
| 1 At any time during the 2000 calendar year, did the organization have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? If "Yes," the organization may have to file Form TD F 90-22.1. If "Yes," enter the name of the foreign country here ▶ | | X |
| 2 During the tax year, did the organization receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," see page 14 of the instructions for other forms the organization may have to file. | | X |
| 3 Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ | | |

**Schedule A — Cost of Goods Sold** (See instructions on page 15.)

Method of inventory valuation (specify) ▶

| | | | | | |
|---|---|---|---|---|---|
| 1 Inventory at beginning of year | 1 | | 6 Inventory at end of year | 6 | |
| 2 Purchases | 2 | | 7 **Cost of goods sold.** Subtract line 6 from line 5. (Enter here and on line 2, Part I.) | 7 | |
| 3 Cost of labor | 3 | | | | |
| 4a Additional section 263A costs (attach schedule) | 4a | | 8 Do the rules of section 263A (with respect to property produced or acquired for resale) apply to the organization? | Yes | No |
| b Other costs (attach schedule) | 4b | | | | |
| 5 Total — Add lines 1 through 4b | 5 | | | | |

**Please Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Thomas A. [signature] Signature of officer or fiduciary | 11/15/01 Date | ▶ VICE PRESIDENT Title

**Paid Preparer's Use Only**

| | | | |
|---|---|---|---|
| Preparer's signature ▶ | Date | Check if self-employed ▶ ☐ | Preparer's SSN or PTIN |
| Firm's name (or yours, if self-employed), address, and ZIP code ▶ | | EIN ▶ | |
| | | Phone no. | |

## Schedule C — Rent Income (From Real Property and Personal Property Leased With Real Property) (See instructions on page 16.)

1 Description of property

(1)
(2)
(3)
(4)

| 2 Rent received or accrued | | 3 Deductions directly connected with the income in columns 2(a) and 2(b) (attach schedule) |
|---|---|---|
| (a) From personal property (if the percentage of rent for personal property is more than 10% but not more than 50%) | (b) From real and personal property (if the percentage of rent for personal property exceeds 50% or if the rent is based on profit or income) | |
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| Total | Total | Total deductions. Enter here and on line 6, column (B), Part I, page 1. . . . . . ▶ |
| Total income (Add totals of columns 2(a) and 2(b). Enter here and on line 6, column (A), Part I, page 1.) . . . . . . . ▶ | | |

## Schedule E — Unrelated Debt-Financed Income (See instructions on page 16.)

| 1 Description of debt-financed property | 2 Gross income from or allocable to debt-financed property | 3 Deductions directly connected with or allocable to debt-financed property (a) Straight line depreciation (attach schedule) | (b) Other deductions (attach schedule) |
|---|---|---|---|
| (1) | | | |
| (2) | | | |
| (3) | | | |
| (4) | | | |

| 4 Amount of average acquisition debt on or allocable to debt-financed property (attach schedule) | 5 Average adjusted basis of or allocable to debt-financed property (attach schedule) | 6 Column 4 divided by column 5 | 7 Gross income reportable (column 2 × column 6) | 8 Allocable deductions (column 6 × total of columns 3(a) and 3(b)) |
|---|---|---|---|---|
| (1) | | % | | |
| (2) | | % | | |
| (3) | | % | | |
| (4) | | % | | |
| Totals . . . . . . ▶ | | | Enter here and on line 7, column (A), Part I, page 1. | Enter here and on line 7, column (B), Part I, page 1. |
| Total dividends-received deductions included in column 8 . . . . . . ▶ | | | | |

## Schedule F — Interest, Annuities, Royalties, and Rents From Controlled Organizations (See instructions on page 17.)

| 1 Name of Controlled Organization | 2 Employer Identification Number | Exempt Controlled Organizations: 3 Net unrelated income (loss) (see instructions) | 4 Total of specified payments made | 5 Part of column (4) that is included in the controlling organization's gross income | 6 Deductions directly connected with income in column (5) |
|---|---|---|---|---|---|
| (1) | | | | | % |
| (2) | | | | | % |
| (3) | | | | | % |
| (4) | | | | | % |

Nonexempt Controlled Organizations

| 7 Taxable income | 8 Net unrelated income (loss) (see instructions) | 9 Total of specified payments made | 10 Part of column (9) that is included in the controlling organization's gross income | 11 Deductions directly connected with income in column (10) |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| 12 Totals . . . . . . | | | Add columns 5 and 10. Enter here and on line 8, Column (A), Part I, page 1. | Add columns 6 and 11. Enter here and on line 8, Column (B), Part I, page 1. |

**Schedule G — Investment Income of a Section 501(c)(7), (9), or (17) Organization**
(See instructions on page 17.)

| 1 Description of income | 2 Amount of income | 3 Deductions directly connected (attach schedule) | 4 Set-asides (attach schedule) | 5 Total deductions and set-asides (col. 3 plus col. 4) |
|---|---|---|---|---|
| (1) TEMPORARY INVEST | 164,854 | | | |
| (2) INVESTMENT INCOME | 2,633,148 | | | |
| (3) | | | | |
| (4) | | | | |
| Totals ▶ | Enter here and on line 9, column (A), Part I, page 1. 2,798,002 | | | Enter here and on line 9, column (B), Part I, page 1. |

**Schedule I — Exploited Exempt Activity Income, Other Than Advertising Income**
(See instructions on page 18.)

| 1 Description of exploited activity | 2 Gross unrelated business income from trade or business | 3 Expenses directly connected with production of unrelated business income | 4 Net income (loss) from unrelated trade or business (column 2 minus column 3). If a gain, compute cols. 5 through 7. | 5 Gross income from activity that is not unrelated business income | 6 Expenses attributable to column 5 | 7 Excess exempt expenses (column 6 minus column 5, but not more than column 4). |
|---|---|---|---|---|---|---|
| (1) | | | | | | |
| (2) | | | | | | |
| (3) | | | | | | |
| (4) | | | | | | |
| Column totals ▶ | Enter here and on line 10, col. (A), Part I, page 1. | Enter here and on line 10, col. (B), Part I, page 1. | | | | Enter here and on line 26, Part II, page 1. |

**Schedule J — Advertising Income** (See instructions on page 18.)

**Part I Income From Periodicals Reported on a Consolidated Basis**

| 1 Name of periodical | 2 Gross advertising income | 3 Direct advertising costs | 4 Advertising gain or (loss) (col. 2 minus col. 3). If a gain, compute cols. 5 through 7. | 5 Circulation income | 6 Readership costs | 7 Excess readership costs (column 6 minus column 5, but not more than column 4). |
|---|---|---|---|---|---|---|
| (1) | | | | | | |
| (2) | | | | | | |
| (3) | | | | | | |
| (4) | | | | | | |
| Column totals (carry to Part II, line (5)) ▶ | | | | | | |

**Part II Income From Periodicals Reported on a Separate Basis** (For each periodical listed in Part II, fill in columns 2 through 7 on a line-by-line basis.)

| | | | | | | |
|---|---|---|---|---|---|---|
| (1) | | | | | | |
| (2) | | | | | | |
| (3) | | | | | | |
| (4) | | | | | | |
| (5) Totals from Part I | | | | | | |
| Column totals, Part II ▶ | Enter here and on line 11, col. (A), Part I, page 1. | Enter here and on line 11, col. (B), Part I, page 1. | | | | Enter here and on line 27, Part II, page 1 |

**Schedule K — Compensation of Officers, Directors, and Trustees** (See instructions on page 18.)

| 1 Name | 2 Title | 3 Percent of time devoted to business | 4 Compensation attributable to unrelated business |
|---|---|---|---|
| MELLON BANK N.A. | TRUSTEE | % | 18,885 |
| | | % | |
| | | % | |
| | | % | |
| Total — Enter here and on line 14, Part II, page 1 ▶ | | | 18,885 |

SCHEDULE D (Form 1041)
Department of the Treasury Internal Revenue Service

# Capital Gains and Losses

▶ Attach to Form 1041 (or Form 5227). See the separate instructions for Form 1041 (or Form 5227).

OMB No. 1545-0092

2000

Name of estate or trust: CNG TRANSMISSION MANAGEMENT VEBA

Employer identification number: 25-1755735

Note: *Form 5227 filers need to complete only Parts I and II.*

## Part I Short-Term Capital Gains and Losses — Assets Held One Year or Less

| (a) Description of property (Example, 100 shares 7% preferred of "Z" Co.) | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Sales price | (e) Cost or other basis (see page 27) | (f) Gain or (Loss) (col. (d) less col. (e)) |
|---|---|---|---|---|---|
| 1 SEE ATTACHED | | | | | (260,530) |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | |
|---|---|---|
| 2 Short-term capital gain or (loss) from Forms 4684, 6252, 6781, and 8824 | 2 | |
| 3 Net short-term gain or (loss) from partnerships, S corporations, and other estates or trusts | 3 | 15,935 |
| 4 Short-term capital loss carryover. Enter the amount, if any, from line 9 of the 1999 Capital Loss Carryover Worksheet | 4 | ( 266,535) |
| 5 **Net short-term gain or (loss).** Combine lines 1 through 4 in column (f). Enter here and on line 14 below ▶ | 5 | (511,130) |

## Part II Long-Term Capital Gains and Losses — Assets Held More Than One Year

| (a) Description of property (Example, 100 shares 7% preferred of "Z" Co.) | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Sales price | (e) Cost or other basis (see page 27) | (f) Gain or (Loss) (col. (d) less col. (e)) | (g) 28% Rate Gain or (Loss) *(see instr. below) |
|---|---|---|---|---|---|---|
| 6 SEE ATTACHED | | | | | (366,214) | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| 7 Long-term capital gain or (loss) from Forms 2439, 4684, 6252, 6781, and 8824 | 7 | | |
| 8 Net long-term gain or (loss) from partnerships, S corporations, and other estates or trusts | 8 | | |
| 9 Capital gain distributions | 9 | | |
| 10 Gain from Form 4797, Part I | 10 | | |
| 11 Long-term capital loss carryover. Enter in both columns (f) and (g) the amount, if any, from line 14, of the 1999 Capital Loss Carryover Worksheet | 11 | ( 235,685) | ( ) |
| 12 Combine lines 6 through 11 in column (g) | 12 | | |
| 13 **Net long-term gain or (loss).** Combine lines 6 through 11 in column (f). Enter here and on line 15 below ▶ | 13 | (601,899) | |

***28% rate gain or (loss)** includes **all** "collectibles gains and losses" (as defined on page 28 of the instructions) and up to 50% of the eligible gain on qualified small business stock (see page 26 of the instructions).

## Part III Summary of Parts I and II

| | | (1) Beneficiaries' (see page 28) | (2) Estate's or trust's | (3) Total |
|---|---|---|---|---|
| 14 **Net short-term gain or (loss)** (from line 5 above) | 14 | | (511,130) | (511,130) |
| 15 **Net long-term gain or (loss):** | | | | |
| a 28% rate gain or (loss) (from line 12 above) | 15a | | | |
| b Unrecaptured section 1250 gain (see line 17 of the worksheet on page 29) | 15b | | | |
| c Total for year (from line 13 above) | 15c | | (601,899) | (601,899) |
| 16 **Total net gain or (loss).** Combine lines 14 and 15c ▶ | 16 | | (1,130,029) | (1,113,029) |

**Note:** *If line 16, column (3), is a net gain, enter the gain on Form 1041, line 4. If lines 15c and 16, column (2), are net gains, go to Part V, and* ***do not*** *complete Part IV. If line 16, column (3), is a net loss, complete Part IV and the* ***Capital Loss Carryover Worksheet,*** *as necessary.*

## Part IV Capital Loss Limitation

| | | | | |
|---|---|---|---|---|
| 17 | Enter here and enter as a (loss) on Form 1041, line 4, the smaller of: a The loss on line 16, column (3); or b $3,000 | | 17 | ( 3,000) |

*If the loss on line 16, column (3), is more than $3,000,* ***or*** *if Form 1041, page 1, line 22, is a loss, complete the* ***Capital Loss Carryover Worksheet*** *on page 30 of the instructions to determine your capital loss carryover.*

## Part V Tax Computation Using Maximum Capital Gains Rates (Complete this part **only** if both lines 15c and 16 in column (2) are gains, and Form 1041, line 22 is more than zero.)

| Line | Description | | | | |
|---|---|---|---|---|---|
| 18 | Enter taxable income from Form 1041, line 22 | | | 18 | 2,693,592 |
| 19 | Enter the **smaller** of line 15c or 16 in column (2) | 19 | | | |
| 20 | If you are filing Form 4952, enter the amount from Form 4952, line 4e | 20 | | | |
| 21 | Subtract line 20 from line 19. If zero or less, enter -0- | 21 | | | |
| 22 | Combine lines 14 and 15a, column (2). If zero or less, enter -0- | 22 | | | |
| 23 | Enter the **smaller** of line 15a, column (2), or line 22, but not less than zero | 23 | | | |
| 24 | Enter the amount from line 15b, column (2) | 24 | | | |
| 25 | Add lines 23 and 24 | 25 | | | |
| 26 | Subtract line 25 from line 21. If zero or less, enter -0- | | | 26 | |
| 27 | Subtract line 26 from line 18. If zero or less, enter -0- | | | 27 | 2,693,592 |
| 28 | Enter the **smaller** of line 18 or $1,750 | 28 | 1,750 | | |
| 29 | Enter the **smaller** of line 27 or line 28 | 29 | 1,750 | | |
| 30 | Subtract line 21 from line 18. If zero or less, enter -0- | 30 | 2,693,592 | | |
| 31 | Enter the **larger** of line 29 or line 30 ▶ | 31 | 2,693,592 | | |
| 32 | Tax on amount on line 31 from the 2000 Tax Rate Schedule | | | 32 | 1,065,684 |
| | **Note:** *If the amounts on lines 28 and 29 are the same, skip lines 33 through 36 and go to line 37.* | | | | |
| 33 | Enter the amount from line 28 | 33 | | | |
| 34 | Enter the amount from line 27 | 34 | | | |
| 35 | Subtract line 34 from line 33. If zero or less, enter -0- ▶ | 35 | | | |
| 36 | Multiply line 35 by 10% (.10) | | | 36 | |
| | **Note:** *If the amounts on lines 18 and 28 are the same, skip lines 37 through 50 and go to line 51.* | | | | |
| 37 | Enter the **smaller** of line 18 or line 26 | 37 | | | |
| 38 | Enter the amount from line 35 | 38 | | | |
| 39 | Subtract line 38 from line 37 ▶ | 39 | | | |
| 40 | Multiply line 39 by 20% (.20) | | | 40 | |
| | **Note:** *If line 25 is zero or blank, skip lines 41 through 50 and go to line 51.* | | | | |
| 41 | Enter the **smaller** of line 21 or line 24 | 41 | | | |
| 42 | Add lines 21 and 31 — 42 | | | | |
| 43 | Enter the amount from line 18 — 43 | | | | |
| 44 | Subtract line 43 from line 42. If zero or less, enter -0- | 44 | | | |
| 45 | Subtract line 44 from line 41. If zero or less, enter -0- ▶ | 45 | | | |
| 46 | Multiply line 45 by 25% (.25) | | | 46 | |
| | **Note:** *If line 23 is zero or blank, skip lines 47 through 50 and go to line 51.* | | | | |
| 47 | Enter the amount from line 18 | 47 | | | |
| 48 | Add lines 31, 35, 39, and 45 | 48 | | | |
| 49 | Subtract line 48 from line 47 | 49 | | | |
| 50 | Multiply line 49 by 28% (.28) | | | 50 | |
| 51 | Add lines 32, 36, 40, 46, and 50 | | | 51 | 1,065,684 |
| 52 | Tax on the amount on line 18 from the 2000 Tax Rate Schedule | | | 52 | 1,065,684 |
| 53 | **Tax on all taxable income (including capital gains).** Enter the smaller of line 51 or line 52 here and on line 1a of Schedule G, Form 1041 | | | 53 | 1,065,684 |

