# In The United States Court of Federal Claims

| | | |
|---|---|---|
| CNG TRANSMISSION MANAGEMENT VEBA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-541-T |
| v. | ) | |
| | ) | The Honorable Lynn J. Bush |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims, plaintiff moves the Court to grant summary judgment in favor of plaintiff because there are no genuine issues of material fact and, as a matter of law, CNG Transmission Management VEBA earned no unrelated business taxable income in calendar year 2000, and is therefore entitled to a refund of income tax for 2000 in the amount of $1,065,684. In support of this Motion, plaintiff relies on the attached Proposed Findings of Uncontroverted Fact and the attached Brief.

Plaintiff requests that this Motion be set for oral argument.

Respectfully submitted,

Eric R. Fox

ERIC R. FOX,
Attorney for Plaintiff
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No. — 202-662-3406
Facsimile No. — 202-393-7601
E-Mail Address — ericfox@ipbtax.com

Kevin P. O'Brien
Of Counsel
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No. — 202-662-3411
Facsimile No. — 202-393-7601
E-Mail Address — kpobrien@ipbtax.com

May 7, 2008

# In The United States Court of Federal Claims

| | | |
|---|---|---|
| CNG TRANSMISSION MANAGEMENT VEBA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-541-T |
| v. | ) | |
| | ) | The Honorable Lynn J. Bush |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT .......... 1

PLAINTIFF HAD NO UNRELATED BUSINESS TAXABLE INCOME IN 2000 .......... 1

CONCLUSION .......... 9

CERTIFICATE OF SERVICE .......... 11

# TABLE OF AUTHORITIES

Page

## CASES

Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner, 330 F.3d 449 (6th Cir. 2003), rev'g 115 T.C. 440 (2000) .................................................. 1-2, 6-7, 8

## STATUTES

Internal Revenue Code of 1986 (26 U.S.C.)

Sec. 170(c)(4) .................................................. 4
Sec. 419A .................................................. 5, 8
Sec. 501(a) .................................................. 2
Sec. 501(c) .................................................. 3
Sec. 501(c)(9) .................................................. 2, 3
Sec. 502 .................................................. 2
Sec. 503 .................................................. 2
Sec. 511(a) .................................................. 2, 3
Sec. 511(a)(2) .................................................. 3
Sec. 512 .................................................. 2, 8
Sec. 512(a)(1) .................................................. 3
Sec. 512(a)(3) .................................................. 3
Sec. 512(a)(3)(A) .................................................. 4
Sec. 512(a)(3)(B) .................................................. 4
Sec. 512(a)(3)(E) .................................................. 5, 6
Sec. 513 .................................................. 3

## MISCELLANEOUS

Compact Oxford English Dictionary, Second Edition .......................... 6

# In The United States Court of Federal Claims

| | | |
|---|---|---|
| CNG TRANSMISSION MANAGEMENT VEBA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-541-T |
| v. | ) | |
| | ) | The Honorable Lynn J. Bush |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## PLAINTIFF HAD NO UNRELATED BUSINESS TAXABLE INCOME IN 2000

At the end of the day, the outcome of this case turns on the interpretation of a single word in the Internal Revenue Code of 1986 ("the Code"). That word was interpreted in the taxpayer's favor in the only case to have considered this issue previously, *Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner*, 330 F.3d 449 (6th Cir. 2003), *rev'g* 115

T.C. 440 (2000). Before addressing this word, however, the Court first needs to understand the background leading up to it.

Section 501(a) of the Code provides that:

> An organization described in subsection (c) or (d) ... shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503.

One such organization, the type involved in this case, is described in section 501(c)(9) as follows:

> Voluntary employees' beneficiary associations providing for the payment of life, sick, accident, or other benefits to the members of such association or their dependents or designated beneficiaries, if no part of the net earnings of such association inures (other than through such payments) to the benefit of any private shareholder or individual.

Organizations described in section 501(c)(9) of the Code are typically referred to by the acronym VEBA. As can be confirmed by reference to Exhibit A to plaintiff's Proposed Findings of Uncontroverted Fact, plaintiff is an organization described in section 501(c)(9) of the Code. As such, plaintiff falls directly within the provision of section 501(a) which states that it is exempt from taxation unless such exemption is denied under section 502 or section 503, neither of which has any application in this case.

