IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-541 T

(The Honorable Lynn J. Bush)

CNG TRANSMISSION MANAGEMENT VEBA,

Plaintiff

v.

UNITED STATES,

Defendant

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, BRIEF IN SUPPORT THEREOF, AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
G. ROBSON STEWART
Reviewer

JASON BERGMANN
Attorney of Record
Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3425
Facsimile: (202) 514-9440

# TABLE OF CONTENTS

Page(s):

DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . 1

BRIEF IN SUPPORT OF DEFENDANTS'S CROSS-MOTION FOR SUMMARY JUDGMENT AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I. INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . 4

II. STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. LEGAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A. A VEBA generally owes unrelated business income tax on all of its income that is not "exempt function income." . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B. Section 512(a)(3)(B) defines a VEBA's "exempt function income." . . . . . . . . . 10

C. Section 512(a)(3)(E) limits the amount of assets that a VEBA may set aside for the payment of benefits to an account limit under § 419A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

D. Treasury Regulation § 1.512(a)-5T elaborates on the amount of income that a VEBA may set aside for exempt purposes. . . . . . . . . . . . . . . . . 14

E. Summary of statutory and regulatory scheme . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV. ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A. Plaintiff's interpretation of § 512(a)(3)(E) is inconsistent with the statute's plain meaning. Even if fully spent on program benefits, plaintiff's investment income can still "result in" an amount of assets in excess of the account limit. . 16

B. Plaintiff's interpretation of the Code undercuts Congress's attempt to limit the tax free accumulation of assets by a VEBA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

C. Treasury Regulation § 1.512(a)-5T confirms that UBIT is due on plaintiff's investment income. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D. The legislative history of the Tax Reform Act of 1984 confirms that defendant's interpretation of section 512(a)(3)(E) is correct. . . . . . . . . . . . . . . . . . . . . . . . . 23

**TABLE OF CONTENTS (continued)**

Page(s):


E. The Sixth Circuit's opinion in *Sherwin-Williams* does not compel a contrary result. . . . . 29

1. *Sherwin-Williams* is factually distinguishable. . . . . 30

2. There are many flaws in *Sherwin-Williams*' legal analysis. . . . . 31

F. Plaintiff has not met its factual burdens on this summary judgment motion. . . . 32

V. CONCLUSION . . . . . 33

APPENDIX

Excerpts from I.R.C. § 512(a)(3)(A). . . . . Tab 1

Excerpts from I.R.C. § 512(a)(3)(A). . . . . Tab 2

Excerpts from I.R.C. § 512(a)(3)(E). . . . . Tab 3

Excerpts from I.R.C. § 419A(c). . . . . Tab 4

Excerpts from Treas. Reg. § 1.512(a)-5T. . . . . Tab 5

Further excerpts from Treas. Reg. § 1.512(a)-5T. . . . . Tab 6

Excerpts from Staff of Joint Comm. on Taxation, *Description of Possible Ways and Means Committee Amendments to H.R. 4170 (Tax Reform Act of 1984)* (February 29, 1984) . . . . . Tab 7

Excerpts from H.R. Rep. No. 98-432, pt 2 (1984) . . . . . Tab 8

Excerpts from H.R. 4170, 98th Cong. (as passed by House, April 26, 1984). . . . . Tab 9

Excerpts from Staff of Joint Comm. on Taxation, *Description of Tax Provisions of H.R. 4170 as Passed by the House and the Senate*, at 101 (Comparative Comm. Print May 22, 1984). . . . . Tab 10

Excerpts from H.R. Conf. Rep. No. 98-861 (1984) . . . . . Tab 11

130 Cong. Rec. H7524 & H7527 (daily ed. June 29, 1984) . . . . . Tab 12

**TABLE OF CONTENTS (continued)**

Page(s):

APPENDIX (continued)

Excerpts from Tax Reform Act of 1984, § 511(b), 98 Stat. 860. . . . . . . . . . . . . . . . Tab 13

Excerpts fromStaff of the Joint Comm. on Taxation, 98th Cong., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984* (Comm. Print 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab 14

## TABLE OF AUTHORITIES

Page(s):

**Cases:**

*Bankers Trust New York Corp. v. United States*, 36 Fed. Cl. 30 (1996). . . . . . . . . . . . . . . . . . 22

*Benson v. United States*, 141 Ct. Cl. 273 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). . . . . . . . . . . . 2, 22

*Cinema '84 v. Comm'r of Internal Revenue*, 294 F.3d 432 (2d Cir. 2002). . . . . . . . . . . . . . . . . 22

*CUNA Mut. Life Ins. Co. v. United States*, 39 Fed. Cl. 660 (1997). . . . . . . . . . . . . . . . . . . . . . 22

*Franconia Assocs. v. United States*, 61 Fed. Cl. 718 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Murakami v. United States*, 52 Fed. Cl. 232 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Parker-Hannifin Corp. v. Comm'r of Internal Revenue*, 139 F.3d 1090 (6th Cir. 1998) . . . . . . . 12

*Sherwin-Williams Co. Employee Health Plan Trust v. Comm'r of Internal Revenue*, 330 F.3d 449 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 29-32

*Tobib v. Radloff*, 501 U.S. 157, 162 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 419A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 16

§ 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

§ 511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

§ 512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

§ 513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES (continued)**

Page(s):

**Other authorities:**

Treasury Regulation (26 C.F.R.) 1.512(a)-5T . . . . . . . . . . . . . . . . . . . . . . 6, 14-16, 22-23, 29, 32

Internal Revenue Service Action on Decision No. 2005-02, *Subject: Sherman-Williams Co. Employee Health Plan Trust v. Commissioner* (September 14, 2005) (at 2005 WL 2219137). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 30-31

H.R. 4170, 98th Cong. (as passed by House, April 26, 1984). . . . . . . . . . . . . . . . . . . . . . . . . . 23

130 Cong. Rec. H7524 (daily ed. June 29, 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Tax Reform Act of 1984, § 511(b), 98 Stat. 860. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

H.R. Rep. No. 98-432, pt 2 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 20, 23-25

H.R. Conf. Rep. No. 98-861 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 31-32

Staff of Joint Comm. on Taxation, *Description of Possible Ways and Means Committee Amendments to H.R. 4170 (Tax Reform Act of 1984)* (February 29, 1984) . . . . . . . . . . . . . . . 26

Staff of Joint Comm. on Taxation, *Description of Tax Provisions of H.R. 4170 as Passed by the House and the Senate*, at 101 (Comparative Comm. Print May 22, 1984) . . . . . . . . . . 27

Staff of the Joint Comm. on Taxation, 98th Cong., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984* (Comm. Print 1984). . . . . . . . . . 21, 28-29, 32

Staff of the Joint Comm. on Taxation, 109th Cong., *Historical Development and Present Law of the Federal Tax Exemption for Charities and Other Tax Exempt Organizations,*(Comm. Print April 19, 2005) (at JCX-29-05 No. 8, 2005 WL 5783682). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-541 T

(The Honorable Lynn J. Bush)

CNG TRANSMISSION MANAGEMENT VEBA,

Plaintiff

v.

