[JOINT COMMITTEE PRINT]

# GENERAL EXPLANATION OF THE REVENUE PROVISIONS OF THE DEFICIT REDUCTION ACT OF 1984

(H.R. 4170, 98TH CONGRESS;
PUBLIC LAW 98-369)

PREPARED BY THE STAFF

OF THE

JOINT COMMITTEE ON TAXATION

DECEMBER 31, 1984

U.S. GOVERNMENT PRINTING OFFICE

40-926 O WASHINGTON : 1985 JCS-41-84

For sale by the Superintendent of Documents, U.S. Government Printing Office
Washington, D.C. 20402

# SUMMARY TABLE OF CONTENTS

| | Page |
|---|---|
| Letter of Transmittal | XXI |
| I. Legislative History | 1 |
| II. General Reasons for Revenue Provisions | 5 |
| III. General Explanation of the Revenue Provisions of the Act | 11 |
| Title I. Freeze; Tax Reforms Generally | 11 |
| Title II. Life Insurance Tax Provisions | 572 |
| Title III. Private Foundation Provisions | 666 |
| Title IV. Tax Simplification Provisions | 707 |
| Title V. Employee Benefit Provisions | 774 |
| Title VI. Tax-Exempt Bond Provisions | 903 |
| Title VII. Technical Corrections | 985 |
| Title VIII. Foreign Sales Corporations | 1037 |
| Title IX. Highway Revenue Provisions | 1071 |
| Title X. Miscellaneous Revenue Provisions | 1083 |
| IV. General Explanation of Other Tax-Related Provisions Within the Jurisdiction of the Committee on Ways and Means and the Committee on Finance | 1212 |
| Appendix: Estimated Budget Effects of Revenue and Certain Other Tax-Related Provisions of the Act | 1233 |

# CONTENTS


| | Page |
|---|---|
| **Letter of Transmittal** | XXI |
| **I. Legislative History** | 1 |
| **II. General Reasons for Revenue Provisions** | 5 |
| **III. General Explanation of the Revenue Provisions of the Act** | 11 |
| TITLE I. TAX FREEZE; TAX REFORMS GENERALLY | 11 |
| A. Tax Freeze and Related Provisions | 11 |
| 1. Investment tax credit for used property (sec. 11) | 11 |
| 2. Finance leasing (sec. 12) | 12 |
| 3. Expensing of business personal property (sec. 13) | 19 |
| 4. Employee stock ownership credit (sec. 14) | 21 |
| 5. Limits on contributions and benefits under qualified plans (sec. 15) | 22 |
| 6. Repeal of net interest exclusion (sec. 16) | 23 |
| 7. Postponement of increase in foreign earned income exclusion (sec. 17) | 25 |
| 8. Defer scheduled reductions in maximum gift and estate tax rates (sec. 21) | 26 |
| 9. Windfall profit tax on newly discovered oil (sec. 25(a)) | 27 |
| 10. Percentage depletion for secondary and tertiary production after 1983 (sec. 25(b)) | 29 |
| 11. Extension of telephone excise tax (sec. 26) | 31 |
| 12. Increase in the distilled spirits excise tax rate (sec. 27) | 32 |
| 13. Requirement of electronic funds transfer for alcohol and tobacco excise taxes (sec. 27) | 34 |
| B. Leasing Provisions | 36 |
| 1. Tax-exempt entity leasing (sec. 31) | 36 |
| a. Overview | 47 |
| b. Definition of tax-exempt entity | 47 |
| c. Tax-exempt use property | 49 |
| d. Depreciation | 55 |
| e. Investment tax credit | 57 |

Page

d. Elimination of Government-supplied strip stamps for distilled spirits containers (sec. 454) ... 754
e. Removal of distilled spirits for use in production of certain nonbeverage wine without payment of tax (sec. 455) ... 756

