# In The United States Court of Federal Claims

| | | |
|---|---|---|
| CNG TRANSMISSION MANAGEMENT VEBA, | ) | |
| Plaintiff, | ) | No. 06-541-T |
| v. | ) | The Honorable Lynn J. Bush |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

ERIC R. FOX,
Attorney for Plaintiff
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No.-202-662-3406
Facsimile No.-202-393-7601
E-Mail Address-ericfox@ipbtax.com

Kevin P. O'Brien
Of Counsel
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No.-202-662-3411
Facsimile No.-202-393-7601
E-Mail Address-kpobrien@ipbtax.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... ii

REPLY BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT .......... 1

I. INTRODUCTION AND SUMMARY OF DEFENDANT'S ARGUMENT .......... 1

II. DEFENDANT'S STATUTORY ANALYSIS HAS NO SUPPORT .......... 2

III. PLAINTIFF EXPENDED ALL OF ITS INVESTMENT INCOME ON BENEFITS FOR ITS MEMBERS DURING 2000 ... 7

IV. CONCLUSION .......... 14

CERTIFICATE OF SERVICE .......... 17

# TABLE OF AUTHORITIES

Page

## CASES

*Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner*, 330 F.3d 449 (6th Cir. 2003), *rev'g* 115 T.C. 440 (2000) ........ 4-9, 13, 14

## STATUTES

Internal Revenue Code of 1986 (26 U.S.C.)

Sec. 419 ........ 12
Sec. 419(b) ........ 12
Sec. 419(c)(1) ........ 12
Sec. 419(c)(2) ........ 12
Sec. 419(c)(3) ........ 12
Sec. 512(a)(3) ........ 14
Sec. 512(a)(3)(B) ........ 3, 8
Sec. 512(a)(3)(E) ........ 2, 3
Sec. 651 ........ 13
Sec. 652 ........ 13
Sec. 661 ........ 13

## REGULATIONS

Code of Federal Regulations (26 CFR)

Treas. Reg. § 1.501(c)(9)-2 ........ 10
Treas. Reg. § 1.512(a)-5T ........ 4, 5

## MISCELLANEOUS

H. R. Rep. 98-432, Part 2, 98th Cong. 2d Sess. (1984). ........ 11

General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, prepared by the Staff of the Joint Committee on Taxation, H.R. Rep. No. 4170, 98th Cong., 2d Sess. (1984) .......... 11, 12
GCM 35255 (1973) .......... 11, 13
PLR 8034006 (1980). .......... 11

# In The United States Court of Federal Claims

| | | |
|---|---|---|
| CNG TRANSMISSION MANAGEMENT VEBA, | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-541-T |
| v. | ) | |
| | ) | The Honorable Lynn J. Bush |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

---

PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

---

## I. INTRODUCTION AND SUMMARY OF DEFENDANT'S ARGUMENT

Defendant is faced with two insurmountable obstacles in this case; 1) unambiguous statutory language that supports plaintiff's position and, 2) a case decided by the United States Court of Appeals for the Sixth Circuit that also directly supports plaintiff's position. Thus, it is not surprising that defendant has resorted to parsing the statutory language using a highly questionable grammatical analysis in an effort to twist that language most insupportably in defendant's favor, has relied on the misinterpretation of legislative history and its own regulations to bolster its statutory misinterpretation, and finally, has attempted to

distinguish the Sixth Circuit's opinion on factual grounds that are without an iota of merit.

Defendant presents two alternative arguments. First, inasmuch as plaintiff has admittedly presented no evidence as to the amount of its qualified asset limit for purposes of section 512(a)(3)(E) of the Code, plaintiff's assets must be deemed to exceed that limit at the end of 2000 (a point plaintiff readily concedes) and, accordingly, all of plaintiff's investment income for 2000 must be unrelated business taxable income even if such income was expended to provide benefits to its members.

Second, if defendant's first argument is rejected, defendant argues that plaintiff's 2000 investment income is nonetheless taxable as unrelated business taxable income because there is no basis for determining that plaintiff expended its investment income on member benefits when the cost of such benefits could just as well be attributable to employer contributions made in 2000 or to assets of the VEBA trust that existed at the beginning of 2000.

## II. DEFENDANT'S STATUTORY ANALYSIS HAS NO SUPPORT

Defendant's argument begins on page 16 of its Brief with the above noted grammatical exercise. At the heart of this case is section 512(a)(3)(E), which prescribes a limit on the amount of a VEBA's investment income that can qualify as exempt function income, the only type of investment income of a VEBA that is not subject to tax.

