IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-541 T

(The Honorable Lynn J. Bush)

CNG TRANSMISSION MANAGEMENT VEBA,

Plaintiff

v.

UNITED STATES,

Defendant

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
G. ROBSON STEWART
Reviewer

JASON BERGMANN
Attorney of Record
Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3425
Facsimile: (202) 514-9440

## TABLE OF CONTENTS

Page(s):

I. INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

A. A VEBA's set-aside income can "result in" an amount of assets in excess of the VEBA's account limit even if spent on program benefits during the tax year . . 3

1. § 512(a)(3)(E) measures a VEBA's investment income under a causation standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

2. Plaintiff's position conflicts with the plain language of § 512(a)(3)(E) . 4

3. § 512(a)(3)(E) does not permit a VEBA to offset its program-benefit expenses against its investment income . . . . . . . . . . . . . . . . . . . . . . . . . 6

B. Plaintiff's position impedes Congress's attempt to limit a VEBA's tax-free accumulation of assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

C. Treasury Regulation § 1.512(a)-5T supports defendant's position . . . . . . . . . . 10

D. The legislative history of the Tax Reform Act of 1984 supports defendant's position . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

E. The Sixth Circuit's opinion in *Sherwin-Williams* is unpersuasive . . . . . . . . . . 14

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

Page(s):

**Cases:**

*Benson v. United States*, 141 Ct. Cl. 273 (1958). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). . . . . . . . . . . . . . . . 3

*CUNA Mut. Life Ins. Co. v. United States*, 39 Fed. Cl. 660 (1997). . . . . . . . . . . . . . . . . . . . . . . . 3

*Franconia Assocs. v. United States*, 61 Fed. Cl. 718 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Jama v. Immigration and Customs Enforcement*, 543 U.S. 335 (2005) . . . . . . . . . . . . . . . . . . . . 15

*Murakami v. United States*, 52 Fed. Cl. 232 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Sherwin-Williams Co. Employee Health Plan Trust v. Comm'r of Internal Revenue*, 330 F.3d 449 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-15

*Tobib v. Radloff*, 501 U.S. 157 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 419 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

§ 419A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

§ 512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**TABLE OF AUTHORITIES (continued)**

Page(s):

**Other authorities:**

Treasury Regulation (26 C.F.R.) 1.512(a)-5T . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 10-12

I.R.S. Gen. Couns. Mem. 35,255 (February 28, 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.R.S. Tech. Adv. Mem. 80-34-006 (March 26, 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

H.R. Rep. No. 98-432, pt 2 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9, 13

H.R. Conf. Rep. No. 98-861 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Staff of Joint Comm. on Taxation, *Description of Possible Ways and Means Committee Amendments to H.R. 4170 (Tax Reform Act of 1984)* (February 29, 1984) . . . . . . . . . . . . . . 13

Staff of Joint Comm. on Taxation, *Description of Tax Provisions of H.R. 4170 as Passed by the House and the Senate*, at 101 (Comparative Comm. Print May 22, 1984) . . . . . . . . . 13

Staff of the Joint Comm. on Taxation, 98th Cong., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984* (Comm. Print 1984). . . . . . . . . . . . . . . . . . 13

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant contends that a VEBA's investment income is taxable when the total amount set aside by the VEBA exceeds its account limit at the end of the tax year. In that event, the VEBA owes tax on the lesser of its investment income or the amount of any excess. Where a VEBA's assets exceed the account limit, the VEBA's program-benefit expenses during the year do not affect the computation of tax.

Plaintiff disagrees. It claims instead that, whenever a VEBA spends more during a tax year on program benefits than the investment income it earns, the VEBA's investment income is exempt from tax. According to plaintiff, whether the VEBA's total assets set aside at the end of the tax year exceed its account limit is unimportant.

