# In the United States Court of Federal Claims

No. 06-541 T

(Filed October 21, 2008)

| | |
|---|---|
| * * * * * * * * * * * * * * | * |
| CNG TRANSMISSION | * |
| MANAGEMENT VEBA, | * |
| | * |
| *Plaintiff*, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| *Defendant*. | * |
| * * * * * * * * * * * * * * | * |

Tax; Refund Claim; 26 U.S.C.
§§ 419A, 512(a)(3) (2000); 26
C.F.R. § 1.512(a)-5T (2008);
Unrelated Business Taxable
Income; Limitation on Exempt
Function Income; Deference to
Interpretative, Temporary
Treasury Regulation.

*Eric R. Fox*, Washington, D.C., for plaintiff.  *Kevin P. O'Brien*, Washington, D.C., of counsel.

*Jason Bergmann*, United States Department of Justice Tax Division, with whom were *Nathan J. Hochman*, Assistant Attorney General, *David Gustafson*, Chief, Court of Federal Claims Section, *G. Robson Stewart*, Reviewer, Washington, D.C., for defendant.

––––––––––––––––––––––––––

# OPINION

––––––––––––––––––––––––––

**Bush**, *Judge*.

This tax refund suit is before the court on cross-motions for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC).  Oral argument was held on October 16, 2008.  For the reasons given

below, plaintiff's motion is denied and defendant's motion is granted.

## BACKGROUND[1]

Plaintiff CNG Transmission Management VEBA (CNG) is a volunteer employees' beneficiary association (VEBA), organized under § 501(c)(9) of the Internal Revenue Code (Code).  Compl. ¶ 16; *see also* 26 U.S.C. § 501(c)(9) (2000).  Pursuant to § 501(c)(9), an employer-funded VEBA "provid[es] for the payment of life, sick, accident, or other benefits to the members of such association or their dependents or designated beneficiaries." *Id.*  A VEBA maintains certain set-aside funds to provide these benefits, known as welfare benefits, to its members.  *See* 26 U.S.C. § 419A(a) (2000).  Typically, the members of an employer-funded VEBA are the active employees and retirees of a sponsoring corporation.  *See, e.g.*, *Gen. Signal Corp. v. Comm'r*, 142 F.3d 546, 547 (2d Cir. 1998) (describing the sponsoring corporation's establishment of a VEBA "exclusively to provide welfare benefits to active and retired employees [of that corporation] and their dependents").  In this case, the original sponsor was Consolidated Natural Gas Company (Consolidated).  Dominion Resources, Inc. purchased Consolidated in 2000, and has been the sponsor of plaintiff CNG since the end of 2001.

As a 501(c)(9) organization, CNG is tax-exempt.  *See* 26 U.S.C. § 501(a) (2000).  Nonetheless, even a tax-exempt VEBA must pay tax on unrelated business taxable income (UBTI).  *See id.* §§ 501(b), 511-512 (2000).     The dispute before the court is whether CNG is due a refund for taxes it paid on UBTI for the 2000 tax year.

On its IRS Form 990-T for the year 2000, filed November 13, 2001, CNG reported that it had UBTI in the amount of $2,693,592, and paid tax on that income in the amount of $1,065,684.  Compl. ¶ 6; Pl.'s Facts ¶ 6.  On October 20, 2004, plaintiff filed an amended Form 990-T requesting a refund of $1,065,684 "on the grounds that it earned no unrelated business taxable income [UBTI] in 2000." Compl. ¶ 7.  The investment income that had originally been reported as UBTI in the amount of $2,693,592 should have been, according to plaintiff, "excluded as

---

[1]/ The facts reported here are undisputed unless otherwise noted.  *See* Def.'s Reply at 1 (noting that "[t]he facts are essentially undisputed").

exempt . . . income within the meaning of" 26 U.S.C. § 512(a)(3)(A)-(B).  Compl. ¶ 22.

Although CNG's investment income for 2000 is now asserted to have been slightly greater in amount ($2,798,002), Pl.'s Facts Ex. G, plaintiff's basic contentions are that it paid tax on erroneously-reported UBTI, its UBTI for 2000 was zero, and it is now due a refund of $1,065,684, plus interest.  Compl. ¶¶ 23-24.  This court's jurisdiction over plaintiff's tax refund claim is undisputed and lies pursuant to 26 U.S.C. § 7422 (2000), 28 U.S.C. § 1346(a)(1) (2000) and 28 U.S.C. § 1491(a)(1) (2000).  *See Foreman v. United States*, 60 F.3d 1559, 1562 (Fed. Cir. 1995).  The only other background fact of note is that CNG "expended $7,556,757 on benefits for its members" in 2000.  Pl.'s Facts Ex. G.