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | | NET REALIZED GAIN OR LOSS - TAXABLE OBLIGATIONS | | | |
| | | | MISCELLANEOUS OBLIGATIONS | | | |
| 02/03/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 28,794.39- | 0.00 | 28,794.39- |
| 01/31/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 01/31/00 T | CT044 | | AND/OR LOSSES THRU 01-31-00 VALUATION | | | |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 0.000 20279.99- | | | |
| | | | 3 10/01/98 0.000 1476.62- | | | |
| | | | 4 1/04/99 0.000 1853.75- | | | |
| | | | 5 8/02/99 0.000 3368.44- | | | |
| | | | 6 1/03/00 0.000 1815.59- | | | |
| 02/04/00 | 510 | 6,957- | CNG VEBA COLLECTIVE FUND | 1,813.17- | 66,892.59 | 68,705.76- |
| 02/01/00 T | 006 | | SOLD 6,957 UNITS | | | |
| | $0293 | | | | | |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 6957.000- 68705.76- | | | |
| 03/03/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 158.94- | 0.00 | 158.94- |
| 02/29/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 02/29/00 T | CT034 | | AND/OR LOSSES THRU 02-29-00 VALUATION | | | |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 0.000 111.66- | | | |
| | | | 3 10/01/98 0.000 8.20- | | | |
| | | | 4 1/04/99 0.000 10.29- | | | |
| | | | 5 8/02/99 0.000 18.71- | | | |
| | | | 6 1/03/00 0.000 10.08- | | | |
| 03/06/00 | 510 | 7,105- | CNG VEBA COLLECTIVE FUND | 1,693.60- | 68,472.76 | 70,166.36- |
| 03/01/00 T | 006 | | SOLD 7,105 UNITS | | | |
| | $0519 | | | | | |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| 06/07/00<br>06/01/00 T | 510<br>006<br>$0160 | 8,607- | CNG VEBA COLLECTIVE FUND<br>SOLD 8,607 UNITS<br>LOT ACQ DATE / FACE / TAX COST<br>1 7/01/98 / 8607.000- / 84432.98- | 2,373.24- | 82,059.74 | 84,432.98- |
| 07/07/00<br>06/30/00 E<br>06/30/00 T | 800<br>000<br>CT091 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 06-30-00 VALUATION<br>LOT ACQ DATE / FACE / TAX COST<br>1 7/01/98 / 0.000 / 3830.98-<br>3 10/01/98 / 0.000 / 298.03-<br>4 1/04/99 / 0.000 / 374.14-<br>5 8/02/99 / 0.000 / 679.85-<br>6 1/03/00 / 0.000 / 366.44- | 5,549.44- | 0.00 | 5,549.44- |
| 07/10/00<br>07/03/00 T | 510<br>006<br>$0076 | 23,832- | CNG VEBA COLLECTIVE FUND<br>SOLD 23,832 UNITS<br>LOT ACQ DATE / FACE / TAX COST<br>1 7/01/98 / 23832.000- / 233663.32- | 4,515.67- | 229,147.65 | 233,663.32- |
| 08/03/00<br>07/31/00 E<br>07/31/00 T | 800<br>000<br>CT077 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 07-31-00 VALUATION<br>LOT ACQ DATE / FACE / TAX COST<br>1 7/01/98 / 0.000 / 7194.25-<br>3 10/01/98 / 0.000 / 578.37-<br>4 1/04/99 / 0.000 / 726.09-<br>5 8/02/99 / 0.000 / 1319.38-<br>6 1/03/00 / 0.000 / 711.15- | 10,529.24- | 0.00 | 10,529.24- |
| 08/04/00<br>08/01/00 T | 510<br>006<br>$0020 | 13,599- | CNG VEBA COLLECTIVE FUND<br>SOLD 13,599 UNITS<br>LOT ACQ DATE / FACE / TAX COST<br>1 7/01/98 / 13599.000- / 133195.59- | 2,231.95- | 130,963.64 | 133,195.59- |
| 09/06/00<br>08/31/00 E<br>08/31/00 T | 800<br>000<br>CT032 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 08-31-00 VALUATION<br>LOT ACQ DATE / FACE / TAX COST<br>1 7/01/98 / 0.000 / 15720.02-<br>3 10/01/98 / 0.000 / 1288.37-<br>4 1/04/99 / 0.000 / 1617.42- | 23,148.95- | 0.00 | 23,148.95- |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 0.000 704.75- | | | |
| | | | 3 10/01/98 0.000 63.84- | | | |
| | | | 4 1/04/99 0.000 80.16- | | | |
| | | | 5 8/02/99 0.000 145.65- | | | |
| | | | 6 1/03/00 0.000 78.51- | | | |
| 01/08/01 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 1,073.64 | 0.00 | 1,073.64 |
| 12/31/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 12/31/00 T | CT004 | | AND/OR LOSSES THRU 12-31-00 VALUATION | | | |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 0.000 701.21 | | | |
| | | | 3 10/01/98 0.000 63.53 | | | |
| | | | 4 1/04/99 0.000 79.75 | | | |
| | | | 5 8/02/99 0.000 144.93 | | | |
| | | | 6 1/03/00 0.000 78.11 | | | |
| | | | 7 12/01/00 0.000 6.11 | | | |
| | | 154,557- | ** TOTAL FOR THIS CLASS | 163,388.13- | 1,492,338.11 | 1,655,726.24- |
| | | 154,557- | TOTAL MISCELLANEOUS OBLIGATIONS | 163,388.13- | 1,492,338.11 | 1,655,726.24- |
| | | 154,557- | TOTAL FIXED INTEREST OBLIGATIONS | 163,388.13- | 1,492,338.11 | 1,655,726.24- |
| | | 154,557- | NET REALIZED GAIN OR LOSS TOTAL | 163,388.13- | 1,492,338.11 | 1,655,726.24- |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | | NET REALIZED GAIN OR LOSS - TAXABLE OBLIGATIONS | | | |
| | | | MISCELLANEOUS OBLIGATIONS | | | |
| 02/03/00<br>01/31/00 E<br>01/31/00 T | 800<br>000<br>CT050 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 01-31-00 VALUATION<br>LOT ACQ DATE FACE TAX COST<br>1 7/01/98 0.000 17403.73-<br>3 8/03/98 0.000 2632.62-<br>4 12/01/98 0.000 2969.28-<br>5 2/01/99 0.000 2592.38-<br>6 9/01/99 0.000 959.70-<br>7 11/01/99 0.000 3212.69-<br>8 1/03/00 0.000 1399.62- | 31,170.02- | 0.00 | 31,170.02- |
| 02/04/00<br>02/01/00 T | 510<br>006<br>$0295 | 9,780- | CNG VEBA COLLECTIVE FUND<br>SOLD 9,780 UNITS<br>LOT ACQ DATE FACE TAX COST<br>1 7/01/98 9780.000- 96585.07- | 2,548.92- | 94,036.15 | 96,585.07- |
| 03/03/00<br>02/29/00 E<br>02/29/00 T | 800<br>000<br>CT040 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 02-29-00 VALUATION<br>LOT ACQ DATE FACE TAX COST<br>1 7/01/98 0.000 95.28-<br>3 8/03/98 0.000 14.62- | 171.74- | 0.00 | 171.74- |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | | LOT ACQ DATE / FACE / TAX COST<br>4 12/01/98 0.000 16.49-<br>5 2/01/99 0.000 14.40-<br>6 9/01/99 0.000 5.33-<br>7 11/01/99 0.000 17.85-<br>8 1/03/00 0.000 7.77- | | | |
| 03/06/00<br>03/01/00 T | 510<br>006<br>$0521 | 9,103- | CNG VEBA COLLECTIVE FUND<br>SOLD 9,103 UNITS<br>LOT ACQ DATE / FACE / TAX COST<br>1 7/01/98 9103.000- 89897.87- | 2,169.85- | 87,728.02 | 89,897.87- |
| 04/07/00<br>03/31/00 E<br>03/31/00 T | 800<br>000<br>CT024 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 03-31-00 VALUATION<br>LOT ACQ DATE / FACE / TAX COST<br>1 7/01/98 0.000 1525.29-<br>3 8/03/98 0.000 237.37-<br>4 12/01/98 0.000 267.71-<br>5 2/01/99 0.000 233.73-<br>6 9/01/99 0.000 86.52-<br>7 11/01/99 0.000 289.66-<br>8 1/03/00 0.000 126.19- | 2,766.47- | 0.00 | 2,766.47- |
| 05/04/00<br>04/30/00 E<br>04/30/00 T | 800<br>000<br>CT043 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 04-30-00 VALUATION<br>LOT ACQ DATE / FACE / TAX COST<br>1 7/01/98 0.000 1111.56-<br>3 8/03/98 0.000 172.97-<br>4 12/01/98 0.000 195.10-<br>5 2/01/99 0.000 170.33-<br>6 9/01/99 0.000 63.06-<br>7 11/01/99 0.000 211.09-<br>8 1/03/00 0.000 91.97-<br>9 4/03/00 0.000 150.27- | 2,166.35- | 0.00 | 2,166.35- |
| 05/05/00<br>05/01/00 T | 510<br>006<br>$0156 | 15,953- | CNG VEBA COLLECTIVE FUND<br>SOLD 15,953 UNITS<br>LOT ACQ DATE / FACE / TAX COST<br>1 7/01/98 15953.000- 157481.89- | 4,295.67- | 153,186.22 | 157,481.89 |
| 06/06/00<br>05/31/00 E<br>05/31/00 T | 800<br>000<br>CT066 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 05-31-00 VALUATION | 78,124.47- | 0.00 | 78,124.47 |

T

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 9 4/03/00 0.000 895.82- | | | |
| 09/06/00<br>08/31/00 E<br>08/31/00 T | 800<br>000<br>CT038 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 08-31-00 VALUATION | 29,840.67- | 0.00 | 29,840.67- |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 0.000 13632.51- | | | |
| | | | 3 8/03/98 0.000 2296.99- | | | |
| | | | 4 12/01/98 0.000 2590.73- | | | |
| | | | 5 2/01/99 0.000 2261.88- | | | |
| | | | 6 9/01/99 0.000 837.34- | | | |
| | | | 7 11/01/99 0.000 2803.11- | | | |
| | | | 8 1/03/00 0.000 1221.19- | | | |
| | | | 9 4/03/00 0.000 1995.48- | | | |
| | | | 10 8/01/00 0.000 2201.44- | | | |
| 09/07/00<br>09/01/00 T | 510<br>006<br>$0194 | 27,781- | CNG VEBA COLLECTIVE FUND<br>SOLD 27,781 UNITS | 2,623.20- | 268,853.73 | 271,476.93- |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 27781.000- 271476.93- | | | |
| 10/05/00<br>09/30/00 E<br>09/30/00 T | 800<br>000<br>CT011 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 09-30-00 VALUATION | 389.92- | 0.00 | 389.92- |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 0.000 173.61- | | | |
| | | | 3 8/03/98 0.000 30.66- | | | |
| | | | 4 12/01/98 0.000 34.58- | | | |
| | | | 5 2/01/99 0.000 30.18- | | | |
| | | | 6 9/01/99 0.000 11.17- | | | |
| | | | 7 11/01/99 0.000 37.41- | | | |
| | | | 8 1/03/00 0.000 16.30- | | | |
| | | | 9 4/03/00 0.000 26.63- | | | |
| | | | 10 8/01/00 0.000 29.38- | | | |
| 10/06/00<br>10/02/00 T | 510<br>006<br>$0269 | 18,683- | CNG VEBA COLLECTIVE FUND<br>SOLD 18,683 UNITS | 904.50- | 181,660.84 | 182,565.34- |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 18683.000- 182565.34- | | | |
| 11/06/00<br>10/31/00 E<br>10/31/00 T | 800<br>000<br>CT009 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 10-31-00 VALUATION | 472.91- | 0.00 | 472.91- |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | 129,558- | ** TOTAL FOR THIS CLASS | 183,442.34- | 1,251,338.66 | 1,434,781.00- |
| | | 129,558- | TOTAL MISCELLANEOUS OBLIGATIONS | 183,442.34- | 1,251,338.66 | 1,434,781.00- |
| | | 129,558- | TOTAL FIXED INTEREST OBLIGATIONS | 183,442.34- | 1,251,338.66 | 1,434,781.00- |
| | | 129,558- | NET REALIZED GAIN OR LOSS TOTAL | 183,442.34- | 1,251,338.66 | 1,434,781.00- |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | | NET REALIZED GAIN OR LOSS - TAXABLE OBLIGATIONS | | | |
| | | | MISCELLANEOUS OBLIGATIONS | | | |
| 02/03/00<br>01/31/00 E<br>01/31/00 T | 800<br>000<br>CT046 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 01-31-00 VALUATION | 18,562.92- | 0.00 | 18,562.92- |
| 03/03/00<br>02/29/00 E<br>02/29/00 T | 800<br>000<br>CT036 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 02-29-00 VALUATION | 103.57- | 0.00 | 103.57- |
| 04/07/00<br>03/31/00 E<br>03/31/00 T | 800<br>000<br>CT020 | 0 | CNG VEBA COLLECTIVE FUND<br>DISTRIBUTION OF REALIZED CAPITAL GAINS<br>AND/OR LOSSES THRU 03-31-00 VALUATION | 1,766.97- | 0.00 | 1,766.97- |

Lots — distribution thru 01-31-00 valuation:

| LOT | ACQ DATE | FACE | TAX COST |
|---|---|---|---|
| 1 | 7/01/98 | 0.000 | 12945.60- |
| 4 | 8/03/98 | 0.000 | 59.90- |
| 5 | 9/01/98 | 0.000 | 73.67- |
| 6 | 12/01/98 | 0.000 | 99.37- |
| 7 | 1/04/99 | 0.000 | 1236.30- |
| 8 | 3/01/99 | 0.000 | 152.43- |
| 9 | 4/01/99 | 0.000 | 46.45- |
| 10 | 5/03/99 | 0.000 | 46.04- |
| 11 | 8/02/99 | 0.000 | 2943.13- |
| 12 | 9/01/99 | 0.000 | 295.20- |
| 13 | 1/03/00 | 0.000 | 664.83- |

Lots — distribution thru 02-29-00 valuation:

| LOT | ACQ DATE | FACE | TAX COST |
|---|---|---|---|
| 1 | 7/01/98 | 0.000 | 71.91- |
| 4 | 8/03/98 | 0.000 | 0.33- |
| 5 | 9/01/98 | 0.000 | 0.41- |
| 6 | 12/01/98 | 0.000 | 0.55- |
| 7 | 1/04/99 | 0.000 | 6.87- |
| 8 | 3/01/99 | 0.000 | 0.85- |
| 9 | 4/01/99 | 0.000 | 0.26- |
| 10 | 5/03/99 | 0.000 | 0.26- |
| 11 | 8/02/99 | 0.000 | 16.35- |
| 12 | 9/01/99 | 0.000 | 1.64- |
| 13 | 1/03/00 | 0.000 | 3.70- |
| 14 | 2/01/00 | 0.000 | 0.44- |