Notwithstanding the fact that section 501(a) makes no reference to it, section 511(a) of the Code nonetheless imposes an income tax on the "unrelated business taxable income (as defined in section 512) of every

organization described in paragraph [511(a)] (2). Subject to exceptions that are not relevant here, paragraph 2 includes all organizations described in section 501(c). Inasmuch as plaintiff is described in section 501(c)(9), it is subject to taxation under section 511(a), to the extent of its unrelated business taxable income.

Section 512(a)(1) describes "unrelated business taxable income" generally as:

> the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter which are directly connected with the carrying on of such trade or business....

Section 513 goes on at some length to describe an unrelated trade or business which is essentially defined as the carrying on of active business activity. As stated in plaintiff's Proposed Findings of Uncontroverted Fact, Numbers 9 and 12, in 2000, plaintiff's only income consisted of $2,798,002 of investment income, and it had no income of the type described in section 512(a)(1).

Section 512(a)(3), however, goes on to provide "special rules" applicable to four different types of organizations described in section 501(c). One of such organizations is a VEBA described in section 501(c)(9).

The first rule is found in section 512(a)(3)(A):

> (A) General rule. In the case of an organization described in paragraph ...(9) ...of section 501(c), the term "unrelated business taxable income" means the gross income (excluding any exempt function income)....

In the case of a VEBA, investment income is unrelated business taxable income subject to income tax, except to the extent it is exempt function income, which is described in section 512(a)(3)(B). The first part of section 512(a)(3)(B) defines exempt function income to include such items as dues and fees paid by members of a VEBA in consideration for VEBA benefits. This type of exempt function income is not in issue.

512(a)(3)(B) goes on to provide:

> Such term [*i.e.*, "exempt function income"] also means all income (other than an amount equal to the gross income derived from any unrelated trade or business regularly carried on by such organization computed as if such organization were subject to paragraph (1)), which is set aside-
> (i) for a purpose specified in section 170(c)(4), or
> (ii) in the case of an organization described in paragraph (9) ... of section 501(c), to provide for the payment of life, sick, accident, or other benefits, ....

Section 170(c)(4) describes a certain type of charitable gift which is not relevant in this case. As stated in plaintiff's Proposed Findings of Uncontroverted Fact No. 11, plaintiff's 2000 investment income of $2,798,002 was all set aside to provide for the payment of life, sick,

accident, or other benefits, to plaintiff's members or their beneficiaries and therefore qualified as exempt function income.

One further rule remains. Section 512(a)(3)(E) provides:

> (E) Limitation on amount of set aside in the case of organizations described in paragraph (9) … of section 501(c).
>
> (i) In general. In the case of an organization described in paragraph (9) … of section 501(c)(3), a set-aside for any purpose specified in clause (ii) of subparagraph (B) may be taken into account under subparagraph (B) only to the extent that such set-aside does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A (without regard to subsection (f)(6) thereof) for the taxable year (not taking into account any reserve described in section 419A(c)(2)(A) for post-retirement medical benefits).

Finally, we have arrived at the heart of the case. Notwithstanding the fact that plaintiff's 2000 investment income of $2,798,002 was all set aside to provide for the payment of life, sick, accident, or other benefits, to plaintiff's members or their beneficiaries, such set-aside may not be taken into account as exempt function income if it "results" in an amount of assets in excess of a certain limit. This case is all about defining the term "results".

Before proceeding to addressing this issue, it must be noted that plaintiff has not computed the account limit under section 419A because, as will be seen, this account limit is irrelevant. It may be assumed to be any hypothetical number which will hereinafter be referred to as "the account limit".

The Second Edition of the Compact Oxford English Dictionary defines "result" first as an intransitive verb meaning "to arise as a consequence, effect or conclusion *from* some action, process, etc.; to end or conclude in a specified manner." Applying this definition to the statutory language in issue, the only reasonable conclusion can be that, in order for plaintiff's 2000 set-aside income not to qualify as exempt function income, there must be at the end of 2000 an excess of assets over the account limit that arose as a consequence of the set-aside income. Inasmuch as all of the set-aside income was expended during 2000 (Plaintiff's Proposed Findings of Uncontroverted Fact No. 11), the existence of the set-aside income had absolutely no effect on the amount of assets held by plaintiff at the end of 2000, and therefore could not have "resulted" in any excess of assets over the account limit. Accordingly, inasmuch as the limitation found in section 512(a)(3)(E), although admittedly a limitation that must be taken into consideration as a matter of law, did not apply in fact to plaintiff's exempt function income in the amount of $2,798,002, none of that income was unrelated business taxable income in 2000.