UNITED STATES,

Defendant

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the Court of Federal Claims, defendant cross-moves for summary judgment in its favor on plaintiff's claims against it. Defendant's motion is based on the following grounds:

(1) As a matter of law, a VEBA's investment income may, pursuant to I.R.C. § 512(a)(3)(E), "result in an amount of assets set aside . . . in excess of the account limit determined under section 419A," even if the VEBA spends the investment income on program benefits during the taxable year;

(2) Defendant's interpretation is based on the plain meaning of I.R.C. § 512(a)(3)(E), the legislative history of the Tax Reform Act of 1984, and the text of Treasury Regulation § 1.512(a)-5T, to which the Court must defer under *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

(3) Plaintiff's investment income of $2,798,002 during the 2000 tax year cannot constitute exempt function income unless plaintiff's total assets set aside at the end of the 2000 tax year were less than plaintiff's account limit under I.R.C. § 419A for that year (not including any reserve for post-retirement medical benefits).

(4) Plaintiff has provided no evidence that its account limit under § 419A, exclusive of any reserve for post-retirement medical benefits, was greater than or equal to its amount of assets set aside at the end of the 2000 tax year. Accordingly, plaintiff has not met its burden of proving that its investment income in the 2000 tax year was exempt from tax.

Defendant's cross-motion is based upon the content of this Cross-Motion and Response, the appendix attached hereto, the accompanying Declaration of Jason Bergmann, Defendant's Proposed Findings of Uncontroverted Fact, Plaintiff's Proposed Findings of Uncontroverted Fact and defendant's response thereto, the evidentiary exhibits to Plaintiff's Motion for Summary Judgment, and all other pleadings in this action.

Respectfully submitted,

s/Jason Bergmann
JASON BERGMANN
Attorney of Record
Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3425
Facsimile: (202) 514-9440

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
G. ROBSON STEWART
Reviewer

s/G. Robson Stewart
Of Counsel

June 6, 2008

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-541 T

(The Honorable Lynn J. Bush)

CNG TRANSMISSION MANAGEMENT VEBA,

Plaintiff

v.

UNITED STATES,

Defendant

**BRIEF IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This case concerns the taxation of investment income earned by Voluntary Employees' Beneficiary Associations, or "VEBAs."

The Internal Revenue Code provides that a VEBA's investment income is exempt from tax if "set aside . . . to provide for the payment of life, sick, accident or other benefits . . . ." § 512(a)(3)(B). [1/] However, this exemption applies "only to the extent that such set-aside does not result in an amount of assets set aside" that exceeds an actuarially-determined account limit. § 512(a)(3)(E).

[1/] Unless otherwise stated, all sections cited herein refer to the Internal Revenue Code of 1986, 26 U.S.C., in effect during the period at issue.

Plaintiff, a VEBA, seeks a refund of tax it paid on investment income for the 2000 tax year. Plaintiff argues that its investment income was exempt from tax, because "plaintiff spent all of its 2000 income . . . on VEBA benefits." (Pl. Brief at 9.) According to plaintiff, because "the set-aside income was expended during 2000 . . . , the existence of the set-aside income had absolutely no effect on the amount of assets held by plaintiff at the end of 2000, and therefore could not have 'resulted' in any excess of assets over the account limit." (Pl. Brief at 6.) Plaintiff's argument has a number of flaws.

First, plaintiff's interpretation of § 512(a)(3)(E) is inconsistent with the statute's plain meaning. Under the statute, a VEBA's investment income is exempt from tax only if it "does not result in" an amount of assets set aside that exceeds the VEBA's account limit. In other words, if there is a causal relationship between a VEBA's investment income and its end-of-year assets, and if those assets exceed the VEBA's account limit for the year, then the investment income will be taxable.

Here, plaintiff earned investment income of almost $2.8 million during the 2000 tax year and, after taxes, that investment income was responsible for a $1.8 million increase in plaintiff's end-of-year assets. Plaintiff tries to obscure this result by offsetting its payment of program benefits against its earned investment income. But that payment could have been just as easily allocated from other sources, such as plaintiff's year 2000 employer contributions or assets that plaintiff set aside in earlier years. Neither the statute nor the regulations authorize plaintiff to assign its investment income to the payment of a particular expense to avoid the payment of tax.

Second, if plaintiff's position were adopted, it would undercut the Code's attempt to restrict a VEBA's tax-free accumulation of assets. If plaintiff may avoid tax by earmarking its

investment income against expenses of providing program benefits, the VEBA could continue to accumulate assets over its account limit year after year, without owing any tax on the accumulation. That would be inconsistent with the intent of Congress "that there should be reasonable limits on the extent to which a tax-exempt entity, such as a [VEBA] . . . may accumulate income, tax-free." H.R. Rep. No. 98-432, pt. 2, at 1292 (1984).

Third, Treasury Regulation § 1.512(a)-5T makes clear that a VEBA's investment earnings are exempt from tax only "to the extent that the total amount set aside in the [VEBA] as of the close of the taxable year for any purpose . . . does not exceed the qualified asset account limit for such taxable year of the organization." Treas. Reg. § 1.512(a)-5T. Under the regulation, whether the VEBA spent a sum on program benefits that is greater than the investment income it earned during the year is irrelevant.

Fourth, the legislative history of the Tax Reform Act of 1984 makes clear that, where a VEBA's assets at the end of the taxable year exceed its account limit, the VEBA's investment income is taxable. Whether the investment income was spent during the year is unimportant.

Finally, plaintiff's reliance on *Sherwin-Williams Co. Employee Health Plan Trust v. Comm'r of Internal Revenue*, 330 F.3d 449 (6th Cir. 2003), is misplaced. That decision addressed factual circumstances different from those at Bar. There, the VEBA's investment income was "spent on the reasonable costs of administering" benefits, rather than on the program benefits themselves. *See id.* at 456. Moreover, the government stipulated in *Sherwin-Williams* that the VEBA's "investment income . . . was set aside and spent on administrative costs directly connected with the provision of benefits" (*id.* at 454), a fact that the government disputes here. Those factual differences distinguish *Sherwin-Williams* from the instant case. But *Sherwin-*

*Williams*' major shortcoming is its flawed legal analysis. The *Sherwin-Williams* opinion did not interpret the plain meaning of § 512(a)(3)(E) correctly, and it failed to consider, among other things, possible ambiguities in § 512(a)(3)(E), legislative history inconsistent with its holding, and the proper deference due to Treasury Regulation § 1.512(a)-5T.

As a matter of law, defendant will show that its interpretation of § 512(a)(3)(E) is correct: that a VEBA's investment income is taxable if the total assets set aside by the VEBA exceed its account limit at the end of the taxable year, even if the VEBA had spent more on program benefit expenses than it earned from investment income during the tax year.

## II. STATEMENT OF FACTS

Plaintiff is a VEBA under the terms of § 501(c)(9). (PPF, No. 1.) [2/] Plaintiff was established by Consolidated Natural Gas Company pursuant to a Welfare Trust Agreement, dated March 31, 1994. (PPF, No. 3.) Plaintiff's Trust Agreement provides that "neither the income nor other assets of the Trust will inure to any person other than by payment of the benefits provided by the Plans, except as may otherwise be permitted by law." (DPF, No. 1.)