E. Tax Court Provisions ... 758

1. Increase in jurisdictional limit for small tax cases (sec. 461) ... 758
2. Survivor annuities (sec. 462) ... 759
3. Assignment of proceedings (sec. 463) ... 760
4. Special trial judges (sec. 464) ... 761
5. Publicity of Tax Court proceedings (sec. 465) ... 762
6. Revenue effect ... 762

F. Simplification of Income Tax Credits (secs. 471-475) ... 763

G. Miscellaneous Simplification ... 765

1. Preferred stock eligible for small business corporation stock treatment (sec. 481) ... 765
2. Medical expense deduction for certain lodging (sec. 482) ... 767

H. Repeal of Certain Obsolete Provisions (Deadwood) ... 770

1. Termination of rules relating to qualified bond purchase plans and retirement bonds (sec. 491) ... 770
2. Repeal of section 1251 (relating to gains from disposition of certain property used in farming) (sec. 492) ... 773

TITLE V. EMPLOYEE BENEFIT PROVISIONS ... 774

A. Welfare Benefit Plans ... 774

1. Treatment of funded welfare benefit plans (sec. 511) ... 774
2. Amendments to tax on unrelated business income (sec. 511) ... 790
3. Excise taxes with respect to funded welfare benefit plans (sec. 511) ... 793
4. Additional requirements for tax-exempt status of certain organizations (sec. 513) ... 795
5. Study of employee benefit plans (sec. 560) ... 803
6. Treatment of deferred compensation arrangements and deferred benefits (sec. 512) ... 804

B. General Pension Provisions ... 807

1. Distribution rules for qualified plans (secs. 521-522) ... 807
2. Treatment of distributions substantially all of which are derived from employee contributions (sec. 523) ... 816

# LETTER OF TRANSMITTAL

U.S. Congress,
Joint Committee on Taxation,
*Washington, D.C., December 31, 1984.*

Hon. Robert Dole, *Chairman,*
Hon. Dan Rostenkowski, *Vice-Chairman,*
*Joint Committee on Taxation,*
*U.S. Congress, Washington, D.C.*

Dear Messrs. Chairmen: This document, the General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, was prepared by the staff of the Joint Committee on Taxation, in consultation with the staffs of the House Committee on Ways and Means and the Senate Committee on Finance. It is comparable to similar material prepared by the Joint Committee staff with respect to other major revenue acts in recent years.

A committee report or print on legislation issued by a Congressional committee sets forth the committee's explanation of the bill as it was reported by that committee. In some instances, a committee report or print does not also serve as an explanation of the final provisions of the legislation as enacted by the Congress. This is because the versions of the bill reported or approved by the House and Senate committees may differ significantly from the versions of the bill as passed by the House, as passed by the Senate, or as enacted after action by a conference committee.

The Tax Reform Act of 1984, because of its comprehensive scope and the numerous changes which were made to the bill by the Senate and the conference committee, is an example of legislation with respect to which the differences between provisions of the reported bills or committee amendment and provisions of the public law are significant. The Tax Reform Act of 1984 is Division A of the Deficit Reduction Act of 1984 (P.L. 98-369). In addition, Division B (Spending Reduction Act of 1984) of the Act includes several tax-related provisions (described in this document) within the jurisdiction of the Committee on Ways and Means and the Committee on Finance.

The first part of the document is an overall chronology of the legislative background of the revenue provisions of the Act in the 98th Congress. (In addition to this overall chronology, specific references to the legislative background of each provision of the Act are set forth in footnotes accompanying the explanations of the provisions in the third and fourth parts of the document.) The second part presents the general reasons for the legislation. The third part consists of explanations of the revenue provisions of the Act (Division A). The fourth part consists of explanations of other tax-related provisions of the Act (included in Division B of the Act). An appendix sets forth the estimated budget effects of the provisions of the Act described in the document for fiscal years 1984-1989.