Before turning to the limiting provision, section 512(a)(3)(B) defines exempt function income in relevant part as income set aside by a VEBA to provide for the payment of life, sick, accident or other benefits for VEBA members. Defendant has conceded that plaintiff's 2000 investment income meets this test. Section 512(a)(3)(E) then provides that the amount set aside pursuant to paragraph (B) may qualify as exempt function income "only to the extent that such set aside does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A ..."

Where defendant's grammar lesson fails is in its unquestionably false conclusion set forth on page 17 of defendant's Brief that the words "in excess of the account limit" create a separate rule that makes all investment income of a VEBA taxable whenever the account limit is exceeded, whether or not that income resulted in the excess. Contrary to defendant's assertion, the statute requires that, to be taxable, investment income must "result" in the excess assets. If, as defendant would have it, the account limitation exists as a separate and independent requirement, the "does not result in" language is simply left hanging without any limitation as to what it must not result in.

In some recognition of the extreme weakness of its argument, defendant has admitted that its novel interpretation of the English language is "subtle." The use of that word no doubt is an appeal to the Court's imagination, lest one be accused of not being subtle enough to grasp the government's argument, however far fetched it may be.

The defendant attempts to bolster its subtle point with references to its own regulations and to legislative history. The regulation it relies on is Treas. Reg. § 1.512(a)-5T, in a discussion beginning at the bottom of page 21 of defendant's Brief. This particular regulation is actually a collection of four questions and answers, noted as Qs and As 1 through 4. Although not so specifying, defendant appears to be relying on Q and A 3, paragraph (b). The Q is "What amount of income may a VEBA...set aside for exempt purposes?" The A states:

> The exempt function income of a VEBA ... for a taxable year of such an organization, under section 512(a)(3)(B), includes...other income [*i.e.,* investment income] of the VEBA ... that is set aside for the payment of life, sick, accident, or other benefits to the extent that the total amount set aside in the VEBA ... as of the close of the taxable year for any purpose ... does not exceed the qualified asset account limit for such taxable year of the organization.

Just as it did in the *Sherwin-Williams* case, the defendant asks the court to focus only on the words "does not exceed the qualified asset account limit." Based on these words alone, together with the fact that the plaintiff's assets may be assumed to have exceeded the account limit, the defendant asserts that its regulation requires the taxation of all of a VEBA's investment income whenever the VEBA's assets exceed its account limit.

The defendant, however, wishes to ignore the fact that the quoted regulation requires that there first must be income set aside during the taxable year that results in the account limit being exceeded. When all of the investment income has been expended during the taxable year, none of that income can have been responsible for VEBA assets in excess of the account limit.

Defendant also chooses to ignore A-3, paragraph (a) which even more specifically makes this point. That answer states:

> Pursuant to section 512(a)(3)(E)(i), the amounts set aside in a VEBA … as of the close of a taxable year of such VEBA … to provide for the payment of life, sick, accident, or other benefits may not be taken into account for purposes of determining "exempt function income" to the extent such amounts exceed the qualified asset account limit ….

Once again, the regulation requires that the qualified excess account limit applies only to amounts held by the VEBA "as of the close of a taxable year", and no such amounts exist when expended during the course of the year. Therefore, such expended amounts cannot be subject to the qualified asset account limit.

This was precisely the conclusion reached by the Sixth Circuit Court of Appeals in the *Sherwin-Williams* case in response to defendant's reliance on the same regulation it is relying on here.

> The Treasury Department's governing regulations interpreting the 1984 limit are even more explicit, stating that the § 512(a)(3)(E)(i) cap on exempt function income applies to "the amounts set aside in a VEBA … as of the close of a taxable year." Prop. Treas. Reg. 1.512(a)-5T, A-3(a), 51 Fed. Reg. 4332 (Feb. 4, 1986) (emphasis added [in original]); see also id. at A-3(b) (stating that exempt function income includes income set aside for the payment of benefits as long as "the total amount set aside in the VEBA … as of the close of the taxable year" does not exceed the § 419A limit). The reference to the amounts set aside "as of" the year's end suggests an inquiry into the amount in the fund on that date, not an inquiry into what has passed through the fund over the past year.

330 F. 3d at 456.

Prop. Treas. Reg. § 1.512(a)-5T, A-3(a) is also significant because it clearly provides that the account limit test applies directly to the amount of set aside

income. The words "such amounts" in that section of the regulations clearly refer to the antecedent "amounts set aside for, etc.". Thus, it is clear that Treasury understood the focus was to be on the amount of investment income, if any, retained by the VEBA at the end of the taxable year, in comparison with the limitation, not, as defendant argues, on the fact that the limitation existed independently.