The parties' cross-motions for summary judgment ask the Court to determine which of these two positions is correct. The facts are essentially undisputed, and the Court can resolve the issue as a matter of law. As defendant demonstrated in its opening brief, the government's position correctly interprets the Internal Revenue Code, governing regulation, and pertinent legislative history. Plaintiff's counter-arguments are unpersuasive. [1/]

Under § 512(a)(3)(E), [2/] a VEBA's investment income is exempt-function income, and thereby exempt from tax, "only to the extent that such set-aside does not result in an amount of assets set aside for such purpose in excess of the account limit" of the VEBA. By using the words "result in," § 512(a)(3)(E) applies a causation standard to determine the taxability of a

---

[1/] Furthermore, the aggressive rhetoric and *ad hominem* attacks in plaintiff's reply brief are irrelevant to the Court's analysis of the merit of the parties' respective positions.

[2/] Unless otherwise stated, all sections cited herein refer to the Internal Revenue Code of 1986, 26 U.S.C., in effect during the period at issue.

VEBA's set-aside income. In other words, if set-aside income causes a VEBA's end-of-year assets to equal a sum in excess of the VEBA's account limit, the set-aside income is taxable (to the extent of the excess).

Investment income can cause a VEBA's end-of-year assets to exceed the account limit even if such income is spent during the year on program benefits. A but-for analysis of the tax year at issue demonstrates this conclusively in plaintiff's case. A VEBA's investment income inevitably and naturally affects its end-of-year assets, even if the VEBA's end-of-year assets may also be affected by its program-benefit expenses.

Plaintiff's attempt to earmark or offset its investment income against its program-benefit expenses is neither permitted nor relevant under § 512(a)(3)(E). Plaintiff's claim that such expenses are allocated first to its investment income, before employer contributions or prior-year assets, is based upon sections of the Code that govern situations other than calculation of the unrelated business income tax ("UBIT") imposed on a VEBA.

Defendant's position is also supported by Treasury Regulation § 1.512(a)-5T. Applying § 512(a)(3)(E), the regulation provides that a VEBA's investment income will qualify as "exempt function income" under § 512(a)(3)(B) "to the extent that the total amount set aside in the [VEBA] as of the close of the taxable year for any purpose . . . does not exceed the qualified asset account limit for such taxable year of the organization." The regulation explains further that a VEBA's UBIT "will equal the lesser of two amounts: the income of the [VEBA] for the taxable year . . . or, the excess of the total amount set aside as of the close of the taxable year . . . over the qualified asset account limit." The regulation does <u>not</u>, as plaintiff suggests, permit a VEBA to deduct program-benefit expenses from income when calculating UBIT.

Plaintiff faces a heavy burden. To invalidate the regulation, plaintiff must show that defendant's position is "unreasonable and plainly inconsistent with revenue statutes." *CUNA Mut. Life Ins. Co. v. United States*, 39 Fed. Cl. 660, 662 (1997). Defendant will prevail if "the statute is silent or ambiguous with respect to the specific issue" and if the government's position "is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). Plaintiff has not met this high standard.

Finally, the legislative history of the Tax Reform Act of 1984 supports defendant's interpretation of § 512(a)(3)(E). Accordingly, to the extent that the Court were to conclude that the statute is ambiguous, the Court would be required to resolve any such ambiguity in defendant's favor. *See Tobib v. Radloff*, 501 U.S. 157, 162 (1991).

## II. ARGUMENT

### A. A VEBA's set-aside income can "result in" an amount of assets in excess of the VEBA's account limit even if spent on program benefits during the tax year.

#### 1. § 512(a)(3)(E) measures a VEBA's investment income under a causation standard.

Under § 512(a)(3)(E), a VEBA's investment income is exempt-function income, and thereby exempt from tax, "only to the extent that such set-aside does not <u>result in</u> an amount of assets set aside for such purpose in excess of the account limit" of the VEBA (emphasis added). Plaintiff argues that, whenever a VEBA's program-benefit expenses exceed its investment income during a tax year, the investment income cannot have "'resulted' in any excess of assets over the account limit." (Pl. Opening Br. at 6.) Plaintiff's argument construes the words "result in" too narrowly.