## DISCUSSION

## I.      Standard of Review for RCFC 56 Cross-Motions

The moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  RCFC 56(c).  Cross-motions for summary judgment are not an admission that no material facts remain at issue.  *See Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed. Cir. 1997) (citing *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978)).  Separate summary judgment motions may focus on different legal principles and allege as undisputed a different set of facts.  *Id.*  "Each party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts."  *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  A genuine issue of material fact is one that could change the outcome of the litigation.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  In the capacity of opposing a summary

judgment motion, the non-movant has the burden of providing sufficient evidence to show that a genuine issue of material fact indeed exists. *Celotex,* 477 U.S. at 322. Any evidence presented by the non-movant is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

## II.    Statutory and Regulatory Scheme

Disputes over tax liability are well-suited to disposition on cross-motions for summary judgment when the outcome turns on interpretation of the Code, rather than on disputes of fact. *See Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed. Cir. 1999) (stating that summary judgment was appropriate in that tax refund suit because "issues of law" were "the only disputed issues" before the trial court). Here, plaintiff argues that various provisions of the Code exclude its investment income from UBTI, and therefore, CNG owes no tax on UBTI for 2000. Defendant argues, however, that pursuant to "the plain meaning of . . . § 512(a)(3)(E), the legislative history of the Tax Reform Act of 1984, and the text of Treasury Regulation § 1.512(a)-5T," plaintiff's investment income cannot be excluded from UBTI, unless certain facts concerning CNG's funds for welfare benefits at the close of 2000 are known. Def.'s Mot. at 2. In light of its interpretation of the Code, defendant concludes that because plaintiff has not submitted evidence establishing that it did not have excess welfare benefits funds for 2000, CNG cannot withstand defendant's motion for summary judgment. *Id.* The court begins its analysis with a brief review of pertinent statutory sections and the regulation relevant to this dispute.

### A.    Code Provisions

For 501(c)(9) organizations, UBTI generally consists of "gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income)." 26 U.S.C. § 512(a)(3)(A). A VEBA may thus exclude "exempt function income" from its UBTI. *Id.* The category of excludable income known as exempt function income is defined in § 512(a)(3)(B), which states in relevant part:

"exempt function income" means the gross income from

4

> dues, fees, charges, or similar amounts paid by members
> of the organization as consideration for providing such
> members or their dependents or guests goods, facilities,
> or services in furtherance of the purposes constituting the
> basis for the exemption of the organization to which such
> income is paid.  Such term also means all income . . .
> which is set aside–
> . . . .
>> (ii) in the case of an organization described in
>> paragraph (9), (17), or (20) of section 501(c), to
>> provide for the payment of life, sick, accident, or
>> other benefits,
> including reasonable costs of administration directly connected with a
> purpose described in clause (i) or (ii).

26 U.S.C. § 512(a)(3)(B).

Two sentences in § 512(a)(3)(B) identify two pertinent categories of exempt function income:  the first sentence refers to member contributions; the second sentence refers to income which is set aside for the members' welfare benefits.  *See id.*  In the case of CNG, all income is set aside for the members' welfare benefits (and related administration costs), so all of CNG's income would fit into the second sentence's category.  Some of CNG's income would fit into both categories – member contributions and set-aside funds.  The investment income which is at the heart of the dispute in this case is passive investment income, which only fits into the second category of exempt function income, *i.e.*, income set aside for the welfare benefits of CNG's members and their dependents.

In 1984, Congress restricted the amount of income that a VEBA could exclude as "exempt function income."  *See* Tax Reform Act of 1984, Pub L. No. 98-369, Title V, § 511, 98 Stat. 854, 854-61.  This limitation is now found in two related sections of the code.  In § 512(a)(3)(E), the relevant language imposes this limitation on income that can be excluded as exempt function income:

> a set-aside for any purpose specified in clause (ii) of
> subparagraph (B) may be taken into account under
> subparagraph (B) only to the extent that such set-aside

5

> does not result in an amount of assets set aside for such
> purpose in excess of the account limit determined under
> section 419A . . . for the taxable year [excluding post-
> retirement medical benefits reserves].

26 U.S.C. § 512(a)(3)(E)(i).  The account limit for a VEBA's welfare benefits set-
aside fund referred to in § 512(a)(3)(E)(i), excluding any reserves for post-
retirement medical benefits, is defined by the relevant language of § 419A(c)(1):

> Except as otherwise provided in this subsection, the
> account limit for any qualified asset account for any
> taxable year is the amount reasonably and actuarially
> necessary to fund–
> (A) claims incurred but unpaid (as of the close of such
> taxable year) for [welfare] benefits referred to in
> subsection (a), and
> (B) administrative costs with respect to such claims.

26 U.S.C. § 419A(c)(1) (2000).  The VEBA's qualified asset account is the fund
for providing welfare benefits to the VEBA's members and their dependents.  *Id.*
§ 419A(a).  Thus, even if certain income of a VEBA normally qualifies as exempt
function income, that income, or some portion thereof, may, in some
circumstances, no longer be excluded if there is a resulting excess in the qualified
asset account of the VEBA, an excess over the account limit determined by
accounting and actuarial procedures of no relevance here.

## B.   Interpretive Regulation

Admittedly, these provisions of the Code are not particularly enlightening
with respect to this case, especially when discussed in the abstract.  About a year
and a half after the limitation on exempt function income was enacted, the United
States Department of the Treasury, through the IRS, issued Treasury Regulation
§ 1.512(a)-5T, to explain certain changes brought about by the Tax Reform Act of
1984.  *See* Income, Excise and Estate and Gift Taxes; Effective Dates and Other
Issues Arising Under the Employee Benefit Provisions of the Tax Reform Act of
1984, 51 Fed. Reg. 4312, 4332-33 (Feb. 4, 1986).  The relevant text of the third
question-and-answer portion of the regulation reads as follows:

What amount of income may a VEBA . . . set aside for exempt purposes?