Lots — distribution thru 03-31-00 valuation:

| LOT | ACQ DATE | FACE | TAX COST |
|---|---|---|---|
| 1 | 7/01/98 | 0.000 | 1167.20- |
| 4 | 8/03/98 | 0.000 | 5.40- |
| 5 | 9/01/98 | 0.000 | 6.65- |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 6 12/01/98 0.000 8.96- | | | |
| | | | 7 1/04/99 0.000 111.47- | | | |
| | | | 8 3/01/99 0.000 13.75- | | | |
| | | | 9 4/01/99 0.000 4.19- | | | |
| | | | 10 5/03/99 0.000 4.15- | | | |
| | | | 11 8/02/99 0.000 265.36- | | | |
| | | | 12 9/01/99 0.000 26.61- | | | |
| | | | 13 1/03/00 0.000 59.94- | | | |
| | | | 14 2/01/00 0.000 7.10- | | | |
| | | | 15 3/01/00 0.000 86.19- | | | |
| 05/04/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 1,288.62- | 0.00 | 1,288.62- |
| 04/30/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 04/30/00 T | CT039 | | AND/OR LOSSES THRU 04-30-00 VALUATION | | | |
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 1 7/01/98 0.000 850.60- | | | |
| | | | 4 8/03/98 0.000 3.94- | | | |
| | | | 5 9/01/98 0.000 4.84- | | | |
| | | | 6 12/01/98 0.000 6.53- | | | |
| | | | 7 1/04/99 0.000 81.23- | | | |
| | | | 8 3/01/99 0.000 10.01- | | | |
| | | | 9 4/01/99 0.000 3.05- | | | |
| | | | 10 5/03/99 0.000 3.02- | | | |
| | | | 11 8/02/99 0.000 193.38- | | | |
| | | | 12 9/01/99 0.000 19.39- | | | |
| | | | 13 1/03/00 0.000 43.68- | | | |
| | | | 14 2/01/00 0.000 5.17- | | | |
| | | | 15 3/01/00 0.000 62.81- | | | |
| | | | 16 4/03/00 0.000 0.97- | | | |
| 05/05/00 | 510 | 6,485- | CNG VEBA COLLECTIVE FUND | 1,746.22- | 62,271.21 | 64,017.43- |
| 05/01/00 T | 006 | | SOLD 6,485 UNITS | | | |
| | $0160 | | | | | |
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 1 7/01/98 6485.000- 64017.43- | | | |
| 06/06/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 46,657.27- | 0.00 | 46,657.27- |
| 05/31/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 05/31/00 T | CT062 | | AND/OR LOSSES THRU 05-31-00 VALUATION | | | |
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 1 7/01/98 0.000 30661.15- | | | |
| | | | 4 8/03/98 0.000 143.72- | | | |
| | | | 5 9/01/98 0.000 176.78- | | | |
| | | | 6 12/01/98 0.000 238.41- | | | |
| | | | 7 1/04/99 0.000 2966.40- | | | |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 8 3/01/99 0.000 59.71- | | | |
| | | | 9 4/01/99 0.000 18.19- | | | |
| | | | 10 5/03/99 0.000 18.03- | | | |
| | | | 11 8/02/99 0.000 1152.78- | | | |
| | | | 12 9/01/99 0.000 115.63- | | | |
| | | | 13 1/03/00 0.000 260.40- | | | |
| | | | 14 2/01/00 0.000 30.83- | | | |
| | | | 15 3/01/00 0.000 374.41- | | | |
| | | | 16 4/03/00 0.000 5.77- | | | |
| | | | 17 6/01/00 0.000 356.57- | | | |
| 09/06/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 17,706.48- | 0.00 | 17,706.48- |
| 08/31/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 08/31/00 T | CT034 | | AND/OR LOSSES THRU 08-31-00 VALUATION | | | |
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 1 7/01/98 0.000 11060.33- | | | |
| | | | 4 8/03/98 0.000 52.26- | | | |
| | | | 5 9/01/98 0.000 64.28- | | | |
| | | | 6 12/01/98 0.000 86.69- | | | |
| | | | 7 1/04/99 0.000 1078.68- | | | |
| | | | 8 3/01/99 0.000 133.00- | | | |
| | | | 9 4/01/99 0.000 40.53- | | | |
| | | | 10 5/03/99 0.000 40.17- | | | |
| | | | 11 8/02/99 0.000 2567.91- | | | |
| | | | 12 9/01/99 0.000 257.57- | | | |
| | | | 13 1/03/00 0.000 580.07- | | | |
| | | | 14 2/01/00 0.000 68.69- | | | |
| | | | 15 3/01/00 0.000 834.04- | | | |
| | | | 16 4/03/00 0.000 12.83- | | | |
| | | | 17 6/01/00 0.000 794.28- | | | |
| | | | 18 8/01/00 0.000 35.15- | | | |
| 10/05/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 245.33- | 0.00 | 245.33- |
| 09/30/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 09/30/00 T | CT007 | | AND/OR LOSSES THRU 09-30-00 VALUATION | | | |
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 1 7/01/98 0.000 147.61- | | | |
| | | | 4 8/03/98 0.000 0.70- | | | |
| | | | 5 9/01/98 0.000 0.86- | | | |
| | | | 6 12/01/98 0.000 1.15- | | | |
| | | | 7 1/04/99 0.000 14.40- | | | |
| | | | 8 3/01/99 0.000 1.78- | | | |
| | | | 9 4/01/99 0.000 0.54- | | | |
| | | | 10 5/03/99 0.000 0.54- | | | |
| | | | 11 8/02/99 0.000 34.28- | | | |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | | NET REALIZED GAIN OR LOSS - TAXABLE OBLIGATIONS | | | |
| | | | MISCELLANEOUS OBLIGATIONS | | | |
| | | | ---------------------------------------- | | | |
| 02/03/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 30,705.30- | 0.00 | 30,705.30- |
| 01/31/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 01/31/00 T | CT048 | | AND/OR LOSSES THRU 01-31-00 VALUATION | | | |

| LOT | ACQ DATE | FACE | TAX COST |
|---|---|---|---|
| 1 | 7/01/98 | 0.000 | 17123.22- |
| 2 | 12/01/98 | 0.000 | 2538.18- |
| 3 | 1/04/99 | 0.000 | 2143.75- |
| 4 | 5/03/99 | 0.000 | 2650.30- |
| 5 | 8/02/99 | 0.000 | 2430.99- |
| 6 | 11/01/99 | 0.000 | 3024.79- |
| 7 | 1/03/00 | 0.000 | 794.07- |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| 02/04/00 | 510 | 14,067- | CNG VEBA COLLECTIVE FUND | 3,666.22- | 135,256.30 | 138,922.52- |
| 02/01/00 T | 006 | | SOLD 14,067 UNITS | | | |
| | $0301 | | | | | |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 14067.000- 138922.52- | | | |
| 03/03/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 168.55- | 0.00 | 168.55- |
| 02/29/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 02/29/00 T | CT038 | | AND/OR LOSSES THRU 02-29-00 VALUATION | | | |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 0.000 93.11- | | | |
| | | | 2 12/01/98 0.000 14.10- | | | |
| | | | 3 1/04/99 0.000 11.91- | | | |
| | | | 4 5/03/99 0.000 14.72- | | | |
| | | | 5 8/02/99 0.000 13.50- | | | |
| | | | 6 11/01/99 0.000 16.80- | | | |
| | | | 7 1/03/00 0.000 4.41- | | | |
| 03/06/00 | 510 | 33,253- | CNG VEBA COLLECTIVE FUND | 7,926.40- | 320,467.97 | 328,394.37- |
| 03/01/00 T | 006 | | SOLD 33,253 UNITS | | | |
| | $0527 | | | | | |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 33253.000- 328394.37- | | | |
| 04/07/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 2,658.53- | 0.00 | 2,658.53- |
| 03/31/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 03/31/00 T | CT022 | | AND/OR LOSSES THRU 03-31-00 VALUATION | | | |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 0.000 1433.95- | | | |
| | | | 2 12/01/98 0.000 228.84- | | | |
| | | | 3 1/04/99 0.000 193.28- | | | |
| | | | 4 5/03/99 0.000 238.96- | | | |
| | | | 5 8/02/99 0.000 219.19- | | | |
| | | | 6 11/01/99 0.000 272.72- | | | |
| | | | 7 1/03/00 0.000 71.59- | | | |
| 04/10/00 | 510 | 23,758- | CNG VEBA COLLECTIVE FUND | 5,247.36- | 229,322.71 | 234,570.07- |
| 04/03/00 T | 006 | | SOLD 23,758 UNITS | | | |
| | $0012 | | | | | |
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 1 7/01/98 23758.000- 234570.07- | | | |
| 05/04/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 1,897.19- | 0.00 | 1,897.19- |
| 04/30/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 04/30/00 T | CT041 | | AND/OR LOSSES THRU 04-30-00 VALUATION | | | |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| 08/03/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 11,685.38- | 0.00 | 11,685.38- |
| 07/31/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 07/31/00 T | CT081 | | AND/OR LOSSES THRU 07-31-00 VALUATION | | | |
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 1 7/01/98 0.000 5453.02- | | | |
| | | | 2 12/01/98 0.000 994.18- | | | |
| | | | 3 1/04/99 0.000 839.68- | | | |
| | | | 4 5/03/99 0.000 1038.09- | | | |
| | | | 5 8/02/99 0.000 952.19- | | | |
| | | | 6 11/01/99 0.000 1184.77- | | | |
| | | | 7 1/03/00 0.000 311.03- | | | |
| | | | 8 5/01/00 0.000 912.42- | | | |
| 09/06/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 29,099.51- | 0.00 | 29,099.51- |
| 08/31/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 08/31/00 T | CT036 | | AND/OR LOSSES THRU 08-31-00 VALUATION | | | |
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 1 7/01/98 0.000 12146.99- | | | |
| | | | 2 12/01/98 0.000 2214.59- | | | |
| | | | 3 1/04/99 0.000 1870.44- | | | |
| | | | 4 5/03/99 0.000 2312.41- | | | |
| | | | 5 8/02/99 0.000 2121.06- | | | |
| | | | 6 11/01/99 0.000 2639.16- | | | |
| | | | 7 1/03/00 0.000 692.84- | | | |
| | | | 8 5/01/00 0.000 2032.48- | | | |
| | | | 9 8/01/00 0.000 3069.54- | | | |
| 09/07/00 | 510 | 39,515- | CNG VEBA COLLECTIVE FUND | 3,731.17- | 382,410.83 | 386,142.00- |
| 09/01/00 T | 006 | | SOLD 39,515 UNITS | | | |
| | $0200 | | | | | |
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 1 7/01/98 39515.000- 386142.00- | | | |
| 10/05/00 | 800 | 0 | CNG VEBA COLLECTIVE FUND | 376.50- | 0.00 | 376.50- |
| 09/30/00 E | 000 | | DISTRIBUTION OF REALIZED CAPITAL GAINS | | | |
| 09/30/00 T | CT009 | | AND/OR LOSSES THRU 09-30-00 VALUATION | | | |
| | | | LOT ACQ DATE FACE TAX COST | | | |
| | | | 1 7/01/98 0.000 150.26- | | | |
| | | | 2 12/01/98 0.000 29.55- | | | |
| | | | 3 1/04/99 0.000 24.96- | | | |
| | | | 4 5/03/99 0.000 30.86- | | | |
| | | | 5 8/02/99 0.000 28.31- | | | |
| | | | 6 11/01/99 0.000 35.22- | | | |
| | | | 7 1/03/00 0.000 9.25- | | | |
| | | | 8 5/01/00 0.000 27.12- | | | |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

T

# Mellon Bank

MELLON BANK, N.A.

| TRANSACTION DATES | REPORT CODES | FACE VALUE OR NO. OF SHARES | DESCRIPTION OF ENTRY | TOTAL FUND CHANGES | PROCEEDS | COSTS |
|---|---|---|---|---|---|---|
| | | | LOT ACQ DATE / FACE / TAX COST | | | |
| | | | 5 8/02/99 / 0.000 / 104.59 | | | |
| | | | 6 11/01/99 / 0.000 / 130.13 | | | |
| | | | 7 1/03/00 / 0.000 / 34.16 | | | |
| | | | 8 5/01/00 / 0.000 / 100.22 | | | |
| | | | 9 8/01/00 / 0.000 / 151.36 | | | |
| | | | 10 11/01/00 / 0.000 / 50.49 | | | |
| | | | 11 12/01/00 / 0.000 / 7.95 | | | |
| | | 193,106- | ** TOTAL FOR THIS CLASS | 191,570.68- | 1,862,713.11 | 2,054,283.79- |
| | | 193,106- | TOTAL MISCELLANEOUS OBLIGATIONS | 191,570.68- | 1,862,713.11 | 2,054,283.79- |
| | | 193,106- | TOTAL FIXED INTEREST OBLIGATIONS | 191,570.68- | 1,862,713.11 | 2,054,283.79- |
| | | 193,106- | NET REALIZED GAIN OR LOSS TOTAL | 191,570.68- | 1,862,713.11 | 2,054,283.79- |

CONSULT YOUR ADVISOR FOR TAX COMPLIANCE

T

Form **2220**

Department of the Treasury
Internal Revenue Service

# Underpayment of Estimated Tax by Corporations

▶ Instructions are separate. See page 4 for Paperwork Reduction Act Notice.

▶ Attach to the corporation's tax return.

OMB No. 1545-0142

**2000**

Name: CNG TRANSMISSION MANAGEMENT VEBA

Employer identification number: 25-1755735

**Note:** *In most cases, the corporation **does not** need to file Form 2220. (See Part I below for exceptions.) The IRS will figure any penalty owed and bill the corporation. If the corporation does not need to file Form 2220, it may still use it to figure the penalty. Enter the amount from line 34 on the estimated tax penalty line of the corporation's income tax return, but **do not** attach Form 2220.*

**Part I** **Reasons for Filing** — Check the boxes below that apply to the corporation. If any are checked, the corporation must file Form 2220, even if it does not owe the penalty. If the box on line 1 or line 2 applies, the corporation may be able to lower or eliminate the penalty. See page 1 of the instructions.

1 [X] The corporation is using the annualized income installment method.

2 [ ] The corporation is using the adjusted seasonal installment method.

3 [ ] The corporation is a "large corporation" figuring its first required installment based on the prior year's tax.

**Note:** *The corporation also must file Form 2220 if it has a research credit allowed for the current year. See the instructions for line 4 on page 2*

**Part II** **Figuring the Underpayment**

| | | | |
|---|---|---|---|
| 4 | Total tax (see page 2 of the instructions) | 4 | 1,065,684 |
| 5a | Personal holding company tax (Schedule PH (Form 1120), line 26) included on line 4 (5a) | | |
| b | Interest included on line 4 due under the look-back method of section 460(b)(2) for completed long-term contracts or of section 167(g) for property depreciated under the income forecast method (5b) | | |
| c | Credit for Federal tax paid on fuels (see page 2 of the instructions) (5c) | | |
| d | **Total.** Add lines 5a through 5c | 5d | |
| 6 | Subtract line 5d from line 4. If the result is less than $500, **do not** complete or file this form. The corporation does not owe the penalty | 6 | 1,065,684 |
| 7 | Enter the tax shown on the corporation's 1999 income tax return. **Caution:** *See page 2 of the instructions before completing this line.* | 7 | 897,148 |
| 8 | Enter the **smaller** of line 6 or line 7. If the corporation must skip line 7, enter the amount from line 6 on line 8 | 8 | 897,148 |

| | | | (a) | (b) | (c) | (d) |
|---|---|---|---|---|---|---|
| 9 | **Installment due dates.** Enter in columns (a) through (d) the 15th day of the 4th (*Form 990-PF filers:* Enter 5th month), 6th, 9th, and 12th months of the corporation's tax year ▶ | 9 | 4/17/00 | 6/15/00 | 9/15/00 | 12/15/00 |
| 10 | **Required installments.** If the box on line 1 and/or line 2 above is checked, enter the amounts from Schedule A, line 41. If the box on line 3 (but not 1 or 2) is checked, see page 3 of the instructions for the amounts to enter. If none of these boxes are checked, enter 25% of line 8 above in each column | 10 | 224,287 | 224,287 | 224,287 | 224,287 |
| 11 | Estimated tax paid or credited for each period (see page 3 of the instructions). For column (a) only, enter the amount from line 11 on line 15 | 11 | 289,264 | 231,000 | 274,000 | 275,000 |
| | ***Complete lines 12 through 18 of one column before going to the next column.*** | | | | | |
| 12 | Enter amount, if any, from line 18 of the preceding column | 12 | | 64,977 | 71,690 | 121,403 |
| 13 | Add lines 11 and 12 | 13 | | 295,977 | 345,690 | 396,403 |
| 14 | Add amounts on lines 16 and 17 of the preceding column | 14 | | 0.00 | 0.00 | 0.00 |
| 15 | Subtract line 14 from line 13. If zero or less, enter -0- | 15 | 289,264 | 295,977 | 345,690 | 396,403 |
| 16 | If the amount on line 15 is zero, subtract line 13 from line 14. Otherwise, enter -0- | 16 | | 0.00 | 0.00 | |
| 17 | **Underpayment.** If line 15 is less than or equal to line 10, subtract line 15 from line 10. Then go to line 12 of the next column. Otherwise, go to line 18 | 17 | 0.00 | 0.00 | 0.00 | 0.00 |
| 18 | **Overpayment.** If line 10 is less than line 15, subtract line 10 from line 15. Then go to line 12 of the next column | 18 | 64,977 | 71,690 | 121,403 | |

***Complete Part III on page 2 to figure the penalty. If there are no entries on line 17, no penalty is owed.***

## Part III Figuring the Penalty

| | | | (a) | (b) | (c) | (d) |
|---|---|---|---|---|---|---|
| 19 | Enter the date of payment or the 15th day of the 3rd month after the close of the tax year, whichever is earlier (see page 3 of the instructions). (*Form 990-PF and Form 990-T filers:* Use 5th month instead of 3rd month.) | 19 | | | | |
| 20 | Number of days from due date of installment on line 9 to the date shown on line 19 | 20 | | | | |
| 21 | Number of days on line 20 after 4/15/2000 and before 1/1/2001 | 21 | | | | |
| 22 | Underpayment on line 17 × $\frac{\text{Number of days on line 21}}{366}$ × 9% | 22 | $ | $ | $ | $ |
| 23 | Number of days on line 20 after 12/31/2000 and before 4/1/2001 | 23 | | | | |
| 24 | Underpayment on line 17 × $\frac{\text{Number of days on line 23}}{365}$ × 9% | 24 | $ | $ | $ | $ |
| 25 | Number of days on line 20 after 3/31/2001 and before 7/1/2001 | 25 | | | | |
| 26 | Underpayment on line 17 × $\frac{\text{Number of days on line 25}}{365}$ × *% | 26 | $ | $ | $ | $ |
| 27 | Number of days on line 20 after 6/30/2001 and before 10/1/2001 | 27 | | | | |
| 28 | Underpayment on line 17 × $\frac{\text{Number of days on line 27}}{365}$ × *% | 28 | $ | $ | $ | $ |
| 29 | Number of days on line 20 after 9/30/2001 and before 1/1/2002 | 29 | | | | |
| 30 | Underpayment on line 17 × $\frac{\text{Number of days on line 29}}{365}$ × *% | 30 | $ | $ | $ | $ |
| 31 | Number of days on line 20 after 12/31/2001 and before 2/16/2002 | 31 | | | | |
| 32 | Underpayment on line 17 × $\frac{\text{Number of days on line 31}}{365}$ × *% | 32 | $ | $ | $ | $ |
| 33 | Add lines 22, 24, 26, 28, 30, and 32 | 33 | $ | $ | $ | $ |

| | | | |
|---|---|---|---|
| 34 | **Penalty.** Add columns (a) through (d), of line 33. Enter the total here and on Form 1120, line 33; Form 1120-A, line 29; or the comparable line for other income tax returns | 34 | $ |

***For underpayments paid after March 31, 2001:** For lines 26, 28, 30, and 32, use the penalty interest rate for each calendar quarter that the IRS will determine during the first month in the preceding quarter. These rates are published quarterly in an IRS News Release and in a revenue ruling in the Internal Revenue Bulletin. To obtain this information on the Internet, access the IRS Web Site at **www.irs.gov.** You can also call 1-800-829-1040 to get interest rate information.