This result is so patently clear that plaintiff could quite legitimately terminate its brief at this point. Fortunately for plaintiff, however, the precise issue involved in this case was adjudicated in the manner urged by

plaintiff in this case in *Sherwin Williams Co. Employee Health Plan Trust v. Commissioner*, 330 F.3d 449 (6th Cir. 2003). As the only precedent, this case is worth quoting from at some length.

> Beginning with the statute's text, the language of § 512(a)(3)(E) suggests that its limit does not apply to funds set aside and spent on appropriate administrative costs during the taxable year. That is, the limit is not on the total amount that the VEBA may set aside, tax-free, over the course of a year, but on the amount that the VEBA may accumulate at year's end. The statute's operative clause states that a set-aside qualifies as exempt function income only to the extent it "does not result in an amount of assets set aside" that would exceed the account limit for the taxable year. *Id.* § 512(a)(3)(E)(i). The inquiry into whether set-aside income "result[s] in an amount" in excess of the account limit suggests a focus not on the aggregate quantity of money that has passed through the account over the relevant window of time, but on the sum that exists in the account at the relevant moment. [Footnote omitted.]
>
> . . .
>
> If, …the § 512(a)(3)(E)(i) limit is interpreted as applying only to the funds in the set-aside account at the close of the taxable year, then the statute's reference to §419A makes sense. Section 419A is clear that to determine the limit on set-asides, one determines how much set-aside income must be on hand, or accumulated, in order for the VEBA to fulfill its purpose of supplying benefits. Interpreting the limit to apply only to those funds that are set aside and on hand — that is, accumulated — makes § 512(a)(3)(E)(i)'s reference to §419A internally coherent. It permits the VEBA to set aside income sufficient to pay and administer its claims on a tax-exempt basis. However, it prohibits a VEBA from accumulating more income than actuarially necessary to pay its claims for that year.

330 F.3d at 454-455.

In further support of the quoted conclusion, the Sixth Circuit Court of Appeals went on to note that this conclusion was buttressed by § 512's legislative history and the even more explicit IRS regulations

> stating that the § 512(a)(3)(E)(i) cap on exempt function income applies to "the amounts set aside in a VEBA...as of the *close of the taxable year*." Prop. Treas. Reg. 1.512-5T, A-3(a), 51 Fed. Reg. 4332 (Feb. 4 1986) (emphasis added); *see also id.* At A-3(b) (stating that exempt function income includes income set aside for payment of benefits as long as "the total amount set aside in the VEBA ... as of the close of the taxable year" does not exceed the §419A limit). The reference to the amounts set aside "as of" the year's end suggests an inquiry into the amount in the fund on that date, not an inquiry into what has passed through the fund over the past year.

330 F.3d 456.

The Court then set forth its holding:

> We hold that § 512(a)(3)(E)(i)'s limit on accumulating set-aside income does not apply to income that was set aside and spent on the reasonable costs of administering health care benefits under § 512(a)(3)(A).

330 F.3d 456.

Lastly, the Court added a conclusion to the effect that there was no need to determine the account limit under §419A "because the income at issue was set aside and spent on the reasonable costs of administration and is not subject to that limit." 330 F.3d 456.

## CONCLUSION

Inasmuch as plaintiff spent all of its 2000 income in the amount of $2,798,002 during 2000 on VEBA benefits, all of that income qualifies as exempt function income, and is not subject to tax as unrelated business taxable income. Accordingly, defendant has erroneously refused to refund to plaintiff the $1,065,684 of income tax plaintiff erroneously paid with respect to its passive income in 2000, and this Court is respectfully requested to order the defendant to refund such amount to plaintiff with interest according to law.

Respectfully submitted,

ERIC R. FOX,
Attorney for Plaintiff
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No.-202-662-3406
Facsimile No.-202-393-7601
E-Mail Address-ericfox@ipbtax.com

Kevin P. O'Brien
Of Counsel
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No.-202-662-3411
Facsimile No.-202-393-7601
E-Mail Address-kpobrien@ipbtax.com

May 7, 2008