At the beginning of the 2000 tax year, plaintiff had total net assets or fund balances of $44,804,622. (DPF, No 2.) At the end of the 2000 tax year, plaintiff had total net assets or fund balances of $42,592,818. (DPF, No. 3.) The following items of income, expenses, and other adjustments contributed to the change in plaintiff's net assets or fund balances from the beginning to the end of the 2000 tax year:

---

[2/] "PPF" refers to Plaintiff's Proposed Findings of Uncontroverted Fact, filed in support of plaintiff's summary judgment motion. "DPF" refers to Defendant's Proposed Findings of Uncontroverted Fact, filed contemporaneously herewith.

| | |
|---|---|
| **Net assets/fund balances at start of 2000 tax year** | **$44,804,622** |
| Plus employer contributions | + $12,684,454 |
| Plus investment income | + $2,798,002 |
| Minus loss on sale of assets | - $610,809 |
| Minus benefits paid to or for members | - $7,429,878 |
| Minus management and general expenses (excluding tax payments) | - $126,879 |
| Minus estimated tax payments | - $1,041,000 |
| Minus other changes in net assets or fund balances [3/] | - $8,485,694 |
| **Net assets/fund balances at end of 2000 tax year** | **$42,592,818** |

(DPF, Nos. 4-9; PPF, Nos. 9, 10.)

Plaintiff seeks a refund of $1,065,684 in taxes it paid for the 2000 tax year, including $1,041,000 in estimated tax payments it made during the year and an additional sum plaintiff previously overpaid and applied to its tax liability for that year. (Compl., ¶ 23; Form 990T, lines 43 & 44 (at Pl. Ex. D).) Plaintiff alleges that its "investment income in the amount of $2,798,002" should "have been excluded as exempt function income within the meaning of section 512(a)(3)(A) and (B) of the Code. (Compl., ¶¶ 20 & 22.) Plaintiff's refund claim is based upon its factual assertion that "plaintiff spent all of its 2000 income in the amount of $2,798,002 during 2000 on VEBA benefits" (Pl. Brief at 9), and on plaintiff's legal argument that this purported fact insulates its investment income from tax. (Pl. Brief at 6.)

---

[3/] All but $99,692 of plaintiff's "other changes in net assets or fund balances" arose from plaintiff's transfer of $8,386,002 for initial funding of a different VEBA, VNG Nonunion Mgmt Retireee VEBA. (DPF, No. 9.) That transfer occurred after Consolidated Natural Gas Company sold its wholly owned subsidiary, Virginia Natural Gas Company, to a third party. (DPF, No. 10.)

## III. LEGAL BACKGROUND

This "legal background" section of defendant's brief describes the statutory and regulatory scheme that governs the taxation of unrelated business taxable income for VEBAs. For ease of reference, this brief addresses the background issues separately from defendant's argument on the merits. [4/]

### A. A VEBA generally owes unrelated business income tax on all of its income that is not "exempt function income."

Voluntary employees' beneficiary associations have been exempt from federal income tax since 1928. Staff of the Joint Comm. on Taxation, 109th Cong., *Historical Development and Present Law of the Federal Tax Exemption for Charities and Other Tax Exempt Organizations*, text accompanying footnotes 680-682 (Comm. Print April 19, 2005) (at JCX-29-05 No. 8, 2005 WL 5783682). The current tax exemption for VEBAs is codified in §§ 501(a) and 501(c)(9), which govern "voluntary employees' beneficiary associations providing for the payment of life, sick, accident, or other benefits to the members of such association or their dependents or designated beneficiaries, if no part of the net earnings of such association inures (other than through such payments) to the benefit of any private shareholder or individual." "The employees eligible for coverage by a VEBA must share an employment-based common bond. Typically, eligibility is determined on the basis of: (1) a common employer (or affiliated employers), (2) coverage under one or more collective bargaining agreements, (3) membership in a labor union, or (4) membership in one or more locals of a national or international labor union." Joint Comm. on Taxation, *Historical Development*, *supra*.

---

[4/] The text of the relevant statutes and regulations appear in the Appendix to this brief.

Although VEBAs are generally exempt from tax (*see* § 501(a)), they are required to pay tax on their "unrelated business income." §§ 501(b), 511. This tax is referred to as unrelated business income tax, or "UBIT." Most types of exempt organizations pay UBIT on "income derived by any organization from any unrelated trade or business . . . regularly carried on by it." § 512(a)(1); *see also* § 513 (defining "unrelated trade or business"). However, VEBAs are subject to their own "special rules." *See* § 512(a)(3) ("Special rules applicable to organizations described in paragraph (7), (9), (17), or (20) of section 501(c)").

"Unlike most other types of exempt organizations, VEBAs are required to pay unrelated business income tax on gifts or grants, income from the performance of exempt functions, investment income, or other forms of passive income." Joint Comm. on Taxation, *Historical Development*, *supra*. Section 512(a)(3)(A) provides that all of a VEBA's "gross income," less deductions "which are directly connected with the production of the gross income," is subject to UBIT, unless the income qualifies as "exempt function income." In other words, "[o]nly a VEBA's exempt function income is excluded from unrelated business income tax." Joint Comm. on Taxation, *Historical Development*, *supra*.

**B. Section 512(a)(3)(B) defines a VEBA's "exempt function income."**

Section 512(a)(3)(B) provides:

> For purposes of subparagraph (A), the term "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. Such term also means all income (other than an amount equal to the gross income derived from any unrelated trade or business regularly carried on by such

> organization computed as if the organization were subject to paragraph (1)), which is set aside –
>
> > (i) for a purpose specified in section 170(c)(4), or
> >
> > (ii) in the case of an organization described in paragraph (9), (17), or (20) of section 501(c), to provide for the payment of life, sick, accident, or other benefits,
>
> including reasonable costs of administration directly connected with a purpose described in clause (i) or (ii). If during the taxable year, an amount which is attributable to income so set aside is used for a purpose other than that described in clause (i) or (ii), such amount shall be included, under subparagraph (A), in unrelated business taxable income for the taxable year.

The first sentence includes a VEBA's member contributions among its exempt function income. *Id.* The second sentence includes all income "which is set aside" by the VEBA "to provide for the payment of life, sick, accident, or other benefits," including "reasonable costs of administration directly connected with" that purpose. [5/] *Id.* The third sentence provides that set-aside income used for unsanctioned purposes is not exempt and "shall be included . . . in unrelated business taxable income for the taxable year." *Id.*

During the 2000 tax year, plaintiff's employer contributions of $12,684,454 (DPF, No. 4) could potentially qualify as exempt function income under both the first and second sentences of § 512(a)(3)(B). First, the contributions constituted "gross income from dues, fees, charges, or similar amounts paid" as consideration for plaintiff's provision of benefits to its members. [6/]

---

[5/] Neither the parenthetical concerning the conduct of an unrelated trade or business nor subsection (a)(3)(B)(i) concerning certain charitable contributions applies to this case.

[6/] Contributions qualify whether they are made by the VEBA's members themselves or made by the employer on the members' behalf. *See* Treas. Reg. § 1.512(a)-5T.