Sincerely yours,

David H. Brockway,
*Chief of Staff.*

# I. LEGISLATIVE HISTORY

The following is an overall chronology of the legislative background in the 98th Congress of the revenue provisions of H.R. 4170, the Deficit Reduction Act of 1984 (Public Law 98-369).[1]

## A. House Action

**H.R. 4170**

***H.R. 4170 as originally reported***

H.R. 4170 was introduced and was ordered to be reported on October 20, 1983, to incorporate the markup decisions of the House Committee on Ways and Means on various introduced tax bills and other amendments. A report was filed on H.R. 4170 on October 21, 1983 (H. Rep. No. 98-432).[2] In addition to seven tax titles, H.R. 4170 as reported included the Social Security Disability Benefits Reform Act of 1983, the Medicare Budget Reconciliation Amendments of 1983, and trade assistance amendments.

On November 16, 1983, the House Rules Committee granted a modified open rule (H. Res. 376) for consideration of H.R. 4170, which rule failed of passage on November 17, 1983.

***H.R. 4170 Committee amendment***

On March 1, 1984, the Committee on Ways and Means approved a Committee amendment as a substitute for H.R. 4170 as originally reported. The Committee filed a supplemental report on its amendment on March 5, 1984 (H. Rep. No. 98-432, Pt. 2).[3]

The Committee amendment included nine tax titles plus the Social Security disability, Medicare, and trade assistance titles. On March 7, 1984, the House Rules Committee granted a modified closed rule on H.R. 4170, making the Ways and Means Committee amendment (without the three nontax titles) in order as a substitute for H.R. 4170 as originally reported (H. Res. 462). The House adopted the rule on April 11, 1984, and passed the bill with the

---

[1] In addition to this overall chronology, specific references to the legislative background of each revenue provision are set forth in footnotes accompanying the explanation of the provisions in Parts III and IV of this document. These legislative background references include, as appropriate, citations to the following: H.R. 4170, committee amendment approved by the House Committee on Ways and Means on March 1, 1984 (H. Rep. No. 98-432, Pt. 2; March 5, 1984); "Deficit Reduction Act of 1984," as approved by the Senate Committee on Finance on March 21, 1984 (S. Prt. 98-169, Vols. I and II; April 2, 1984); Senate floor amendments, if any, to H.R. 2163 (added to H.R. 4170 before sending H.R. 4170 to conference); the Conference Report on H.R. 4170 (Joint Explanatory Statement of the Committee of Conference) (H. Rep. No. 98-861; June 23, 1984); and H. Con. Res. 328, which directed the enrolling clerk to make certain technical and clerical corrections to H.R. 4170.

[2] Fourteen bills, as amended, were incorporated along with other Committee amendments into H.R. 4170 as reported. For more details on the legislative history of the Ways and Means Committee and Subcommittee hearings and markups on these bills, see H. Rep. No. 98-432, pt 2, pp. 11-13.

[3] For more details on the legislative history of the Committee hearings and markup on the Committee amendment, see the Supplemental Report, pp. 1025-28.

Committee amendments, including a technical amendment, by a vote of 318-97 on April 11, 1984. H.R. 4170 was received in the Senate on April 26, 1984, and placed on the Senate Legislative Calendar (Senate Calendar No. 800).

**H.R. 2163**

H.R. 2163, the Sport Fish Restoration Act of 1983, was introduced on March 16, 1983, and referred to the House Committee on Merchant Marine and Fisheries. The Subcommittee on Coast Guard and Navigation marked up the bill on April 20, 1983, and forwarded the bill (adding amendments relating to the Federal Boat Safety Act of 1971) to the full Committee on Merchant Marine and Fisheries on April 20. The full Committee marked up the bill on May 10, 1983, and reported the bill as amended on May 16, 1983 (H. Rep. No. 98-133, Part 1).