On page 23 of its Brief, defendant claims that legislative history "supports defendant's position unequivocally." This, of course, would come as a great shock to the Sixth Circuit judges who considered this same legislative history and stated:

> Finally, our interpretation finds support in § 512's legislative history ....Although the House Conference Report to the Deficit Reduction (sic) of 1984 is somewhat ambiguous on this issue, referring both to the amount "set aside," which suggests a limit on total set-asides, and to the "account limit," which suggests a limit on the amount within the account at a particular time, see H.R. Conf. Rep. No. 98-861, at 1163 (1984) [cited a number of time in defendant's brief as supporting its position], reprinted in 1984 U.S.C.C.A.N 1445, 1851, the House Ways and Means Committee Report *explicitly* takes the latter approach. The House Ways and Means Committee explained § 512(a)(3)(E)(i) as seeking to impose "reasonable limits" on a VEBA's ability to "accumulate" setaside income, not simply as cutting back on a VEBA's ability to set aside income to fund and administer its benefits plan. H.R. Rep. No. 98-432, at 1292 (1984) [also cited by defendant in support of its position], reprinted in 1984 U.S.C.C.A.N. 697, 952; accord Joint Committee on Taxation Staff, General Explanation at 790 [also cited by defendant in support of its position]. (Emphasis added.)

330 F. 3d at 456.

Without question, apart from the fact that the Sixth Circuit has totally refuted defendant's case with respect to defendant's primary position, the plaintiff's position makes far more sense from a policy standpoint than the defendant's. The statute is totally focused on whether certain investment income results in assets exceeding a certain limitation during a taxable year. If none of that income exists at the end of the year because it has all been expended, clearly it cannot have increased the assets in question. Congress was prescribing a rule for the taxation of income that caused something undesirable to happen in a particular year; it was not prescribing a tax on events that occurred in a previous taxable year.

## III. PLAINTIFF EXPENDED ALL OF ITS INVESTMENT INCOME ON BENEFITS FOR ITS MEMBERS DURING 2000

No doubt recognizing the weakness of its primary argument, which was rejected by the Sixth Circuit in the *Sherwin-Williams* case, the defendant has come up with a new alternative position; namely, that plaintiff cannot demonstrate that it expended its investment income on member benefits because those benefits could have been funded by employer contributions made in 2000 or by VEBA assets carried over from 1999 into the year 2000.

Before addressing this argument, however, it is necessary to refute defendant's reddest of herring efforts to distinguish *Sherwin-Williams* on the grounds that the VEBA in that case expended investment income on the

reasonable costs of administering benefits rather than on the program benefits themselves. Def.'s Brief at page 30. In either case, the question to be answered is whether the income in question "resulted" in excess assets. The specific nature of the expenditure matters not one whit as long as the expenditure was proper for a VEBA. Lest there be any doubt about this, one need only look at the statute, which is irrefutably clear on this point.

Section 512(a)(3)(B) refers to the income of a VEBA which is set aside for the payment of life, sick, accident or other benefits, and then immediately most unambiguously states, "including reasonable costs of administration directly connected with" that purpose. Accordingly, expenditures for administrative costs, which were involved in *Sherwin-Williams*, are treated in exactly the same manner as expenditures for the member benefits, which are involved in the present case.

Defendant's second effort to distinguish *Sherwin-Williams* on factual grounds is that, in that case, defendant stipulated that the VEBA's investment income was expended on administrative costs whereas, in this case, it has not made an equivalent stipulation. One is always amused by the Department of Justice's effort to pretend that it never need be consistent in representing its single client, the United States Government. It always seems to want to be free to say one thing in one federal court and something else in another, as the winds may blow. Courts should be most reluctant to accept this freewheeling approach to justice.

Defendant here seems to be saying that it only lost the *Sherwin-Williams* case because the lawyer who wrote the defendant's brief in that case stipulated the case away, a mistake defendant will not make a second time. Perhaps, on the contrary, defendant had thoroughly considered its position and made a determination that what it was willing to stipulate in the earlier case correctly represented the state of the law. Perhaps, what is now suggested *sub rosa* to be incompetence, was in fact a most reasoned judgment based on a full examination of the precedents that now is being jettisoned as undermining defendant's case.

Plaintiff imagines that the Court likely would be unwilling to enforce a rule of consistency in this matter but, the fact is that defendant's stipulation in *Sherwin-Williams* actually did represent a reasoned and proper decision. Without question, as explained below, the investment income of a VEBA is always expended before any of its other assets.