Defendant's opening brief (at pages 17-19) demonstrated that the words "result in" incorporate a causation requirement into § 512(a)(3)(E). *See Murakami v. United States*, 52 Fed. Cl. 232, 239 (2002). An act will be a legal cause of a consequence when the consequence flows "inevitably and naturally" from the act. *Franconia Assocs. v. United States*, 61 Fed. Cl. 718, 750 (2004). A consequence can have more than one cause, and an act can be a legal cause even if the consequence is also affected by "outside events." *Id.*; *Benson v. United States*, 141 Ct. Cl. 273, 301 n.8 & 302 n.9 (1958).

Defendant's opening brief (at pages 18-19) used a but-for analysis to show that plaintiff's investment income of almost $2.8 million during the 2000 tax year was responsible for a $1.8 million increase in plaintiff's end-of-year assets. That consequence was unrelated to plaintiff's payment of program benefits to its members during that year. Plaintiff's reply brief failed to address this but-for analysis, which is fatal to its case.

Investment income that a VEBA earns during a year inevitably and naturally affects the total amount of assets in the VEBA's hands at the year's end. That is so even if the VEBA's assets are also affected by other variables, such as employer or employee contributions to the VEBA, amounts set aside in earlier tax years, administrative expenses, taxes, or payments of program benefits to the VEBA's members.

**2. Plaintiff's position conflicts with the plain language of § 512(a)(3)(E).**

Plaintiff's claim that a VEBA is permitted to avoid tax by offsetting investment income against the payment of program benefits improperly attempts to alter the plain language of § 512(a)(3)(E). Contrary to plaintiff's argument, the statute does not provide that a VEBA's program-benefit expenses are deducted from its set-aside income when determining whether

such income is exempt from tax. Plaintiff might be correct if § 512(a)(3)(E) was altered to add the underlined language below:

> . . . a set-aside for any purpose specified in clause (ii) of subparagraph (B) may be taken into account under subparagraph (B) only to the extent that such set-aside, <u>after deducting payments during the tax year for life, sick, accident, or other benefits</u>, does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A . . . .

However, the underlined language does not appear in § 512(a)(3)(E), and plaintiff's attempt to offset its program-benefit expenses against its investment income is therefore not allowed.

Defendant's opening brief (at pages 16-17) parsed the language of § 512(a)(3)(E) to interpret the meaning of § 512(a)(3)(E). Defendant's grammatical exercise showed that, to be subject to tax, investment income need not cause a VEBA's total set-aside assets to occupy a condition of excess; the income need merely affect the total sum of assets, and that total sum must exceed the account limit. Because the word "amount" is the object of the sentence, rather than "excess," the statute focuses on the linkage between set-aside income and the total "amount of assets set aside," instead of the effect of set-aside income on a VEBA's being, or not being, in a condition of "excess."

A hypothetical illustrates the point. Assume that a VEBA begins a tax year with assets of $10 million, earns $1 million in investment income, and ends the year with assets of $11 million. Assume further that the VEBA has a year-end account limit of $5 million. One could argue in this hypothetical that the investment income did not "result in" the VEBA exceeding its account limit, because the VEBA's total assets exceeded its account limit regardless of the amount of investment income earned. ($10 million exceeds $5 million, just as $11 million does.) In this

scenario, whenever a VEBA's assets exceed its account limit, even by just one dollar, all investment income would be exempt – a result Congress surely did not intend. It is not clear whether plaintiff is taking this position. (*See, e.g.*, Pl. Reply Br. at 3.) However, as defendant has shown, such an interpretation of § 512(a)(3)(E) is inconsistent with the plain language of the statute, where the object of the sentence is "amount," rather than "excess."

Conversely, defendant does not, as plaintiff charges, interpret § 512(a)(3)(E) to tax "all of a VEBA's investment income whenever the VEBA's assets exceed its account limit." (Pl. Reply Br. at 4.) Investment income is taxed only to the extent of any excess of end-of-year assets over the VEBA's account limit. *See* Treasury Regulation § 1.512(a)-5T. Thus, if a VEBA had $1 million of investment income during a tax year, but its end-of-year assets were only $1,000 over the account limit, all but $1,000 of the VEBA's investment income would constitute exempt-function income, not subject to tax.