(a) Pursuant to section 512(a)(3)(E)(i), the amounts set aside in a VEBA . . . as of the close of a taxable year of such VEBA . . . to provide for the payment of life, sick, accident, or other benefits may not be taken into account for purposes of determining exempt function income to the extent that such amounts exceed the qualified asset account limit, determined under sections 419A(c) . . . , for such taxable year of the VEBA . . . .  In calculating the qualified asset account limit for this purpose, a reserve for post-retirement medical benefits . . . is not to be taken into account.

(b) The exempt function income of a VEBA . . . for a taxable year of such an organization, under section 512(a)(3)(B), includes:  (1) Certain amounts paid by members of the VEBA . . . within the meaning of the first sentence of section 512(a)(3)(B) (member contributions); and (2) other income of the VEBA . . . (including earnings on member contributions) that is set aside for the payment of life, sick, accident, or other benefits to the extent that the total amount set aside in the VEBA . . . as of the close of the taxable year for any purpose (including member contributions and other income set aside in the VEBA . . . as of the close of the year) does not exceed the qualified asset account limit for such taxable year of the organization.  For purposes of section 512(c)(3)(B) [(sic)] member contributions include both employee contributions and employer contributions to the VEBA . . . .  In calculating the total amount set aside in a VEBA . . . as of the close of a taxable year, certain assets with useful lives extending substantially beyond the end of the taxable year (e.g., buildings, and licenses) are not to be taken into account to the extent they are used in the provision of life, sick, accident, or other

> benefits.  For example, cash and securities (and similar investments) held by a VEBA . . . are not disregarded in calculating the total amount set aside for this purpose because they are used to pay welfare benefits, rather than merely used in the provision of such benefits. Accordingly, the unrelated business taxable income of a VEBA . . . for a taxable year of such an organization generally will equal the lesser of two amounts:  the income of the VEBA . . . for the taxable year (excluding member contributions); or, the excess of the total amount set aside as of the close of the taxable year (including member contributions, and excluding certain assets with a useful life extending substantially beyond the end of the taxable year to the extent they are used in the provision of welfare benefits) over the qualified asset account limit (calculated without regard to the otherwise permitted reserve for post-retirement medical benefits) for the taxable year.

26 C.F.R. § 1.512(a)-5T (2008).

In the court's view, this temporary regulation, first promulgated in 1986, compels the conclusion that defendant's summary judgment motion must be granted.  Plaintiff relies heavily on *Sherwin-Williams Co. Employee Health Plan Trust v. Commissioner*, 330 F.3d 449 (6th Cir. 2003) (*Sherwin-Williams*), as contrary authority.  The court first discusses the level of deference due Treasury Regulation § 1.512(a)-5T, and the guidance provided by that regulation.  The court will then distinguish, and disagree with, the portions of *Sherwin-Williams* that discuss the application of the limitation on exempt function income in 26 U.S.C. § 512(a)(3)(E)(i).  Finally, the court will apply the limitation on exempt function income to the facts of this case, as presented through cross-motions for summary judgment.

## III.    Treasury Regulation § 1.512(a)-5T

### A.    Whether 26 U.S.C. § 512(a)(3)(E)(i) is Ambiguous

8

CNG argues that § 512(a)(3)(E)(i) permits a VEBA's investment income to be allocated and fully spent on member benefits prior to the close of the tax year, thus leaving no investment income to "result in" an excess in the VEBA's qualified asset account.  Pl.'s Mot. at 6.  Plaintiff concedes that it exceeded the account limit described in § 419A(c)(1)-(2) in 2000.  Pl.'s Reply at 2.  Defendant's position is that § 512(a)(3)(E)(i) does not permit the type of "earmarking," "allocating" or "offsetting" from which plaintiff seeks to benefit.  Def.'s Mot. at 19.  In defendant's terms, "investment income set aside during the year can result in an amount of assets set aside in excess of the VEBA's account limit, even where the VEBA spends more money on program benefits than the investment income it earns."  *Id.* at 18.  The question presented is whether the statute clearly supports one position or the other, or is ambiguous on this issue.

As both parties agree, the crucial statutory phrase is "result in."  Pl.'s Mot. at 5-6; Def.'s Mot. at 17.  Although the parties resort to dictionaries and caselaw to define "result," this common verb needs no translation, and the parties agree that the statute refers to a "consequence" which would limit the exempt function income exclusion otherwise permitted for a VEBA's investment income.  The statute is silent, however, on how exactly that consequence must be caused, in terms that would be helpful to this dispute:

> a set-aside for any purpose specified in clause (ii) of subparagraph (B) may be taken into account under subparagraph (B) only to the extent that such set-aside does not *result in* an amount of assets set aside for such purpose in excess of the account limit determined under section 419A . . . for the taxable year.

26 U.S.C. § 512(a)(3)(E)(i) (emphasis added).  The statute does not state that a VEBA's investment income results in an excess over the account limit *only* when the member benefits paid that year amount to less than the investment income for that year, as plaintiff's interpretation would prefer.  Nor does the statute state that an excess over the account limit *always* indicates that a VEBA's investment income, in cases where there was investment income, has resulted in that excess, as defendant would have it.