**Schedule A** Annualized Income Installment Method and/or the Adjusted Seasonal Installment Method Under Section 6655(e) (see pages 3 and 4 of the instructions)

**Form 1120S filers:** *For lines 2, 14, 15, and 16, below, "taxable income" refers to excess net passive income or the amount on which tax is imposed under section 1374(a) (or the corresponding provisions of prior law), whichever applies.*

## Part I — Annualized Income Installment Method

| | | | (a) | (b) | (c) | (d) |
|---|---|---|---|---|---|---|
| 1 | Annualization periods (see page 3 of the instructions). | 1 | First 2 months | First 3 months | First 6 months | First 9 months |
| 2 | Enter taxable income for each annualization period (see page 3 of the instructions). | 2 | 440,443 | 657,707 | 1,338,644 | 2,029,107 |
| 3 | Annualization amounts (see page 3 of the instructions). | 3 | 6 | 4 | 2 | 1.333333 |
| 4 | Annualized taxable income. Multiply line 2 by line 3. | 4 | 2,642,658 | 2,630,828 | 2,677,288 | 2,705,475 |
| 5 | Figure the tax on the amount in each column on line 4 using the instructions for Form 1120, Schedule J, line 3 (or the comparable line of the tax return). | 5 | 1,043,930 | 1,039,245 | 1,057,644 | 1,068,806 |
| 6 | Enter other taxes for each payment period (see page 4 of the instructions). | 6 | | | | |
| 7 | Total tax. Add lines 5 and 6. | 7 | 1,043,930 | 1,039,245 | 1,057,644 | 1,068,806 |
| 8 | For each period, enter the same type of credits as allowed on Form 2220, lines 4 and 5c (see page 4 of the instructions). | 8 | | | | |
| 9 | Total tax after credits. Subtract line 8 from line 7. If zero or less, enter -0-. | 9 | 1,043,930 | 1,039,245 | 1,057,644 | 1,068,806 |
| 10 | Applicable percentage. | 10 | 25% | 50% | 75% | 100% |
| 11 | Multiply line 9 by line 10. | 11 | 260,983 | 519,623 | 793,233 | 1,068,806 |
| 12 | Add the amounts in all preceding columns of line 41 (see page 4 of the instructions). | 12 | | 224,287 | 448,574 | 672,861 |
| 13 | **Annualized income installments.** Subtract line 12 from line 11. If zero or less, enter -0-. | 13 | 260,983 | 295,336 | 344,659 | 395,945 |

## Part II — Adjusted Seasonal Installment Method (Caution: *Use this method only if the base period percentage for any 6 consecutive months is at least 70%. See page 4 of the instructions for more information.*)

| | | | (a) | (b) | (c) | (d) |
|---|---|---|---|---|---|---|
| | | | First 3 months | First 5 months | First 8 months | First 11 months |
| 14 | Enter taxable income for the following periods: | | | | | |
| a | Tax year beginning in 1997 | 14a | | | | |
| b | Tax year beginning in 1998 | 14b | | | | |
| c | Tax year beginning in 1999 | 14c | | | | |
| 15 | Enter taxable income for each period for the tax year beginning in 2000. | 15 | | | | |
| | | | First 4 months | First 6 months | First 9 months | Entire year |
| 16 | Enter taxable income for the following periods: | | | | | |
| a | Tax year beginning in 1997 | 16a | | | | |
| b | Tax year beginning in 1998 | 16b | | | | |
| c | Tax year beginning in 1999 | 16c | | | | |
| 17 | Divide the amount in each column on line 14a by the amount in column (d) on line 16a. | 17 | | | | |
| 18 | Divide the amount in each column on line 14b by the amount in column (d) on line 16b. | 18 | | | | |
| 19 | Divide the amount in each column on line 14c by the amount in column (d) on line 16c. | 19 | | | | |

| | | | (a) First 4 months | (b) First 6 months | (c) First 9 months | (d) Entire year |
|---|---|---|---|---|---|---|
| 20 | Add lines 17 through 19. | 20 | | | | |
| 21 | Divide line 20 by 3. | 21 | | | | |
| 22 | Divide line 15 by line 21. | 22 | | | | |
| 23 | Figure the tax on the amount on line 22 using the instructions for Form 1120, Schedule J, line 3 (or the comparable line of the return). | 23 | | | | |
| 24 | Divide the amount in columns (a) through (c) on line 16a by the amount in column (d) on line 16a. | 24 | | | | |
| 25 | Divide the amount in columns (a) through (c) on line 16b by the amount in column (d) on line 16b. | 25 | | | | |
| 26 | Divide the amount in columns (a) through (c) on line 16c by the amount in column (d) on line 16c. | 26 | | | | |
| 27 | Add lines 24 through 26. | 27 | | | | |
| 28 | Divide line 27 by 3. | 28 | | | | |
| 29 | Multiply the amount in columns (a) through (c) of line 23 by columns (a) through (c) of line 28. In column (d), enter the amount from line 23, column (d). | 29 | | | | |
| 30 | Enter other taxes for each payment period (see page 4 of the instructions). | 30 | | | | |
| 31 | Total tax. Add lines 29 and 30. | 31 | | | | |
| 32 | For each period, enter the same type of credits as allowed on Form 2220, lines 4 and 5c (see page 4 of the instructions). | 32 | | | | |
| 33 | Total tax after credits. Subtract line 32 from line 31. If zero or less, enter -0-. | 33 | | | | |
| 34 | Add the amounts in all preceding columns of line 41 (see page 4 of the instructions). | 34 | | | | |
| 35 | **Adjusted seasonal installments.** Subtract line 34 from line 33. If zero or less, enter -0-. | 35 | | | | |

**Part III — Required Installments**

| | | | 1st installment | 2nd installment | 3rd installment | 4th installment |
|---|---|---|---|---|---|---|
| 36 | If only one of the above parts is completed, enter the amount in each column from line 13 or line 35. If both parts are completed, enter the **smaller** of the amounts in each column from line 13 or line 35. | 36 | 260,983 | 295,336 | 344,659 | 395,945 |
| 37 | Enter 25% of line 8 on page 1 of Form 2220 in each column. (**Note:** *"Large corporations" see the instructions for line 10, on page 3, for the amounts to enter.*) | 37 | 224,287 | 224,287 | 224,287 | 224,287 |
| 38 | Enter the amount from line 40 of the preceding column. | 38 | | 0.00 | 0.00 | 0.00 |
| 39 | Add lines 37 and 38. | 39 | 224,287 | 224,287 | 224,287 | 224,287 |
| 40 | If line 39 is more than line 36, subtract line 36 from line 39. Otherwise, enter -0-. | 40 | 0.00 | 0.00 | 0.00 | |
| 41 | **Required installments.** Enter the **smaller** of line 36 or line 39 here and on page 1 of Form 2220, line 10. | 41 | 224,287 | 224,287 | 224,287 | 224,287 |

# Exhibit E

Form **990-T**

Department of the Treasury Internal Revenue Service

# Exempt Organization Business Income Tax Return
## (and proxy tax under section 6033(e))

For calendar year 2000 or other tax year beginning .........., 2000, and ending .........., 20 ....

▶ See separate instructions.

OMB No. 1545-0687

**2000**

A ☐ Check box if address changed

B Exempt under section ☑ 501( 9 )( ) ☐ 408(e) ☐ 220(e) ☐ 408A ☐ 530(a) ☐ 529(a)

C Book value of all assets at end of year

Please Print or Type

Name of organization ( ☐ check box if name changed and see instructions)
CNG TRANSMISSION MANAGEMENT VEBA

Number, street, and room or suite no. (If a P.O. box, see page 7 of instructions.)
C/O MELLON BANK, N.A. P.O. BOX 185

City or town, state, and ZIP code
PITTSBURGH, PA 15230-9897

D Employer identification number (Employees' trust, see instructions for Block D on page 7.)
25 : 1755735

E New unrelated bus. activity codes (See instructions for Block E on page 7.)
900001

F Group exemption number (see instructions for Block F on page 7) ▶

G Check organization type ▶ ☐ 501(c) corporation ☑ 501(c) trust ☐ 401(a) trust ☐ Other trust

H Describe the organization's primary unrelated business activity. ▶ INVESTMENT INCOME

I During the tax year, was the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? ▶ ☐ Yes ☑ No
If "Yes," enter the name and identifying number of the parent corporation. ▶

J The books are in care of ▶ MELLON BANK, N.A. Telephone number ▶ ( 412 ) 236-5514

**Part I** Unrelated Trade or Business Income

| | | Line | (A) Income | (B) Expenses | (C) Net |
|---|---|---|---|---|---|
| 1a | Gross receipts or sales | | | | |
| b | Less returns and allowances c Balance ▶ | 1c | | | |
| 2 | Cost of goods sold (Schedule A, line 7) | 2 | | | |
| 3 | Gross profit (subtract line 2 from line 1c) | 3 | | | |
| 4a | Capital gain net income (attach Schedule D) | 4a | | | |
| b | Net gain (loss) (Form 4797, Part II, line 18) (attach Form 4797) | 4b | | | |
| c | Capital loss deduction for trusts | 4c | | | |
| 5 | Income (loss) from partnerships and S corporations (attach statement) | 5 | | | |
| 6 | Rent income (Schedule C) | 6 | | | |
| 7 | Unrelated debt-financed income (Schedule E) | 7 | | | |
| 8 | Interest, annuities, royalties, and rents from controlled organizations (Schedule F) | 8 | | | |
| 9 | Investment income of a section 501(c)(7), (9), or (17) organization (Schedule G) | 9 | | | |
| 10 | Exploited exempt activity income (Schedule I) | 10 | | | |
| 11 | Advertising income (Schedule J) | 11 | | | |
| 12 | Other income (see page 8 of the instructions—attach schedule) | 12 | | | |
| 13 | **Total** (combine lines 3 through 12) | 13 | | | |

**Part II** **Deductions Not Taken Elsewhere** (See page 9 of the instructions for limitations on deductions.) (Except for contributions, deductions must be directly connected with the unrelated business income.)

| | | | Line | |
|---|---|---|---|---|
| 14 | Compensation of officers, directors, and trustees (Schedule K) | | 14 | |
| 15 | Salaries and wages | | 15 | |
| 16 | Repairs and maintenance | | 16 | |
| 17 | Bad debts | | 17 | |
| 18 | Interest (attach schedule) | | 18 | |
| 19 | Taxes and licenses | | 19 | |
| 20 | Charitable contributions (see page 11 of the instructions for limitation rules) | | 20 | |
| 21 | Depreciation (attach Form 4562) | 21 | | |
| 22 | Less depreciation claimed on Schedule A and elsewhere on return | 22a | 22b | |
| 23 | Depletion | | 23 | |
| 24 | Contributions to deferred compensation plans | | 24 | |
| 25 | Employee benefit programs | | 25 | |
| 26 | Excess exempt expenses (Schedule I) | | 26 | |
| 27 | Excess readership costs (Schedule J) | | 27 | |
| 28 | Other deductions (attach schedule) | | 28 | |
| 29 | **Total deductions** (add lines 14 through 28) | | 29 | |
| 30 | Unrelated business taxable income before net operating loss deduction (subtract line 29 from line 13) | | 30 | |
| 31 | Net operating loss deduction | | 31 | |
| 32 | Unrelated business taxable income before specific deduction (subtract line 31 from line 30) | | 32 | |
| 33 | Specific deduction (Generally $1,000, but see line 33 instructions for exceptions) | | 33 | |
| 34 | **Unrelated business taxable income** (subtract line 33 from line 32). If line 33 is greater than line 32, enter the smaller of zero or line 32 | | 34 | |

RECEIVED OCT 2 ... OGDEN, UT IRS

**For Paperwork Reduction Act Notice, see instructions.** Cat. No. 11291J Form **990-T** (2000)

CNG TRANSMISSION MANAGEMENT VEBA
EIN 25-1755735
FORM 990-T
FYE 12/31/2000

The taxpayer is amending their 2000 Form 990-T due to a recent decision by the US Sixth Circuit Court of Appeals*. On May 23, 2003, the Sixth Circuit Court of Appeals found that the limitation posed on the nontaxable investment income of a VEBA set aside annually does not apply to the amount of investment income that the VEBA spends on the reasonable costs of providing health care benefits during the year. As such, the taxpayer is amending their 2000 tax return to show the reduction in income set aside during the year by the amount paid during the year to provide health care benefits to its members.

| | Form 990-T as originally filed | Form 990-T as amended |
|---|---|---|
| Gross Taxable Income | 2,795,002 | - ** |
| Total Deductions | (100,410) | - |
| Specific Deduction | (1,000) | (1,000) |
| Taxable Income | 2,693,592 | - |

* Sherwin-Williams Co. Employee Health Plan Trust, Petitioner - Appellant v Commissioner of Internal Revenue, Respondent - Appellee. US Court of Appeals, 6th Circuit, 01-1276, May 23, 2003.

| | | |
|---|---|---|
| Gross Income Earned | | 2,795,002 |
| Benefits Paid During 2000 | 7,556,757 | |
| Portion Attributed to Income | 2,795,002 | (2,795,002) |

** Income Set Aside at Year End -

## Part III Tax Computation

35 **Organizations Taxable as Corporations** (see instructions for tax computation on page 12). Controlled group members (sections 1561 and 1563)—check here ☐. See instructions and:

a Enter your share of the $50,000, $25,000, and $9,925,000 taxable income brackets (in that order): (1) $ (2) $ (3) $

b Enter organization's share of: (1) additional 5% tax (not more than $11,750) $ (2) additional 3% tax (not more than $100,000) $

| | | |
|---|---|---|
| c Income tax on the amount on line 34 | 35c | |
| 36 **Trusts Taxable at Trust Rates** (see instructions for tax computation on page 12) Income tax on the amount on line 34 from: ☐ Tax rate schedule or ☐ Schedule D (Form 1041) | 36 | |
| 37 **Proxy tax** (see page 13 of the instructions) | 37 | |
| 38 Alternative minimum tax | 38 | |
| 39 **Total** (add lines 37 and 38 to line 35c or 36, whichever applies) | 39 | |