§ 512(a)(3)(B). Second, under the terms of plaintiff's trust instrument, all of plaintiff's assets, including its employer contributions, were set aside for "payment of the benefits provided by the Plans." (DPF, No. 1.) Accordingly, the contributions also met the definition of "income . . . set aside . . . to provide for the payment of life, sick, accident, or other benefits." § 512(a)(3)(B); *Cf. Parker-Hannifin Corp. v. Comm'r of Internal Revenue*, 139 F.3d 1090, 1100 (6th Cir. 1998) ("[A]n employer has 'set aside' assets for purposes of § 419A(a) when it makes an irrevocable contribution to a welfare benefit fund which provides those benefits specified in § 419A(a).").

During the 2000 tax year, plaintiff's gross investment income of $2,798,002 (DFF, No. 5) could potentially meet the definition of exempt function income only under the second sentence of § 512(a)(3)(B). While that income was not from "dues, fees, charges, or similar amounts paid" (§ 512(a)(3)(B)), it was set aside for the payment of benefits. While the parties agree that plaintiff's investment income was set aside for the payment of benefits and administrative costs, that alone does not exempt it from tax. To qualify as "exempt function income" under § 512(a)(3)(B), plaintiff's investment income must also avoid application of the set-aside limitation contained in subsection (a)(3)(E).

### C. Section 512(a)(3)(E) limits the amount of assets that a VEBA may set aside for the payment of benefits to an account limit under § 419A.

Section 512(a)(3)(E) provides, in part:

> Limitation on amount of setaside in the case of organizations described in paragraph (9), (17), or (20) of section 501(c).–
>
> (i) In general.– In the case of any organization described in paragraph (9), (17), or (20) of section 501(c), a set-aside for any purpose specified in clause (ii) of subparagraph (B) may be taken into account under subparagraph (B) only to the extent that such set-aside does not result in an amount

> of assets set aside for such purpose in excess of the account limit determined under section 419A (without regard to subsection (f)(6) thereof) for the taxable year (not taking into account any reserve described in section 419A(c)(2)(A) for post-retirement medical benefits). [7/]

Under this provision, a "set-aside . . . to provide for the payment of life, sick, accident, or other benefits" (§ 512(a)(3)(B)), will be exempt from tax only if "such set-aside does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A . . . ." § 512(a)(3)(E) (emphasis added).

Section 419A(c)(2) also permits welfare benefit funds to establish reserves for post-retirement medical benefits. However, under the final parenthetical in § 512(a)(3)(E), a VEBA may not take such reserves into account when calculating the set-aside limitation.

"[T]he account limit for any qualified asset account for any taxable year is the amount reasonably and actuarially necessary to fund" claims incurred and unpaid at the close of the taxable year and administrative costs with respect to such claims. § 419A(c)(1). The account limit may also include an "[a]dditional reserve for post-retirement . . . life insurance benefits." § 419A(c)(2). Such a reserve may be "funded over the working lives of the covered employees and actuarially determined on a level basis . . . as necessary" for "post-retirement life insurance benefits to be provided to covered employees." *Id.*

---

[7/] Section 512(a)(3)(E) has subsections in addition to "(i) In general." Those subsections do not apply to this case.

**D. Treasury Regulation § 1.512(a)-5T elaborates on the amount of income that a VEBA may set aside for exempt purposes.**

On February 4, 1986, the Department of Treasury promulgated temporary regulations that were "necessary because of changes to the applicable tax law made by the Tax Reform Act of 1984." T.D. 8073, 1986-13 I.R.B. 4 (Feb. 4, 1986) (introductory language), *amended* 51 Fed. Reg. 7262 & 51 Fed. Reg. 11302. One such regulation, § 1.512(a)-5T, provides "[q]uestions and answers relating to the unrelated business taxable income of organizations described in paragraphs (9), (17), or (20) of section 501(c)." *Id.*

The regulation includes the following question and answer:

> Q-3: What amount of income may a [VEBA] set aside for exempt purposes?
>
> A-3: (a) Pursuant to section 512(a)(3)(E)(i), the amounts set aside in a [VEBA] . . . as of the close of a taxable year of such [VEBA] to provide for the payment of life, sick, accident, or other benefits may not be taken into account for purposes of determining exempt function income <u>to the extent that such amounts exceed the qualified asset account limit</u>, determined under sections 419A(c) and 419A(f)(7), for such taxable year of the [VEBA]. In calculating the qualified asset account limit for this purpose, a reserve for post-retirement medical benefits under section 419A(c)(2)(A) is not to be taken into account.
>
> (b) The exempt function income of a [VEBA] for a taxable year of such an organization, under section 512(a)(3)(B), includes: (1) [member contributions]; and (2) other income of the [VEBA] (including earnings on member contributions) that is set aside for the payment of life, sick, accident, or other benefits <u>to the extent that the total amount set aside in the [VEBA] as of the close of the taxable year for any purpose (including member contributions and other income set aside in the [VEBA] as of the close of the year) does not exceed the qualified asset account limit</u> for such taxable year of the organization.

Treas. Reg. § 1.512(a)-5T (emphasis added). [8/] Thus, the regulation clarifies that a set-aside "result[s] in" an amount of assets set aside in excess of the account limit (*see* § 512(a)(3)(E)), "to the extent that" the set aside amount "exceed[s] the qualified asset account limit." Treas. Reg. § 1.512(a)-5T In other words, a VEBA's "earnings on member contributions" are taxable where "the total amount set aside in the [VEBA] as of the close of the taxable year" exceeds the qualified account limit. *Id.*

**E. Summary of statutory and regulatory scheme**

Together, the above-cited statutes and regulations create the following scheme for taxing investment income earned by VEBAs:

- A VEBA owes UBIT on all of its income that is not "exempt function income." § 512(a)(3)(A).
- A VEBA's member contributions constitute "exempt function income." § 512(a)(3)(B).
- Income "set aside" to provide for the payment of benefits also constitutes "exempt function income," but "only to the extent that such set-aside does not result in an amount of assets set aside for such purpose in excess of" the VEBA's account limit for the taxable year. §§ 512(a)(3)(B), 512(a)(3)(E).
- A VEBA's account limit includes actuarially-determined amounts necessary to fund claims incurred and unpaid at the close of the taxable year, the administrative costs of such claims, and a reserve for post-retirement life insurance benefits. It does not include a reserve for post-retirement medical benefits. §§ 419(A)(c), 512(a)(3)(E).
- Where the "the total amount set aside in the [VEBA] as of the close of the taxable year" exceeds the qualified asset account limit, a VEBA's set-aside income "results in" the excessive amount and is taxable. Treas. Reg. § 1.512(a)-5T.

---

[8/] The regulation answers the question collectively for VEBAs, Supplemental Unemployment Compensation Benefit Trusts (SUBs) and Group Legal Service Organizations (GLSOs). For ease of reading, the references to SUBs and GLSOs have been removed from the quoted language.

## IV. ARGUMENT.

### A. Plaintiff's interpretation of § 512(a)(3)(E) is inconsistent with the statute's plain meaning. Even if fully spent on program benefits, plaintiff's investment income can still "result in" an amount of assets in excess of the account limit.

Plaintiff contends that its investment income cannot have "'resulted' in any excess of assets over the account limit," because "the set-aside income was expended during 2000." (Pl. Brief at 6.) Plaintiff misreads § 512(a)(3)(E).