H.R. 2163 was sequentially referred to the Committee on Ways and Means for a period ending July 15, 1983. The Ways and Means Committee held a hearing on June 2, 1983, and marked up the bill on June 29, 1983. The bill was reported by the Ways and Means Committee with an amendment in the nature of a substitute on July 1, 1983 (H. Rep. No. 98-133, Pt. 2).[4]

On July 12, 1983, the House by voice vote suspended the rules and passed H.R. 2163, as amended by the Ways and Means Committee. Thus, as passed by the House, the bill related primarily to the Sport Fish Restoration and Federal Boat Safety Programs, and the excise taxes on sport fishing equipment and motorboat fuels that finance these programs. The House-passed bill also included provisions relating to the excise tax on certain arrows and the tax-exempt status of the proposed National Fish and Wildlife Foundation (contained in a separate bill, H.R. 2809, subsequently enacted in P.L. 98-244).

## B. Senate Action

**S. 2062**

The Senate Committee on Finance approved its fiscal year 1984 budget reconciliation recommendations (revenue and spending provisions) on October 31, 1983, and transmitted bill and report language on that date to the Senate Budget Committee. The Budget Committee included the Finance Committee's revenue and spending recommendations as title I (Deficit Reduction Tax Act of 1983) of S. 2062 (Omnibus Reconciliation Act of 1983) as reported by the Budget Committee on November 4, 1983 (S. Rep. No. 98-300). S. 2062 was placed on the Senate Calendar on November 16, 1983, was considered on November 16-17, 1983, and was returned to the Calendar on November 18, 1983.

---

[4] The bill was then sequentially referred to the Committee on Interior and Insular Affairs for a period ending July 11, 1983. The Interior Committee was discharged by motion on July 11, and the bill was placed on the House Calendar on July 11, 1983.

**H.R. 2163**

***1983 consideration***

H.R. 2163, as passed by the House, was referred to the Senate Finance Committee on July 13, 1983. A hearing was held on August 3, 1983, by the Finance Subcommittee on Taxation and Debt Management. The substance of the bill (with amendments)[5] was included in the Finance Committee revenue reconciliation proposal in S. 2062 as reported.

The Finance Committee then marked up H.R. 2163 on November 7, 1983, and reported it on November 15, 1983 (S. Rep. No. 98-312), substituting miscellaneous trade and tariff matters from S. 230, S. 453, and S. 759 for the House-passed revenue provisions.

***1984 consideration***

*Finance Committee markup.*—The Finance Committee marked up its deficit reduction (revenue and spending) proposals on February 23, 28-29, and March 1, 7-8, 13-15, and 20-21, 1984, with Committee approval on March 21 of a deficit reduction proposal. The Finance Committee printed an explanation and statutory language of its deficit reduction proposal on April 2, 1984 (S. Prt. 98-169, Vols. I and II). The deficit reduction proposal included the revenue and spending provisions of S. 2062, with further amendments, as well as new provisions.

*Senate floor action.*—The Finance Committee deficit reduction proposal (revenue and spending provisions) was considered as a floor amendment to H.R. 2163, beginning on April 5, 1984, and continuing on April 9-12, 1984. The amendment, as amended by further Senate floor amendments, was approved on April 12, 1984, by a record vote of 76-5.

The Senate continued floor debate on spending-related amendments to H.R. 2163 on April 24-26, and 30, and May 1-3, 8-11, and 14-17, 1984.

**H.R. 4170**

The provisions of H.R. 2163, as amended by the revenue provisions (Deficit Reduction Tax Act of 1984) and the spending-related provisions, were substituted by the Senate as an amendment to H.R. 4170 on May 17, 1984, and passed by a record vote of 74-23.

## C. Conference Action

**Conference**

On May 17, 1984, the Senate insisted on its amendments and asked for a conference. Conferees appointed with respect to the revenue provisions were the following: Senators Dole, Packwood, Roth, Danforth, Chafee, Long, Bentsen, Matsunaga, and Baucus. On May 23, 1984, the House requested a conference and appointed the following as conferees with respect to the revenue provisions: Representatives Rostenkowski, Gibbons, Pickle, Rangel, Stark, Conable, Duncan, and Archer. Also on May 23 by unanimous consent, the

[5] Except for the provision relating to the tax-exempt status of the National Fish and Wildlife Foundation.