In this regard, defendant has claimed, contrary to the Internal Revenue Code and unmistakably clear legislative history, that the employer contribution to plaintiff made in 2000 was income which just as easily could have been the source of the benefit expenditures incurred by plaintiff in 2000. On page 11 of its Brief, defendant asserts that:

> during the year 2000, plaintiff's employer contributions of $12,684,454 could potentially qualify as exempt function income under both the first and second sentences of section 512(a)(3)(B). First, the contribution constituted "gross income from dues, fees, charges or similar amounts paid" as consideration for plaintiff's provision of benefits to its members. § 512(a)(3)(B). Second, under the terms of plaintiff's trust instrument, all of plaintiff's assets,

> including its employer contributions, were set aside "for the payment of the benefits provided by the Plans." Accordingly, the contributions also met the definition of income....

This language has no redeeming value. In the first place, defendant, in providing the quoted language relating to income from dues, etc., has conveniently omitted the modifying words, "paid by members of the organization." The employer is not a member of the organization; only employees can be members. Treas. Reg. § 1.501(c)(9)-2.

Second, the conclusion reached in defendant's second contention does not follow from the premise. The fact that an employer's contributions must be set aside for the benefit of members does not convert those contributions into income; it merely limits the uses to which such contributions can be devoted.

The fatal flaw in defendant's argument is that, even if plaintiff were to prevail in this case with respect to its contention that plaintiff's investment income was not taxable in 2000, the defendant's position that the employer's 2000 contribution of almost $13 million was income to the VEBA would lead to the legally impossible conclusion that a substantial portion of that amount would be taxable to plaintiff because it would, in fact, result in an excess of assets over the account limit and would not qualify as exempt function income.

Apart from semantic inadequacies, defendant also has ignored the clear legislative history in which the statement is made that:

> In determining the gross income of a fund, contributions and other amounts received from employees (dues, fees, etc.) are to be taken

> into account as income *but employer contributions are not to be taken into account.* (Emphasis added)

H. R. Rep. 98-432, Part 2, at 1279-1280, 98th Cong. 2d Sess. (1984). *See also*, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, prepared by the Staff of the Joint Committee on Taxation, at 781, H.R. Rep. No. 4170, 98th Cong., 2d Sess. (1984).

Consistent with this position, the Internal Revenue Service has issued private rulings in which it held that employer contributions to a trust fund created to settle an employment discrimination case and employer contributions to a taxable trust created for the benefit of employees were not income to the trusts in either case. GCM 35255, Part II (1973); PLR 8034006 (1980).

Although an employer's contribution to a VEBA is clearly not income to the VEBA, plaintiff admits that there is nonetheless the theoretical possibility that this source of funds could be deemed to fund the VEBA's benefits expenditures, as defendant contends. That, however, remains a theoretical possibility that must be rejected. First, the Staff of the Joint Committee, which defendant certainly recognizes as an authoritative voice, as is clear from defendant's references in its Brief to this source of legislative history, states unequivocally that, "under the Act, *welfare benefits are considered to be provided from employer contributions only after the fund's other sources of revenue have been applied to provide benefits.*" General Explanation of the Revenue Provisions of the Deficit Reduction Act of

1984, prepared by the Staff of the Joint Committee on Taxation, at 781, H.R. Rep. No. 4170, 98th Cong., 2d Sess. (1984). (Emphasis added)

Under the Code, the limitation on employer contributions to a VEBA is subject to its own regime, governed by section 419. Under section 419(b), an employer's contribution is deductible only to the extent the contribution does not exceed the VEBA's qualified cost for the taxable year in which paid." Qualified cost is defined in section 419(c)(1), which is further defined in section 419(c)(3), where the term is tied to allowable VEBA expenses for the year.

Section 419(c)(2) provides, however, that "the qualified cost for any taxable year shall be reduced by [the VEBA's] after-tax income for such taxable year." Thus, to the extent a VEBA's expenditures can be satisfied from its after-tax income in any year, deductible employer contributions are not permitted. In other words, the section 419 limitation is based on the mandate that a VEBA must expend its after-tax investment income on benefits and administrative costs before the employer will be allowed to make deductible contributions to cover such expenses. Without question, plaintiff's 2000 investment income must be treated as having been expended on benefits for its members before expenditures for members' benefits can be treated as attributable to employer contributions.

Inasmuch as plaintiff received no member contributions during 2000, there is no possibility that plaintiff's benefit expenditures during that year could be attributable to that source, although plaintiff believes the existence of that source would be irrelevant in any event as the outcome of cases such as this one should

not be turning on the serendipitous chance that member contributions may exist in any particular year. Furthermore, the courts are best off not having to deal with what is likely to amount to minute mathematical accounting, including such inquiries as when member contributions might have been made during the year and whether benefit payments could be directly tied to such contributions.