**3. § 512(a)(3)(E) does not permit a VEBA to offset its program-benefit expenses against its investment income.**

The cornerstone of plaintiff's position is its assertion that program-benefit expenses are deducted from investment income when determining whether such income is subject to UBIT. Plaintiff's assertion rests on two separate grounds. First, plaintiff appears to claim that investment income spent on program-benefit expenses should be treated as never having been "set aside" in the first place. (*See* Pl. Reply Br. at 4 ("[T]he quoted regulation requires that there first must be income set aside during the taxable year that results in the account limit being exceeded.")) Plaintiff's second argument focuses on the words "result in," and contends that if a VEBA's investment income "has all been expended, clearly it cannot have increased the assets in question." (Pl. Reply Br. at 7.)

The first claim is easily dispatched. As explained in defendant's opening brief (at pages 11-12), plaintiff's trust instrument provides that all of plaintiff's assets are set aside to provide for the payment of program benefits. (Defendant's Proposed Findings of Uncontroverted Fact, No. 1.) Thus, from the moment earned, plaintiff's investment income is "set aside . . . to provide for the payment of life, sick, accident, or other benefits" under § 512(a)(3)(B), even if such income is spent later in the same taxable year. Regardless, if plaintiff were correct that income earned and spent during the same taxable year cannot qualify as a "set-aside" under § 512(a)(3)(B), such income would fail to meet the definition of "exempt function income" in the first place, and it would be subject to UBIT on that basis alone. Plaintiff's argument is self-defeating.

As already explained, plaintiff's second argument misapplies the causation standard that the words "result in" incorporate into § 512(a)(3)(E). Nor does § 512(a)(3)(E) authorize plaintiff to earmark its investment income to the payment of any particular expense to avoid the payment of tax. As defendant argued in its opening brief (at page 19), plaintiff's program-benefit expenses could just as easily be allocated to its year 2000 employer contributions or to assets that plaintiff had set aside in earlier years.

Plaintiff claims that, under the Code, its "welfare benefits are considered to be provided from employer contributions only after the fund's other sources of revenue have been applied to provide benefits." (Pl. Reply Br. at 11, *quoting* Staff of the Joint Comm. on Taxation, 98th Cong., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984*, at 781 (1984).) However, the quoted language pertains to, and is true only when defining, the

"after-tax income" of a welfare benefit fund for purposes of § 419(c). [3/] Under that section, a welfare benefit fund's "after-tax income" is calculated from the fund's "gross income," and the "gross income" does not take into account "contributions from the employer." §§ 419(c)(4)(A); 419(c)(4)(B)(ii). However, the definitions of "after-tax income" and "gross income" apply only "[f]or purposes of th[at] section" of the Code. § 419(c). They do not apply more broadly to other sections of the Code such as § 512(a)(3)(E). The Court should reject plaintiff's attempt to fit the round peg of § 419(c)(4)(B)(ii) into the square hole of § 512(a)(3)(E).

With respect to assets that plaintiff had set aside in earlier years, plaintiff notes that, when calculating the income tax of a taxable trust, distributions to beneficiaries are treated first as coming out of the trust's taxable income before its principal. (Pl. Reply Br. at 13). However, that rule exists in order to apportion taxable income between a trust and its beneficiaries, and it is not relevant to the calculation of UBIT owed by a VEBA under § 512. VEBAs and taxable trusts have different purposes and, accordingly, they are subject to different rules. [4/]

**B. Plaintiff's position impedes Congress's attempt to limit a VEBA's tax-free accumulation of assets.**

In adopting § 512(a)(3)(E) and other provisions concerning welfare benefit funds, Congress attempted to impose "reasonable limits on the extent to which a tax exempt entity, such as a [VEBA] . . . may accumulate income, tax-free." H.R. Rep. No. 98-432, pt. 2, at 1292

[3/] Section 419 provides rules for employer deductions for contributions to a welfare benefit fund (including a VEBA).