The court concludes that the text of the statute is ambiguous on this issue.

9

Each party asserts that the statute is unambiguous, in its favor.  The United States Court of Appeals for the Sixth Circuit ruled, in a very similar case, that plaintiff's view of the Code's limitation on exempt function income is correct.  *See Sherwin-Williams*, 330 F.3d at 456 ("We hold that § 512(a)(3)(E)(i)'s limit on accumulating set-aside income does not apply to income that was set aside and spent on the reasonable costs of administering health care benefits under § 512(a)(3)(B).  Such spent income is exempt function income, not subject to tax under § 512(a)(3)(A).").  The IRS has issued a nonacquiescence with this interpretation of the statute, disagreeing with the Sixth Circuit's decision in *Sherwin-Williams*. *See* I.R.S. AOD 2005-02, 2005 WL 2219137 (Sept. 14, 2005) ("We disagree with the Sixth Circuit's conclusion that investment income can be set aside and used separately before the end of a taxable year to pay the reasonable costs of administering health care benefits and thereby avoid the limits imposed by §512(a)(3)(E) on exempt function income.").  This split in authority supports the court's conclusion that the text of § 512(a)(3)(E)(i) is ambiguous.[2]

If the court should find the plain meaning of the statute to be ambiguous,

---

[2]  At oral argument, plaintiff for the first time argued that to the extent § 512(a)(3)(E)(i) is ambiguous, the canon of statutory construction noted in *United States v. Merriam*, 263 U.S. 179, 187-88 (1923), requires that any doubts as to the meaning of this section should be resolved in favor of the taxpayer.  Tr. at 33.  Plaintiff must not be allowed to advance new legal theories at oral argument, prejudicing defendant.  *See Arakaki v. United States*, 62 Fed. Cl. 244, 246 n.9 (2004) ("The court will not consider arguments that were presented for the first time in a reply brief or after briefing was complete.") (citing *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)); *Res. Recycling Corp. v. United States*, 56 Fed. Cl. 612, 618 (2003) (noting that "courts are rightfully loathe to allow a party to raise an issue at oral argument for the first time because there is a lack of notice to the court and adversary") (citing *Cubic Def. Sys., Inc. v. United States*, 45 Fed. Cl. 450, 466-68 (1999)).  Plaintiff waived any right to advance arguments it had not briefed prior to oral argument.  *See Cubic*, 45 Fed. Cl. at 467 (ruling that arguments presented for the first time at oral argument were "out of order").  The court notes that, in any event, the canon referenced by plaintiff at oral argument is not absolute, and it does not appear to be applicable when a regulatory interpretation of a tax code provision has been provided by the United States Department of the Treasury.  *See Comcation, Inc. v. United States*, 78 Fed. Cl. 61, 72-73 & n.19 (2007) (noting that the canon requiring doubt to be resolved in the favor of the taxpayer should be one of last resort, when statutory ambiguities cannot be otherwise resolved); *AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*, 67 Fed. Cl. 657, 691-93 (2005) (citing cases and discussing the limits of this canon). .

defendant argues, the court could consult the legislative history of § 512(a)(3)(E)(i) in order to ascertain Congress's intent.  Def.'s Mot. at 23.  Plaintiff also relies on the legislative history of this statute.  Pl.'s Reply at 10-12.  The court may consult legislative history when the plain language of the statute, and other canons of statutory construction, do not resolve ambiguities in statutory provisions.  *See Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1337-38 (Fed. Cir. 2008) (noting that a court determines the intent of Congress "'by employing the traditional tools of statutory construction; we examine the statute's text, structure, and legislative history, and apply the relevant canons of interpretation.'" (quoting *Delverde, SrL v. United States*, 202 F.3d 1360, 1363 (Fed. Cir. 2000))).  The court has reviewed the parties' citations to legislative history, and finds that the legislative history of § 512(a)(3)(E)(i) does not resolve whether passive investment income may be allocated and spent on welfare benefits so as to avoid the limitation set forth in this statute.

The legislative history of the Tax Reform Act of 1984 contains a general acknowledgment that the legislation imposes "more specific limits" on VEBAs, so that "in the case of a VEBA, etc., the amount set aside for an exempt purpose is generally not to exceed the qualified asset account limit."  P.L. 98-369, Deficit Reduction Act of 1984, H.R. Rep. No. 98-861, at 1163 (1984) (Conf. Rep.).  The Joint Committee on Taxation provided an additional gloss on the limitation on exempt function income:  "Congress believed that there should be reasonable limits on the extent to which a tax-exempt entity, such as a . . . VEBA . . . could accumulate income on a tax-favored basis."  Staff of Joint Comm. on Taxation, 98th Cong., *General Explanation of Revenue Provisions of the Deficit Reduction Act of 1984* 790 (Comm. Print 1984).  The Joint Committee also stated that "[u]nder the Act, the amount of such an organization's income for a year that may be considered set aside as exempt function income is generally not to increase the total amount that is set aside to an amount in excess of the account limit for the taxable year."  *Id.* at 791.  These statements, when taken as a whole, show that Congress disfavored excesses in a VEBA's qualified asset account, and acted to restrict unreasonable uses of the exclusion given exempt function income.  Although these statements explain why Congress did not want income that increased or resulted in an excess over a VEBA's account limit to be excluded as exempt function income, this history does not directly address the treatment of investment income in relation to the amount of member benefits paid during the taxable year.  Thus, even taking into consideration the legislative history of the Tax