## Part IV Tax and Payments

| | | | | |
|---|---|---|---|---|
| 40a Foreign tax credit (corporations attach Form 1118; trusts attach Form 1116) | 40a | | | |
| b Other credits (see page 13 of the instructions) | 40b | | | |
| c General business credit—Check if from: ☐ Form 3800 or ☐ Form (specify) ▶ | 40c | | | |
| d Credit for prior year minimum tax (attach Form 8801 or 8827) | 40d | | | |
| e **Total credits** (add lines 40a through 40d) | | | 40e | |
| 41 Subtract line 40e from line 39 | | | 41 | |
| 42 Recapture taxes. Check if from: ☐ Form 4255 ☐ Form 8611 | | | 42 | |
| 43 **Total tax** (add lines 41 and 42) | | | 43 | |
| 44 **Payments: a** 1999 overpayment credited to 2000 | 44a | | | |
| b 2000 estimated tax payments | 44b | | | |
| c Tax deposited with Form 8868 | 44c | | | |
| d Foreign organizations—Tax paid or withheld at source (see instructions) | 44d | | | |
| e Backup withholding (see instructions) | 44e | | | |
| f Other credits and payments (see instructions) Paid w/ Original | 44f | 1,065,684 | | |
| 45 **Total payments** (add lines 44a through 44f) | | | 45 | |
| 46 Estimated tax penalty (see page 4 of the instructions). Check ▶ ☐ if Form 2220 is attached | | | 46 | |
| 47 **Tax due**—If line 45 is less than the total of lines 43 and 46, enter amount owed ▶ | | | 47 | |
| 48 **Overpayment**—If line 45 is larger than the total of lines 43 and 46, enter amount overpaid ▶ | | | 48 | 1,065,684 |
| 49 Enter the amount of line 48 you want: **Credited to 2001 estimated tax** ▶ | | Refunded ▶ | 49 | 1,065,684 |

## Part V Statements Regarding Certain Activities and Other Information (See instructions on page 14.)

| | Yes | No |
|---|---|---|
| 1 At any time during the 2000 calendar year, did the organization have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? If "Yes," the organization may have to file Form TD F 90-22.1. If "Yes," enter the name of the foreign country here ▶ | | ✓ |
| 2 During the tax year, did the organization receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," see page 14 of the instructions for other forms the organization may have to file. | | ✓ |
| 3 Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ | | |

## Schedule A—Cost of Goods Sold (See instructions on page 15.)

Method of inventory valuation (specify) ▶

| | | | | |
|---|---|---|---|---|
| 1 Inventory at beginning of year | 1 | | 6 Inventory at end of year | 6 |
| 2 Purchases | 2 | | 7 **Cost of goods sold.** Subtract line 6 from line 5. (Enter here and on line 2, Part I.) | 7 |
| 3 Cost of labor | 3 | | | |
| 4a Additional section 263A costs (attach schedule) | 4a | | 8 Do the rules of section 263A (with respect to property produced or acquired for resale) apply to the organization? | Yes / No |
| b Other costs (attach schedule) | 4b | | | |
| 5 Total—Add lines 1 through 4b | 5 | | | |

**Please Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ [signature] Signature of officer or fiduciary — 10/14/04 Date — ▶ AVP Title

**Paid Preparer's Use Only**

| | | | |
|---|---|---|---|
| Preparer's signature ▶ | Date | Check if self-employed ▶ ☐ | Preparer's SSN or PTIN |
| Firm's name (or yours, if self-employed), address, and ZIP code ▶ | | EIN ▶ | |
| | | Phone no. ( ) | |

## Schedule C—Rent Income (From Real Property and Personal Property Leased With Real Property)

(See instructions on page 16.)

1 Description of property

(1)
(2)
(3)
(4)

| | 2 Rent received or accrued | | |
|---|---|---|---|
| | (a) From personal property (if the percentage of rent for personal property is more than 10% but not more than 50%) | (b) From real and personal property (if the percentage of rent for personal property exceeds 50% or if the rent is based on profit or income) | 3 Deductions directly connected with the income in columns 2(a) and 2(b) (attach schedule) |
| (1) | | | |
| (2) | | | |
| (3) | | | |
| (4) | | | |
| | Total | Total | |
| **Total income** (Add totals of columns 2(a) and 2(b). Enter here and on line 6, column (A), Part I, page 1.) ▶ | | | **Total deductions.** Enter here and on line 6, column (B), Part I, page 1 ▶ |

## Schedule E—Unrelated Debt-Financed Income (See instructions on page 16.)

| 1 Description of debt-financed property | 2 Gross income from or allocable to debt-financed property | 3 Deductions directly connected with or allocable to debt-financed property: (a) Straight line depreciation (attach schedule) | (b) Other deductions (attach schedule) |
|---|---|---|---|
| (1) | | | |
| (2) | | | |
| (3) | | | |
| (4) | | | |

| | 4 Amount of average acquisition debt on or allocable to debt-financed property (attach schedule) | 5 Average adjusted basis of or allocable to debt-financed property (attach schedule) | 6 Column 4 divided by column 5 | 7 Gross income reportable (column 2 × column 6) | 8 Allocable deductions (column 6 × total of columns 3(a) and 3(b)) |
|---|---|---|---|---|---|
| (1) | | | % | | |
| (2) | | | % | | |
| (3) | | | % | | |
| (4) | | | % | | |
| **Totals** ▶ | | | | Enter here and on line 7, column (A), Part I, page 1. | Enter here and on line 7, column (B), Part I, page 1. |
| **Total dividends-received deductions included in column 8** ▶ | | | | | |

## Schedule F—Interest, Annuities, Royalties, and Rents From Controlled Organizations (See instructions on page 17.)

| | | Exempt Controlled Organizations | | | |
|---|---|---|---|---|---|
| 1 Name of Controlled Organization | 2 Employer Identification Number | 3 Net unrelated income (loss) (see instructions) | 4 Total of specified payments made | 5 Part of column (4) that is included in the controlling organization's gross income | 6 Deductions directly connected with income in column (5) |
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |

Nonexempt Controlled Organizations

| 7 Taxable Income | 8 Net unrelated income (loss) (see instructions) | 9 Total of specified payments made | 10 Part of column (9) that is included in the controlling organization's gross income | 11 Deductions directly connected with income in column (10) |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| **12 Totals** | | | Add columns 5 and 10. Enter here and on line 8, Column (A), Part I, page 1. | Add columns 6 and 11. Enter here and on line 8, Column (B), Part I, page 1. |

## Schedule G—Investment Income of a Section 501(c)(7), (9), or (17) Organization
(See instructions on page 17.)

| 1 Description of income | 2 Amount of income | 3 Deductions directly connected (attach schedule) | 4 Set-asides (attach schedule) | 5 Total deductions and set-asides (col. 3 plus col. 4) |
|---|---|---|---|---|
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |
| Totals . . . . . . . . ▶ | Enter here and on line 9, column (A), Part I, page 1. | | | Enter here and on line 9, column (B), Part I, page 1. |

## Schedule I—Exploited Exempt Activity Income, Other Than Advertising Income
(See instructions on page 18.)

| 1 Description of exploited activity | 2 Gross unrelated business income from trade or business | 3 Expenses directly connected with production of unrelated business income | 4 Net income (loss) from unrelated trade or business (column 2 minus column 3). If a gain, compute cols. 5 through 7. | 5 Gross income from activity that is not unrelated business income | 6 Expenses attributable to column 5 | 7 Excess exempt expenses (column 6 minus column 5, but not more than column 4). |
|---|---|---|---|---|---|---|
| (1) | | | | | | |
| (2) | | | | | | |
| (3) | | | | | | |
| (4) | | | | | | |
| Column totals . . . . . . . . ▶ | Enter here and on line 10, col. (A), Part I, page 1. | Enter here and on line 10, col. (B), Part I, page 1. | | | | Enter here and on line 26, Part II, page 1. |

## Schedule J—Advertising Income (See instructions on page 18.)

### Part I Income From Periodicals Reported on a Consolidated Basis

| 1 Name of periodical | 2 Gross advertising income | 3 Direct advertising costs | 4 Advertising gain or (loss) (col. 2 minus col. 3). If a gain, compute cols. 5 through 7. | 5 Circulation income | 6 Readership costs | 7 Excess readership costs (column 6 minus column 5, but not more than column 4). |
|---|---|---|---|---|---|---|
| (1) | | | | | | |
| (2) | | | | | | |
| (3) | | | | | | |
| (4) | | | | | | |
| Column totals (carry to Part II, line (5)) . . . . . . . . ▶ | | | | | | |

### Part II Income From Periodicals Reported on a Separate Basis (For each periodical listed in Part II, fill in columns 2 through 7 on a line-by-line basis.)

| | | | | | | |
|---|---|---|---|---|---|---|
| (1) | | | | | | |
| (2) | | | | | | |
| (3) | | | | | | |
| (4) | | | | | | |
| (5) Totals from Part I | | | | | | |
| Column totals, Part II . . . . ▶ | Enter here and on line 11, col. (A), Part I, page 1. | Enter here and on line 11, col. (B), Part I, page 1. | | | | Enter here and on line 27, Part II, page 1. |

## Schedule K—Compensation of Officers, Directors, and Trustees (See instructions on page 18.)

| 1 Name | 2 Title | 3 Percent of time devoted to business | 4 Compensation attributable to unrelated business |
|---|---|---|---|
| | | % | |
| | | % | |
| | | % | |
| | | % | |
| Total—Enter here and on line 14, Part II, page 1. . . . . . . . . . . . . . . . . . . ▶ | | | |

Form **990-T**

Department of the Treasury
Internal Revenue Service

# Exempt Organization Business Income Tax Return
## (and proxy tax under section 6033(e))

For calendar year 2000 or other tax year beginning ____________, 2000, and ending ____________, 20 ____

▶ See separate instructions.

OMB No. 1545-0687

**2000**

A ☐ Check box if address changed

B Exempt under section
☒ 501(C)(9)
☐ 408(e) ☐ 220(e)
☐ 408A ☐ 530(a)
☐ 529(a)

Please Print or Type

Name of organization (☐ check box if name changed and see instructions)
CNG TRANSMISSION MANAGEMENT VEBA

Number, street, and room or suite no. (If a P.O. box, see page 7 of instructions.)
MELLON BANK N.A. PO BOX 185

City or town, state, and ZIP code
PITTSBURGH, PA 15230

D Employer identification number (Employees' trust, see instructions for Block D on page 7.)
25-1755735

E New unrelated bus. activity codes (See instructions for Block E on page 7.)
900001

C Book value of all assets at end of year

F Group exemption number (see instructions for Block F on page 7) ▶

G Check organization type ▶ ☐ 501(c) corporation ☒ 501(c) trust ☐ 401(a) trust ☐ Other trust

H Describe the organization's primary unrelated business activity. ▶ INVESTMENT INCOME

I During the tax year, was the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? ▶ ☐ Yes ☒ No
If "Yes," enter the name and identifying number of the parent corporation. ▶

J The books are in care of ▶ MELLON BANK N.A. Telephone number ▶ (412)234-0127

ENVELOPE POSTMARK DATE OCT 20 2004

**Part I Unrelated Trade or Business Income**

| | | Line | (A) Income | (B) Expenses | (C) Net |
|---|---|---|---|---|---|
| 1a | Gross receipts or sales | | | | |
| b | Less returns and allowances ____ c Balance ▶ | 1c | | | |
| 2 | Cost of goods sold (Schedule A, line 7) | 2 | | | |
| 3 | Gross profit (subtract line 2 from line 1c) | 3 | | | |
| 4a | Capital gain net income (attach Schedule D) | 4a | | | |
| b | Net gain (loss) (Form 4797, Part II, line 18) (attach Form 4797) | 4b | | | |
| c | Capital loss deduction for trusts | 4c | (3,000) | | (3,000) |
| 5 | Income (loss) from partnerships and S corporations (attach statement) | 5 | | | |
| 6 | Rent income (Schedule C) | 6 | | | |
| 7 | Unrelated debt-financed income (Schedule E) | 7 | | | |
| 8 | Interest, annuities, royalties, and rents from controlled organizations (Schedule F) | 8 | | | |
| 9 | Investment income of a section 501(c)(7), (9), or (17) organization (Schedule G) | 9 | 2,798,002 | | 2,798,002 |
| 10 | Exploited exempt activity income (Schedule I) | 10 | | | |
| 11 | Advertising income (Schedule J) | 11 | | | |
| 12 | Other income (see page 8 of the instructions — attach schedule) | 12 | | | |
| 13 | **TOTAL** (combine lines 3 through 12) | 13 | 2,795,002 | | 2,795,002 |

COPY

Not For Processing

**Part II Deductions Not Taken Elsewhere** (See page 9 of the instructions for limitations on deductions.) (Except for contributions, deductions must be directly connected with the unrelated business income.)

RECEIVED
214 OCT 28 2004 IRS-OSC
OGDEN, UT

| | | Line | Amount |
|---|---|---|---|
| 14 | Compensation of officers, directors, and trustees (Schedule K) | 14 | 18,885 |
| 15 | Salaries and wages | 15 | |
| 16 | Repairs and maintenance | 16 | |
| 17 | Bad debts | 17 | |
| 18 | Interest (attach schedule) | 18 | 6,151 |
| 19 | Taxes and licenses | 19 | |
| 20 | Charitable contributions (see page 11 of the instructions for limitation rules) | 20 | |
| 21 | Depreciation (attach Form 4562) — 21 | | |
| 22 | Less depreciation claimed on Schedule A and elsewhere on return — 22a | 22b | |
| 23 | Depletion | 23 | |
| 24 | Contributions to deferred compensation plans | 24 | |
| 25 | Employee benefit programs | 25 | |
| 26 | Excess exempt expenses (Schedule I) | 26 | |
| 27 | Excess readership costs (Schedule J) | 27 | |
| 28 | Other deductions (attach schedule) INVESTMENT MANAGER FEES | 28 | 75,374 |
| 29 | **Total deductions** (add lines 14 through 28) | 29 | 100,410 |
| 30 | Unrelated business taxable income before net operating loss deduction (subtract line 29 from line 13) | 30 | 2,694,592 |
| 31 | Net operating loss deduction | 31 | |
| 32 | Unrelated business taxable income before specific deduction (subtract line 31 from line 30) | 32 | 2,694,592 |
| 33 | Specific deduction (Generally $1,000, but see line 33 instructions for exceptions) | 33 | 1,000 |
| 34 | **Unrelated business taxable income** (subtract line 33 from line 32). If line 33 is greater than line 32, enter the smaller of zero or line 32 | 34 | 2,693,592 |

**For Paperwork Reduction Act Notice, see instructions.**
ISA
STF FED2085F.1

YA 11/2/01

Form **990-T** (2000)

rm 8868
ecember 2000)
partment of the Treasury
ernal Revenue Service

# Application for Extension of Time To File an Exempt Organization Return

▶ File a separate application for each return.

OMB No. 1545-1709

If you are filing for an Automatic 3-Month Extension, complete only Part I and check this box ▶ [X]

If you are filing for an Additional (not automatic) 3-Month Extension, complete only Part II (on page 2 of this form).

ote: *Do not complete Part II unless you have already been granted an automatic 3-month extension on a previously filed orm 8868.*

## Part I Automatic 3-Month Extension of Time — Only submit original (no copies needed)

ote: *Form 990-T corporations requesting an automatic 6-month extension — check this box and complete Part I only* ▶ [ ]

*ll other corporations (including Form 990-C filers) must use Form 7004 to request an extension of time to file income tax returns. artnerships, REMICs and trusts must use Form 8736 to request an extension of time to file Form 1065, 1066, or 1041.*

| ype or rint | Name of Exempt Organization<br>CNG TRANSMISSION MANAGEMENT VEBA | Employer identification number<br>25-1755735 |
|---|---|---|
| le by the je date for ing your turn. See structions. | Number, street, and room or suite no. If a P.O. box, see instructions.<br>MELLON BANK N.A. PO BOX 185 | |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions.<br>PITTSBURGH, PA 15230 | |

heck type of return to be filed (file a separate application for each return):

| | | |
|---|---|---|
| [ ] Form 990 | [ ] Form 990-T (corporation) | [ ] Form 4720 |
| [ ] Form 990-BL | [ ] Form 990-T (sec. 401(a) or 408(a) trust) | [ ] Form 5227 |
| [ ] Form 990-EZ | [X] Form 990-T (trust other than above) | [ ] Form 6069 |
| [ ] Form 990-PF | [ ] Form 1041-A | [ ] Form 8870 |

If the organization does not have an office or place of business in the United States, check this box ▶ [ ]

If this is for a **Group Return**, enter the organization's four digit Group Exemption Number (GEN) ______ . If this is or the **whole** group, check this box ▶ [ ]. If it is for part of the group, check this box ▶ [ ] and attach a list with the names and EINs of all members the extension will cover.

1 I request an automatic 3-month (6-month, for **990-T corporation**) extension of time until AUGUST 15, 20 01, to file the exempt organization return for the organization named above. The extension is for the organization's return for:

▶ [X] calendar year 20 00 or

▶ [ ] tax year beginning ______, 20 ___, and ending ______, 20 ___.