The operative language provides that set-aside income can qualify as "exempt function income" under section 512(a)(3)(B):

> only to the extent that such set-aside does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A . . . .

I.R.C. § 512(a)(3)(E). There are four relevant components to the quoted language. The first component, "**such set-aside**," is the subject of the operative sentence. It denotes the VEBA's income "set-aside . . . to provide for the payment of life, sick, accident, or other benefits," including "reasonable costs of administration directly connected with" that purpose," referred to in subsection 512(a)(3)(B). Here, that sum constitutes plaintiff's investment income of $2,798,002. The second component, "**does not result in**," is the sentence's verb. The third component, **"an amount of assets set aside for such purpose**," is the object of the sentence. It includes not just the set-aside referred to in the subject of the sentence, but also all other assets set aside by the VEBA, whether during the taxable year or before. Here, that sum constitutes plaintiff's net assets or fund balances of $42,592,818 at the end of the 2000 tax year. The fourth component, "**in excess of the account limit determined under section 419A**," is a phrase that modifies the sentence's object.

When the sentence is parsed into these components, the fallacy in plaintiff's argument becomes clear. Plaintiff argues that its investment income is not subject to the set-aside limitation, because that income "could not have 'resulted' in any excess of assets over the account limit." (Pl. Brief at 6.) But plaintiff confuses the object of the sentence ("an amount of assets set aside for such purpose") with the phrase modifying the object ("in excess of the account limit determined under section 419A"). The operative language does not, as plaintiff suggests, eliminate the tax exemption only for set asides that result in "any excess of assets over the account limit." (Pl. Brief at 6.) Its effect is much more broad. The operative language eliminates the tax exemption for all set asides that result in "an amount of assets set aside" and then provides <u>separately</u> that the total amount of assets may not exceed "the account limit determined under section 419A." § 512(a)(3)(E). This distinction may be subtle, but it is significant.

Thus, under a proper reading of the statute, a VEBA's set-aside income will not qualify as exempt function income if it "results in" a total amount of assets, and that total amount of assets exceeds the VEBA's account limit. There is no requirement that the set aside result in <u>the excess</u>, as plaintiff argues.

There are additional flaws in plaintiff's reasoning. Results in is synonymous with "as a result of," which "in various and sundry contexts, has been construed to mean 'caused by.'" *Murakami v. United States*, 52 Fed. Cl. 232, 239 (2002). The language "mandates only a causation requirement." *Id.* To constitute a legal cause, an act need not be the "sole" cause of an event. It is sufficient if a consequence flows "inevitably and naturally" from an act, even if the consequence was also affected "by outside events." *Franconia Assocs. v. United States*, 61 Fed. Cl. 718, 750 (2004). "There may be more than one cause of an effect and more than one effect of a cause," and

"separate and distinct agencies operating independently of each other" may "join and concur in producing the result." *Benson v. United States*, 141 Ct. Cl. 273, 301 n.8 & 302 n.9 (1958).

Under the applicable causation standard, investment income set aside during the year can result in an amount of assets set aside in excess of the VEBA's account limit, even where the VEBA spends more money on program benefits than the investment income it earns. Investment income that a VEBA earns during the year inevitably and naturally affects the total amount of assets in the VEBA's hands at the year's end. A but-for analysis demonstrates this clearly.

During the 2000 tax year, plaintiff's income consisted of $12.7 million of member contributions and $2.8 million of income from investments. [9/] (DPF, Nos. 4, 5.) Plaintiff's expenses included $7.4 million of program benefit payments, a loss of $0.6 million on the sale of assets, $0.1 million of administrative expenses, and $1.0 million in taxes paid. (DPF, Nos. 6-8.) At the end of the 2000 tax year, plaintiff had fund balances of $42.6 million. (DPF, No. 3.)

Assuming that plaintiff had not earned $2.8 million of investment income in the 2000 tax year, plaintiff would still have paid is program benefits and administrative expenses, and it still would have experienced a loss on the sale of securities. Any shortfall caused by the absence of plaintiff's investment income would be satisfied by additional funds taken either from employer contributions received during the year or assets set aside in prior years. The only change would be a savings to plaintiff of $1.0 million in tax that plaintiff would not owe in connection with the investment income that plaintiff no longer earns. As a result, plaintiff's end-of-year fund balances would be $40.8 million, $1.8 million less than they actually were at the end of the year 2000. Thus,

[9/] All dollar amounts in this discussion are approximate.

plaintiff's investment income did have a $1.8 million result on the amount of assets set aside by plaintiff at the end of the year.

There are a number of different variables that can affect the total amount set aside by a VEBA at the end of its tax year. The following formula identifies many of them:

A + B + C - D - E - F = G, where:

A = Amounts set aside during prior tax years;
B = Member contributions during the tax year;
C = Investment income during the tax year;
D = Payment of program benefits during the tax year;
E = Administrative expenses during the tax year;
F = Taxes paid during the tax year; and
G = Total amount set aside at the end of the tax year.

The total amount of a VEBA's assets set aside at the end of the tax year [G] flows inevitably and naturally from the combination of the other variables [A, B, C, D, E, and F]. In other words, each of those variables is a legal cause of the total amount set aside by the VEBA at the end of the year.

Plaintiff tries to obscure this fact by earmarking or allocating its investment income [C] toward the payment of program benefits [D]. But plaintiff's payment of program benefits could just as easily be allocated to its member contributions [B] or amounts set aside during prior years [A]. There is nothing in either the statute or regulations that authorizes plaintiff to "allocat[e] income from a particular source to the payment of a particular expense." Internal Revenue Service Action on Decision No. 2005-02, *Subject: Sherman-Williams Co. Employee Health Plan Trust v. Commissioner* (September 14, 2005) (at 2005 WL 2219137).

Plaintiff's interpretation that a VEBA is permitted to avoid tax by offsetting investment income against the payment of program benefits reads additional language into subsection 512(a)(3)(E):

> . . . a set-aside for any purpose specified in clause (ii) of subparagraph (B) may be taken into account under subparagraph (B) only to the extent that such set-aside, after deducting payments during the tax year for life, sick, accident, or other benefits, does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A . . . .

The underlined language does not appear in § 512(a)(3)(E), however, and the Court must reject plaintiff's attempt to alter the plain language of the statute. Plaintiff's attempt to use such an allocation as a means of exempting a VEBA's investment income from tax is not allowed.

**B. Plaintiff's interpretation of the Code undercuts Congress's attempt to limit the tax free accumulation of assets by a VEBA.**

The legislative history of the Tax Reform Act of 1984 described Congress's purpose for adopting § 512(a)(3)(E) and other provisions concerning welfare benefit funds. Congress was concerned about the "tax shelter potential of welfare benefit plans," and it wanted to discourage the "substantial advance funding of welfare benefits." H.R. Rep. No. 98-432, pt. 2, at 1276. Congress therefore believed that "there should be reasonable limits on the extent to which a tax exempt entity, such as a [VEBA] . . . may accumulate income, tax-free." *Id.* at 1292.

If plaintiff's interpretation were adopted, then a VEBA could circumvent the restrictions on the tax-free accumulation of assets by using investment income to fund the payment of program benefits, while stockpiling member contributions it receives. A hypothetical illustrates the point.