House added a further amendment to the House-passed H.R. 4170 relating to certain spending reduction provisions. On May 24, 1984, the Senate disagreed to the further House amendment and agreed to a conference on the bill.

Conference was held on the revenue provisions on June 6-8, 12, 14-15, and 18-23, 1984. The conferees filed a conference report on H.R. 4170 on June 23, 1984 (H. Rep. No. 98-861). The Act was divided into Division A, Tax Reform Act of 1984, and Division B, Spending Reduction Act of 1984.

**House-Senate consideration of conference report**

The conference report on H.R. 4170 was passed on June 27, 1984, by a vote of 268-155 in the House, and by a vote of 83-15 in the Senate. A Concurrent Resolution (H. Con. Res. 328), to provide technical and clerical corrections to H.R. 4170, was passed by the House (voice vote) on June 27, 1984. H. Con. Res. 328 was amended and passed by the Senate (voice vote) on June 29, 1984, and was approved by the House (voice vote) as amended on June 29, 1984.

## D. Enactment of H.R. 4170

H.R. 4170, the Deficit Reduction Act of 1984, was signed into law by President Reagan on July 18, 1984 (Public Law 98-369).

## E. Subsequent Related Tax Legislation

Subsequent to enactment of Public Law 98-369, Congress passed two tax bills which included provisions relating to certain tax provisions included or considered in the Tax Reform Act of 1984: H.R. 2568 (relating to educational assistance plans) and H.R. 5361 (relating to group legal services plans and imputed interest on sales of real property).

H.R. 2568 was signed by the President on October 31, 1984 (P.L. 98-611).[6] H.R. 5361 was signed into law by the President on October 31, 1984 (P.L. 98-612).

---

[6] A Senate amendment to H.R. 4170, which was not agreed to by the conference committee, would have extended the previous section 127 exclusion through 1985. See section 890 of the Finance Committee amendment approved on March 21, 1984; S. Prt. 98-169, Vol. I., pp. 779-781.

## 2. Amendments to Tax on Unrelated Business Income (sec. 511 of the Act and secs. 419A and 512 of the Code)[26]

### *Prior Law*

Tax-exempt organizations generally are subject to income taxes on income from an unrelated trade or business. In the case of a club or a voluntary employees' beneficiary association (VEBA) (secs. 501(c)(7) and (c)(9)), income of the organization generally is not subject to the tax on unrelated business income to the the extent that the income is exempt function income consisting of certain member contributions and amounts set aside to provide permissible benefits. Prior law did not specifically limit the amount of income that could be set aside.

### *Reasons for Change*

The Congress believed that there should be reasonable limits on the extent to which a tax-exempt entity, such as a voluntary employees' beneficiary association (VEBA) or supplemental unemployment compensation benefit trust (SUB), or other fund could accumulate income on a tax-favored basis. Also, the Congress believed that no tax-exempt accumulations should be permitted for certain benefits that may be provided under a VEBA or SUB. Accordingly, the Congress believed that it was appropriate to impose reasonable limits on the amounts that may be set aside on a tax-exempt basis, and that reserves should not be allowed except with respect to self-funded life, sickness, accident, severance pay, and supplemental unemployment compensation benefits.

### *Explanation of Provisions*

***In general***

The Act modifies the rules of prior law, relating to the tax on unrelated business income of a club or a VEBA, and extends the modified rules to SUBs and group legal service organizations (GLSOs). Under the Act, the tax applies to an amount equal to the lesser of the income of the fund or the amount by which the assets in the fund exceed a specific limit on amounts set aside for exempt purposes. In addition, the Act provides for the inclusion of a similar amount in the gross income of an employer who maintains a welfare benefit fund that is not exempt from income tax. Of course, amounts contributed to a fund by employees or employers are not to be treated as unrelated business income under these pro-

---

[26] For legislative background of the provision, see: committee amendment to H. R. 4170, approved by the House Committee on Ways and Means on March 1, 1984, sec. 114; H. Rep. No. 98-432, Part 2 (March 5, 1984), p. 1292; H. Con. Res. 328, 130 Cong. Rec. (June 29, 1984), H7527; and H. Rep. 98-861 (June 23, 1984), pp. 1161-64 (Conference Report).

visions. Similarly, benefit payments are not to be taken into account as deductible expenses.