Defendant's only remaining potentially viable argument is that plaintiff might have used its carryover assets existing at the beginning of 2000 to fund its members' benefits rather than having used its investment income. Unfortunately for defendant, this fanciful notion runs counter to tax trust accounting where the rules have provided for decades that a trust's income is always distributed before its capital. Thus, whenever a taxable trust makes a distribution to a beneficiary, the amount distributed is always treated first as coming out of the taxable income of the trust and only then out of its principal. See sections 651, 652 and 661 of the Code. There is simply no reason to assume Congress would have imagined a different rule for a VEBA trust fund on this point unless Congress specifically so provided. This point was clearly recognized by the Internal Revenue Service with respect to a taxable employees benefit trust in GCM 35255, Part VII (1973).

## IV. CONCLUSION

Once again, the clear purport of section 512(a)(3), as pointed out by the Sixth Circuit in *Sherwin-Williams,* is to place a limit on the amount of current income that a VEBA can retain without paying tax.

> Concerned that VEBAs were using this "set aside" provision to accumulate tax-free income in an amount that far exceeded the quantities the VEBAs actually needed in order to provide benefits, in 1984 Congress imposed a limit on the amount of certain income that a VEBA could set aside under § 512(a)(3)(B). *See* Staff of the Joint Committee on Taxation, 98th Cong., General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, 790 (Joint Comm. Print 1984) ("The Congress believed that there should be reasonable limits on the extent to which a tax-exempt entity, such as a voluntary employees' beneficiary association (VEBA) ... could accumulate income on a tax-favored basis.").

330 F.3d at 451-452. Without doubt, as the Joint Committee Staff noted, Congress was concerned with unreasonable accumulation. If no income was accumulated because it was all spent during the taxable year, there was no basis for taxing that income. Congress made no provision for taxing a fund simply because it exceeded a certain limit. It is only when such fund has investment income that increases the fund that a tax may apply. Thus, if the legitimate expenses of the fund for a taxable year exceed the fund's income, there is simply no basis for taxing that income because the fund has not been augmented. To hold otherwise would be to create a new tax not envisioned by Congress.

Ultimately, the fatal flaw in the defendant's argument is that, if the defendant were to prevail in this case, a tax-exempt VEBA would find itself in a worse position than a taxable entity. If, for instance, an employer or a taxable trust

earned the investment income in issue in this case, it would be taxable on that income but would obtain an offsetting deduction for providing employment benefits to employees during the same taxable year to the extent the employer or the trust made welfare payments for their benefit. Thus, in effect, the investment income would not be taxed to the extent it was offset by the payment of welfare benefits.

Under the defendant's theory of this case, the VEBA's investment income earned during a taxable year is taxed even though an amount greater than that income is expended during the same taxable year on employee welfare benefits. While Congress expressed its concern that VEBA's should not be allowed to accumulate tax-free income beyond a certain limit, it is inconceivable that Congress intended to penalize taxpayers for providing welfare benefits through a VEBA rather than doing so directly or through a taxable trust, by taxing a VEBA's investment income notwithstanding the fact that none of such income was accumulated during the taxable year because it was all expended on welfare benefits during that year.

Respectfully submitted,

ERIC R. FOX,
Attorney for Plaintiff
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No.-202-662-3406
Facsimile No.-202-393-7601
E-Mail Address-ericfox@ipbtax.com

Kevin P. O'Brien
Of Counsel
Ivins, Phillips & Barker, Chartered
Suite 600
1700 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Tel. No.-202-662-3411
Facsimile No.-202-393-7601
E-Mail Address-kpobrien@ipbtax.com

June 27, 2008

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Reply Brief in Support of Its Motion for Summary Judgment and Plaintiff's Brief in Opposition to Defendant's Cross-Motion for Summary Judgment, together with the Plaintiff's Reply to Defendant's Responses to Plaintiff's Proposed Findings of Uncontroverted Fact and Plaintiff's Responses to Defendant's Proposed Findings of Uncontroverted Fact (all of which was electronically filed) was hand delivered this 27th day of June, 2008, to:

Jason Bergmann, Esquire
Attorney for Defendant
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
555 4th Street, N.W., Room 8804
Washington, D.C. 20001

ERIC R. FOX
Attorney for Plaintiff
1700 Pennsylvania Avenue, N.W.,
Suite 600
Washington, D.C. 20006
202-662-3406