[4/] The General Counsel Memorandum and Private Letter Ruling cited by plaintiff likewise concern taxable trusts instead of VEBAs and are therefore irrelevant. *See* I.R.S. Gen. Couns. Mem. 35,255 (February 28, 1973); I.R.S. Tech. Adv. Mem. 80-34-006 (March 26, 1980). Each also provides that it "may not be cited as precedent." *Id.*

(1984). Defendant's opening brief (at pages 20-21) explained that if plaintiff's position were adopted, a VEBA could circumvent the restrictions on the tax-free accumulation of assets by using investment income to fund the payment of program benefits, while stockpiling member contributions it receives. Plaintiff's position would also render ineffective the language in § 512(a)(3)(E) which provides that, for the purposes of UBIT, the "account limit determined under section 419A" does not take into account "any reserve described in section 419A(c)(2)(A) for post-retirement medical benefits)." In its reply brief, plaintiff failed to address these substantial flaws in its position.

Rather than defend the tax consequences of its position, plaintiff instead attacks defendant's position, charging that "if the defendant were to prevail in this case, a tax-exempt VEBA would find itself in a worse position than a taxable entity." (Pl. Reply Br. at 14.) Plaintiff suggests that if benefits were provided through a taxable trust, rather than a VEBA, the trust's income would be taxable but would "obtain an offsetting deduction for providing employment benefits to employees." (*Id.* at 15.)

Plaintiff's suggestion may be correct, but it is incomplete. If an employer established a taxable trust to provide welfare benefits for its employees, the trust might be able to deduct its payment of program benefits from any investment income it earned. However, even if the taxable trust would not owe tax on its investment income, the employer would, to the extent that the taxable trust's assets exceed the account limit. Under § 419A(g), where an employer maintains a welfare benefit fund which is not a VEBA, the employer must include in its own gross income "an amount equal to such fund's deemed unrelated income" for the same year. The

"deemed unrelated income" is "the amount which would have been its unrelated business taxable income under section 512(a)(3) if such fund were a [VEBA]."

Accordingly, if a VEBA would pay UBIT on investment income, § 419A(g) would require an employer providing benefits through a taxable trust to owe income tax on that same income. In suggesting otherwise, plaintiff ignores § 419A(g).

C. **Treasury Regulation § 1.512(a)-5T supports defendant's position.**

In its reply brief, plaintiff claims that Treasury Regulation § 1.512(a)-5T somehow supports its construction of § 512(a)(3)(E). (*See* Pl. Reply at 4-6.) Plaintiff's claim is wrong. Rather, the regulation affirmatively adopts the government's interpretation of the Code.

As plaintiff notes, Treasury Regulation § 1.512(a)-5T contains four questions and answers. The relevant provision is the regulation's answer to question three, "What amount of income may a VEBA, SUB, or GLSO set aside for exempt purposes?" The regulation provides a two-part answer. Section A-3(a) contains a general statement. A-3(b) offers additional specificity concerning the circumstances under which a VEBA's income will be exempt from tax, and it establishes a formula for calculating the UBIT of a VEBA.

A-3(a) provides:

> Pursuant to section 512(a)(3)(E)(i), the amounts set aside in a [VEBA] . . . as of the close of a taxable year of such [VEBA] to provide for the payment of life, sick, accident, or other benefits may not be taken into account for purposes of determining exempt function income to the extent that such amounts exceed the qualified asset account limit, determined under sections 419A(c) and 419A(f)(7), for such taxable year of the [VEBA]. In calculating the qualified asset account limit for this purpose, a reserve for post-retirement medical benefits under section 419A(c)(2)(A) is not to be taken into account.

One feature of section A-3(a) is noteworthy. It omits the "result in" language from the statute, and it provides simply that set-asides "may not be taken into account to the extent that such amounts exceed the qualified account limit." In so doing, it supports defendant's position that a VEBA's investment income is taxable when the total amount set aside by the VEBA at the end of the tax year exceeds its account limit.

Plaintiff suggests that section A-3(a) supports its interpretation because it compares the VEBA's qualified asset account limit with its total amounts set aside "as of the close of a taxable year." (Pl. Reply at 5.) According to plaintiff, when a VEBA's investment income is spent "during the course of the year," no such amounts can exist at the year's close. (*Id.*) However, as defendant has shown, the quantity of money that a VEBA earns and sets aside during the year inevitably and naturally affects the total amount set aside by the VEBA at the end of the year. Although Congress's purpose in enacting § 512(a)(3)(E) was to discourage end-of-year accumulations over the account limit, it did so by taxing income earned during the year.