11

Reform Act of 1984, the ambiguity in § 512(a)(3)(E)(i) is not resolved.[3]

### B.    Deference to Treasury Regulation § 1.512(a)-5T

Defendant urges the court to apply *Chevron* deference to § 1.512(a)-5T. Def.'s Mot. at 2, 22; *see Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (stating that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute").  Although this temporary regulation should be accorded some deference, the appropriate level of deference is defined not in *Chevron*, but in another line of cases.  *See United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24 (1982) (noting that when a treasury regulation has been promulgated through 26 U.S.C. § 7805(a) (2000), it is entitled to less deference than a substantive regulation because it is merely interpretative) (citing *Rowan Cos. v. United States*, 452 U.S. 247, 253 (1981)).  Interpretative regulations promulgated by the Commissioner of Internal Revenue pursuant to 26 U.S.C. § 7805(a), as opposed to legislative or substantive regulations, will be deferred to by the courts if they are reasonable interpretations of the Code.  *See Cottage Sav. Ass'n v. Comm'r*, 499 U.S. 554, 560-61 (1991) (citing *Nat'l Muffler Dealers Assn., Inc. v. United States*, 440 U.S. 472, 476-77 (1979)); *LTV Steel Co. v. United States*, 215 F.3d 1275, 1279 (Fed. Cir. 2000) (citations omitted).

Here, there is no doubt that Treasury Regulation § 1.512(a)-5T was promulgated under the authority of 26 U.S.C. § 7805.  *See* 51 Fed. Reg. at 4314. Notice and comment procedures were not instituted, because it is a temporary regulation.  *See id.* (citing 5 U.S.C. § 553(b) (2006)).  Nonetheless, "[t]emporary [treasury] regulations are accorded the same weight as final regulations."  *See Robinson v. Comm'r*, 119 T.C. 44, 68 (2002) (citing *Peterson Marital Trust v. Comm'r*, 102 T.C. 790, 797 (1994), *aff'd*, 78 F.3d 795 (2d Cir. 1996)).  As an interpretative, temporary treasury regulation, § 1.512(a)-5T is entitled to deference

---

[3]/  The parties have cited to additional excerpts of legislative commentary, but the court has not found therein unambiguous statements of the intent of Congress relevant to the resolution of this dispute.  The court cannot rely on cryptic or ambiguous quotes extracted from the legislative history of the Tax Reform Act of 1984 when these statements serve only to muddy already murky waters.  *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005) ("Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms.").

as long as it is a reasonable interpretation of § 512(a)(3)(E)(i).

### C.    Section 1.512(a)-5T Limits Exempt Function Income

Section 1.512(a)-5T, which describes how much income a VEBA may set aside for exempt purposes, provides clarification of the limitation on exempt function income that is not readily discerned from 26 U.S.C. § 512.[4]  First, the regulation notes that two categories of income may sometimes be excluded as exempt function income:  member contributions, and other income set aside for welfare benefits.  26 C.F.R. § 1.512(a)-5T ("The exempt function income of a VEBA . . . for a taxable year of such an organization, under section 512(a)(3)(B), includes:  (1) Certain amounts paid by members of the VEBA . . . within the meaning of the first sentence of section 512(a)(3)(B) (member contributions); and (2) other income of the VEBA . . . (including earnings on member contributions) that is set aside for the payment of life, sick, accident, or other benefits . . . .").  Next, the regulation indicates that for the purposes of defining exempt function income, employer contributions and member contributions are both considered member contributions for the purposes of § 512(a)(3)(B).  26 C.F.R. § 1.512(a)-5T ("For purposes of section 512([a])(3)(B), member contributions include both employee contributions and employer contributions to the VEBA . . . .").  Finally, and most importantly, the regulation provides a formula incorporating the limitation on exclusions for exempt function income, a formula which explains how to calculate a VEBA's UBTI:

> Accordingly, the unrelated business taxable income of a VEBA . . . for a taxable year of such an organization generally will equal the lesser of two amounts:  the income of the VEBA . . . for the taxable year (excluding member contributions); or, the excess of the total amount set aside as of the close of the taxable year (including

---

[4]/ Section 1.512(a)-5T also contains a typographical error.  A reference to "section 512(c)(3)(B)" can only mean "section 512(a)(3)(B)," first, because the Code has no § 512(c)(3)(B).  Second, the sentence containing this reference, and other sentences of this portion of § 1.512(a)-5T, unequivocally discuss the operation of § 512(a)(3)(B).  The court, for the sake of clarity, has corrected the regulation's typographical error in this section of its opinion, although a previously quoted excerpt, *supra*, retains the error for informational purposes.

member contributions, and excluding certain assets with
a useful life extending substantially beyond the end of the
taxable year to the extent they are used in the provision
of welfare benefits) over the qualified asset account limit
(calculated without regard to the otherwise permitted
reserve for post-retirement medical benefits) for the
taxable year.