2 If this tax year is for less than 12 months, check reason: [ ] Initial return [ ] Final return [ ] Change in accounting period

3a If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions . . . $ 1,069,264

b If this application is for Form 990-PF or 990-T, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit . . . $ 1,069,264

c **Balance Due.** Subtract line 3b from line 3a. Include your payment with this form, or, if required, deposit with FTD coupon or, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions . . . $ 0.00

### Signature and Verification

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

MELLON BANK, N.A.

Signature ▶ BY: [signature] Title ▶ VICE-PRESIDENT Date ▶ 05/14/01

For Paperwork Reduction Act Notice, see Instruction Form 8868 (12-2000)

SA
TF FED9056F

- If you are filing for an Additional (not automatic) 3-Month Extension, complete only Part II and check this box . . . . . . . ▶ [X]

Note: *Only complete Part II if you have already been granted an automatic 3-month extension on a previously filed Form 8868.*

- If you are filing for an Automatic 3-Month Extension, complete only Part I (on page 1).

## Part II Additional (not automatic) 3-Month Extension of Time — Must File Original and One Copy.

| Type or print<br>File by the extended due date for filing the return. See instructions. | Name of Exempt Organization<br>CNG TRANSMISSION MANAGEMENT VEBA | Employer identification number<br>25-1755735 |
|---|---|---|
| | Number, street, and room or suite no. If a P.O. box, see instructions.<br>MELLON BANK N.A. PO BOX 185 | For IRS use only |
| | City, town or post office, state, and ZIP code. For a foreign address, see instructions.<br>PITTSBURGH, PA 15230 | |

**Check type of return to be filed** (File a separate application for each return):

☐ Form 990 ☐ Form 990-EZ ☐ Form 990-T (sec. 401(a) or 408(a) trust) ☐ Form 1041-A ☐ Form 5227 ☐ Form 8870
☐ Form 990-BL ☐ Form 990-PF [X] Form 990-T (trust other than above) ☐ Form 4720 ☐ Form 6069

**STOP: Do not complete Part II if you were not already granted an automatic 3-month extension on a previously filed Form 8868.**

- If the organization does **not** have an office or place of business in the United States, check this box . . . . . . . . . . . . . . . . . ▶ ☐
- If this is for a **Group Return,** enter the organization's four digit Group Exemption Number (GEN) ______________ . If this is for the **whole** group, check this box ▶ ☐ . If it is for **part** of the group, check this box ▶ ☐ and attach a list with the names and EINs of all members the extension is for.

4 I request an additional 3-month extension of time until ~~NOVEMBER 15~~, 20 ~~01~~.

5 For calendar year 2000 , or other tax year beginning ______________ , 20 ____ and ending ______________ , 20 ____ .

6 If this tax year is for less than 12 months, check reason: ☐ Initial return ☐ Final return ☐ Change in accounting period

7 State in detail why you need the extension ADDITIONAL TIME IS NEEDED IN ORDER TO GATHER INFORMATION TO PREPARE A COMPLETE AND ACCURATE RETURN.

RECEIVED
AUG 20 2001
OGDEN, UT

8a If this application is for Form 990-BL, 990-PF, 990-T, 4720, or 6069, enter the tentative tax, less any nonrefundable credits. See instructions . . . . . . . . . . . . . . . . . . . . . . . . . . $1,069,264

b If this application is for Form 990-PF, 990-T, 4720, or 6069, enter any refundable credits and estimated tax payments made. Include any prior year overpayment allowed as a credit and any amount paid previously with Form 8868 . . . . . . . . . . . . . . . . . . . . . . . . . . $1,069,264

c ~~Balance Due.~~ Subtract line 8b from line 8a. Include your payment with this form, or, if required, deposit with FTD coupon or, if required, by using EFTPS (Electronic Federal Tax Payment System). See instructions . . . . . . . . . . . . . . . . . . . . . . . . . . $ 0.00

### Signature and Verification

Under penalties of perjury, I declare that I have examined this form, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete, and that I am authorized to prepare this form.

Signature ▶ Thomas A Zcz Title ▶ VICE PRESIDENT Date ▶ 08/15/01

### Notice to Applicant — To Be Completed by the IRS

[X] We have approved this application. Please attach this form to the organization's return.

☐ We have not approved this application. However, we have granted a 10-day grace period from the later of the date shown below or the due date of the organization's return (including any prior extensions). This grace period is considered to be a valid extension of time for elections otherwise required to be made on a timely return. Please attach this form to the organization's return.

☐ We have not approved this application. After considering the reasons stated in item 7, we cannot grant your request for an extension of time to file. We are not granting a 10-day grace period.

☐ We cannot consider this application because it was filed after the due date of the return for which an extension was requested.

☐ Other ______________________________

______________________ By: ______________________ ______________
Director Date

**Alternate Mailing Address** — Enter the address if you want the copy of this application for an additional 3-month extension returned to an address different than the one entered above.

| Type or print | Name |
|---|---|
| | Number and street (include suite, room, or apt. no.) Or a P.O. box number |
| | City or town, province or state, and country (including postal or ZIP code) |



STF FED9056F.2

## Part III Tax Computation

35 **Organizations Taxable as Corporations** (see instructions for tax computation on page 12).
Controlled group members (sections 1561 and 1563) — check here ☐. **See instructions** and:
a Enter your share of the $50,000, $25,000, and $9,925,000 taxable income brackets (in that order):
(1) $ (2) $ (3) $
b Enter organization's share of: (1) additional 5% tax (not more than $11,750) . $
(2) additional 3% tax (not more than $100,000) . $

| | | |
|---|---|---|
| c Income tax on the amount on line 34 ▶ | 35c | |
| 36 **Trusts Taxable at Trust Rates** (see instructions for tax computation on page 12) Income tax on the amount on line 34 from: ☐ Tax rate schedule or ☒ Schedule D (Form 1041) ▶ | 36 | 1,065,684 |
| 37 **Proxy tax** (see page 13 of the instructions) ▶ | 37 | |
| 38 Alternative minimum tax | 38 | |
| 39 **Total** (add lines 37 and 38 to line 35c or 36, whichever applies) | 39 | 1,065,684 |

## Part IV Tax and Payments

| | | | | |
|---|---|---|---|---|
| 40a Foreign tax credit (corporations attach Form 1118; trusts attach Form 1116) | 40a | | | |
| b Other credits (see page 13 of the instructions) | 40b | | | |
| c General business credit — Check if from: ☐ Form 3800 or ☐ Form (specify) ▶ | 40c | | | |
| d Credit for prior year minimum tax (attach Form 8801 or 8827) | 40d | | | |
| e **Total credits** (add lines 40a through 40d) | | | 40e | |
| 41 Subtract line 40e from line 39 | | | 41 | 1,065,684 |
| 42 Recapture taxes. Check if from: ☐ Form 4255 ☐ Form 8611 | | | 42 | |
| 43 **Total tax** (add lines 41 and 42) | | | 43 | 1,065,684 |
| 44 **Payments:** a 1999 overpayment credited to 2000 | 44a | 28,264 | | |
| b 2000 estimated tax payments | 44b | 1,041,000 | | |
| c Tax deposited with Form 8868 | 44c | | | |
| d Foreign organizations — Tax paid or withheld at source (see instructions) | 44d | | | |
| e Backup withholding (see instructions) | 44e | | | |
| f Other credits and payments (see instructions) | 44f | | | |
| 45 **Total payments** (add lines 44a through 44f) | | | 45 | 1,069,264 |
| 46 Estimated tax penalty (see page 4 of the instructions). Check ▶ ☐ if Form 2220 is attached | | | 46 | |
| 47 **Tax due** — If line 45 is less than the total of lines 43 and 46, enter amount owed ▶ | | | 47 | 0.00 |
| 48 **Overpayment** — If line 45 is larger than the total of lines 43 and 46, enter amount overpaid ▶ | | | 48 | 3,580 |
| 49 Enter the amount of line 48 you want: **Credited to 2001 estimated tax** ▶ 3,580 **Refunded** ▶ | | | 49 | 0.00 |

## Part V Statements Regarding Certain Activities and Other Information (See instructions on page 14.)

| | Yes | No |
|---|---|---|
| 1 At any time during the 2000 calendar year, did the organization have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? If "Yes," the organization may have to file Form TD F 90-22.1. If "Yes," enter the name of the foreign country here ▶ | | X |
| 2 During the tax year, did the organization receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If "Yes," see page 14 of the instructions for other forms the organization may have to file. | | X |
| 3 Enter the amount of tax-exempt interest received or accrued during the tax year ▶ $ | | |

**Schedule A — Cost of Goods Sold** (See instructions on page 15.)

Method of inventory valuation (specify) ▶

| | | | | | |
|---|---|---|---|---|---|
| 1 Inventory at beginning of year | 1 | | 6 Inventory at end of year | 6 | |
| 2 Purchases | 2 | | 7 **Cost of goods sold.** Subtract line 6 from line 5. (Enter here and on line 2, Part I.) | 7 | |
| 3 Cost of labor | 3 | | 8 Do the rules of section 263A (with respect to property produced or acquired for resale) apply to the organization? | Yes | No |
| 4a Additional section 263A costs (attach schedule) | 4a | | | | |
| b Other costs (attach schedule) | 4b | | | | |
| 5 **Total** — Add lines 1 through 4b | 5 | | | | |

**Please Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

▶ Signature of officer or fiduciary | 11/15/01 Date | ▶ VICE PRESIDENT Title

**Paid Preparer's Use Only**

| | | | |
|---|---|---|---|
| Preparer's signature ▶ | Date | Check if self-employed ▶ ☐ | Preparer's SSN or PTIN |
| Firm's name (or yours, if self-employed), address, and ZIP code ▶ | | EIN ▶ | |
| | | Phone no. | |

## Schedule C — Rent Income (From Real Property and Personal Property Leased With Real Property) (See instructions on page 16.)

1 Description of property

(1)
(2)
(3)
(4)

| | 2 Rent received or accrued | | 3 Deductions directly connected with the income in columns 2(a) and 2(b) (attach schedule) |
|---|---|---|---|
| | (a) From personal property (if the percentage of rent for personal property is more than 10% but not more than 50%) | (b) From real and personal property (if the percentage of rent for personal property exceeds 50% or if the rent is based on profit or income) | |
| (1) | | | |
| (2) | | | |
| (3) | | | |
| (4) | | | |
| | Total | Total | Total deductions. Enter here and on line 6, column (B), Part I, page 1. . . . . . ▶ |
| Total income (Add totals of columns 2(a) and 2(b). Enter here and on line 6, column (A), Part I, page 1.) . . . . . . . ▶ | | | |

## Schedule E — Unrelated Debt-Financed Income (See instructions on page 16.)

| | 1 Description of debt-financed property | 2 Gross income from or allocable to debt-financed property | 3 Deductions directly connected with or allocable to debt-financed property | |
|---|---|---|---|---|
| | | | (a) Straight line depreciation (attach schedule) | (b) Other deductions (attach schedule) |
| (1) | | | | |
| (2) | | | | |
| (3) | | | | |
| (4) | | | | |

| | 4 Amount of average acquisition debt on or allocable to debt-financed property (attach schedule) | 5 Average adjusted basis of or allocable to debt-financed property (attach schedule) | 6 Column 4 divided by column 5 | 7 Gross income reportable (column 2 × column 6) | 8 Allocable deductions (column 6 × total of columns 3(a) and 3(b)) |
|---|---|---|---|---|---|
| (1) | | | % | | |
| (2) | | | % | | |
| (3) | | | % | | |
| (4) | | | % | | |
| | | | | Enter here and on line 7, column (A), Part I, page 1. | Enter here and on line 7, column (B), Part I, page 1. |
| Totals . . . . . . . . . . ▶ | | | | | |
| Total dividends-received deductions included in column 8 . . . . . . . . ▶ | | | | | |

## Schedule F — Interest, Annuities, Royalties, and Rents From Controlled Organizations (See instructions on page 17.)

| | 1 Name of Controlled Organization | 2 Employer Identification Number | Exempt Controlled Organizations | | | |
|---|---|---|---|---|---|---|
| | | | 3 Net unrelated income (loss) (see instructions) | 4 Total of specified payments made | 5 Part of column (4) that is included in the controlling organization's gross income | 6 Deductions directly connected with income in column (5) |
| (1) | | | | | | % |
| (2) | | | | | | % |
| (3) | | | | | | % |
| (4) | | | | | | % |

Nonexempt Controlled Organizations

| | 7 Taxable income | 8 Net unrelated income (loss) (see instructions) | 9 Total of specified payments made | 10 Part of column (9) that is included in the controlling organization's gross income | 11 Deductions directly connected with income in column (10) |
|---|---|---|---|---|---|
| (1) | | | | | |
| (2) | | | | | |
| (3) | | | | | |
| (4) | | | | | |
| | | | | Add columns 5 and 10. Enter here and on line 8, Column (A), Part I, page 1. | Add columns 6 and 11. Enter here and on line 8, Column (B), Part I, page 1. |
| 12 Totals . . . . . . . . . . | | | | | |



STF FED2085F.3

**Schedule G — Investment Income of a Section 501(c)(7), (9), or (17) Organization**
(See instructions on page 17.)

| 1 Description of income | 2 Amount of income | 3 Deductions directly connected (attach schedule) | 4 Set-asides (attach schedule) | 5 Total deductions and set-asides (col. 3 plus col. 4) |
|---|---|---|---|---|
| (1) TEMPORARY INVEST | 164,854 | | | |
| (2) INVESTMENT INCOME | 2,633,148 | | | |
| (3) | | | | |
| (4) | | | | |
| Totals ▶ | Enter here and on line 9, column (A), Part I, page 1. 2,798,002 | | | Enter here and on line 9, column (B), Part I, page 1. |

**Schedule I — Exploited Exempt Activity Income, Other Than Advertising Income**
(See instructions on page 18.)

| 1 Description of exploited activity | 2 Gross unrelated business income from trade or business | 3 Expenses directly connected with production of unrelated business income | 4 Net income (loss) from unrelated trade or business (column 2 minus column 3). If a gain, compute cols. 5 through 7. | 5 Gross income from activity that is not unrelated business income | 6 Expenses attributable to column 5 | 7 Excess exempt expenses (column 6 minus column 5, but not more than column 4). |
|---|---|---|---|---|---|---|
| (1) | | | | | | |
| (2) | | | | | | |
| (3) | | | | | | |
| (4) | | | | | | |
| Column totals ▶ | Enter here and on line 10, col. (A), Part I, page 1. | Enter here and on line 10, col. (B), Part I, page 1. | | | | Enter here and on line 26, Part II, page 1. |

**Schedule J — Advertising Income** (See instructions on page 18.)

**Part I — Income From Periodicals Reported on a Consolidated Basis**

| 1 Name of periodical | 2 Gross advertising income | 3 Direct advertising costs | 4 Advertising gain or (loss) (col. 2 minus col. 3). If a gain, compute cols. 5 through 7. | 5 Circulation income | 6 Readership costs | 7 Excess readership costs (column 6 minus column 5, but not more than column 4). |
|---|---|---|---|---|---|---|
| (1) | | | | | | |
| (2) | | | | | | |
| (3) | | | | | | |
| (4) | | | | | | |
| Column totals (carry to Part II, line (5)) ▶ | | | | | | |

**Part II — Income From Periodicals Reported on a Separate Basis** (For each periodical listed in Part II, fill in columns 2 through 7 on a line-by-line basis.)

| | | | | | | |
|---|---|---|---|---|---|---|
| (1) | | | | | | |
| (2) | | | | | | |
| (3) | | | | | | |
| (4) | | | | | | |
| (5) Totals from Part I | | | | | | |
| Column totals, Part II ▶ | Enter here and on line 11, col. (A), Part I, page 1. | Enter here and on line 11, col. (B), Part I, page 1. | | | | Enter here and on line 27, Part II, page 1. |

**Schedule K — Compensation of Officers, Directors, and Trustees** (See instructions on page 18.)

| 1 Name | 2 Title | 3 Percent of time devoted to business | 4 Compensation attributable to unrelated business |
|---|---|---|---|
| MELLON BANK N.A. | TRUSTEE | % | 18,885 |
| | | % | |
| | | % | |
| | | % | |
| Total — Enter here and on line 14, Part II, page 1 ▶ | | | 18,885 |



STF FED2085F.4

SCHEDULE D (Form 1041)

Department of the Treasury Internal Revenue Service

# Capital Gains and Losses

▶ Attach to Form 1041 (or Form 5227). See the separate instructions for Form 1041 (or Form 5227).