Assume a hypothetical VEBA had: (1) an account limit, exclusive of any reserve for post-retirement medical benefits, of $10 million during each relevant tax year; (2) $10 million in set-aside assets at the beginning of Year One; and (3) investment income, member contributions, and program expenses of $1 million each during each relevant tax year. If the hypothetical VEBA owed no taxes, then it would end Year One with $11 million in set-aside assets, Year Two with $12

million in set-aside assets, Year Three with $13 million in set-aside assets, and so on. [10/] Under plaintiff's interpretation, this hypothetical VEBA could add assets year after year in excess of the applicable account limit, an accumulation that Congress intended to prohibit on a tax-favored basis.

Under defendant's interpretation of § 512(a)(3)(E), the hypothetical VEBA would owe tax on its investment income during Year One and all succeeding years, because its set aside assets at the end of each year would exceed its account limit, exclusive of any reserve for post-retirement medical benefits. Under plaintiff's interpretation, the hypothetical VEBA would owe no taxes during any year, because its investment income each year would be spent on (or allocated to) program benefits that the VEBA paid.

Plaintiff's interpretation would permit a tax-free accumulation of assets that Congress intended to disallow. Plaintiff's interpretation would also render ineffective the language in § 512(a)(3)(E) which provides that, for the purposes of UBIT, the "account limit determined under section 419A" does not take into account "any reserve described in section 419A(c)(2)(A) for post-retirement medical benefits)." That would frustrate Congress's purpose for excluding post-retirement medical benefits from assets that can be set aside tax-free, where, "in view of the advance deductions provided to employers for these benefits, it was determined that the allowance of a tax-exempt reserve would provide an unnecessary tax incentive with respect to these benefits." Staff of the Joint Comm. on Taxation, 98th Cong., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984*, at 791 (Comm. Print 1984) [Appendix, Tab 17].

### C. Treasury Regulation § 1.512(a)-5T confirms that UBIT is due on plaintiff's investment income.

[10/] The VEBA would begin Year One with $10 million, add $1 million of member contributions, add $1 million of investment income, and subtract $1 million of program benefit expenses. As a result, the VEBA would end Year One with $11 million.

For the reasons stated above, defendant believes that § 512(a)(3)(E) unambiguously favors its statutory interpretation. However, should the Court conclude that the provision is ambiguous, the Court could then rely on Treas. Reg. § 1.512(a)-5T as a means of resolving the ambiguity.

*Chevron*, 467 U.S. at 842-43, requires the Court to defer to agency regulations that interpret ambiguous statutes:

> If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

The Court "cannot invalidate Treasury regulations unless they are unreasonable and plainly inconsistent with revenue statutes." *CUNA Mut. Life Ins. Co. v. United States*, 39 Fed. Cl. 660, 662 (1997). "To decide whether a treasury regulation is reasonable, courts should determine 'whether the regulation harmonizes with the plain language of the statute, its origin, and its purpose." *Bankers Trust New York Corp. v. United States*, 36 Fed. Cl. 30, 34 (1996). Temporary treasury regulations are afforded "the same deference as permanent regulations." *Id.; accord Cinema '84 v. Comm'r of Internal Revenue*, 294 F.3d 432, 438 (2d Cir. 2002) ("The fact that a Treasury regulation is 'temporary' does not diminish its legal effect. 'Until the passage of final regulations, temporary regulations are entitled to the same weight we accord to final regulations.'").

Treasury Regulation § 1.512(a)-5T explains that a VEBA's income "set aside for the payment of life, sick, accident, or other benefits" will constitute exempt function income only "to the extent that the total amount set aside in the [VEBA] as of the close of the taxable year for any purpose (including member contributions and other income set aside in the [VEBA] as of the close

of the year) does not exceed the qualified asset account limit." Treas. Reg. § 1.512(a)-5T. The regulation specifically confirms that the rule applies to "earnings on member contributions" such as plaintiff's investment income that is at issue here. The tax exemption for investment income is conditioned only upon a comparison of the "total amount set aside . . . as of the close of the taxable year" with the "qualified asset account limit." *Id.* Under the terms of the regulation, whether the investment income does or does not exceed the VEBA's program benefit expenses is irrelevant.

**D. The legislative history of the Tax Reform Act of 1984 confirms that defendant's interpretation of section 512(a)(3)(E) is correct.**

Likewise, should the Court conclude that § 512(a)(3)(e) is ambiguous, the Court could look to legislative history to aid its construction of the statute. *See Tobib v. Radloff*, 501 U.S. 157, 162 (1991) (holding that courts "appropriately may refer to a statute's legislative history to resolve statutory ambiguity"). Here, the legislative history supports defendant's interpretation unequivocally.

**Legislative history during consideration by the House.** Section 512(a)(3)(E) was enacted as part of the Tax Reform Act of 1984. It was first proposed in an amendment that the House Ways and Means Committee added to H.R. 4170 on March 1, 1984. *See* H.R. Rep. No. 98-432, pt. 2, at 1 (1984) [Appendix, Tab 8]. The proposed language was ultimately passed by the House without further amendment on April 26, 2004. H.R. 4170, 98th Cong. (as passed by House, April 26, 1984) [Appendix, Tab 9].

Section 114 of H.R. 4170, entitled "Amendments to Tax on Unrelated Business Income," proposed to add a new subsection (E) at the end of § 512(a)(3). H.R. Rep. No. 98-432, pt. 2, at 216-18. The proposed subsection contained much of the language that ultimately became law, including the phrase whose meaning is in dispute here: ". . . only to the extent that such set aside

does not result in an amount of assets set aside for such purpose in excess of . . . ." *Id.* The proposed subsection differed from the final law only in the language referring to the account limit. [11/]

Section 114 of H.R. 4170 was one of many proposed revisions to the Internal Revenue Code to address perceived tax abuses by VEBAs and other welfare benefit funds. The House Ways and Means Committee was "concerned that substantial advance funding of welfare benefits will ultimately lead to an unacceptable tax burden for many taxpayers who do not participate in these programs." H.R. Rep. No. 98-432, pt. 2, at 1276. It explained, in Supplemental Report No. 98-432, Part II, at 1275-76:

> The committee's concern has been caused by recent discussion among tax practitioners as to the tax-shelter potential of welfare benefit plans. Commentators have pointed out that the combination of advance deductions for contributions and the availability of tax exemption for certain employee benefit organizations (such as the voluntary employees' beneficiary association or VEBA) provides tax treatment very similar to that provided to qualified pension plans, but with far fewer restrictions . . . .
>
> In one article on the use of employee benefit plans as a tax shelter, an example is given of how a small professional corporation may utilize the tax benefits of a severance pay plan funded by a VEBA. In this example, the employees of the corporation are two doctors, ages 50 and 55, with annual salaries of $150,000 and $200,000, respectively, and three other workers, ages 20 to 36, with annual salaries of $10,000 to $18,000. The example indicates that the corporation could make tax deductible annual contributions to a tax-

---

[11/] Section 512(a)(3)(E)(i) measures the effect of a VEBA's set aside income against "the account limit determined under section 419A (without regard to subsection (f)(6) thereof) for the taxable year." It also excludes "any reserve described in section 419A(c)(2)(A) for post-retirement medical benefits." The version of this language proposed on March 5, 1984 referred instead to "the limitation of section 419(c)(4)(B)," and it did not specifically exclude a reserve for post-retirement medical benefits. H.R. Rep. No. 98-432, pt. 2, at 216-18.