***Limitation on amount set aside***

The Act provides a specific annual limit on the amount of income of a tax-exempt VEBA, SUB, or GLSO (described in sec. 501(c)(9), (17), or (20), respectively) that may be considered a permissible set aside. Under the Act, the amount of such an organization's income for a year that may be considered set aside as exempt function income is generally not to increase the total amount that is set aside to an amount in excess of the account limit for the taxable year determined under the deduction limits provided by the Act (sec. 419A(c) and (f)). The limit on the set-aside is intended to apply to more-than-10-employer VEBAs which are exempt from the deduction limitations.[27]

In general, the rules applicable in computing the account limit under the deduction rules, such as the special reserve limits for collectively bargained plans, also are applicable in determining the set-aside allowed for purposes of the unrelated business income tax. However, for purposes of determining the limit on the set aside, the account limit is not to include any amount with respect to reserves to provide post-retirement medical benefits. The limit on the amount set aside as exempt function income does not include a reserve for post-retirement medical benefits because, in view of the advance deductions provided to employers for these benefits, it was determined that the allowance of such a tax-exempt reserve would provide an unnecessary tax incentive with respect to these benefits.

The value of a facility that is owned by a welfare benefit fund, to the extent used to provide employee benefits, is not taken into account in determining whether the value of the assets of the fund exceeds the account limit.

*Transition rule for post-retirement benefits.*—The new limitation on the amount which may be set aside for purposes of the unrelated business income tax does not apply to income attributable to certain existing reserves for post-retirement medical or life insurance benefits. This exclusion applies only to income attributable to the amount of assets set aside, as of the close of the last plan year ending before July 18, 1984, for purposes of providing such benefits. The transition relief applies to a reserve to provide such benefits only to the extent the reserve does not exceed the amount that could be accumulated under the principles of Rev. Ruls. 69-382, 1969-1 C.B. 28 and 73-599, 1973-2 C.B. 40. Of course, the obligation of an employer or employee to make future contributions is not to be taken into account as an amount set aside by a fund. The Act provides that all payments of post-retirement medical or life insurance benefits during plan years ending or on after July 18, 1984, are to be charged against the reserve. For this purpose, all plans of an employer are to be treated as one plan, except as provided in Treasury regulations.

---

[27] A technical correction may be necessary so that the statute reflects this intent.

*Certain tax-exempt organizations*

The new rules for computing unrelated business income do not apply to an organization if substantially all of the contributions to the organization were made by employers who were exempt from income tax throughout the period of 5 taxable years ending with the taxable year in which the contributions are made. It is expected that under Treasury regulations, in the case of an employer that has been in existence for less than 5 taxable years, the test will generally be applied on the basis of the number of years the employer has been in existence.

*Deemed unrelated income*

In the case of a welfare benefit fund that is not exempt from income tax (e.g., a retired life reserve account held by a life insurance company or a trust that is not exempt from tax under section 501(c)), the deemed unrelated income of the fund is includible in the gross income of the employer who maintains the fund.[28] The deemed unrelated income of such a fund is the amount of unrelated business income it would have if it were an exempt club, VEBA, SUB, or GLSO. In determining deemed unrelated income, at the election of the employer, two or more non-exempt welfare benefit funds of the employer may be treated as a single fund. Also, under the rules related to deemed unrelated income, the aggregation rules applicable to qualified plans are to apply.

*Effective Dates*

The provision is intended to be effective for taxable years ending after December 31, 1985, except that the special effective date for funds under collective bargaining agreements applicable to the employer deduction provision also applies to this provision. The provision is intended to be treated as a change in tax rates under Code section 15.[29]

---

[28] Sec. 419A(g).

[29] A technical correction will be necessary so that the statute reflects the intended effective date of this provision.