Section A-3(b) of the regulation provides:

> The exempt function income of a [VEBA] for a taxable year of such an organization, under section 512(a)(3)(B), includes: (1) [member contributions]; and (2) other income of the [VEBA] (including earnings on member contributions) that is set aside for the payment of life, sick, accident, or other benefits to the extent that the total amount set aside in the [VEBA] as of the close of the taxable year for any purpose (including member contributions and other income set aside in the [VEBA] as of the close of the year) does not exceed the qualified asset account limit for such taxable year of the organization. For purposes of section 512(c)(3)(B) [sic] member contributions include both employee contributions and employer contributions to the [VEBA].

* * *

> Accordingly, the unrelated business taxable income of a [VEBA] for a taxable year of such organization generally will equal the lesser of two amounts: the income of the [VEBA] for the taxable year (excluding member contributions); or, the excess of the total amount set aside as of the close of the taxable year (including member contributions) . . . over the qualified asset account limit (calculated without regard to the otherwise permitted reserve for post-retirement medical benefits) for the taxable year.

This section of the regulation elaborates on the more general statement in section A-3(a). It confirms specifically that a VEBA's income "set aside for the payment of life, sick, accident, or other benefits" will constitute exempt function income only "to the extent that the total amount set aside in the [VEBA] as of the close of the taxable year . . . does not exceed the qualified asset account limit." The regulation does not call for consideration of the VEBA's program-benefit expenses in making the comparison. The regulation notes that the rule applies to "earnings on member contributions" such as plaintiff's investment income at issue here. [5/] It is not limited, as plaintiff suggests, to earnings unspent at the close of the year (if that is even a meaningful concept). Finally, the regulation's formula for calculating income subject to UBIT takes into account that the VEBA's income for the taxable year, excluding only the VEBA's member contributions. <u>Under the formula set forth in the regulation, program-benefit expenses are not deducted from the VEBA's income when determining UBIT.</u>

---

[5/] Plaintiff argues that its employer contributions are not "member contributions" because the employer is not a member of the VEBA; only the employees are members. (Pl. Reply Br. at 10.) However, the regulation specifically provides that "member contributions include both employee contributions and employer contributions" to the VEBA.

**D. The legislative history of the Tax Reform Act of 1984 supports defendant's position.**

In its reply brief, plaintiff claims that the legislative history of § 512(a)(3)(E) favors its position. Again, plaintiff is wrong. The legislative history supports defendant's position, repeatedly and unequivocally.

Much of the legislative history omits the "result in" language from the statute and provides merely that a VEBA's total set-aside income "is not to exceed" the VEBA's account limit. [6/] Other materials go further and provide specifically that, under § 512(a)(3)(E), a VEBA's investment income is subject to UBIT "to the extent" that the VEBA's end-of-year assets exceed its account limit. [7/] Finally, the Joint Committee's *General Explanation* includes the same formula for calculating a VEBA's UBIT that appears in Treasury Regulation § 1.512(a)-5T. [8/]

---

[6/] *E.g.*, H.R. Rep. No. 98-432, pt. 2, at 1292 (1984) [Appendix, Tab 8]; H.R. Conf. Rep. No. 98-861, at 1163 (1984) [Appendix, Tab 11].

[7/] *See* Staff of Joint Comm. on Taxation, *Description of Possible Ways and Means Committee Amendments to H.R. 4170 (Tax Reform Act of 1984)*, at 89 (February 29, 1984) [Appendix, Tab 7] ("The investment income of a benefit organization would be subject to the tax on unrelated business income to the extent assets exceed permitted levels."); Staff of Joint Comm. on Taxation, *Description of Tax Provisions of H.R. 4170 as Passed by the House and the Senate*, at 101 (Comparative Comm. Print May 22, 1984) [Appendix, Tab 10] ("Income of a VEBA, SUB, or GLSO is subject to the tax on unrelated business taxable income to the extent that benefit plan reserves exceed the reserve limit . . . for the year."); H.R. Conf. Rep. No. 98-861, at 1162 ("*Unrelated business income tax.*–The income of a VEBA, SUB, or GLSO for a year is subject to the tax on unrelated business income to the extent that benefit plan reserves for the year exceed the reserve limit.").