26 C.F.R. § 1.512(a)-5T.

To put this formula in other words (and ignoring other variables that are not
essential to the court's analysis here), a VEBA will owe tax on the lesser of its
passive investment income (the VEBA's income when employer and employee
contributions are excluded), or the VEBA's excess over the account limit (a figure
related, in part, to all income set aside that year and other funds in the qualified
asset account). For a simplified example to show how this formula works, take a
VEBA which consistently exceeds its account limit by $2,000,000, and which has
$1,000,000 in investment income one year, $2,000,000 in investment income the
second year, $3,000,000 in investment income the third year, and $4,000,000 in
investment income the fourth year. In year one, its UBTI would be $1,000,000, in
year two $2,000,000, in year three, $2,000,000, and in year four, again $2,000,000,
because the VEBA always pays tax on the lesser of its investment income or the
excess over the VEBA's account limit. In year one, the VEBA's investment
income of $1,000,000 "resulted in" $1,000,000 of the excess over the account
limit, and its UBTI is $1,000,000. In year four, however, the VEBA's investment
income of $4,000,000 only "resulted in" $2,000,000 of excess over the account
limit, so the UBTI for year four is $2,000,000, according to the formula provided
by § 1.512(a)-5T.

Thus, the limitation on exempt function income, as described and clarified in
§ 1.512(a)-5T, carries forth the intent of Congress and the meaning of the text of
§ 512(a)(3)(E)(i). Passive investment income can be excluded from UBTI to the
extent, and only to the extent, that it does not result in an excess over the account
limit for the VEBA. *See* 26 U.S.C. § 512(a)(3)(E)(i) ("[A] set-aside for any
purpose specified in clause (ii) of subparagraph (B) may be taken into account
under subparagraph (B) only to the extent that such set-aside does not result in an
amount of assets set aside for such purpose in excess of the account limit

14

determined under section 419A . . . for the taxable year . . . ."). The court finds that 26 C.F.R. § 1.512(a)-5T is a reasonable interpretation of § 512(a)(3)(E)(i), and agrees with defendant that "investment income set aside during the year can result in an amount of assets set aside in excess of the VEBA's account limit, even where the VEBA spends more money on program benefits than the investment income it earns."[5] Def.'s Mot. at 18.

Plaintiff argues, instead, that Treasury Regulation § 1.512(a)-5T only imposes a limitation on exempt function income "at the close of a taxable year." Pl.'s Reply at 4-5. According to plaintiff, if a VEBA spends its passive investment income before the end of a taxable year on welfare benefits or related administrative costs, no investment income is set aside and available to be considered as UBTI under the limitation set forth in § 512(a)(3)(E)(i). *See* Pl.'s Reply at 4 ("When all of the investment income has been expended during the taxable year, none of that income can have been responsible for VEBA assets in excess of the account limit."). Treasury Regulation § 1.512(a)-5T does not support plaintiff's position.

As plaintiff points out, § 1.512(a)-5T provides a general overview of § 512(a)(3)(E)(i), which states that "the *amounts set aside* in a VEBA . . . *as of the close of a taxable year of such VEBA* . . . to provide for the payment of life, sick, accident, or other benefits *may not be taken into account* for purposes of determining exempt function income to the extent that such amounts exceed the qualified asset account limit, determined under sections 419A(c) . . . , for such taxable year of the VEBA . . . ." 26 C.F.R. § 1.512(a)-5T (emphasis added). If that sentence were to stand alone, plaintiff's position might be persuasive. Unfortunately for plaintiff, the regulation goes into more detail as to the application of the limitation on exempt function income, and these more specific descriptions do not support plaintiff's interpretation of the regulation.

First, a VEBA's investment income set-aside is addressed in the next paragraph of the regulation: "The exempt function income of a VEBA . . . for a taxable year of such an organization, under section 512(a)(3)(B), includes . . . other

---

[5]/ For the first time at oral argument, plaintiff suggested that § 1.512(a)-5T may be "clearly invalid." Tr. at 34. This argument is untimely and waived. *See supra* note 2. Even if this argument were before the court, it would be unpersuasive.

income of the VEBA . . . (including earnings on member contributions) that is set aside for the payment of life, sick, accident, or other benefits *to the extent that the total amount set aside in the VEBA . . . as of the close of the taxable year* for any purpose (including member contributions and other income set aside in the VEBA . . . as of the close of the year) *does not exceed the qualified asset account limit* for such taxable year of the organization." 26 C.F.R. § 1.512(a)-5T (emphasis added). Thus, § 1.512(a)-5T very specifically ties the "close of the taxable year" language to the year-end total of set-asides that may exceed the account limit, not to any particular set-aside that is unspent at that time. This sentence of the regulation thus dispels any ambiguity in § 512(a)(3)(E)(i) concerning the "results in" relationship of investment income, expenditures on welfare benefits, and a year-end excess over a VEBA's account limit.

Further, and conclusively, the explicit formula provided in § 1.512(a)-5T for determining a VEBA's UBTI makes no mention of reducing a VEBA's investment income based on its expenditures for welfare benefits during that year. The regulation's formula, to which the court must defer because it is a reasonable interpretation of the statute, simply compares passive investment income with any excess over a VEBA's account limit. If passive investment income is less than the excess over a VEBA's account limit, the investment income generally constitutes the VEBA's UBTI.