OMB No. 1545-0092

2000

| Name of estate or trust | Employer identification number |
|---|---|
| CNG TRANSMISSION MANAGEMENT VEBA | 25-1755735 |

**Note:** *Form 5227 filers need to complete **only** Parts I and II.*

## Part I Short-Term Capital Gains and Losses — Assets Held One Year or Less

| (a) Description of property (Example, 100 shares 7% preferred of "Z" Co.) | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Sales price | (e) Cost or other basis (see page 27) | (f) Gain or (Loss) (col. (d) less col. (e)) |
|---|---|---|---|---|---|
| 1 SEE ATTACHED | | | | | (260,530) |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | |
|---|---|---|
| 2 Short-term capital gain or (loss) from Forms 4684, 6252, 6781, and 8824 | 2 | |
| 3 Net short-term gain or (loss) from partnerships, S corporations, and other estates or trusts | 3 | 15,935 |
| 4 Short-term capital loss carryover. Enter the amount, if any, from line 9 of the 1999 Capital Loss Carryover Worksheet | 4 | ( 266,535) |
| 5 **Net short-term gain or (loss).** Combine lines 1 through 4 in column (f). Enter here and on line 14 below ▶ | 5 | (511,130) |

## Part II Long-Term Capital Gains and Losses — Assets Held More Than One Year

| (a) Description of property (Example, 100 shares 7% preferred of "Z" Co.) | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Sales price | (e) Cost or other basis (see page 27) | (f) Gain or (Loss) (col. (d) less col. (e)) | (g) 28% Rate Gain or (Loss) *(see instr. below) |
|---|---|---|---|---|---|---|
| 6 SEE ATTACHED | | | | | (366,214) | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| 7 Long-term capital gain or (loss) from Forms 2439, 4684, 6252, 6781, and 8824 | 7 | | |
| 8 Net long-term gain or (loss) from partnerships, S corporations, and other estates or trusts | 8 | | |
| 9 Capital gain distributions | 9 | | |
| 10 Gain from Form 4797, Part I | 10 | | |
| 11 Long-term capital loss carryover. Enter in both columns (f) and (g) the amount, if any, from line 14, of the 1999 Capital Loss Carryover Worksheet | 11 | ( 235,685) | ( ) |
| 12 Combine lines 6 through 11 in column (g) | 12 | | |
| 13 **Net long-term gain or (loss).** Combine lines 6 through 11 in column (f). Enter here and on line 15 below ▶ | 13 | (601,899) | |

***28% rate gain or (loss)** includes all "collectibles gains and losses" (as defined on page 28 of the instructions) and up to 50% of the eligible gain on qualified small business stock (see page 26 of the instructions).

## Part III Summary of Parts I and II

| | | (1) Beneficiaries' (see page 28) | (2) Estate's or trust's | (3) Total |
|---|---|---|---|---|
| 14 **Net short-term gain or (loss)** (from line 5 above) | 14 | | (511,130) | (511,130) |
| 15 **Net long-term gain or (loss):** | | | | |
| a 28% rate gain or (loss) (from line 12 above) | 15a | | | |
| b Unrecaptured section 1250 gain (see line 17 of the worksheet on page 29) | 15b | | | |
| c Total for year (from line 13 above) | 15c | | (601,899) | (601,899) |
| 16 **Total** net gain or (loss). Combine lines 14 and 15c ▶ | 16 | | (1,130,029) | (1,113,029) |

**Note:** *If line 16, column (3), is a net gain, enter the gain on Form 1041, line 4. If lines 15c and 16, column (2), are net gains, go to Part V, and **do not** complete Part IV. If line 16, column (3), is a net loss, complete Part IV and the **Capital Loss Carryover Worksheet**, as necessary.*

**Part IV** Capital Loss Limitation

| | | | |
|---|---|---|---|
| 17 | Enter here and enter as a (loss) on Form 1041, line 4, the **smaller** of:<br>a The loss on line 16, column (3); **or**<br>b $3,000 | 17 | ( 3,000 ) |

*If the loss on line 16, column (3), is more than $3,000, or if Form 1041, page 1, line 22, is a loss, complete the* **Capital Loss Carryover Worksheet** *on page 30 of the instructions to determine your capital loss carryover.*

**Part V** **Tax Computation Using Maximum Capital Gains Rates** (Complete this part **only** if both lines 15c and 16 in column (2) are gains, and Form 1041, line 22 is more than zero.)

| | | | | | |
|---|---|---|---|---|---|
| 18 | Enter taxable income from Form 1041, line 22 | | | 18 | 2,693,592 |
| 19 | Enter the **smaller** of line 15c or 16 in column (2) | 19 | | | |
| 20 | If you are filing Form 4952, enter the amount from Form 4952, line 4e | 20 | | | |
| 21 | Subtract line 20 from line 19. If zero or less, enter -0- | 21 | | | |
| 22 | Combine lines 14 and 15a, column (2). If zero or less, enter -0- | 22 | | | |
| 23 | Enter the **smaller** of line 15a, column (2), or line 22, but not less than zero | 23 | | | |
| 24 | Enter the amount from line 15b, column (2) | 24 | | | |
| 25 | Add lines 23 and 24 | 25 | | | |
| 26 | Subtract line 25 from line 21. If zero or less, enter -0- | | | 26 | |
| 27 | Subtract line 26 from line 18. If zero or less, enter -0- | | | 27 | 2,693,592 |
| 28 | Enter the **smaller** of line 18 or $1,750 | 28 | 1,750 | | |
| 29 | Enter the **smaller** of line 27 or line 28 | 29 | 1,750 | | |
| 30 | Subtract line 21 from line 18. If zero or less, enter -0- | 30 | 2,693,592 | | |
| 31 | Enter the **larger** of line 29 or line 30 ▶ | 31 | 2,693,592 | | |
| 32 | Tax on amount on line 31 from the 2000 Tax Rate Schedule<br>**Note:** *If the amounts on lines 28 and 29 are the same, skip lines 33 through 36 and go to line 37.* | | | 32 | 1,065,684 |
| 33 | Enter the amount from line 28 | 33 | | | |
| 34 | Enter the amount from line 27 | 34 | | | |
| 35 | Subtract line 34 from line 33. If zero or less, enter -0- ▶ | 35 | | | |
| 36 | Multiply line 35 by 10% (.10)<br>**Note:** *If the amounts on lines 18 and 28 are the same, skip lines 37 through 50 and go to line 51.* | | | 36 | |
| 37 | Enter the **smaller** of line 18 or line 26 | 37 | | | |
| 38 | Enter the amount from line 35 | 38 | | | |
| 39 | Subtract line 38 from line 37 ▶ | 39 | | | |
| 40 | Multiply line 39 by 20% (.20)<br>**Note:** *If line 25 is zero or blank, skip lines 41 through 50 and go to line 51.* | | | 40 | |
| 41 | Enter the **smaller** of line 21 or line 24 | 41 | | | |
| 42 | Add lines 21 and 31 — 42 | | | | |
| 43 | Enter the amount from line 18 — 43 | | | | |
| 44 | Subtract line 43 from line 42. If zero or less, enter -0- | 44 | | | |
| 45 | Subtract line 44 from line 41. If zero or less, enter -0- ▶ | 45 | | | |
| 46 | Multiply line 45 by 25% (.25)<br>**Note:** *If line 23 is zero or blank, skip lines 47 through 50 and go to line 51.* | | | 46 | |
| 47 | Enter the amount from line 18 | 47 | | | |
| 48 | Add lines 31, 35, 39, and 45 | 48 | | | |
| 49 | Subtract line 48 from line 47 | 49 | | | |
| 50 | Multiply line 49 by 28% (.28) | | | 50 | |
| 51 | Add lines 32, 36, 40, 46, and 50 | | | 51 | 1,065,684 |
| 52 | Tax on the amount on line 18 from the 2000 Tax Rate Schedule | | | 52 | 1,065,684 |
| 53 | **Tax on all taxable income (including capital gains).** Enter the **smaller** of line 51 or line 52 here and on line 1a of Schedule G, Form 1041 | | | 53 | 1,065,684 |

# Exhibit F

DEPARTMENT OF THE TREASURY
Internal Revenue Service
1100 Commerce Street
Dallas, TX 75242

TAX EXEMPT AND GOVERNMENT ENTITIES DIVISION

April 4, 2006

CNG Transmission Management VEB/
aka CNG Retiree Welfare Benefits
c/o Mellon Bank, N.A.
P.O. Box 185
Pittsburgh, PA 15230

Taxpayer Identification Number:
25-1755735
Form:
990-T
Tax Year(s) Ended:
December 31, 2000
Amount of Claim:
$1,065,684.00
Date Claim Received:
October 20, 2004
Person to Contact/ID Number:
Rosemarie Roth / 52-07597
Contact Numbers:
Telephone: 412-395-5326
Fax: 412-395-5313

Dear Sir or Madam:

We have examined your claim and propose:

☐ A partial disallowance, as shown in the enclosed report of examination. If you accept our findings, please sign and return the enclosed Forms 4549, 2297, and 3363.

☑ A full disallowance, as shown in the enclosed report of examination. If you accept our findings, please sign and return the enclosed Forms 4549, 2297, and 3363.

☐ A full disallowance with additional tax due, as shown in the enclosed report of examination. If you accept our findings, please sign and return the enclosed Forms 4549, 2297, and 3363.

If you do not agree with our position you may appeal your case. The enclosed Publication 3498, *The Examination Process,* explains how to appeal an Internal Revenue Service (IRS) decision. Publication 3498 also includes information on your rights as a taxpayer and the IRS collection process.

If you request a conference, we will forward your written statement of protest to the Appeals Office and they will contact you. For your convenience, an envelope is enclosed.

If you and Appeals do not agree on some, or all, of the issues after your Appeals conference, or if you skipped our appeals system, you may take your case to the United States Tax Court, the United States Court of Federal Claims, or your United States District Court, after satisfying certain procedural and jurisdictional requirements as described in the enclosed Publication 3498.

If we do not hear from you within 30 days from the date of this letter, we will process your case based on the adjustments shown in the enclosed report.

You have the right to contact the office of the Taxpayer Advocate. Taxpayer Advocate assistance is not a substitute for established IRS procedures, such as the formal appeals process. The Taxpayer Advocate cannot reverse a legally correct tax determination, or extend the time fixed by law that you have to file a petition in a United States court. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling. You may call toll-free 1-877-777-4778 and ask for Taxpayer Advocate Assistance. If you prefer, you may contact your local Taxpayer Advocate at:

1-412-395-5987

If you have any questions, please call the contact person at the telephone number shown in the heading of this letter. If you write, please provide a telephone number and the most convenient time to call if we need to contact you.

Thank you for your cooperation.

Sincerely,

Marsha Ramirez
Director, EO Examinations

Enclosures:
Publication 892
Publication 3498
Form 2297
Form 3363
Form 4549
Envelope

Form **4549** (Rev. September 2001)

Department of the Treasury - Internal Revenue Service

# Income Tax Examination Changes

Page 1 of 2

| Name and Address of Taxpayer | Taxpayer Identification Number | | Return Form No: |
|---|---|---|---|
| CNG Transmission Management VEBA aka CNG Retiree Welfar | 25-1755735 | | 990-T |
| c/o Mellon Bank. N.A.<br>P.O. Box 185<br>Pittsburgh, PA 15230 | Person with whom examination changes were discussed. | Name and Title | |

| 1. Adjustments to Income | Tax Period: 2000 | Tax Period: | Tax Period: |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| n. | | | |
| o. | | | |
| 2. Total Adjustments | 0 | | |
| 3. Taxable Income Per Return or as Previously Adjusted | 2,693,592 | | |
| 4. Corrected Taxable Income | 2,693,592 | | |
| Tax Method | | | |
| Filing Status | | | |
| 5. Tax | 1,065,684 | | |
| 6. Alternative Taxes, If Applicable | | | |
| 7. Alternative Minimum Tax *(Starting tax year 2000)* | | | |
| 8. Corrected Tax Liability | 1,065,684 | | |
| 9. Less Credits a. | | | |
| b. | | | |
| c. | | | |
| d. Total Credits *(See attached schedule)* | | | |
| 10. Balance - *(Line 8 less total of Lines 9a - 9d)* | 1,065,684 | | |
| 11. Plus Other Taxes a. | | | |
| b. | | | |
| c. | | | |
| d. Other Taxes *(See attached schedule)* | | | |
| 12. Total Corrected Tax Liability - *(Line 10 plus Lines 11a - 11d)* | 1,065,684 | | |
| 13. Total Tax Shown on Return or as Previously Adjusted | 1,065,684 | | |
| 14. Adjustments to: a. | | | |
| b. | | | |
| 15. Deficiency-Increase in Tax or *(Overassessment-Decrease in Tax)* - *(Line 12 less Line 13 adjusted by Lines 14a - 14b)* | 0 | | |
| 16. Adjustments to Prepayment Credits - increase *(decrease)* | | | |
| 17. Balance Due or *(Overpayment)* - *(Line 15 adjusted by Line 16)* Excluding interest and penalties | 0 | | |

The Internal Revenue Service has agreements with state tax agencies under which information about federal tax, including increases or decreases, is exchanged with the states. If this change affects the amount of your state income tax, you should amend your state return by filing the necessary forms.

You may be subject to backup withholding if you don't report all of the interest, dividend, or patronage dividend income you earned and if you don't pay the required tax. Once the tax has been assessed, you will be issued four notices over a 120-day period. If you don't pay the assessed tax, the IRS may require payers to withhold a percentage of your dividend and/or interest payments.

| Form 4549 (Rev. September 2001) | Department of the Treasury - Internal Revenue Service **Income Tax Examination Changes** | | Page 2 of 2 |
|---|---|---|---|
| Name of Taxpayer<br>CNG Transmission Management VEBA aka CNG Retiree Welfare Benefits | Taxpayer Identification Number<br>25-1755735 | | Return Form No:<br>990-T |

| 18. Penalties Code Section | Tax Period: 2000 | Tax Period: | Tax Period: |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| h. | | | |
| i. | | | |
| j. | | | |
| k. | | | |
| l. | | | |
| m. | | | |
| 19. Total Penalties | 0 | | |
| Underpayment attributable to negligence: *(1981-1987)* A tax addition of 50 percent of the interest due on underpayment will accrue until paid or assessed. | | | |
| Underpayment attributable to fraud: *(1981-1987)* A tax addition of 50 percent of the interest due on underpayment will accrue until paid or assessed. | | | |
| Underpayment attributable to Tax Motivated Transactions *(TMT)*: The interest will accrue and be assessed at 120% of underpayment rate in accordance with IRC § 6621 (c). | | | |
| 20. Summary of Taxes, Penalties and Interest: | | | |
| a. Balance due or *(Overpayment)* of Taxes - *(Line 17, Page 1)* | 0 | | |
| b. Penalties *(Line 19)* - computed to | 0 | | |
| c. Interest *(IRC § 6601)* - computed to | | | |
| d. TMT interest - computed to on TMT underpayment | | | |
| e. Amount due or *(refund)* - *(sum of Lines a, b, c and d)* | 0 | | |

Other Information:

The taxpayer filed a claim for refund for the year ended December 31, 2000 based upon the court decision in Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner, 330 F.3rd 449(6th Cir. 2003). The Commissioner does not acquiesce to this decision. In addition, the claim includes deductions for amounts paid as benefits to or for members. Since these payments do not relate to the income reported on the amended Form 990-T, these deductions are not allowable. Consequently, the claim for refund is denied in full. See attached Form 886-A for a full explanation for denial of the claim for refund.

| Examiner's Signature | | | |
|---|---|---|---|
| Name Rosemarie Roth | Employee ID 52-07597 | Office Mid-Atlantic Area | Date 4/04/2006 |

Consent to Assessment and Collection - I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties shown above, plus additional interest as provided by law. I accept any decrease in tax and penalties shown above. I understand that this report is subject to acceptance by the appropriate IRS official.

**PLEASE NOTE:** If a joint return was filed, **BOTH** taxpayers must sign.

| Signature of Taxpayer | Date | Signature of Taxpayer | Date |
|---|---|---|---|
| By | | Title | Date |

Form **2297**
(Rev. March 1982)

Department of the Treasury-Internal Revenue Service

# Waiver of Statutory Notification of Claim Disallowance

I, CNG Transmission Management VEBA aka 25-1755735 of c/o Mellon Bank, N.A., PO Box 185, Pittsburgh, PA 15230
(Name, SSN or EIN) (Number, Street, City or Town, State, ZIP Code)

waive the requirement under Internal Revenue Code section 6532(a)(1) that a notice of claim disallowance be sent to me by certified or registered mail for the claims for credit or refund shown in column (d), below.