> exempt VEBA of more than $55,000 annually under terms that would make it unlikely that the three lower-paid employees would receive substantial benefits from the plan. Some of this recent literature also pointed out that a VEBA could be used as a basis for claiming a deduction for the full cost of acquiring a ski chalet and yachts for the use of the employees. While a direct purchase of the facility by the employer would only permit deductions over the usable life of the depreciable property.

With respect to the proposed addition of § 512(a)(3)(E), the Committee Report noted, under prior law, that a VEBA's income was "not subject to the tax on unrelated business income to the extent the income is 'set aside' to provide permissible benefits" and that there was no specific limit on the amount of income that could be set aside. *Id.* at 1292. The Committee believed "that there should be reasonable limits on the extent to which a tax-exempt entity, such as a [VEBA] . . . may accumulate income, tax-free." *Id.* And the Committee explained:

> Under the bill, the amount set aside, tax free, for these purposes is not to exceed the level of the qualified asset account determined under the rules relating to the deductions for contributions to the VEBA, etc.

*Id.* at 1292. The explanation omits the "results in" language on which plaintiff relies and notes that, to be tax free, the set aside amount "is not to exceed" the VEBA's account limit. It does not provide, as plaintiff suggests, that any amounts set aside are offset by the VEBA's program benefit expenses during the year.

Immediately prior to the adoption of the amendment by the Ways and Means Committee, the Joint Committee on Taxation prepared a "Description of Possible Ways and Means Committee Amendments to H.R. 4170." This Joint Committee report characterized the effect of the proposed amendment as follows:

> The investment income of a benefit organization would be subject to the tax on unrelated business income to the extent assets exceed permitted levels.

Staff of Joint Comm. on Taxation, *Description of Possible Ways and Means Committee Amendments to H.R. 4170 (Tax Reform Act of 1984)*, at 89 (February 29, 1984) [Appendix, Tab 7]. Here, again, the legislative history confirms that a VEBA's investment income is taxable if total assets set aside "exceed permitted levels."

**Legislative history during Conference Committee consideration.** After passage by the House, additional changes were made to section 512(a)(3)(E) by the Conference Committee on June 23, 1984. *See* H.R. Conf. Rep. No. 98-861, at 1 (1984) [Appendix, Tab 11]. The Conference Committee Report recognized that, under the language included in the House bill:

> *Unrelated business income tax.*–The income of a VEBA, SUB, or GLSO for a year is subject to the tax on unrelated business income to the extent that benefit plan reserves for the year exceed the reserve limit.

*Id.* at 1162. The Conference Committee Report also noted that the Senate amendment had "[n]o provision" concerning "unrelated business income tax" for exempt benefit associations. *Id.*

The Conference Committee renumbered the sections of the bill, and it rewrote the language from the House bill that referred to the account limit, making it similar (but not identical) to the language in the final law. [12/] *Id.* at 285. The Conference Committee Report characterized the "Unrelated Business Income" provision as follows:

---

[12/] The Conference Agreement used the following language to describe the account limit: "the account limit determined under section 419A(c) for the taxable year (not taking into account any reserve for medical benefits provided to retired employees)." H.R. Conf. Rep. No. 98-861, at 285.

> *Unrelated Business Income.*–Under the agreement, in the case of a VEBA, etc., the amount set aside for an exempt purpose is generally not to exceed the qualified asset account limit (sec. 419A(c)) for the taxable year (without taking into account any reserve for medical benefits provided to retired employees).

*Id.* at 1163.

The language quoted above confirms that a VEBA's investment income is subject to UBIT "to the extent that benefit plan reserves for the year exceed the reserve limit," and that "the amount set aside . . . is generally not to exceed the qualified asset account limit." *Id.* at 1162-63. It does not provide, as plaintiff suggests, that the amount set aside, less any program benefit expenses during the year, must specifically cause an excess over the account limit.

During the Conference Committee's consideration of the Tax Reform Act of 1984, the Joint Committee on Taxation prepared a "Description of Tax Provisions of H.R. 4170 as Passed by the House and the Senate." It described the effect of the House version of the bill as follows:

> Income of a VEBA, SUB, or GLSO is subject to the tax on unrelated business taxable income to the extent that benefit plan reserves exceed the reserve limit . . . for the year.

Staff of Joint Comm. on Taxation, *Description of Tax Provisions of H.R. 4170 as Passed by the House and the Senate*, at 101 (Comparative Comm. Print May 22, 1984) [Appendix, Tab 10]. That language supports defendant's interpretation as well.

**Passage of the Tax Reform Act of 1984 and the Joint Committee's *General Explanation.*** On June 29, 1984, Congress passed H.R. Con. Res. 328, a concurrent resolution "correcting technical errors in the enrollment of H.R. 4170, Tax Reform Act of 1983." 130 Cong. Rec. H7524 (daily ed. June 29, 1984) [Appendix, Tab 12]. Section 90 of the concurrent resolution made final revisions to the language referring to the account limit, resulting in the version of §

512(a)(3)(E) that is now law. [13/] *Id.* at H7527. The final version of the Tax Reform Act of 1984 was published as Public Law No. 98-369 in the Statutes at Large on July 18, 1984. *See* Tax Reform Act of 1984, § 511(b), 98 Stat. 860 (1984) [Appendix, Tab 13].

After passage of the Tax Reform Act of 1984, the Joint Committee on Taxation published a "General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984," which "was prepared by the staff of the Joint Committee on Taxation, in consultation with the staffs of the House Committee on Ways and Means and the Senate Committee on Finance." Staff of the Joint Comm. on Taxation, 98th Cong., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984*, at xxi (Comm. Print 1984) [Appendix, Tab 14]. The Joint Committee Report discussed the purpose of the newly-enacted section 512(a)(3)(E):

> The Congress believed that there should be reasonable limits on the extent to which a tax exempt entity, such as a voluntary employees' beneficiary association (VEBA) . . . could accumulate income on a tax-favored basis. Also, the Congress believed that no tax-exempt accumulations should be permitted for certain benefits that may be provided under a VEBA . . . .

*Id.* at 790. The Joint Committee Report also explained the new subsection's effect:

> Under the Act, the [unrelated business income tax] applies to an amount equal to the lesser of the income of the fund or the amount by which the assets in the fund exceed a specific limit on amounts set aside for exempt purposes.

*Id.* at 790-91. This quoted language also supports defendant's interpretation of the statute.

Moreover, the *General Explanation* outlines a procedure for calculating a VEBA's UBIT:

---

[13/] The technical correction deleted the language "any reserve for medical benefits provided to retired employees" and replaced it with "any reserve described in section 419(a)(c)(2)(A) for post-retirement medical benefits."