[8/] Staff of the Joint Comm. on Taxation, 98th Cong., *General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984*, at 790 (Comm. Print 1984) [Appendix, Tab 14] ("Under the Act, the [unrelated business income tax] applies to an amount equal to the lesser of the income of the fund or the amount by which the assets in the fund exceed a specific limit on amounts set aside for exempt purposes.")

The legislative history does not support plaintiff's claim that program-benefit expenses must be deducted from investment income when determining whether such income is subject to UBIT. To the contrary, it confirms that investment income is taxable to the extent that the VEBA's total set asides exceed its account limit. The VEBA's program-benefit expenses are not part of the calculus.

**E. The Sixth Circuit's opinion in *Sherwin-Williams* is unpersuasive.**

As defendant's opening brief has shown (at pages 30-32), the legal analysis in *Sherwin-Williams Co. Employee Health Plan Trust v. Comm'r of Internal Revenue*, 330 F.3d 449 (6th Cir. 2003), has a number of flaws. The Sixth Circuit did not consider the possibility that § 512(a)(3)(E) could be susceptible to alternative interpretations, it did not grant the proper deference to Treas. Reg. § 1.512(a)-5T, and it did not acknowledge the legislative history that supports defendant's position. Those errors alone undercut any persuasive value of the opinion.

Defendant also identified two factual distinctions between this case and *Sherwin-Williams* which should further diminish its utility to this Court. *Sherwin-Williams* concerned a VEBA's attempt to offset its investment income against its "reasonable costs of administering" benefits, rather than the program benefits themselves. 330 F.3d at 456. There, the taxpayer asserted that §§ 512(a)(3)(B) and 512(a)(3)(E) treat a VEBA's administrative costs differently from the VEBA's program benefits. Although the Sixth Circuit ultimately rejected the taxpayer's assertion, *see Sherwin-Williams*, 330 F.3d at 454-55 n.4, that argument was a primary focus of the parties' briefs. The taxpayer's alternate argument, that the limitation on set asides does not apply to income spent during the year it was earned, was not explored as fully by the parties there as it has been here. Accordingly, even if the legal analysis ultimately adopted by

the Sixth Circuit would not distinguish between a VEBA's administrative costs and its program-benefit expenses, the Sixth Circuit's analysis is *dictum* when applied to the circumstances of this case. "Dictum settles nothing, even in the court that utters it." *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 351 n.12 (2005).

The other distinction is more substantive. In *Sherwin-Williams,* the government had stipulated that the VEBA's "investment income from the two years was set aside and spent on administrative costs directly connected with the provision of benefits." 330 F.3d at 454. Although the stipulation was apparently intended to streamline the presentation of the underlying facts of that case, the stipulation may have led the Sixth Circuit to conclude that a VEBA is permitted to allocate income from a particular source to the payment of a particular expense and that such an allocation has some bearing on the calculation of UBIT.

As defendant explained above, § 512(a)(3)(E) does not provide for deduction of a VEBA's program-benefit expenses from its investment income when determining UBIT. Because this is the central legal question in this case and is not a factual issue, plaintiff's charge that defendant has taken inconsistent positions is without merit. Defendant's legal position here is the same as the government asserted in *Sherwin-Williams*. The result in *Sherwin-Williams* is distinguishable because the factual record there differs materially from the record here.

## III. CONCLUSION

For the foregoing reasons, defendant respectfully submits that plaintiff's summary judgment motion should be denied, and defendant's cross-motion for summary judgment should be granted.

Respectfully submitted,

s/Jason Bergmann

JASON BERGMANN
Attorney of Record
Department of Justice, Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3425
Facsimile: (202) 514-9440

NATHAN J. HOCHMAN
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
G. ROBSON STEWART
Reviewer

s/G. Robson Stewart

Of Counsel

July 18, 2008