In the court's view, § 1.512(a)-5T is unambiguous and supports defendant's interpretation of the statute. The regulation's formula for determining UBTI clearly describes how the limitation on exempt function income works, and identifies the close of the taxable year as the proper time for performing these calculations. The phrase "set aside" in the overview section of the regulation cannot be read to mean income 'set aside and remaining after all expended welfare benefits have been subtracted,' without reading into the UBTI formula, set forth in the same regulation, an additional set of calculations that are plainly absent. Plaintiff's interpretation of § 1.512(a)-5T must therefore be rejected.

Even assuming, *arguendo*, that the regulation could be considered to be ambiguous on this point, the court would defer to the agency's interpretation of its own regulation, because the IRS's interpretation of its own regulation is reasonable. *See Am. Express Co. v. United States*, 262 F.3d 1376, 1383 (Fed. Cir. 2001) ("In the context of tax cases, the IRS's reasonable interpretations of its own

16

regulations and procedures are entitled to particular deference.") (citing *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 219 (2001)).  The IRS interprets the UBTI formula in § 1.512(a)-5T to provide that "the UBTI of the [VEBA] is the lesser of the investment income of the [VEBA] or the excess of the amount set aside in the trust at the end of the year over the account limit in section 419A."  I.R.S. AOD 2005-02.  This is a reasonable and faithful interpretation of § 1.512(a)-5T.  The IRS also concludes that "there is no provision in the regulation for allocating income from a particular source to the payment of a particular expense.  Rather, the total amount set aside in the [VEBA] at the end of the taxable year in excess of the adjusted section 419A limit is compared with the investment income of the [VEBA] for the taxable year to determine if any or all of the investment income of the [VEBA] is UBTI."  I.R.S. AOD 2005-02.  This also is a reasonable, and, in the court's view, unassailable interpretation of § 1.512(a)-5T.  Because the IRS has correctly and reasonably interpreted its own regulation, the court would necessarily defer to the IRS's interpretation, if § 1.512(a)-5T were found to be ambiguous on this point.

## IV.   *Sherwin-Williams*

Decisions of the Sixth Circuit are not binding on this court.  *Bankers Trust N.Y. Corp. v. United States*, 225 F.3d 1368, 1371 (Fed. Cir. 2000).  Nonetheless, this court looks to the regional circuit courts of appeal for persuasive authority.  *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023 (Fed. Cir. 1989).  Here, the court must distinguish *Sherwin-Williams* on its facts, and also disagree with its interpretation of § 512(a)(3)(E)(i).

There is only one significant difference between the facts in *Sherwin-Williams* and the facts in this case, yet it is an important one.  The parties in *Sherwin-Williams* agreed that the VEBA's "investment income from the two years [at issue] was set aside and spent on administrative costs directly connected with the provision of benefits."  330 F.3d at 454.  It appears that the Sixth Circuit interpreted the parties' characterization of that VEBA's accounting procedures to show that particular investment income was allocated and spent on the administrative costs of providing welfare benefits before the end of the tax year.  *See id.* at 452 (stating that "[t]his case requires us to determine whether passive income that the [VEBA] set aside and *actually* spent on administrative costs during the year counts against § 512(a)(3)(E)'s limit") (emphasis added).  Plaintiff

concedes that defendant "has not made an equivalent stipulation" in this case.  Pl.'s
Reply at 8.

Because the United States stipulated to a particular characterization of the
VEBA's allocation and spending of investment income in *Sherwin-Williams*, and
has not done so in this litigation, the two cases are in fundamentally different
postures.  Here, the United States contends that a VEBA may never allocate
investment income to the payment of welfare benefits and thus offset that income
before the close of the tax year, because such an allocation would allow the VEBA
to avoid the limitation on exempt function income in § 512(a)(3)(E)(i).  Def.'s
Mot. at 19 (citing I.R.S. AOD 2005-02).  Because the Sixth Circuit had before it a
stipulation of fact that was central to its interpretation of § 512(a)(3)(E)(i), the
court finds that the holding in *Sherwin-Williams* is distinguishable on its facts.

Additionally, the court does not find the Sixth Circuit's analysis of the
limitation on exempt function income in *Sherwin-Williams* to be persuasive.  The
Sixth Circuit suggests that § 512(a)(3)(E)(i) imposes a limit on accumulated funds,
rather than set-aside funds.  *Sherwin-Williams*, 330 F.3d at 454 ("The question
presented here is whether the limit is meant to cap the total amount of income that
a VEBA may set aside under § 512(a)(3)(B) over the course of a year, or whether it
acts as a cap only on the amount of income that the VEBA may accumulate . . . .").
According to the circuit, "[t]he [statute's] inquiry into whether set-aside income
'result[s] in an amount' in excess of the account limit suggests a focus not on the
aggregate quantity of money that has passed through the account over the relevant
window of time, but on the sum that exists in the account at the relevant moment."
*Id.*  The Sixth Circuit relied on its textual analysis of § 512(a)(3)(E)(i), the statute's
structure, legislative history, and Treasury Regulation § 1.512(a)-5T.  *See Sherwin-
Williams*, 330 F.3d at 454-56.