I understand that the filing of this waiver is irrevocable and it will begin the 2-year period for filing suit for refund of the claims disallowed as if the notice of disallowance had been sent by certified or registered mail.

**Claims**

| (a) Taxable Period Ended | (b) Kind of Tax | (c) Amount of Claim | (d) Amount of Claim Disallowed |
|---|---|---|---|
| December 31, 2000 | Income | $1,065684 | $1,065684 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

If you file this waiver for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a partnership with excise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

Your Signature → ____________ (Date signed)

Spouse's Signature If A Joint Return Was Filed → ____________ (Date signed)

Taxpayer's Representative Sign Here → ____________ (Date signed)

Partnership/ Corporate Name: CNG Transmission Management VEBA aka CNG Retiree Welfare

Partners/ Corporate Officers Sign Here
→ ____________
(Title) (Date signed)
→ ____________
(Title) (Date signed)

NOTE - Filing this waiver within 6 months from the date the claim was filed will not permit filing a suit for refund before the 6-month period has elapsed unless a decision is made by the Service within that time disallowing the claims.

Form **3363** (Rev. November 1983)

Department of the Treasury — Internal Revenue Service

# Acceptance of Proposed Disallowance of Claim for Refund or Credit

Name(s), SSN or EIN, and address of taxpayer(s) *(Number, Street, City or Town, State, ZIP Code)*

CNG Transmission Management VEBA aka CNG Retiree Welfare Benefits
c/o Mellon Bank, N.A.
P.O. Box 185
Pittsburgh, PA 15230

25-1755735

| Year or Period | Date Claim Filed | Kind of Tax | Amount of Claim | Amount of Claim Disallowed | Amount of Claim Allowed |
|---|---|---|---|---|---|
| December 31, 2000 | October 20, 2004 | Income | $1,065,684 | $1,065684 | $ -0- |
| | | | | | |
| | | | | | |
| | | | | | |

I accept the proposal of the Internal Revenue Service to disallow the claim(s) to the extent described above. This means only that I do not want the Service to consider the claim(s). It does not waive my right to file suit on the disallowance.

If you file this acceptance for a joint return, both you and your spouse must sign the original and duplicate of this form. Sign your name exactly as it appears on the return. If you are acting under power of attorney for your spouse, you may sign as agent for him or her.

For an agent or attorney acting under a power of attorney, a power of attorney must be sent with this form if not previously filed.

For a partnership with exise or employment tax liability, all partners must sign. However, one partner may sign with appropriate evidence of authorization to act for the partnership.

For a person acting in a fiduciary capacity (executor, administrator, trustee), file Form 56, Notice Concerning Fiduciary Relationship, with this form if not previously filed.

For a corporation, enter the name of the corporation followed by the signature and title of the officer(s) authorized to sign.

**Your Signature** ▶ ____________________ (Date)

**Spouse's Signature If A Joint Return Was Filed** ▶ ____________________ (Date)

**Taxpayer's Representative Sign Here** ▶ ____________________ (Date)

**Partnership/ Corporate Name** ▶ CNG Transmission Management VEBA aka CNG

**Partners/ Corporate Officers Sign Here**
▶ ____________________
(Title) (Date)
▶ ____________________
(Title) (Date)

| Form 886A | Department of the Treasury - Internal Revenue Service<br>Explanation of Items | Schedule No. or Exhibit |
|---|---|---|
| Name of Taxpayer<br>CNG Transmission Management VEBA aka CNG Retiree Welfare | | Year/Period Ended<br>2000 |

**FACTS:**
The taxpayer is a trust which is recognized as tax exempt under 501(c)(9) of the Internal Revenue Code as a voluntary employees' beneficiary association (VEBA). Its fiscal year is the calendar year. The taxpayer's Trustee is Mellon Bank, N.A.

The organization filed Form 990-T to report and pay income tax on its net unrelated income for the year 2000. As originally filed, Forms 990-T reported the amounts of income and expenses, as shown on the attached spreadsheet.

Sherwin-Williams Co. Employee Health Plan Trust ("SW"), like this organization, is an organization described in IRC 501(c)(9), filed Form 990-T for years 1991 and 1992. SW paid Trust Company Bank $32,583 (1991) and $30,224 (1992) to handle investments and deducted these payments from unrelated investment income to arrive at taxable income. In addition, SW included deductions for management and administrative expenses incurred in operating the trust. These expenses included payments for actuarial reports, professional services, miscellaneous expenses and fees to Provident Life and Accident Insurance Company (SW's claims administrator and insurance carrier) totaling $1,580,455 and $1,853,529 in 1991 and 1992, respectively.

The Internal Revenue Service ("IRS") allowed the payments to Trust Company Bank as deductions against SW's investment income, but disallowed the management and administrative expenses as deductions on Forms 990-T as not being directly related to the investment income.

During 1991 and 1992, SW paid $28,091,405 and $33,613,327, respectively, in benefits to members. However, none of these payments were deducted by SW in filing its Forms 990-T for 1991 or 1992. **Thus, the only expenses at issue in the SW case were the management and administrative expenses of operating the trust, not the payment of benefits to or for members.**

As a result of the ruling by the 6th Circuit Court of Appeals in the SW case, this taxpayer filed amended Forms 990-T for 2000. This taxpayer reported the amounts of income and expenses on its amended Form 990-T as shown on the attached spreadsheet.

A review of this taxpayer's original 990-T and amended 990-T determined that the expenses were allocated on the amended Form 990-T based on the ratio of taxable assets to total assets. Expenses were allocated on the amended returns for each year as shown on the attached spreadsheet.

On the amended Form 990-T, all or a large percentage of the additional expenses claimed by this taxpayer were for Benefits Paid to/for Members. See the

| Form 886A | Department of the Treasury - Internal Revenue Service<br>Explanation of Items | Schedule No. or Exhibit |
|---|---|---|
| Name of Taxpayer<br>CNG Transmission Management VEBA aka CNG Retiree Welfare | | Year/Period Ended<br>2000 |

spreadsheet for the percentage of Benefits Paid to/for Members of the additional expenses claimed on the amended Form 990-T.

**LAW:**
Tax exempt organizations are subject to income tax on their net unrelated income. For most tax-exempt organizations IRC 512(a)(1) is the controlling code section with respect to unrelated business income ("UBI"). However, for VEBAs described in IRC 501(c)(9) (along with a few other code sections, not relevant here), UBI is governed by IRC 512(a)(3), "Special rules applicable to organizations described in paragraph (7), (9), (17), or (20) of section 501(c)". IRC 512(a)(3) states that for 501(c)(9) entities, unrelated business taxable income means the gross income (excluding any exempt function income) less the deductions allowed by this chapter **which are directly connected with the production of the gross income.** (emphasis added)

In Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner, 115 T.C. 440 the Tax Court ruled that SW was not entitled to deduct the management and administrative expenses it incurred in the operation of the trust that were not directly related to generating the unrelated investment income.

The 6th Circuit Court of Appeals reversed the Tax Court ruling in favor of SW. The IRS has not acquiesced to the 6th Circuit Court of Appeals ruling. The IRS non-acquiescence to the SW ruling was published in Internal Revenue Bulletin 2005-35, dated August 29, 2005.

SEC. 419A. QUALIFIED ASSET ACCOUNT; LIMITATION ON ADDITIONS TO ACCOUNT.

419A(a) General Rule. —For purposes of this subpart and section 512, the term "qualified asset account" means any account consisting of assets set aside to provide for the payment of —
419A(a)(1) disability benefits,
419A(a)(2) medical benefits,
419A(a)(3) SUB or severance pay benefits, or
419A(a)(4) life insurance benefits.

419A(b) Limitation on Additions to Account. —No addition to any qualified asset account may be taken into account under section 419(c)(1)(B) to the extent such addition results in the amount in such account exceeding the account limit.

419A(c) Account Limit. —For purposes of this section —
419A(c)(1) In general. —Except as otherwise provided in this subsection, the account limit for any qualified asset account for any taxable year is the amount reasonably and actuarially necessary to fund —

419A(c)(1)(A) claims incurred but unpaid (as of the close of such taxable year) for benefits referred to in subsection (a), and
419A(c)(1)(B) administrative costs with respect to such claims.

Regulations §1.419-1T. Treatment of welfare benefit funds (Temporary).

Section 419 prescribes limitations upon deductions for contributions paid or accrued with respect to a welfare benefit fund. Under section 419(a) and (b), an employer's contributions to a welfare benefit fund are not deductible under section 162 (relating to trade or business expenses) or section 212 (relating to expenses for production of income) but, if the requirements of section 162 or 212 are otherwise met, are deductible under section 419 for the taxable year of the employer in which paid to the extent of the welfare benefit fund's qualified cost (within the meaning of section 419(c)(1)) for the taxable year of the fund that relates to such taxable year of the employer. Under section 419(g), section 419 and this section shall also apply to the deduction by a taxpayer of contributions with respect to a fund that would be a welfare benefit fund but for the fact that there is no employer-employee relationship between the person providing the services and the person for whom the services are provided.

Contributions paid to a welfare benefit fund after section 419 becomes effective with respect to such contributions are deemed to relate, first, to amounts accrued and deducted (but not paid) by the employer with respect to such fund before section 419 becomes effective with respect to such contributions and thus shall not be treated as satisfying the payment requirement of section 419. See paragraph (b) of Q&A-5 for special deduction limits applicable to employer contributions to welfare benefit funds with excess reserves.

SEC. 512. UNRELATED BUSINESS TAXABLE INCOME.

512(a)(3) Special rules applicable to organizations described in paragraph (7), (9), (17), or (20) of section 501(c). —

512(a)(3)(A) General rule. —In the case of an organization described in paragraph (7), (9), (17), or (20) of section 501(c), the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions
allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income), both computed with the modifications provided in paragraphs (6), (10), (11), and (12) of subsection (b). For purposes of the preceding sentence, the deductions provided by sections 243, 244, and 245 (relating to dividends received by corporations) shall be treated as not directly connected with the production of gross income.

| Form 886A | Department of the Treasury - Internal Revenue Service<br>Explanation of Items | Schedule No. or Exhibit |
|---|---|---|
| Name of Taxpayer<br>CNG Transmission Management VEBA aka CNG Retiree Welfare | | Year/Period Ended<br>2000 |

512(a)(3)(B) Exempt function income. —For purposes of subparagraph (A), the term "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. Such term also means all income (other than an amount equal to the gross income derived from any unrelated trade or business regularly carried on by such organization computed as if the organization were subject to paragraph (1)), which is set aside —
512(a)(3)(B)(i) for a purpose specified in section 170(c)(4), or
512(a)(3)(B)(ii) in the case of an organization described in paragraph (9), (17), or (20) of section 501(c), to provide for the payment of life, sick, accident, or other benefits, including reasonable costs of administration directly connected with a purpose described in clause (i) or (ii). If during the taxable year, an amount which is attributable to income so set aside is used for a purpose other than that described in clause (i) or (ii), such amount shall be included, under subparagraph (A), in unrelated business taxable income for the taxable year.

512(a)(3)(E) Limitation on amount of setaside in the case of organizations described in paragraph (9), (17), or (20) of section 501(c). —
512(a)(3)(E)(i) In general. —In the case of any organization described in paragraph (9), (17), or (20) of section 501(c), a set-aside for any purpose specified in clause (ii) of subparagraph (B) may be taken into account under subparagraph (B) only to the extent that such set-aside does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A (without regard to subsection (f)(6) thereof) for the taxable year (not taking into account any reserve described in section 419A(c)(2)(A) for post-retirement medical benefits).
512(a)(3)(E)(ii) Treatment of existing reserves for post-retirement medical or life insurance benefits. —
512(a)(3)(E)(ii)(I) Clause (i) shall not apply to any income attributable to an existing reserve for post-retirement medical or life insurance benefits.
512(a)(3)(E)(ii)(II) For purposes of subclause (I), the term "reserve for post-retirement medical or life insurance benefits" means the greater of the amount of assets set aside for purposes of post-retirement medical or life insurance benefits to be provided to covered employees as of the close of the last plan year ending before the date of the enactment of the Tax Reform Act of 1984 or on July 18, 1984.
512(a)(3)(E)(ii)(III) All payments during plan years ending on or after the date of the enactment of the Tax Reform Act of 1984 of post-retirement medical benefits or life insurance benefits shall be charged against the reserve referred to in subclause (II). Except to the extent provided in regulations prescribed by the Secretary, all plans of an employer shall be treated as 1 plan for purposes of the preceding sentence.

| Form 886A | Department of the Treasury - Internal Revenue Service<br>Explanation of Items | Schedule No. or Exhibit |
|---|---|---|
| Name of Taxpayer<br>CNG Transmission Management VEBA aka CNG Retiree Welfare | | Year/Period Ended<br>2000 |

512(a)(3)(E)(iii) Treatment of tax exempt organizations. —This subparagraph shall not apply to any organization if substantially all of the contributions to such organization are made by employers who were exempt from tax under this chapter throughout the 5-taxable year period ending with the taxable year in which the contributions are made.

**TAXPAYER'S POSITION:**

**AGENT'S POSITION:**
The income reported by this taxpayer on its 2000 Form 990-T is not at issue. The issue concerns what deductions are allowable from the reported gross income in arriving at taxable income.

On its amended return, this taxpayer adds expenses from benefits paid to/for members. The management/administrative expenses, which are of the kind at issue in the SW case, are NOT at issue in this case. Benefits paid to/for members were **not** claimed by SW, even though SW did in fact pay $28,091,405 (1991) and 33,613,327 (1992) in benefits to/for members.

**Management/Administrative Expenses:**
There were no additional management and administrative expenses claimed as deductions by this taxpayer on its 2000 amended Form 990-T. It is clear that the deductions for the various administrative costs are **not** directly connected with the production of this taxpayer's investment income. Expenses reported on this taxpayer's Form 990-T **as originally filed** are accepted, as they are barred by statute. However, management and administrative expenses, which do not relate to the production of unrelated income, are not allowed as deductions. The same is true for that portion of the investment manager fees which relates to non-taxable investment income arising from investment in various tax-exempt bonds.

**Benefits to/for Members:**
In this case, there is no dispute that the investment income is UBI.

The issue is the benefits to/for members. Payments made by this taxpayer to or for the benefit of members are just that - benefit payments. They clearly are not administrative expenses and were not an issue in the SW court case because the millions of dollars SW paid in benefits to or for members were never claimed as deductions on their Forms 990-T. There is no basis whatsoever in the SW court case, or anywhere else for that matter, which justifies deducting benefit payments to or for members from the unrelated business income of a trust exempt under IRC 501(c)(9). Such payments are not administrative expenses and they simply bear no

| Form 886A | Department of the Treasury - Internal Revenue Service<br>Explanation of Items | Schedule No. or Exhibit |
|---|---|---|
| Name of Taxpayer<br>CNG Transmission Management VEBA aka CNG Retiree Welfare | | Year/Period Ended<br>2000 |

connection to earning the unrelated investment income which this taxpayer reports on its Form(s) 990-T.

**CONCLUSION:**
The benefits paid to or for members reported by this taxpayer as a deduction on its amended Form 990-T for 2000 is disallowed. This includes the total amounts reported on the amended Form(s) 990-T as shown on the attached spreadsheet.

# Exhibit G

# AFFIDAVIT

The undersigned, Donald W. Borneman, hereby swears and affirms under the penalties of perjury that the following statement is true to the best of my knowledge and belief:

During calendar year 2000, I was Assistant Treasurer – Asset Management for Dominion Resources Services, Inc. In this capacity, I was responsible for daily cash requirements, reviewing monthly trust statements, providing quarterly and annual reports to the Asset Management Committee, assuring investment and funding policies were carried out, providing the Asset Management Committee with investment manager recommendations, and selecting appropriate SFAS 106 discount rates along with other information requests for the CNG VEBA Trusts.

During 2000, the CNG Transmission Management VEBA had investment income of $2,798,002 and expended $7,556,757 on benefits for its members.

Donald W. Borneman

[Name]

Sworn to and subscribed before me, a Notary Public, in and for the County of Allegheny, in the State of Pennsylvania.

Alice M. Rump

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Alice M. Rump, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires May 3, 2009
Member, Pennsylvania Association of Notaries

My commission expires the 3 day of MAY, 2009.