> Under the Act, the [unrelated business income tax] applies to an amount equal to the lesser of the income of the fund or the amount by which the assets in the fund exceed a specific limit on amounts set aside for exempt purposes. [14/]

*Id.* at 790. This method further validates defendant's interpretation of the Code: (1) by stating that UBIT "applies to" the income of the VEBA without any deduction for program benefit expenses; and (2) by omitting any requirement that the investment income have caused any excess of the VEBA's funds over its account limit.

**E. The Sixth Circuit's opinion in *Sherwin-Williams* does not compel a contrary result.**

In *Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner of Internal Revenue*, 330 F.3d 449, 456 (6th Cir. 2003), the Sixth Circuit held that "§ 512(a)(3)(E)(i)'s limit on accumulating set-aside income does not apply to income that was set aside and spent on the reasonable costs of administering health care benefits under § 512(a)(3)(B)." Plaintiff relies upon *Sherwin-Williams* in support of its interpretation of the Code. (Pl. Brief at 7-9.) *Sherwin-Williams*, however, is not controlling in this Court and there are many reasons, both factual and legal, why it has no persuasive value.

**1. *Sherwin-Williams* is factually distinguishable.**

There are two noteworthy factual differences between *Sherwin-Williams* and this case. First, in *Sherwin-Williams*, the government had stipulated that the VEBA's "investment income

[14/] Treas. Reg. § 1.512(a)-5T also adopts the same procedure: "[T]he unrelated business taxable income of a [VEBA] for a taxable year of such an organization generally will equal the lesser of two amounts: the income of the [VEBA] for the taxable year (excluding member contributions); or, the excess of the total amount set aside as of the close of the taxable year (including member contributions) . . . over the qualified asset account limit (calculated without regard to the otherwise permitted reserve for post-retirement medical benefits) for the taxable year."

from the two years was set aside and spent on administrative costs directly connected with the provision of benefits." 330 F.3d at 454. That stipulation arguably led the Sixth Circuit to conclude that a VEBA may "allocat[e] income from a particular source to the payment of a particular expense," an act which is not permitted by either § 512(a)(3)(E) or Treas. Reg. § 1.512(a)-5T. Internal Revenue Service Action on Decision No. 2005-02, *Subject: Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner* (September 14, 2005) (at 2005 WL 2219137). In contrast, defendant made no such stipulation here. Instead, defendant disputes plaintiff's suggestion that the Code allows it to make such an allocation, and defendant disputes plaintiff's factual assertion that such an allocation was made during the 2000 tax year. (*See* Defendant's Response to PPPF, No. 11.)

Second, *Sherwin-Williams* concerned a VEBA's attempt to offset its investment income against its " reasonable costs of administering" benefits, rather than on the program benefits themselves. 330 F.3d at 456. There are distinctions between the statute's treatment of those two expenses, which flow from the way that § 512(a)(3)(B) refers to them. *See Sherwin-Williams*, 330 F.3d at 454-55 n.4. Although the Sixth Circuit declined to base its decision on those distinctions, they highlight the fact that the *Sherwin-Williams* holding is dictum when applied to the circumstances of this case.

**2. There are many flaws in *Sherwin-Williams*' legal analysis.**

The analysis in *Sherwin-Williams* is both incomplete and erroneous. The holding of *Sherwin-Williams* is based on the following logic: Section 512(a)(3)(E) imposes a limit "on the amount that the VEBA may accumulate at year's end." 330 F.2d at 454. Because the focus is "on

the sum that exists in the account at the relevant moment," the "aggregate quantity of money that has passed through the account is irrelevant." *Id.* That logic is flawed.

Defendant agrees with the Sixth Circuit that "the language of 512(a)(3)(E) [is] a limit only on the amount set aside and still in the trust at the end of the taxable year . . . . However, the court failed to apply this limit on set-asides correctly." I.R.S. AOD No. 2005-02, *supra*. As defendant has already shown, the quantity of money that a VEBA earns and sets aside during the year inevitably and naturally affects the sums set aside by the VEBA at the end of the year. Although Congress's purpose in enacting § 512(a)(3)(E) was to discourage end-of-year accumulations over the account limit, it did so by taxing assets earned during the year. The *Sherwin-Williams* court failed to appreciate this distinction. Nor did the Sixth Circuit even consider the possibility that the language of § 512(a)(3)(E) could be susceptible to an alternative interpretation, as defendant contends it should.

Although the *Sherwin-Williams* decision acknowledges the existence of Treas. Reg. § 1.512(a)-5T and the pertinent legislative history, it selectively quotes from these sources and fails to acknowledge the many portions of each that strongly support defendant's interpretation of § 512(a)(3)(E). For example, *Sherwin-Williams* cites to the Conference Committee Report (330 F.3d at 456), but it disregards the portion which provides that, under § 512(a)(3)(E), a VEBA's income is "subject to the tax on unrelated business income to the extent that benefit plan reserves for the year exceed the reserve limit." H.R. Conf. Rep. No. 98-861, at 1162. *Sherwin-Williams* cites to the Joint Committee's General Explanation (330 F.3d at 456), but it overlooks the portion providing that UBIT "applies to an amount equal to the lesser of the income of the fund or the amount by which the assets in the fund exceed a specific limit on amounts set aside for exempt purposes."

Joint Comm. on Taxation, *General Explanation*, *supra*, at 790. And *Sherwin-Williams* cites to Treas. Reg. § 1.512(a)-5T (330 F.3d at 456), but it ignores the portion which conditions the VEBA's exemption for set-aside income upon the balance of the VEBA's set-aside funds at the end of the year.

Finally, *Sherwin-Williams*' rejection of the government's position on policy grounds was misplaced. *Sherwin-Williams* noted that "the tax exemption [for set-aside income] would serve very little purpose" if "the cap on the amount that a VEBA could set aside" were limited to the account limit under section 419A, less any reserve for post-retirement health benefits. 330 F.3d at 455. However, notwithstanding the Sixth Circuit's doubts, that was the express intent of Congress, which believed that because of "the advance deductions provided to employers for these benefits," " allowance of a tax-exempt reserve would provide an unnecessary tax incentive." Joint Comm., *General Explanation, supra*, at 791. The Sixth Circuit should not have substituted its judgment on this policy question for the decision of Congress.

**F. Plaintiff has not met its factual burdens on this summary judgment motion.**

To the extent that the Court credits defendant's interpretation of § 512(a)(3)(E), in order for plaintiff to prevail, it must prove that its total assets set aside at the end of the 2000 tax year were less than its account limit under § 419A, exclusive of any reserve for post-retirement medical benefits. Plaintiff has not done so.

As the party with the burden of proof, plaintiff must provide admissible evidence in support of its claims in order to prevail on summary judgment:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

> that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

Plaintiff offered no admissible evidence of its § 419A account limit, whether inclusive or exclusive of any reserve for post-retirement medical benefits. Thus, there is an absence of evidence on this key element of plaintiff's claim. Summary judgment for defendant is warranted on that basis.

## V. CONCLUSION

For the foregoing reasons, defendant respectfully submits that plaintiff's summary judgment motion should be denied, and defendant's cross-motion for summary judgment should be granted.

Respectfully submitted,

s/Jason Bergmann

JASON BERGMANN
Attorney of Record
Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3425
Facsimile: (202) 514-9440

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
G. ROBSON STEWART
Reviewer

s/G. Robson Stewart
Of Counsel

June 6, 2008