This court cannot agree that the limitation in § 512(a)(3)(E)(i) applies only
to a VEBA's accumulated funds, rather than its set-aside funds.  The term
"accumulated" appears nowhere in this provision, the title of which is "Limitation
on the amount of setaside."  *Id.*  This court's reading of the plain text of the statute,
and the legislative history, shows that Congress was concerned with the interaction
between investment income set-asides and excesses over a VEBA's account limit.
As stated previously, the court believes the statute to be ambiguous in its
description of how the limitation on exempt function income should be applied,

18

and that deference to Treasury Regulation § 1.512(a)-5T, issued fourteen years before the tax year in dispute here, is required by binding Supreme Court precedent. The discussion of this regulation in *Sherwin-Williams* focuses on two brief and incomplete quotes that are not given adequate context. *See* 330 F.3d at 456 (quoting only these phrases from § 1.512(a)-5T: "'the amounts set aside in a VEBA . . . *as of the close of a taxable year*'" and "'the total amount set aside in the VEBA . . . as of the close of the taxable year'"). Significantly, the circuit omits mention of the UBTI formula, probably the most useful interpretation of the limitation on exempt function income provided by § 1.512(a)-5T, a formula which greatly undermines and is inconsistent with the narrow focus on year-end "accumulated" funds adopted by the Sixth Circuit. For all of these reasons, this court cannot follow *Sherwin-Williams*.

## V.    Summary Judgment Denying Plaintiff's Refund Claim

Having concluded that defendant's, and the IRS's, interpretation of § 512(a)(3)(E)(i) is correct, the remaining question is whether defendant is entitled to summary judgment.[6] Plaintiff has conceded that it exceeded the account limit for its qualified asset account at the end of 2000. Pl.'s Reply at 2. Because there has been an excess over the account limit described in 26 U.S.C. § 419A(c), plaintiff's UBTI would be the lesser of CNG's investment income, or CNG's excess over the account limit (excluding post-retirement medical benefits reserves). *See* 26 U.S.C. § 512(a)(3)(E)(i); 26 C.F.R. § 1.512(a)-5T.

Plaintiff has chosen, however, to not put in any evidence of the amount of its excess over the account limit described in 26 U.S.C. § 419A(c)(1) for the 2000 tax year. *See* Pl.'s Mot. at 5 (noting that "plaintiff has not computed the account limit under Section 419A because . . . this account limit is irrelevant"). Plaintiff, as the non-movant opposing defendant's motion for summary judgment, has the burden

---

[6] Plaintiff suggests that defendant's interpretation of the limitation on exempt function income leaves a VEBA in a worse tax posture than a taxable entity. Pl.'s Reply at 14. This is a policy argument, and trial courts do not make policy. Even if plaintiff is correct in its policy analysis, an analysis that defendant disputes at least in part, Def.'s Reply at 9-10, only Congress may address policy concerns. *See Beck v. Sec'y of Dept. of Health and Human Servs.*, 924 F.2d 1029, 1034 (Fed. Cir. 1991) ("Regardless of their merits, these policy arguments may be implemented only by Congress. Our duty is limited to interpreting the statute as it was enacted, not as it arguably should have been enacted.").

of providing sufficient evidence to show that a genuine issue of material fact prevents summary judgment in defendant's favor. *Celotex,* 477 U.S. at 322. In this suit, there is no doubt that plaintiff bears the burden of proof as to its entitlement to a tax refund. *See Young & Rubicam, Inc. v. United States,* 410 F.2d 1233, 1238 (Ct. Cl. 1969) ("In refund litigation, the taxpayer has the burden of proof because he is the plaintiff and because the government benefits from the presumptive correctness of the Commissioner's administrative determination.").

An essential element of proof for CNG to receive a refund would be evidence that CNG's excess over the account limit for its qualified asset fund in 2000 was less than $2,693,592, the amount CNG reported as UBTI for that year and the amount upon which it paid $1,065,684 in taxes. Only if CNG's excess over its account limit was shown to be less than $2,693,592 would its UBTI be less than that figure, according to the formula provided in § 1.512(a)-5T. Thus, to receive any refund, plaintiff must point to evidence that CNG's excess over the account limit for its qualified asset account in 2000 was less than $2,693,592. Plaintiff has presented no such evidence.

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and for which that party bears the burden of proof at trial. *Celotex*, 477 U.S. at 322. CNG bears the burden of proving its right to a refund for the 2000 tax year, and has failed to put in any evidence of its excess over the account limit described in 26 U.S.C. § 419A(c)(1). That evidence would be essential to plaintiff's case at trial. Plaintiff has thus not met its burden under *Celotex* for opposing defendant's motion for summary judgment.

## CONCLUSION

A volunteer employees' beneficiary association (VEBA) may not avoid the limitation on exempt function income in 26 U.S.C. § 512(a)(3)(E)(i) merely by allocating investment income toward the payment of welfare benefits during the course of the tax year. In addition, plaintiff has not presented any evidence that, pursuant to § 512(a)(3), CNG is entitled to a tax refund. For the foregoing reasons, defendant's motion for summary judgment is granted.

Accordingly, it is hereby **ORDERED** that

(1)     Plaintiff's Motion for Summary Judgment, filed May 8, 2008, is **DENIED**;

(2)     Defendant's Cross-Motion for Summary Judgment, filed June 6, 2008, is **GRANTED**;

(3)     The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint, with prejudice; and

(4)     Each party shall bear its own costs.


                                        /s/Lynn J. Bush_____
                                        LYNN J. BUSH
                                        Judge